**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                        :

JASON GOODMAN,                   :

                        :    No. 21 Civ. 10878-AT-JLC

             Plaintiff,      :

                        :    *Pro Se* Case

          -against-       :

                        :

CHRISTOPHER BOUZY, et al.,   :

                        :

          Defendants.    :

                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS CHRISTOPHER BOUZY AND BOT SENTINEL INC.

Seth D. Berlin (SB7978)
Maxwell S. Mishkin (*pro hac vice* forthcoming)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy
and Bot Sentinel Inc.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 3

      A.     The Parties .................................................................................................. 3

      B.     The Underlying Dispute .............................................................................. 4

      C.     This Lawsuit ............................................................................................... 6

ARGUMENT ...................................................................................................................... 7

I.      BOT SENTINEL SHOULD BE DISMISSED BECAUSE IT IS NOT
       ALLEGED TO HAVE PUBLISHED ANYTHING ............................................. 8

II.     THE COMPLAINT SHOULD BE DISMISSED BECAUSE GOODMAN
       FAILED TO PLAUSIBLY ALLEGE THAT THE CHALLENGED TWEET
       IS FALSE ............................................................................................................ 10

III.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE ANY
       IMPLICATION IS NOT REASONABLY SUPPORTED BY THE
       CHALLENGED TWEET AND WOULD, IN ANY EVENT, CONSTITUTE
       A PROTECTED OPINION ................................................................................ 12

      A.     As A Matter of Law, The Challenged Tweet Cannot Support the
            Implication Goodman Ascribes To It .................................................... 12

      B.     Any Implication Would In Any Event Be a Protected Expression
            of Opinion ............................................................................................ 14

IV.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE GOODMAN
       FAILS TO ALLEGE FACTS THAT, IF PROVEN, WOULD CONSTITUTE
       ACTUAL MALICE ............................................................................................ 17

      A.     Goodman Is Required To Prove Actual Malice .................................... 18

      B.     Goodman Fails To Plausibly Allege That Bouzy Published The
            Challenged Tweet With Actual Malice ................................................. 21

CONCLUSION ................................................................................................................. 24

**Page(s)**

**Cases**

*In re Actos End-Payor Antitrust Litigation*,
848 F.3d 89 (2d Cir. 2017)..................................................................................7

*Adelson v. Harris*,
973 F. Supp. 2d 467 (S.D.N.Y. 2013)................................................................4, 8

*Albert v. Loksen*,
239 F.3d 256 (2d Cir. 2001)..................................................................................9

*Aristocrat Plastic Surgery, P.C. v. Silva*,
206 A.D.3d 26 (1st Dep't 2022) .........................................................................21

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)......................................................................................17, 22

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007).............................................................................7, 17, 22

*Biro v. Condé Nast*,
622 F. App'x 67 (2d Cir. 2015) ..........................................................................20

*Biro v. Condé Nast*,
883 F. Supp. 2d 441 (S.D.N.Y. 2012)........................................................8, 16, 17

*Biro v. Condé Nast*,
963 F. Supp. 2d 255 (S.D.N.Y. 2013)........................................................4, 19, 22

*Braden v. News World Communications, Inc.*,
No. CA-10689'89, 1991 WL 161497 (D.C. Super. Ct. Mar. 1, 1991) ...................19

*Brahms v. Carver*,
33 F. Supp. 3d 192 (E.D.N.Y. 2014) ..................................................................16

*Brimelow v. N.Y. Times Co.*,
No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)....................................22

*BYD Co. v. VICE Media LLC*,
531 F. Supp. 3d 810 (S.D.N.Y. 2021)..................................................................8

*CACI Premier Technology, Inc. v. Rhodes*,
536 F.3d 280 (4th Cir. 2008) ..............................................................................16

*Carlson v. American International Group, Inc.*,
30 N.Y.3d 288 (2017)........................................................................................23

*Casper Sleep, Inc. v. Mitcham*,
  204 F. Supp. 3d 632 (S.D.N.Y. 2016) .................................................................................7

*Celle v. Filipino Reporter Enterprises, Inc.*,
  209 F.3d 163 (2d Cir. 2000) .....................................................................................14, 20

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
  38 N.Y.2d 196 (1975) ..........................................................................................................21

*Chapin v. Knight-Ridder, Inc.*,
  993 F.2d 1087 (4th Cir. 1993) ...................................................................................12, 13

*Chau v. Lewis*,
  771 F.3d 118 (2d Cir. 2014) ................................................................................................16

*Coleman v. Grand*,
  523 F. Supp. 3d 244 (E.D.N.Y. 2021) .............................................................................20

*Center for Medical Progress v. Planned Parenthood Federation of America*,
  551 F. Supp. 3d 320 (S.D.N.Y. 2021) .............................................................................20

*Barrett ex rel. Cumberland Insurance Group v. Steele*,
  No. A-3607-07T2, 2008 WL 5156594 (N.J. Super. Ct. App. Div. Dec. 10, 2008) .................6

*Ellis v. Time, Inc.*,
  No. Civ.A.94-1755(NHJ), 1997 WL 863267 (D.D.C. Nov. 18, 1997) ............................19

*Farber v. Jefferys*,
  103 A.D.3d 514 (1st Dep't 2013) ......................................................................................19

*Ganske v. Mensch*,
  480 F. Supp. 3d 542 (S.D.N.Y. 2020) ..........................................................................2, 15

*Garrison v. Louisiana*,
  379 U.S. 64 (1964) .................................................................................................................17

*Gertz v. Robert Welch, Inc.*,
  418 U.S. 323 (1974) ...............................................................................................................18

*Goldman v. Barrett*,
  733 F. App'x 568 (2d Cir. 2018) ........................................................................................23

*Goldman v. Reddington*,
  No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021) ..................20

*Goodman v. Sharp*,
  No. 21-CV-10627 (VEC), 2022 WL 2702609 (S.D.N.Y. July 12, 2022) ................................7

*Gross v. N.Y. Times Co.*,
    623 N.E.2d 1163 (N.Y. 1993) ...................................................................................15

*Harte-Hanks Communications, Inc. v. Connaughton*,
    491 U.S. 657 (1989) ...................................................................................................22

*Harvey v. CNN, Inc.*,
    520 F. Supp. 3d 693 (D. Md. 2021) ............................................................................9

*Houlahan v. World Wide Association of Specialty Programs & Schools*,
    No. 04-01161(HHK), 2006 WL 2844190 (D.D.C. Sept. 29, 2006) .......................19

*Huizenga v. NYP Holdings, Inc.*,
    No. 17-CV-2113-LTS-GWG, 2019 WL 1620743 (S.D.N.Y. Apr. 16, 2019) ........23

*Immuno AG v. Moor-Jankowski*,
    567 N.E.2d 1270 (N.Y. 1991) ...................................................................................10

*Jacobson v. CBS Broadcasting Inc.*,
    19 N.E.3d 1165 (Ill. Ct. App. 2014) .........................................................................19

*Jacobus v. Trump*,
    51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017) .....................................................................14

*Janklow v. Newsweek, Inc.*,
    759 F.2d 644 (8th Cir. 1985) .....................................................................................14

*Kahl v. Bureau of National Affairs, Inc.*,
    856 F.3d 106 (D.C. Cir. 2017) ....................................................................................8

*Kinsey v. N.Y. Times Co.*,
    991 F.3d 171 (2d Cir. 2021) ........................................................................................2

*Lauderback v. ABC*,
    741 F.2d 193 (8th Cir. 1984) .....................................................................................16

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1977) ...............................................................................14, 15

*Libre By Nexus v. Buzzfeed, Inc.*,
    311 F. Supp. 3d 149 (D.D.C. 2018) ..........................................................................12

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .....................................................................................18

*McCafferty v. Newsweek Media Group*,
    955 F.3d 352 (3d Cir. 2020) ......................................................................................18

iv

*McDougal v. Fox News Network, LLC,*
489 F. Supp. 3d 174 (S.D.N.Y. 2020) ...................................................................18

*Michel v. NYP Holdings, Inc.,*
816 F.3d 686 (11th Cir. 2016) ...............................................................................17

*National Academy of Television Arts & Sciences, Inc. v. Multimedia System Design, Inc.,*
551 F. Supp. 3d 408 (S.D.N.Y. 2021)......................................................................3

*National Association of Letter Carriers v. Austin,*
418 U.S. 264 (1974)................................................................................................10

*Nelson Auto Center v. Multimedia Holdings Corp.,*
951 F.3d 952 (8th Cir. 2020) .................................................................................18

*Palin v. N.Y. Times Co.,*
510 F. Supp. 3d 21 (S.D.N.Y. 2020)......................................................................20

*Philadelphia Newspapers, Inc. v. Hepps,*
475 U.S. 767 (1986)................................................................................................10

*Pippen v. NBCUniversal Media,*
734 F.3d 610 (7th Cir. 2013) .................................................................................18

*Pollnow v. Poughkeepsie Newspapers, Inc.,*
107 A.D.2d 10 (2d Dep't 1985) ............................................................................21

*Rinaldi v. Viking Penguin, Inc.,*
420 N.E.2d 377 (N.Y. 1981)...................................................................................22

*Ryniewicz v. Clarivate Analytics,*
803 F. App'x 858 (6th Cir. 2020) ..........................................................................18

*San Antonio Express-News v. Dracos,*
922 S.W.2d 242 (Tex. App. 1996)..........................................................................19

*Sandals Resorts International Ltd. v. Google, Inc.,*
86 A.D.3d 32 (1st Dep't 2011) ..............................................................................15

*Schatz v. Republican State Leadership Committee,*
669 F.3d 50 (1st Cir. 2012)...............................................................................18, 21

*Small Business Bodyguard Inc. v. House of Moxie, Inc.,*
230 F. Supp. 3d 290 (S.D.N.Y. 2017).....................................................................16

*Steele v. Goodman,*
No. 3:21CV573, 2022 WL 4274120 (E.D. Va. Sept. 15, 2022) ................................7

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (1st Dep't 2014) ..................................................................13

*Sweigert v. Goodman*,
    No. 118CV08653VECSDA, 2021 WL 4295262 (S.D.N.Y. Sept. 21, 2021) ...........................7

*Sweigert v. Goodman*,
    No. 18-CV-8653 (VEC), 2021 WL 2678621 (S.D.N.Y. June 30, 2021)..................................1

*Sweigert v. Goodman*,
    No. 22-cv-10002 (E.D. Mich. Feb. 11, 2022), ECF No. 12......................................................1

*Sweigert v. Multimedia Sys. Design, Inc.*,
    No. 2:22-cv-10642-GAD-EAS (E.D. Mich. July 20, 2022), ECF No. 46 ................................1

*Tah v. Global Witness Publishing, Inc.*,
    991 F.3d 231 (D.C. Cir. 2021) ...................................................................18

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017)................................................................10, 11, 12

*Tavoulareas v. Piro*,
    759 F.2d 90 (D.C. Cir. 1985) .......................................................................9

*Tavoulareas v. Piro*,
    763 F.2d 1472 (D.C. Cir. 1985) ....................................................................9

*Tocker v. Philip Morris Cos.*,
    470 F.3d 481 (2d Cir. 2006)........................................................................12

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ...............................................................18, 20

*Walker v. Beaumont Independent School District*,
    938 F.3d 724 (5th Cir. 2019) ......................................................................18

*Wright v. Dennis*,
    No. 0604318/2006, 2008 WL 475914 (N.Y. Sup. Ct. Feb. 11, 2008)..................................10

*Yeager v. National Public Radio*,
    773 F. App'x 1030 (10th Cir. 2019) ........................................................18, 20

**Statutes & Other Authorities**

N.Y. Civ. Rights Law § 76-a ...........................................................................20

Fed. R. Evid. 201(d) ....................................................................................2

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017)...........................................8

Defendants Christopher Bouzy ("Bouzy") and Bot Sentinel Inc. ("Bot Sentinel," and together with Bouzy, "Movants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Jason Goodman's Complaint ("Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## <u>INTRODUCTION</u>

As Judge Caproni recently observed, Plaintiff Jason Goodman is one of a pair of "*pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet." *Sweigert v. Goodman*, No. 18-CV-8653 (VEC), 2021 WL 2678621, at *1 (S.D.N.Y. June 30, 2021).[1]  Other courts have harshly criticized Goodman for his "acrimonious and vexatious litigation practices," which have extended beyond his principal antagonist to others with nominal involvement and even to Court personnel.  *See* Order Enjoining Defendant From Contacting Court Personnel And Family at 2, *Sweigert v. Goodman*, No. 22-cv-10002 (E.D. Mich. Feb. 11, 2022), ECF No. 12 (enjoining Goodman from "obtain[ing] the personal cellular and home phone numbers of Court staff and their family members and contact[ing] them outside of Court business hours"); Order Striking Filings at 3, *Sweigert v. Multimedia Sys. Design, Inc.*, No. 2:22-cv-10642-GAD-EAS (E.D. Mich. July 20, 2022), ECF No. 46 (noting that "Goodman continues to engage in this inappropriate behavior in this case, despite the Court's command that [he] stop making harassing phone calls to Court personnel").

---

[1]  *See, e.g.*, *Sweigert v. Multimedia Sys. Design, Inc.*, No. 22-cv-12696 (E.D. Mich.); *Sweigert v. Goodman*, No. 22-cv-02788 (S.D.N.Y); *Sweigert v. Multimedia Sys. Design, Inc.*, No. 22-cv-10642 (E.D. Mich.); *Sweigert v. Goodman*, No. 22-cv-10002 (E.D. Mich.); *Sweigert v. Goodman*, No. 18-cv-8653 (S.D.N.Y.); *Sweigert v. Goodman*, No. 18-cv-1633 (D.S.C.). Although Goodman is obviously generally familiar with these cases, pursuant to Local Civil Rule 7.2, undersigned counsel are providing Plaintiff and co-defendant Swiegert, both of whom are *pro se*, with copies of specific decisions cited herein as well as other authorities cited in this memorandum of law "that are unpublished or reported exclusively on computerized databases."

This defamation lawsuit arises out of another unsolicited telephone call made by Goodman in the wake of another online dispute, this time with Brookings scholar Benjamin Wittes, whom Goodman accused of covering up a murder. When Defendant Bouzy criticized Goodman on Twitter for making such a far-fetched accusation, Goodman placed "a lengthy phone call" to Bouzy, during which Goodman (1) volunteered that he has been accused online of rape (though he denies that accusation), and (2) threatened to sue Bouzy if he were to speak publicly about that already-public accusation. *See* Compl. at 3, ¶¶ 13-16. Goodman subsequently sent Bouzy an "official demand" along the same lines. *See id.* Ex. A; Declaration of Seth D. Berlin ("Berlin Decl.") ¶ 4 & Ex. 1.[2]

Finding all this remarkable, Bouzy subsequently published on Twitter an accurate summary of those interactions with Goodman, writing that "Jason [Goodman] doesn't want me tweeting that he threatened me not to tweet about his rape allegations." *See* Compl. Ex. A. Goodman responded by filing this lawsuit against Bouzy for defamation over that tweet (the "Challenged Tweet"). Goodman also named as defendants in his Complaint Bouzy's company Bot Sentinel Inc., which is not alleged to have any involvement in the publication, and George Webb Sweigert, who has no connection to Bouzy or Bot Sentinel.

---

[2] The copy of this "demand" attached to the Complaint is difficult to read, so Movants have re-attached it as Exhibit 1 to the Berlin Declaration. Because the three documents submitted with the Berlin Declaration are referenced in the Complaint and are subject to judicial notice in any event, the Court may consider them on a motion to dismiss without converting it into a summary judgment motion. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545-46 (S.D.N.Y. 2020) (on a motion to dismiss, court can consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference," as well as records that the court may "take judicial notice of," including "tweets [that] are integral to the allegations in the complaint and necessary to place [challenged] comments in context.") (citation omitted); Fed. R. Evid. 201(d) ("The court may take judicial notice at any stage of the proceeding."). Nevertheless, since Movants are submitting "additional written materials," they are in an abundance of caution filing and serving the notice required by Local Civil Rule 12.1, including the full text of Federal Rule of Civil Procedure 56.

The Court should dismiss Goodman's Complaint against Bouzy and Bot Sentinel under Rule 12(b)(6) of the Federal Rules of Civil Procedure because Goodman's defamation claim fails as a matter of law for multiple independent reasons. First, Bot Sentinel should be dismissed because publication is an essential element of a defamation claim and Bot Sentinel did not publish the Challenged Tweet. Second, the Challenged Tweet cannot give rise to a defamation claim because it is true: as the Complaint itself concedes, Goodman has been publicly accused of rape and has demanded that Bouzy not tweet about that accusation. Third, the Challenged Tweet is not capable of conveying the defamatory implication ascribed to it by Goodman – namely, that Goodman is, in fact, guilty of rape – and, in any event, any defamatory implication arguably conveyed by the Challenged Tweet is absolutely protected as a pure opinion or a conclusion based on disclosed facts. Finally, Goodman is required under both the First Amendment and New York law to plead facts that, if proven, would demonstrate that Bouzy published the statement at issue with "actual malice" fault, but Goodman failed to do so. Because any amendment would be futile in these circumstances, dismissal should be entered with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.     The Parties

Plaintiff Goodman describes himself as "a documentary filmmaker" and "journalist," as well as the creator of the social media property "Crowdsource the Truth," Compl. ¶ 5, which Judge Caproni recently described as a site that "produces video content that, *inter alia*, traffics in wild conspiracy theories," *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 417 (S.D.N.Y. 2021). Goodman previously published on Twitter under the handle @csthetruth. Compl. Ex. A at 1.

Defendant Bouzy is the founder and CEO of Defendant Bot Sentinel. Compl. at 2. Bot Sentinel's stated mission is to "help fight disinformation and targeted harassment" online and to

help users of Twitter "be able to engage in healthy online discourse without inauthentic accounts, toxic trolls, foreign countries, and organized groups manipulating the conversation." *Id.* Bouzy regularly publishes comments on Twitter under the handle @cbouzy. *Id.* ¶ 12.

**B.    The Underlying Dispute**

In December 2020, Goodman engaged in a heated online exchange with Benjamin Wittes, a Senior Fellow at the Brookings Institution and editor-in-chief of the *Lawfare* blog. *Id.* at 3. Goodman has theorized that Peter Smith, the GOP operative who sought Hillary Clinton's emails from Russia, was murdered in 2017, and that Wittes participated in covering up that murder.[3] According to the Complaint, Wittes "agreed to engage in a text-based interview with [Goodman] over Twitter." Compl. at 3. When Wittes ended the interview, prematurely in Goodman's view, Goodman tweeted that "Wittes refuses to answer serious questions about his role, be it witting or unwitting, in the coverup of Peter Smith's death, which I allege was murder." *Id.* Ex. A at 1; Berlin Decl. Ex. 2.

Bouzy interjected his own tweet, defending Wittes for allowing Goodman "to ask questions" about what Bouzy characterized as "unsubstantiated garbage weaved together from [Goodman's] imagination." Compl. Ex. A at 1; Berlin Decl. Ex. 2. In response to Bouzy's

---

[3] *See, e.g.*, Shane Harris & Reid J. Epstein, *GOP Activist Who Sought Hillary Clinton Emails Killed Himself*, The Wall Street Journal (July 14, 2017), https://www.wsj.com/articles/gop-activist-who-sought-clinton-emails-killed-self-1500002994 ("Peter W. Smith, a Republican political activist and financier from Chicago who mounted an effort to obtain former Secretary of State Hillary Clinton's emails from Russian hackers, died on May 14 after asphyxiating himself in a hotel room in Rochester, Minn., according to local authorities."). The Court may consider this news report on a motion to dismiss because it is offered not for the truth of its contents but to demonstrate a background fact, namely, a pre-existing public controversy. *See Adelson v. Harris*, 973 F. Supp. 2d 467, 483-84 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

message, Goodman "search[ed] the internet for Bouzy's phone number" and placed a "lengthy

phone call" to Bouzy. Compl. at 3. Goodman later published a recording of that call.[4]

During the call, Goodman characterized Bouzy's tweet as "insulting" and "bullying," and

Bouzy responded that Goodman's accusations against Wittes were neither "verified" nor

"credible." Berlin Decl. Ex. 3 at 4:11-22. Bouzy then posed the following hypothetical: "Let's

say I find someone who alleges that you raped them, or, you know, some other piece of evidence

that seems credible to me, and I put that online. Then let's say it's not true, and let's say I retract

it." *Id.* at 8:12 – 9:1 (cross-talk omitted). Remarkably, to Bouzy's surprise, Goodman responded

by *admitting* that there already *were* such allegations against him, volunteering that, although he

had not raped anyone, "You will find a litany of social engineering liars who have been pursuing

me for years with false claims along the lines of what you're suggesting," *id.* at 9:17-21, and that

"[a]nyone can put out an allegation that someone has raped someone," *id.* at 11:8-9. Goodman

threatened that, "if you start publishing shit about me . . . we're going to get into a lawsuit," *id.* at

11:17-19, further asserting, "I will sue you for libel and slander," *id.* at 9:2-3.

Goodman subsequently sent Bouzy a direct message (the "DM") stating, "This is an

official demand that you cease and desist from making false public allegations implying that

Jason Goodman has been involved in the crime of rape." Compl. Ex. A at 1; Berlin Decl. Ex. 1.

In the DM, Goodman stated that he "has never been accused of rape by any putative *victim*," but,

as he had in his phone call to Bouzy, acknowledged that there were in fact such "false allegations

---

[4] Goodman titled this recording "Is Botsentinel CEO Christopher Bouzy A Malicious Internet Super Troll Protecting Ben Wittes?" and, as of this filing, it remains available online at https://odysee.com/@Crowdsourcethetruth:d/BOUZYBOTSENTINEL:a. The Court may properly consider the recording in reviewing this Motion because it is integral to and incorporated by reference into the Complaint. *See* note 2 *supra*; Compl. ¶ 13. For the Court's convenience, a transcript of the first ten minutes of the hour-long call, which contains the portion of dialogue relevant here, is also attached as Exhibit 3 to the Berlin Declaration.

made on the internet by a *third party*," while contending that this third party had "no actual knowledge" or "supportive evidence to substantiate the alleged accusations." *Id.* (emphasis added). After receiving the DM, Bouzy published a screenshot of it on Twitter, together with the Challenged Tweet observing that "Jason doesn't want me tweeting that he threatened me not to tweet about his rape allegations." Compl. ¶ 12 & Ex. A at 1; Berlin Decl. Ex. 1.

### C. This Lawsuit

Acting *pro se*, Goodman filed his Complaint in this matter on December 19, 2021. Goodman alleges a single cause of action for defamation arising solely out of the Challenged Tweet, and seeks unspecific compensatory and punitive damages. Compl. ¶¶ 27-35; *id.* at 7 (prayer for relief).

Goodman claims to have served process on Bouzy and Bot Sentinel in January 2022, though in May 2022, Magistrate Judge Cott observed that "it is not clear whether defendants Bouzy and Bot Sentinel have been properly served," ECF No. 30. On November 10, 2022, however, Magistrate Judge Cott issued a Report and Recommendation principally addressing co-defendant Sweigert's motion to dismiss for lack of personal jurisdiction, but also concluding that Goodman had effected service on Bouzy and Bot Sentinel. ECF No. 59 at 12-15.[5]

Movants subsequently notified the Court on November 23, 2022 that they "intend[ed] to[] follow the procedures set out in Rule III.B. of [this Court's] Individual Practices in connection with moving to dismiss Plaintiff's claims." ECF No. 68. Movants served their pre-motion letter on December 5, 2022. The next day, Goodman responded by threatening to seek sanctions

---

[5] The confusion over whether Goodman properly effected service may stem in part from the fact that Bouzy is a New Jersey resident, *see* Compl. ¶ 6, and New Jersey's "rules do not authorize 'nail and mail' process" of the type Goodman apparently used here, *Barrett ex rel. Cumberland Ins. Grp. v. Steele*, No. A-3607-07T2, 2008 WL 5156594, at *2 (N.J. Super. Ct. App. Div. Dec. 10, 2008). In the interest of expediently disposing of this lawsuit, however, Bouzy and Bot Sentinel focus herein on the lawsuit's substantive lack of merit.

against undersigned counsel, *see* ECF No. 74, as he has done multiple times in other litigation,[6] thereby making it clear that a formal motion to dismiss would be required. Separately, the Court directed Movants to respond to Goodman's Complaint on or before December 12, 2022. *See* ECF No. 75. Pursuant to Rule 12 and that Order, they now move to dismiss Goodman's Complaint against them for failure to state a claim.

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 97 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts review a complaint's factual allegations to determine whether they plausibly support plaintiff's legal claim for relief. *Id.* at 98. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and "[t]he Court need not credit . . . 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action,'" *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 678).

In a defamation case, the task of evaluating the legal sufficiency of a complaint at this preliminary stage is also one of constitutional importance:

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

---

[6] *See, e.g.*, *Steele v. Goodman*, No. 3:21CV573, 2022 WL 4274120, at *5 (E.D. Va. Sept. 15, 2022) (denying Goodman's motion for sanctions under Rule 11); *Goodman v. Sharp*, No. 21-CV-10627 (VEC), 2022 WL 2702609, at *9 (S.D.N.Y. July 12, 2022) (same); *see also Sweigert v. Goodman*, No. 118CV08653VECSDA, 2021 WL 4295262, at *1 (S.D.N.Y. Sept. 21, 2021) (denying Goodman's motion to hold Plaintiff in contempt).

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017) (Kavanaugh, J.). For

that same reason, New York state and federal courts have emphasized the "particular value in

resolving defamation claims at the pleading stage, so as not to protract litigation through

discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v.*

*Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (internal marks omitted) (quoting

*Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (N.Y. 1995)); *see also Adelson*, 973

F. Supp. 2d at 481 ("Because a defamation suit may be as chilling to the exercise of First

Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible,

resolve defamation actions at the pleading stage.") (internal marks omitted). Furthermore, pre-

discovery adjudication of defamation claims is particularly effective because "unlike in most

litigation, in a libel suit the central event – the communication about which suit has been brought

– is ordinarily before the judge at the pleading stage. . . . He or she may assess it upon a motion

to dismiss, firsthand and in context." 2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed.

2017).[7]

## I.      BOT SENTINEL SHOULD BE DISMISSED BECAUSE IT IS NOT ALLEGED TO HAVE PUBLISHED ANYTHING.

"Under New York law, a defamation plaintiff must establish (1) a written defamatory

statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of

the defamatory statement, and (5) special damages or per se actionability." *BYD Co. v. VICE*

---

[7] Because Movants are based in New Jersey, and engaged in no conduct related to this action in New York, there is no basis for personal jurisdiction in this Court, as Magistrate Judge Cott recently concluded in connection with Defendant Sweigert, *see* ECF No. 59 at 7-10. In the hopes of disposing of Goodman's claim as expeditiously as possible, Movants submit to this Court's jurisdiction solely for the purposes of this action and seek dismissal based on Goodman's failure to state a viable claim.

*Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021) (citation and internal marks omitted), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022), *cert. denied*, 143 S. Ct. 103 (2022). Here, any claim against Bot Sentinel fails as a matter of law because Goodman pleads no facts that would even plausibly allege that Bot Sentinel published the Challenged Tweet, which he instead alleges was published by Bouzy. *See* Compl. ¶ 12. Indeed, none of the Complaint's paragraphs describing the alleged defamation even reference Bot Sentinel.

Goodman's Complaint appears to imply that, because Bot Sentinel and Bouzy are connected and share common goals with respect to speech on the Internet, Bot Sentinel may be held liable for Bouzy's publication. But in the context of the defamation tort, "publication is a term of art." *Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001). Specifically, Goodman must show that the Bot Sentinel was the actual author or publisher of the Challenged Tweet. *See, e.g.*, *Tavoulareas v. Piro*, 759 F.2d 90, 136 (D.C. Cir. 1985) (even individual who "participated in the investigation" by a newspaper but "played no role in the actual preparation of the story" or its "ultimate publication" was not a "publisher");[8] *Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 714 (D. Md. 2021) (recognizing that a "plaintiff 'must . . . establish that the defendant made the allegedly defamatory statement in issue'" and dismissing defamation claims against CNN arising out of statements that he did not plausibly allege it published) (quoting Robert D. Sack, *Sack on Defamation* § 2:5.1 (5th ed. 2017)). Because Goodman does not and could not state a claim

---

[8] The *Tavoulareas* case has a long and complex procedural history, which we have omitted here. We note for the avoidance of doubt that, although the *en banc* D.C. Circuit subsequently vacated most of the cited panel decision, the cited portion was not vacated. *See* 763 F.2d 1472, 1481 (D.C. Cir. 1985) (*per curiam*) (*en banc* order stating "that this Court's Judgment and opinion of April 9, 1985, are vacated except to the extent they affirmed the judgment of the District Court notwithstanding the verdict in favor of appellee Sandy Golden," who was held to not have "published" the article at issue) (text of order available only on Westlaw).

against Bot Sentinel for a tweet posted by Bouzy, the Complaint should be dismissed with prejudice as to Bot Sentinel.[9]

## II.  THE COMPLAINT SHOULD BE DISMISSED BECAUSE GOODMAN FAILED TO PLAUSIBLY ALLEGE THAT THE CHALLENGED TWEET IS FALSE.

While at common law "truth was a defense," both the U.S. Supreme Court and the New York courts now require that a defamation plaintiff plead and prove the falsity of the challenged statements.  *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) ("the common law's rule on falsity – that the defendant must bear the burden of proving truth – must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages" with respect to speech addressing issues of public concern); *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1275 (N.Y. 1991) ("a libel plaintiff has the burden of showing the falsity" of the challenged statement).  Simply put, Goodman's defamation claim fails at the outset of this litigation because "[t]he *sine qua non* of recovery for defamation . . . is the existence of falsehood," *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974), and Goodman has not plausibly alleged that the Challenged Tweet is false.

As the Second Circuit has explained, because "falsity – or lack of substantial truth – is an element of a New York defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court."  *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).  Thus, "a plaintiff in New York courts generally must identify *how* the defendant's statement was false to survive a motion to dismiss."  *Id.* (emphasis added); *see also Wright v. Dennis*, No. 0604318/2006, 2008

---

[9] As Bot Sentinel should be dismissed because it is not even alleged to have published the allegedly defamatory content, we have framed the remaining arguments on behalf of Bouzy, who posted the Challenged Tweet.  But those arguments would apply with equal force to Bot Sentinel.

WL 475914 (N.Y. Sup. Ct. Feb. 11, 2008) (dismissing defamation claim because plaintiff "fail[ed] to plead, and would be unable to prove, the falsity of the defamatory statement – an essential element of a defamation claim"). Demonstrating literal falsity alone will not suffice: a defamation plaintiff must demonstrate that the challenged publication is *materially* false, which is to say the challenged publication is not *substantially* true. *Id.* at 242 (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)).

Goodman cannot satisfy this burden. According to the Complaint, it was false for Bouzy to state that Goodman "doesn't want me tweeting that he threatened me not to tweet about his rape allegations." Compl. ¶ 12, 21-22. However, the Complaint itself alleges that, in a May 2018 video, Defendant Sweigert "made the false allegation that [Goodman] had raped then underage Somali fashion model Halima Aden." *Id.* ¶ 14. Goodman's own Complaint thus admits that he *has* been accused of rape, though to be sure he denies the accusation. *Id.* ¶ 16. Goodman also clearly threatened Bouzy not to tweet about that rape allegation. *See* Berlin Decl. Ex. 3 at 11:16-19 ("[I]f you start publishing shit about me, we're gonna find out how serious your evidence is because we're gonna get into a lawsuit."). And by sending the DM, which was incorporated into the Challenged Tweet, Goodman conveyed in no uncertain terms that he did not want Bouzy to mention that Goodman had threatened him not to post about that rape allegation. *See* Compl. Ex. A at 1; Berlin Decl. Ex. 1. In sum, the Challenged Tweet offered a substantially accurate account of Bouzy's interactions with Goodman: (a) that he admitted there were rape allegations against him, (b) that Goodman threatened Bouzy with a libel suit if he published them, and (c) that Goodman did not want Bouzy to tweet that Goodman had threatened Bouzy not to tweet about his rape allegations. Given that these facts are either affirmatively alleged in Goodman's Complaint or found in records which it attaches and/or references, it fails

"to plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports*, 864 F.3d at 247; *see also Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092, 1094 (4th Cir. 1993) (affirming Rule 12(b)(6) dismissal where "[e]verything in these statements is true" based on plaintiff's own contentions); *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155-58 (D.D.C. 2018) (dismissing claim because statement was not "plausibly false" given factual allegations of complaint and document hyperlinked in challenged article).

Because Goodman has not carried his burden of pleading a falsehood in the Challenged Tweet, the Court should dismiss his Complaint. Moreover, because no amount of re-pleading can transform a true statement into a false one, amendment would be futile and dismissal should be entered with prejudice. *See, e.g.*, *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) ("leave to amend a complaint may be denied when amendment would be futile").

## III. THE COMPLAINT SHOULD BE DISMISSED BECAUSE ANY IMPLICATION IS NOT REASONABLY SUPPORTED BY THE CHALLENGED TWEET AND WOULD, IN ANY EVENT, CONSTITUTE A PROTECTED OPINION.

It is not entirely clear from Goodman's Complaint whether he alleges only that the Challenged Tweet is false on its face (an allegation that is insufficient for the reasons discussed in Part II *supra*) or that the text of the Challenged Tweet also somehow conveys an unstated false implication about him. Yet even if Goodman claims the latter, the Court must evaluate whether that implication is actually conveyed by the Challenged Tweet as a matter of law. And, in any event, even if such an implication were actually conveyed, it could not give rise to a defamation claim because it would be a protected opinion, particularly given its context.

### A. As A Matter of Law, The Challenged Tweet Cannot Support the Implication Goodman Ascribes To It.

Fairly viewed, the only even arguably reasonable implication to be drawn from the Challenged Tweet is that Goodman was foolish to volunteer to a stranger that he had been

accused of rape while expecting the stranger not to say anything about that disclosure. Indeed, in another tweet (not placed at issue, but attached to the Complaint), Bouzy says as much: "I had no clue someone had previously accused him of rape, and it's a bizarre thing to tell a stranger in a phone call. It's also odd to tell someone they would be part of ongoing litigation if they tweeted about it. Why bring it up?" Compl. Ex. A at 1; *see also id.* ("And it's definitely not normal to warn someone not to talk about your rape allegations"). As explained below, that commentary is a protected expression of Bouzy's conclusions about the highly unusual phone call and DM he received from Goodman.

Goodman, however, appears to argue that the Challenged Tweet did more: by *stating* (truthfully) he had been *accused* of rape, it falsely *implied* he is *guilty* of rape. *See, e.g.*, Compl. ¶ 21 (alleging that tweet "accuses Plaintiff of a heinous crime"). To the extent Goodman is trying to advance such a libel-by-implication claim here, it fails as well.

"[B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true." *Chapin*, 993 F.2d at 1092-93. Under New York law specifically, "[t]o survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both [1] to impart a defamatory inference and [2] to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014). That threshold question is properly decided by the Court as a matter of law. *Id.*

Goodman cannot satisfy either prong of this test. On the first part, the concededly true statement that Goodman has been accused of rape does not reasonably convey the allegedly false

implication that Goodman is guilty of rape. *See, e.g.*, *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (rejecting plaintiff's argument that a challenged article accurately reporting he had been accused of rape "could be read to imply that [he] was actually guilty of the alleged rape" where "the article in question cannot be read to imply that [defendant] espoused the validity of the rape allegation"), *aff'd on reh'g*, 788 F.2d 1300 (8th Cir. 1986).

On the second prong, nothing about the Challenged Tweet affirmatively suggests that Bouzy intended or endorsed that implication. To the contrary, Bouzy expressly stated that his only source of information about the accusation is Goodman himself, *see* Compl. Ex. A at 1 ("Until creepy Jason Goodman called me, I had no clue someone previously accused him of rape"), and Bouzy republished Goodman's own emphatic denial from the DM, *see id.* ("Jason Goodman has never been involved in any way in rape."). As a result, the Challenged Tweet is not capable of conveying such a defamatory implication as a matter of law.

### B.     Any Implication Would In Any Event Be a Protected Expression of Opinion.

Even if the Challenged Tweet somehow conveyed either of the above-described implications, they nevertheless would be absolutely protected expressions of opinion. Whether a statement is an opinion is a threshold issue of law to be decided by the Court. *See, e.g.*, *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000); *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1977) (affirming dismissal on opinion grounds).

**First**, portraying someone as foolish for revealing unflattering information about himself is a characterization or judgment that reflects a classic statement of opinion. *See, e.g.*, *Jacobus v. Trump*, 51 N.Y.S.3d 330, 341 (N.Y. Sup. Ct. 2017) (statements published on Twitter calling plaintiff "a real dummy" and "really dumb" are expressions of opinion), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017). This conclusion is reinforced here by the context, which is properly considered by the Court in making this threshold legal determination. *Levin*, 119 F.3d at 197 (courts

14

examine the statement itself as well as the "immediate context and broader social context of the statement"). Bouzy's post was communicated in breezy language, rather than the typical prose of, say, a news report, and it conveyed and commented on both Goodman's denials and his demands. Compl. Ex. A at 1. In addition, the post appeared on Twitter, a forum well known to users for expressions of opinion that are often filled with far stronger rhetoric and hyperbolic assertions than the text at issue here. *See, e.g.*, *Ganske*, 480 F. Supp. 3d at 545 ("If the Internet is akin to the Wild West, as many have suggested, Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire."); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dep't 2011) (informal communications like "Internet communications, as distinct from that of print media such a newspapers and magazines," are more likely to contain opinions because of their "freewheeling, anything-goes writing style") (citation omitted). In such circumstances, any implication that Goodman behaved foolishly is a non-actionable statement of opinion that cannot support a claim for defamation.

**Second**, any alleged implication that Goodman actually committed the crime of rape (an implication that, as explained above, the Challenged Tweet did not reasonably convey) would in this context be a protected expression of opinion based on disclosed facts – namely, what Goodman said to Bouzy, and how he conducted himself. Under both the First Amendment and New York law, when the factual basis for a conclusion is apparent to readers of a challenged statement, that conclusion is itself protected as an opinion based on disclosed facts. *See Levin*, 119 F.3d at 197 ("if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"); *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993) (same). As Judge Oetken summarized this principle: "If the Constitution protects an author's right to draw an explicit conclusion from fully disclosed

facts, then an unstated inference that may arise in a reader's mind after reading such facts is also protected as an implicit expression of the author's opinion." *Biro*, 883 F. Supp. 2d at 468.

This protection applies even where the conclusion might otherwise sound like a statement of fact, including an allegation of criminal conduct. *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 128-29 (2d Cir. 2014) (comments about 2008 financial crisis in *The Big Short*, including statements that people like plaintiff were either "crooks or morons," were deliberately "getting lots of unqualified borrowers to . . . buy a house they couldn't afford," and were creating financial instruments out of "whole cloth," were protected expressions of opinion); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 299-302 (4th Cir. 2008) (statements that company "mercenaries" and "hired killers," who "want to kill for the sake of killing," "torture people," and "never have to come under the long arm of the law" were protected opinions); *Lauderback v. ABC*, 741 F.2d 193, 197-98 (8th Cir. 1984) (broadcast suggesting that plaintiff was a "crook" was protected opinion based on disclosed facts); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (conclusion that plaintiff "engaged in 'extortion, manipulation, fraud, and deceit" was protected opinion); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (statement that plaintiff was "2-bit thief and counterfeiter" based on news articles was protected opinion).

Here, the Challenged Tweet discloses to readers the bases for the implication proffered by Goodman, including details of the prior interactions between Bouzy and Goodman as well as a screen shot of the DM that Goodman sent to Bouzy. *See* Compl. Ex. A at 1; Berlin Decl. Exs. 1 & 2. It is also apparent from the Challenged Tweet that Bouzy did not know Goodman or have any unstated information about him or the rape allegation; instead, it is clear on the face of the tweet that Bouzy was basing his statements on the telephone call and DM, and nothing else. Any

"unstated inference that may arise in a reader's mind after reading" the Challenged Tweet is therefore "also protected as an implicit expression of [Bouzy's] opinion" and cannot give rise to a viable defamation claim. *Biro*, 883 F. Supp. 2d at 468.

As the foregoing discussion illustrates, the First Amendment and New York law impose substantial limitations on claims based on allegedly false implications supposedly derived from true facts and claims based on expressions of opinions about facts shared with a reader. As a result, as a matter of law, the Challenged Tweet is not capable of conveying the defamatory implication that Goodman is in fact guilty of rape and, in any event, that implication – as well as the implication that Goodman was foolish in volunteering that he had been accused of rape – would be fully protected under New York law and the First Amendment as expressions of pure opinion or opinion based on disclosed facts.

## IV. THE COMPLAINT SHOULD BE DISMISSED BECAUSE GOODMAN FAILS TO ALLEGE FACTS THAT, IF PROVEN, WOULD CONSTITUTE ACTUAL MALICE.

Even assuming *arguendo* that the Challenged Tweet somehow stated or implied a false statement of fact, the Complaint should be dismissed for the separate and independent reason that Goodman failed to allege facts that, if proven, would constitute clear and convincing evidence that Bouzy published his tweet with "actual malice" fault. Actual malice is a term of art meaning that a defendant published a challenged statement either knowing it was false or with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The standard adopted in *Iqbal* and *Twombly* applies to the pleading of "actual malice" fault as an essential element of a defamation claim. *Biro*, 807 F.3d at 544-45. Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP*

*Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) (collecting cases).[10]  As a result, "[a]ctual malice is a high bar" even at the motion to dismiss stage.  *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185, 188 (S.D.N.Y. 2020) (dismissing defamation claim where "the Court cannot find a plausible inference that actual malice exists").  Goodman has not cleared, and cannot clear, this high bar.

### A. Goodman Is Required To Prove Actual Malice.

Goodman himself embraces the actual malice standard, expressly pleading, as his only allegation of fault, that Bouzy "knew [his] statements to be false."  Compl. ¶¶ 30-31.  But even had Goodman not done so, he would be required to plead (and ultimately prove) actual malice, both because he is a public figure under the First Amendment and because New York law separately imposes that burden on him because the speech at issue involves a matter of public concern, as that term is used in the law.

**First**, under the First Amendment, public figures are required to show actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974).  Here, Goodman affirmatively pleads facts that render him a limited purpose public figure under the Second Circuit's test, which asks whether the plaintiff has "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected

---

[10] *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012); *Biro*, 807 F.3d at 544-45; *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 360 (3d Cir. 2020); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020) (defamation plaintiff failed to make plausible allegation of actual malice necessary to overcome state-law qualified privilege); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Yeager v. Nat'l Pub. Radio*, 773 F. App'x 1030, 1031-32 (10th Cir. 2019); *Turner v. Wells*, 879 F.3d 1254 (11th Cir. 2018); *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 239-40 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021).

himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Biro*, 963 F. Supp. 2d at 270 (concluding that libel plaintiff is limited purpose public figure). In this action, Goodman alleges that he is journalist who operates *Crowdsource the Truth*, Compl. ¶ 5, and that he actively participated in pre-existing public controversies with both Wittes (over the death of Peter Smith) and Sweigert (over whether Goodman raped an internationally famous model when she was younger), *id.* ¶¶ 14-16.

Indeed, courts in New York and throughout the country routinely hold that journalists and commentators are public figures in relation to the topics they cover, because they play a prominent role in the debate over such controversies and because discussion and criticism of their work is relevant to the credibility of their reporting. *See, e.g.*, *Farber v. Jefferys*, 103 A.D.3d 514, 515 (1st Dep't 2013) (journalist was public figure because "through her publication of countless articles, she voluntarily injected herself into the controversial debate on whether HIV causes AIDS with a view toward influencing the debate").[11] In that regard, Goodman expressly pleads that, as a "documentary filmmaker and journalist," his "reputation for truthfulness is inherently valuable." Compl. ¶ 17. Accordingly, this Court should conclude

---

[11] *See also, e.g.*, *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, No. 04-01161(HHK), 2006 WL 2844190, at *2 n.4 (D.D.C. Sept. 29, 2006) (United Press International reporter covering the "teen behavior modification industry" was limited-purpose public figure regarding statements criticizing his reporting); *Braden v. News World Commc'ns, Inc.*, No. CA-10689'89, 1991 WL 161497, at *8-9 (D.C. Super. Ct. Mar. 1, 1991) (former host of CNN's *Crossfire* was a public figure); *Ellis v. Time, Inc.*, No. Civ.A.94-1755(NHJ), 1997 WL 863267, at *6 (D.D.C. Nov. 18, 1997) (photojournalist was limited-purpose public figure in connection with his public criticism of another news organization's photography practices); *Jacobson v. CBS Broad. Inc.*, 19 N.E.3d 1165, 1176-78 (Ill. Ct. App. 2014) (local television reporter was public figure in context of report calling into question her relationship with source); *San Antonio Express-News v. Dracos*, 922 S.W.2d 242, 252-53 (Tex. App. 1996) (observing that "journalists and television reporters . . . as well as other individuals who regularly comment on public affairs, have often been considered public figures" and collecting cases).

based on Goodman's own allegations that he is a public figure.  *See, e.g.*, *Celle*, 209 F.3d at 176

(a defamation plaintiff's status as a public figure "is a question of law for the court"); *Biro v.

Condé Nast*, 622 F. App'x 67, 69 (2d Cir. 2015) (affirming district court's dismissal, including

holding that plaintiff was limited-purpose public figure); *Turner*, 879 F.3d at 1271 (noting that

court had "little difficulty" concluding that plaintiff was public figure at motion-to-dismiss

stage); *Yeager*, 773 F. App'x at 1031 (affirming district court order concluding plaintiff was a

public figure and granting motion to dismiss).

     **Second**, as a matter of New York law, any defamation plaintiff suing over speech made

"in a place open to the public or a public forum in connection with an issue of public interest"

must prove, as an element of the cause of action, that the defendant published the allegedly

defamatory statement with "actual malice."  N.Y. Civ. Rights Law § 76-a; *Palin v. N.Y. Times

Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (New York law "requires public figures . . . to

prove actual malice by clear and convincing evidence").[12]  An issue of public interest

"encompass[es] all but purely private matters."  *Coleman*, 523 F. Supp. 3d at 259 (email and

letter describing allegedly abusive romantic relationship and circulated among industry contacts

was sent "in connection with an issue of public interest"); *Ctr. for Med. Progress v. Planned

Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021) (same, for statements about

allegations against plaintiff on news websites "open to the public"), *aff'd sub nom. Daleiden v.

Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022);

*Goldman v. Reddington*, No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462, at *4 (E.D.N.Y.

---

[12] Although courts are grappling with whether to apply other provisions of New York's Anti-SLAPP law in federal court, "a federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision."  *Palin*, 510 F. Supp. 3d at 26; *Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (Section 76-a "is 'manifestly substantive,' governing the merits of libel claims and increasing defendants' speech protections").

Sept. 9, 2021) ("Facebook and LinkedIn posts accusing [plaintiff] of sexual assault" related to "more than 'a purely private matter'"); *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022) (collecting cases and concluding that "defendant's negative website reviews of plaintiffs' services constitute a matter of 'public interest' as set forth in" Section 76-a).

Here, Bouzy published the Challenged Tweet in a forum open to the public, namely on Twitter, in connection with several issues of public interest. These include (a) Goodman's allegations against Wittes, a noted Brookings scholar; (b) the allegations that Goodman raped an internationally famous model; (c) how Goodman's bizarre choice to volunteer those accusations reflects on the credibility of his allegations against Wittes and the allegations against him; and (d) Goodman's threat to sue Bouzy for engaging in public commentary. Accordingly, under New York law, Goodman is required to plausibly allege that Bouzy published the Challenged Tweet with actual malice.[13]

### B. Goodman Fails To Plausibly Allege That Bouzy Published The Challenged Tweet With Actual Malice.

To survive a motion to dismiss under Rule 12(b)(6), Goodman must plead sufficient facts that, if proven, would constitute clear and convincing evidence that Bouzy published the Challenged Tweet with knowledge that it was false or despite a high degree of awareness that it was probably false. *Biro*, 807 F.3d at 544-45. A defamation complaint "us[ing] actual-malice buzzwords" that are not "backed by well-pled facts" does not satisfy that pleading standard. *Schatz*, 669 F.3d at 56.

---

[13] Moreover, even if Goodman were deemed a private figure and the Challenged Tweet were found not to involve a matter of public concern, such that the actual malice standard did not apply, Goodman would still need to plead facts that, if proven, would demonstrate that the Challenged Tweet was published with "gross irresponsibility." *See, e.g.*, *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196 (1975); *Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 778 (N.Y. 1986). Here, Goodman makes no effort to plead, much less satisfy, this standard.

Here, Goodman fails to allege *any* such facts concerning actual malice. Instead, he repeats the conclusory assertion that "[a]t the time the Defendants made these statements, the Defendants knew the statements to be false and defamatory." Compl. ¶¶ 29-31. Such a bare assertion that "'defendants' statements were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient. This kind of conclusory allegation – mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Biro*, 963 F. Supp. 2d at 280 (quoting *Mayfield*, 674 F.3d at 377-78); *see also Iqbal*, 556 U.S. at 678-79 (the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

The only other allegation that Goodman advances with respect to Movants' state-of-mind is his assertion that they "made these false and defamatory statements solely out of malice, to malign and injure [him]." Compl. ¶ 32. But "the actual malice standard is *not* satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (emphasis added); *accord Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382-83 (N.Y. 1981) ("Regard must be had too for the fact that 'malice,' a term which, as used in its First Amendment constitutional sense, is not to be equated with a base or unworthy motive"). Such an allegation of ill will therefore does not suffice to plausibly allege publication with actual malice fault. *See Brimelow v. N.Y. Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (affirming dismissal of defamation complaint for, *inter alia*, failing to plausibly allege actual malice, where plaintiff "alleged ill will toward [him] harbored" by the defendant but "the Complaint provides no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements" regarding plaintiff), *cert. denied*, 142 S. Ct. 1210 (2022).

Goodman's failure to plausibly allege that Bouzy published the Challenged Tweet with actual malice provides yet another basis for dismissal of his Complaint at the pleading stage. And once again, because amendment would be futile, given the absence of any basis on which to plead that Goodman had any subjective awareness of falsity, dismissal should be entered with prejudice.[14]

---

[14] Although the only cause of action that Goodman actually pleads is defamation, Compl. ¶¶ 27-35, he elsewhere references in passing claims for "libel, tortious interference, and conspiracy to defame." *Id.* ¶ 1; *see also id.* at 1 (captioned as "Complaint for Conspiracy to Defame"). As a matter of law, such claims, even had they been asserted and supported by the requisite factual allegations, would be duplicative of Goodman's defamation claim and would fail for the same reasons. *See, e.g.*, *Goldman v. Barrett*, 733 F. App'x 568, 570-71 (2d Cir. 2018) ("New York courts treat harm stemming from injury to reputation as sounding in defamation, and do not recognize separate torts as additional causes of action."); *Huizenga v. NYP Holdings, Inc.*, No. 17-CV-2113-LTS-GWG, 2019 WL 1620743, at *3 (S.D.N.Y. Apr. 16, 2019) ("A claim for intentional interference with a prospective economic relationship where the injury flows entirely from harm to a plaintiff's business reputation is duplicative of a defamation claim, and is disallowed under New York law"); *Carlson v. Am. Int'l Grp., Inc.*, 30 N.Y.3d 288, 310 (2017) (New York does not recognize a "freestanding claim for conspiracy").

## **CONCLUSION**

For the foregoing reasons, Bouzy and Bot Sentinel respectfully request that this Court

enter an order dismissing this action against them in its entirety with prejudice.[15]

Respectfully submitted,

BALLARD SPAHR LLP

By:      */s/ Seth D. Berlin*
         Seth D. Berlin (SB7978)
         Maxwell S. Mishkin (*pro hac vice* forthcoming)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy*
*and Bot Sentinel Inc.*

---

[15] For the reasons stated herein, Movants respectfully submit that this case is entirely without merit, and part of a long-standing pattern of vexatious litigation filed by Goodman against his perceived adversaries.  Accordingly, although Movants hope that additional litigation would not be necessary, they reserve their right to seek attorneys' fees and costs following adjudication of this motion.

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 12th day of December 2022, I caused true and correct copies of the foregoing Memorandum of Law in Support of Motion to Dismiss of Defendants Christopher Bouzy and Bot Sentinel Inc. to be served by email and U.S. Mail First Class on the following:

Mr. Jason Goodman
252 7th Ave., Apt. 6S
New York, NY 10001
truth@crowdsourcethetruth.org

*Pro Se Plaintiff*

Mr. George Webb Sweigert
209 St. Simons Cove
Peachtree City, GA 30269
Georg.webb@gmail.com

*Pro Se Defendant*


/s/ *Seth D. Berlin*
Seth D. Berlin (SB7978)