IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN | Case No.: 1:21-cv-10878-AT-JLC |
| Plaintiff, | |
| vs. | **CERTIFICATE OF SERVICE** |
| CHRISTOPHER ELLIS BOUZY, BOT SENTINEL INC., | |
| Defendants | |

It is hereby certified that plaintiff, Jason Goodman, served defendants' counsel with a copy of the Response to Memorandum in Opposition to Rule 11 Sanctions via email.

"Berlin, Seth D." <BerlinS@ballardspahr.com>

"Mishkin, Maxwell S." <MishkinM@ballardspahr.com>

Signed this 8th day of January 2023

Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

CERTIFICATE OF SERVICE - 1

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN | Case No.: 1:21-cv-10878-AT-JLC |
| Plaintiff, | |
| vs. | **RESPONSE TO MEMORANDUM IN OPPOSITION TO RULE 11 SANCTIONS** |
| CHRISTOPHER ELLIS BOUZY, BOT SENTINEL INC., | |
| Defendants | |

Plaintiff Jason Goodman ("Goodman") by and for himself pro se respectfully

submits this response to Defendants' memo in Opposition to the Motion for Sanctions.

**PRELIMINARY STATEMENT**

Defendants' opposition motion seeks to cast Goodman in a false light as an

experienced litigant on par with Bar members who, according to Defendants, engages in

serial vexatious litigation and regularly abuses Rule 11.  The irony here cannot be overstated,

and the facts of these matters will prove the falsity of Defendants' deceitful claims.

Since Goodman's initial contact with George Webb Sweigert ("Webb") and

David George Sweigert ("Sweigert" hereinafter collectively "Sweigerts" or "Sweigert

Brothers") in 2017, he has become involved in no less than seven lawsuits.  Each was either

brought by or involves one or both of the Sweigerts.  Goodman has been subjected to abusive

lawsuits for the past six years but is not a skilled or experienced litigant contrary to what the

sheer volume of cases might suggest.  Decisions that seem illogical to lawyers are made

because many aspects of law and court procedure remain unclear or unknown to Goodman.

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 1

Defendants attempts to cast Goodman's filings in a false light rely on deception and should themselves be subject to sanctions.  The Rule 11 motion in Goodman v Sharp came about when counsel for Defendants applied Goodman's signature to a joint filing without his knowledge or consent.  The motion was denied by Judge Valerie Caproni, but Defendants falsely state it was denied on the merits.  The well-founded motion was denied because Goodman failed to provide safe harbor notification and ignorantly filed on the docket.  Goodman learned from this mistake and is no longer ignorant to the need for safe harbor notification.  (See Case 1:21-cv-10627-VEC Document 72 page 18)

The more recent motion filed by Goodman in Steele v Goodman (*See* Case 3:21-cv-00573-JAG Document 39) has not yet been ruled upon by Judge Gibney.  The conclusion that the motions were baseless is made by Defendants in contradiction to facts.  It should be noted that Sweigert attempted to intervene in both cases and was denied for the same reasons cited in this matter.  Defendants shamelessly cite Sweigert v Goodman in their footnotes, another case coincidentally presided over by Judge Caproni.  Goodman asks this Court to take notice of a filing made in the Second Circuit citing newly discovered evidence of fraud and a pending Rule 60(b)(3) motion in the District Court **(EXHIBIT A).**  A defect in the filing was cured and filed January 6, 2023.  It is expected to be entered on January 9, 2023.  Goodman further asks the Court to take notice of Sweigert's attempts to interfere with Goodman's appeal in the Second Circuit Case 22-592. **(EXHIBIT B)**

### DEFENDANTS "PRE-LITIGATION" LETTER

Goodman did not respond to letters from non-parties claiming to represent Defendants prior to the notice of appearance on December 5, 2022, because Defendants had

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 2

previously engaged in intimidation tactics involving attorney Carlos Martinez who also claimed to represent them and sent threatening letters but never filed a notice of appearance. Goodman did not respond prior to the filing of the notice of appearance for the same likely reason that the ECF did not transmit messages to Berlin, because he had not yet filed a notice of appearance and had not been recognized as counsel for Defendants.

Even if the Court determines the letter sent on November 23, 2022 does not qualify for sanctions because it was not itself presented to the Court, Berlin's supplemental letter to the Court referencing the communication certainly does. Goodman contends that no filing aside from a notice of appearance would have been appropriate especially considering the interference of non-parties previously. No matter how inartfully pleaded Goodman's Rule 11 motion was, it should be construed as referring to papers improperly before the Court for the purpose of delaying the case and harassing Goodman into withdrawing. Defendants insist their harassing letter, inappropriately sent by a non-party that did not represent Defendants, is a "pre-litigation" letter sent pursuant to Your Honor's individual rule III.B.ii. The first sentence of that rule says such letters must be sent, "Before the time to file a responsive pleading has expired" but gives no guidance for letters sent after that time. Defendants acknowledge the rule does not apply in cases involving pro se litigants, a fact that furthered Goodman's belief the communication was not appropriate.

Goodman was unable to determine your Honor's procedure for letters sent after the time to reply had expired so he directed Defendants to file with the Court and proceed according to orders. Goodman mistakenly referred to a pending pro hac vice application for Mishkin as having been for Berlin. This error does not impact the argument

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 3

that papers presented to Goodman and the Court were improper.  It does indicate Goodman's

confusion by what he understood to be inappropriate behavior by counsel.

Because the letter was sent well after the time to respond had expired, and

because of the deceptive nature of Defendants' past behavior, Goodman believed the letter

was a trap designed to deceive him into engaging with unretained, tentative counsel outside

of normal court procedure and the context of Your Honor's rules.  Goodman does not agree

with Defendants' conclusion that the letter was proper.  The extremely poor decision to

notify the Court of the letter prior to properly appearing gave rise to this sanctions motion.

Even if the Court should rule against sanctions, this motion is most certainly

not without merit.  Pursuant to Fed. R. Civ. P. Rule 11, the letter filed on the docket by a non-

party qualifies as an "other paper" filed with the Court to harass Goodman and waste time.

This was similar to documents filed by vexatious non-party Sweigert.  Goodman continues to

allege Sweigert assisted Defendants improperly ab initio and continues to do so today.  Just

minutes after filing the Memo in Opposition, Defendants' counsel served the documents via

email to Goodman, and to non-party Webb.  Webb's motion to dismiss was granted on

December 13, 2022 (ECF No. 82) he is no longer a party to this case and should have no

interest in communications between Goodman and Defendants.  Despite this, and Goodman's

objections, Defendants continue to communicate with Webb. **(EXHIBIT C)**

Only minutes after counsel served the memo, Sweigert sent one of his near

daily harassing emails.  Goodman and more than two dozen other recipients including major

news outlets and many employees of the U.S. Department of Homeland Security were

informed, "Jason Goodman hit with $12K Rule 11 motion."  **(EXHIBIT D)**

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 4

Goodman asked Defendants' counsel to discontinue including Webb on emails pertaining to this case and stated his ongoing suspicion that Defendants continue to conspire with the Sweigerts to harass him with excessive frivolous filings and other tactics. Because the alleged pre-litigation letter does not comply with Your Honors rules and because the filer was a non-party at the time filed, just like frivolous filings and letters sent by other non-parties, the inappropriate letter was viewed by Goodman as more vexatious harassment.

## DEFENDANTS INAPPROPRIATE LETTER VIOLATED 18 U.S.C. § 1503

In United States v. Lundwall, 1 F. Supp. 2d 249 (S.D.N.Y. 1998) the Court found that § 1503 did in fact reach the willful disruption of civil litigation, stating in part: "Whoever corruptly, or by threats or force, or by any threatening *letter or communication*, [emphasis added] endeavors to influence, intimidate or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account *251 of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly, or by threats or force or by threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct or impede, the due administration of justice, shall [be guilty of a federal crime]."

## DEFENDANTS CONSPIRED WITH THE SWEIGERT BROTHERS AB INITO

At the outset of this matter, Goodman accused Defendants of conspiring with

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 5

Webb to harass and defame him.  Only four days after filing the complaint, non-party Sweigert began filing frivolous pleadings.  Although the Sweigert Brothers are two distinct legal entities, for the purposes of reviewing filings in this case, the Court should consider them interchangeably.  Goodman alleges filings attributed to Webb were actually authored by Sweigert on information and belief supported by evidence filed in the Eastern District of Michigan ("MIED") in connection with an amicus brief in Sweigert v Cable News Network (*See* Case 2:20-cv-12933-GAD-KGA ECF No. 20).  The brief alleged that ECF No. 12 in that case was a forgery and presented detailed evidence in support.  **(EXHIBIT E)**

The evidence has not been challenged but the allegations have.  Webb was so adamant in his declaration that the allegations were false, he sued Goodman, alleging the privileged claims made in the amicus brief were defamatory.  (*See* Sweigert v Goodman Case 1:22-cv-02788-LGS-BCM). The one and only element of evidence that would refute all of Goodman's allegations is the email receipt from the MIED Court's pro se filing website.  The receipt has not been presented.  These facts support Goodman's well-founded allegations.

Defendants' citation of Judge Gershwin Drain's order is another attempt to mislead this Court.  Judge Drain issued a show cause order initially admonishing Goodman for contacting court personnel in the course of his investigation into the alleged forgery. After the show cause hearing, the order was reversed.  No sanction was issued because Goodman did nothing wrong.  Judge Drain dismissed his initial order concluding, "After considering the parties' arguments at that hearing, the Court will decline to impose sanctions against Defendant at this juncture and dismisses the February 11, 2022, Order to Show Cause."  (*See* Case 2:22-cv-10002-GAD-KGA ECF No. 45)

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 6

Defendants in this case made a disingenuous presentation of an unfavorable order, brought about by vexatious Sweigert Brothers' litigation that has already been dismissed. This was another deceptive attempt to prejudice the Court's view of Goodman and paint him as an abusive litigant. Goodman has spent the last six years fighting for his legal life and his business against a sophisticated team of lawfare practitioners coordinated by the Sweigerts and now including Berlin and Mishkin.

## NO VALID REASON FOR DEFENDANTS' FAILURE TO RESPOND TIMELY

Even if the Court finds Defendants' pre-appearance letter to be proper, it is inarguable that no good faith effort was made to settle this matter. Not even so much as an offer of a silent retraction, let alone a public apology was made. Defendant Bouzy thumbed his nose at this lawsuit and the Court's inherent authority during the time Goodman had been litigating for nearly one year and prior to their intimidating untimely letter. After destroying Goodman's social media properties with their Bot Sentinel technology, Defendants paid no attention to this case for nearly a year. Only after their total lack of action and imminent default was it proposed by Defendants that Goodman simply withdraw this action and walk away with no resolution to sustained business and reputational damage. Defendants are likely to have paid no attention at all to this case if not for the regular updates from Sweigert.

## DEFENDANTS ARE ACTING ON BEHALF OF OTHER INDIVIDUALS

Defendants' do not deny that their initial contact with both Goodman and the Court was on November 23, 2022. They will fail to prove they acted "promptly" as claimed. They cannot explain the nearly two-week delay between Judge Cott's November 10, 2022 Report and Recommendation and their initial contact with Goodman. Defendants took no

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

action whatsoever until a November 22 Twitter alert from Sweigert to Benjamin Wittes ("Wittes") and Nina Jankowicz ("Jankowicz").  Wittes likely alerted Ballard Spahr.  Mishkin previously represented Eric Lichtblau ("Lichtblau") in a criminal case brought by Special Counsel John Durham ("Durham") in which Durham accused former FBI General Counsel and regular contributor to Wittes' Lawfareblog.com, James Baker ("Baker") of leaking confidential information to the press. (*See* Case 1:21-cr-00582-CRC Document 133)

Mishkin succeed in preventing Lichtblau's sensitive information from being disclosed.  Goodman alleges Wittes has taken a circuitous route to doing the same thing here, by first summoning defendant Bouzy to attack Goodman's well founded, evidence backed claims with insults and defamatory statements in December 2020, and then by attempting to expunge Goodman from the internet, eliminating his ability to report on these matters.

## DEFENDANTS REPEATEDLY ATTEMPT TO DECEIVE THIS COURT

Defendants persist in their efforts to deceive the Court by stating, "When Defendants learned of Magistrate Judge Cott's November 10, 2022 Report & Recommendation (ECF No. 59), [Defendants] promptly retained undersigned counsel to defend this case on the merits."  This is observably misleading if not completely false.  Defendants admit no action was taken with respect to retaining counsel until thirteen days after Judge Cott's report.  Ten days after the report, Goodman filed a motion for Default Judgment (ECF No. 60), but Defendants did not act.  Goodman's inexperience in court procedure resulted in multiple delays over two days while he attempted to cure a defective filing seeking a Certificate of Default.  Sweigert promoted these failures on Twitter and with his harassing email blasts, **(EXHIBIT F)** simultaneously antagonizing Goodman and keeping

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 8

his association in fact enterprise cum legal team informed of developments in the case.

Defendants acted only after the filing of ECF No. 65 on November 22, 2022, which cured the defect and prompted Sweigert's Tweet (See ECF No. 91 page 1).  Goodman alleges on information and belief, Wittes would have reacted to this Tweet and is the most likely person to have retained Ballard Spahr on Defendants' behalf.  The Court may recall it was a Twitter conversation with Wittes during which Goodman asked questions about the suspicious death of Peter W. Smith that prompted the initial contact with Bouzy.  It is difficult to imagine a large Washington D.C. firm like Ballard Spahr taking on a client who had recently endured a contentious bankruptcy and is still pursued by creditors, without a substantial upfront retainer.  Defendants now seek over $12,000 for their work in responding to this motion.  Defendants should be compelled to present evidence that they have paid for their own defense and that no non-party individuals or organizations have made any substantial financial contributions.  Goodman alleges Wittes is the most likely person to have instructed Bouzy to harass him and silence unfavorable questions.  Even now, Defendants' behavior shows such a strong desire to suppress questions, they would break the law and deceive the Court to prevent Goodman from asking and answering them.

**CONTEMPT OF COURT**

Even if the Court finds Goodman's motion was somehow improper or otherwise insufficient, Goodman asks the Court in the alternate to construe his motion as one for contempt.  Defendants' malicious acts and deliberate effort to destroy Goodman's business are aggravated by their ongoing attempts to deceive the Court as they continue to present observably false excuses for what can only be categorized as totally abhorrent

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 9

behavior that violates the rules of this Court, Your Honor's individual rules, Bar Association ethics and all norms of reasonable social and professional interaction.

**CONCLUSION**

The supreme court has repeatedly ruled that the purpose of Rule 11 "is not to reward parties who are victimized by litigation; it is to deter baseless filings and curb abuses." See Business Guides v. Chromatic Commun., 498 U.S. 533 (1991).

A notice of appearance was the only appropriate filing Defendants could have made at the extremely late date they chose to appear.  Failure to do so in combination with all the other actions by Defendants and complicit non-parties constitutes gross abuse and weighs in favor of sanctions.

Goodman moves this Honorable Court to issue appropriate sanctions against Defendants and their counsel and to extend any punitive order to include the Sweigert Brothers who should each be declared vexatious litigants and be required to first seek leave of this Court before bringing litigation against Goodman or any business owned or utilized by Goodman from now forward and continuing in perpetuity, in addition to any other relief to be determined by the Court.


Signed this 8th day of January 2023

Respectfully submitted,

_____

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

RESPONSE TO MEMO IN OPPOSITION OF RULE 11 SANCTIONS - 10

**(EXHIBIT A)**

UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

Docket Number(s): 22-592 _____ Caption [use short title] _____

Motion for: Extension of time to allow filing of a Motion for

Relief from Order and Judgment pursuant to Fed R Civ P

Rule 60(b)(3) with the District Court

Set forth below precise, complete statement of relief sought:

New evidence discovered in the process of preparing this

appeal is likely to prove fraud, misrepresentation,

and misconduct by plaintiffs

The National Academy of Televi v.   Multimedia S

MOVING PARTY: Jason Goodman                OPPOSING PARTY: National Academy of Television Arts and Sciences

- [ ] Plaintiff                       [ ] Defendant
- [✔] Appellant/Petitioner            [ ] Appellee/Respondent

MOVING ATTORNEY: Jason Goodman pro se        OPPOSING ATTORNEY: Margaret Esquenet

[name of attorney, with firm, address, phone number and e-mail]

252 7th Avenue #6s                           FINNEGAN,HENDERSON, FARABOW, GARRETT &DUNNER, LLP

New York, NY 10001                           901 New York Avenue, NW

323-744-7594                                 Washington DC 20001 (202) 408-4000

Court- Judge/ Agency appealed from: SDNY Valerie Caproni

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
[✔] Yes  [ ] No (explain):_____

Opposing counsel's position on motion:
[ ] Unopposed  [ ] Opposed [✔] Don't Know
Does opposing counsel intend to file a response:
[ ] Yes  [ ] No  [✔] Don't Know

Is oral argument on motion requested? [✔] Yes  [ ] No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? [ ] Yes [✔] No If yes, enter date:_____

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below? [ ] Yes [ ] No
Has this relief been previously sought in this court? [ ] Yes [ ] No
Requested return date and explanation of emergency: _____

Signature of Moving Attorney:

Jason Goodman        Date: January 4, 2023  Service by: [ ] CM/ECF  [✔] Other [Attach proof of service]

Catherine O'Hagan Wolfe
Clerk of the Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: Case 22-592 National Academy of Television Arts and Sciences, Inc. v Jason Goodman

January 4, 2023

Dear Ms. Wolfe,

I, Jason Goodman, pro se Counter-Claimant-Counter-Defendant-Appellant respectfully submit this letter motion by and for myself on my own behalf seeking leave for an extension of time for this appeal. New evidence has been discovered while preparing this appeal and I am drafting a Motion Seeking Relief from Judge Caproni's final ruling and her ruling denying me intervention in the original case pursuant to Fed R Civ P Rule 60(b)(3).  I seek leave from the appellate court for an extension of time to complete this filing with the District Court and add it to the record of this appeal.

The evidence is presented in an investigative journalism exposé I completed and published on December 22, 2022 and have attached to this letter.  Evidence in the article, obtained from the public domain, is likely to prove CEO for Plaintiff National Academy of Television Arts and Sciences ("NATAS"), Adam Sharp ("Sharp") conspired with former U.S. President Barack Obama ("Obama") and then FBI General Counsel, U.S. District Court judge Valerie Caproni, ("Caproni") to secretly infiltrate Twitter and turn it into a clandestine surveillance tool of the FBI and other departments of the U.S. Government.

1

Additional evidence released after the filing of my appellate brief by Twitter's new management under CEO Elon Musk, confirms that the FBI was in regular communication with Twitter employees and compelled them to take action that violated users' first amendment and fourth amendment rights. https://www.washingtonpost.com/politics/2022/12/20/twitter-fbi-story-relies-far-more-insinuation-than-evidence/

More evidence is being released by Musk weekly, including a new traunch earlier today. To my knowledge, neither Musk nor the Washington Post are presently aware of the public domain evidence I have found pertaining to Sharp, Obama and Caproni and the FBI's decades long efforts to penetrate encrypted communications technologies on the internet.

The Musk Twitter Files reveal FBI investigations on Twitter that go well beyond what the public has been previously told. This is also beyond anything a reasonable person might expect or the law would allow. All the while, FBI ignored serious criminal allegations including child abuse and exploitation as cited in this unrelated case. https://endsexualexploitation.org/wp-content/uploads/Doe-v-Twitter_1stAmndComplaint_Filed_040721.pdf

Evidence presented by Musk indicates FBI agents and others repeatedly interacted with Twitter employees requesting they remove politically sensitive messages that were unfavorable to Joe Biden, including the now infamous suppression of information related to his son's laptop computer.

As outrageous as this allegation seems on its face, every element is supported by evidence and the co-conspirators will fail to disprove these claims.  This new evidence was unknown to me at the outset of this appeal, but is so important and so irrefutable, it must be considered.

I have alleged ab initio that my corporation was selected as a target of this litigation by Plaintiffs not because it bears responsivity for their alleged injury, but rather to deliberately prevent me from mounting my own defense pro se.  Evidence is likely to prove this was a deceitful plan executed by Plaintiffs with the assistance of vexatious non-party David George Sweigert and calculated to financially damage me and prevent a proper defense.  Plaintiffs will fail to demonstrate that they learned of my corporation without the assistance of Sweigert.

While it is true that I own the corporation Multimedia System Design, Inc ("MSD") which is the defendant in the original case, that corporation is wrongly named and has nothing to do with the internet posting that is the source of controversy in this case.  Even if the Court finds the corporation had some relationship to the specific actions cited, 47 USC § 230 should prevent a litigant for suing any corporation for the private internet postings of one of its employees even if that employee is the CEO.

Judge Caproni is aware of these allegations because she separately presided over Sweigert v Goodman (Case 1:18-cv-08653-VEC-SDA) throughout the entire duration of the original case that is the subject of this appeal.  Instead of seeking to confirm or deny my well founded and evidence backed allegations, Caproni took every opportunity to unjustly rule in Plaintiffs' favor and prevent me from substituting myself as the proper defendant.  Based on new information

learned in preparing this appeal, I allege that was done with intent by the judge to protect her former colleagues at the FBI and maintain their recently revealed clandestine control of Twitter.

These accusations are so serious, and the evidence backing them so unimpeachable, it requires the attention of the appellate board, even if my pro se status prevents me from presenting it in accordance with the strictest adherence to procedure.

The degree of seriousness this willful attack on the first amendment represents is so severe, it goes well beyond the significance of this case or me as a litigant. The perpetrators well established pattern and practice of the alleged behavior is so well documented, it must receive not only the full attention of the appellate review board, but a recommendation of impeachment by Congress for both Valerie Caproni and former President Obama. Only such extreme remedies could re-establish faith in the Judicial and Executive branches of the U.S. Government and the coveted constitutional protections this Appellate Court is intended to protect and defend.

Respectfully submitted,

Jason Goodman

**(EXHIBIT A)**

Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman
Dec 22, 2022 · 3 min read · 🔊 Listen

🔖 Save

# THE TWITTER COUP Part 1



Twitter's former Government Liaison Adam Sharp has stars in his eyes as he stares longingly at President Barack Obama during the Twitter Townhall @thewhitehouse July 6, 2011

**Preliminary Statement**

Over the past four years, U.S. District Court Judge Valerie Caproni has presided over three cases in which the author was a litigant.

(Case 1:18-cv-08653-VEC-SDA, Case 1:20-cv-07269-VEC-OTW, Case 1:21-cv-10627-VEC)

In two of the cases, the author was opposed by Adam Sharp. Facts surrounding an alleged relationship between Caproni and Sharp were unknown prior to researching and writing this article in December 2022. A motion to disqualify Caproni was denied on January 10, 2022 (Case 1:21-cv-10627-VEC Document 17).

Recusal is warranted in cases where, "a reasonable person, knowing all the facts would have doubts about the judge's ability to be impartial in the case." Judges may also recuse themselves to avoid the appearance of conflicts of interest.

### The Fundamental Transformation of America

Elon Musk's "Twitter Files" reveal a deeply troubling, previously hidden relationship between federal law enforcement and private sector social media companies, but an important question remains unanswered. Who could have executed such a vast government infiltration of private industry and how could they overcome the technical and legal hurdles? As implausible as it seems, this all occurred in plain sight right under our noses over the past two decades.

Evidence in the public domain is likely to prove that former President Barack Obama, former FBI General Counsel Valerie Caproni, and Twitter's former Government Liaison Adam Sharp, were the three most important conspirators at the outset. It appears they worked together and with others to launch one of the most sinister and sophisticated crimes in our nation's history.

### From Weatherman to U.S. President — The Rise of Barack Obama

Just after his historic Presidential win, the New York Times ran a story about "How Obama Tapped Into Social Networks' Power". Journalist David Carr wrote, "In February 2007, a friend called Marc Andreessen, a founder of Netscape and a board member of Facebook and asked if he wanted to meet with a man with an idea that sounded preposterous on its face." Carr never reveals the identity of Andreessen's friend but goes on to depict Obama as the genius behind a grass roots campaign facilitated by emerging technology.

In 2015, long after Ayers and Dohrn helped the obscure Illinois State Senator rise to international prominence, President Obama held a technology summit at Stanford University. After delivering remarks on the future of technology and industry, Obama signed Executive Order 13691 Promoting Private Sector Cybersecurity Information Sharing. In it, the President commanded that, "private companies, nonprofit organizations, executive departments and agencies (agencies), and other entities must be able to share information related to cybersecurity risks and incidents and collaborate to respond in as close to real time as possible." Stanford students in attendance were probably unaware, but this order codified long standing FBI demands to supersede the fourth amendment and investigate anyone they wanted. This paved the way for the Neo-fascism now being exposed in the ongoing releases of the "Twitter Files".

Making good on his campaign promise, Obama ensured that America would be fundamentally transformed from a Constitutional Republic into a Neo-fascist Technocratic Autocracy. This new authority would be enforced by a digitally enabled Super-Stasi made up of FBI InfraGard members, (https://www.infragard.org/) and other contractors including hundreds, perhaps even thousands of ordinary citizens patrolling on-line as America's Secret Police.

Such an Orwellian overthrow would be calculated to happen without anyone noticing until it was too late. The merger of government and corporate technological power enabled a class of politically aligned bureaucratic elites to maintain control by monitoring and stifling opposition rather than allowing open debate in a free marketplace of ideas. These traitors have trampled the Constitution and destroyed the most fundamental aspect of American greatness.

Part two of this series will explore Congressional allegations of criminal malfeasance within the FBI.

Twitter     FBI     Obama     Corruption     Elon Musk

Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman

Dec 22, 2022 · 2 min read · ▶ Listen

🔖 Save

# THE TWITTER COUP Part 2



**Accusations of Criminal Malfeasance in the FBI General Counsel's Office**

On April 14, 2010, the House Judiciary Subcommittee held a hearing on the Inspector General's "Report on the FBI's Use of Exigent Letters and Other Informal Requests for Telephone Records". Committee Chair John Conyers (D-Mich.) issued a harsh rebuke of FBI General Counsel Valerie Caproni, when he said, "Today's hearing showed that the FBI broke the law on telephone records privacy and the General Counsel's Office, headed by Valerie Caproni, sanctioned it and must face consequences."

Conyers went on to say he was "outraged" that the FBI Office of the General Counsel had invented exigent letters apparently out of whole cloth, "It's not in the Patriot Act. It never has been. And its use, perhaps coincidentally, began in the same month that Ms. Valerie Caproni began her work as general counsel."

Given the most recent revelations of Elon Musk's "Twitter Files" concerning the FBI, Conyers' closing statement in a letter to then FBI director Mueller is eerily prescient, "I'm extremely disappointed that every time Congress has tried to plug potential civil rights and civil liberties violations in our counterterrorism activities, the FBI seems to have figured out a way to get around it."

Chairman Conyers implored Mueller to take action and fire the responsible parties in Caproni's Office. No records of any action in response could be located and the press release has been removed from the House Judiciary web page.

Rather than face any consequences for her actions, Caproni would leave the FBI to join Northrup Grumman as Deputy General Counsel in 2011. She was nominated for a District Court Judge position in the Southern District of New York by Barack Obama in 2012.

During the course of her contentious Senate confirmation, Ranking Member of the Judiciary Committee Chuck Grassley sent a letter to the Dept. of Justice Office of the Inspector General. The letter detailed Senator Grassley's concerns about undue resistance to the committee's requests for documents and transcripts related to Caproni's ongoing constitutional abuses including repeated inappropriate use of National Security Letters and the even more urgent "exigent letters" throughout her tenure. The Grassley letter describes a culture of autocracy at the FBI that obstructed oversight, ignored the law and operated with impunity.

Valerie Caproni was confirmed by the Senate in 2013 and still serves as a U.S. District Court Judge for the Southern District of New York where she continues her abuse of citizens' constitutional rights to this day.

<u>Part three will discuss how technical and legal barriers were overcome in the effort to destroy Americans' constitutional protections.</u>

FBI      Twitter      Valerie Caproni      Corruption      Congress

Open in app ↗

Get unlimited access

 Search Medium

29

Jason Goodman

Dec 22, 2022 · 4 min read · ● Listen

🔖 Save    

# THE TWITTER COUP Part 3



President George W. Bush and a gaggle of neocon cronies delight in laying the groundwork for the destruction of the U.S. Constitution

**Overcoming Legal Hurdles Takes a Village**

The groundwork was laid by the George W. Bush Administration. In the wake of the national trauma of 9/11, the Patriot Act was passed under the guise of increased security. This unconstitutional statute called for the creation of the National Cyber Investigative Joint Task Force, an interagency intelligence sharing organization led by the FBI. It also granted federal law enforcement new tools in their self-declared "war on terror". For the first time since the signing of the Bill of Rights, federal agents were granted unilateral authority to surveil any person they deemed a national security threat without first establishing probable cause or providing any evidence to a judge. Due process was bypassed, the need for warrants ignored, and newly created National Security Letters decimated the Fourth Amendment.

No longer were We the People "secure in our persons, houses, papers, and effects, against unreasonable searches and seizures". The FBI and other Federal agencies could simply send a National Security Letter to your phone company or internet provider seeking any information associated with any account for any reason. Although National Security Letters do not have the same legal force and effect as Court Orders or properly issued search warrants, the practical impact is virtually identical with an historical record nearing 100% compliance by providers.

During her tenure as general counsel at the FBI, Valerie Caproni coined the phrase "Going Dark". The term purported to describe an increasing proliferation of digital communications technologies and a widening gap in law enforcement's ability to penetrate those technologies in the due course of criminal investigations. Things like end-to-end encryption and automatically decimated chat logs had investigators in the dark according to Caproni.

The FBI's proposed solution was to create new legislation granting agencies unfettered access to all digital communications in real time. Setting aside the unrealistic network bandwidth and storage requirements of such a concept, the idea was controversial to say the least. Caproni and the FBI aimed to compel all technology companies to modify their products with "back doors" that would bypass primary security measures and allow federal investigators instant and full access to any account upon receipt of a National Security Letter.

Caproni would come under fire throughout her career for gross abuses of the process including the arbitrary creation of so called "exigent letters" which have no statutory

basis in the Patriot Act and the reliance on false statements to open alleged counterintelligence investigations.

https://www.c-span.org/video/?197219-1/fbi-national-security-letters

https://www.grassley.senate.gov/imo/media/doc/judiciary/upload/Caproni-03-19-13-letter-to-OIG-requesting-information.pdf

https://www.techdirt.com/2013/09/09/former-fbi-lawyer-who-oversaw-years-fourth-amendment-violations-agency-nominated-federal-judge-seat/

https://www.washingtonpost.com/world/national-security/former-fbi-official-questioned-on-abuse-of-intelligence-gathering-tools/2013/02/04/b228c4dc-6eef-11e2-aa58-243de81040ba_story.html

Caproni and her successors Andrew Weissman and James Baker went as far as suggesting modifications that amounted to hobbling the most sophisticated products available. These products' creators admonished FBI luddites and articulated how the changes would dramatically weaken security and expose all users to data theft and hacking. Despite a fundamental lack of subject matter knowledge, for years the FBI continued to make demands that industry experts argued would pose too great a risk for everyone should they be compelled to comply.

**A Decade of "Going Dark"**

Nearly eight years after Valerie Caproni delivered an address at Lewis & Clark Law School on "Crimes, War Crimes, and the War on Terror", the New York Times reported, "Obama Won't Seek Access to Encrypted User Data". Perhaps this was true of encrypted data, but perhaps this was just a lawyerly way of talking around a new cooperative plan to intercept data at the source, before it was encrypted or after it had been decrypted. Going back as far as 2005, Caproni had made the FBI's position on "Going Dark" extremely clear, it was a top priority. The persistence with which the FBI pursued this agenda cannot be overstated, nor can the public resistance to it.

Would secretly planting FBI operatives directly inside Twitter allow agents to address management's "Going Dark" concerns without the need to crack encryption keys or reveal their efforts to the public? Could such a cozy relationship indicate that Twitter

had agreed to implement the long-sought FBI back door without informing unsuspecting users? Twitter's new CEO has revealed emails indicating reimbursements to Twitter from the FBI for the fulfilment of requests related to investigations. While Twitter's CEO may have incorrectly characterized the nature and purpose of the payments, it is not denied that the payments were made.

Was Twitter motivated to comply with FBI investigation requests by law or by financial incentives? Did the FBI need warrants to investigate, penetrate or terminate the private Twitter accounts of U.S. citizens? These and other questions remain open. Many may ask, would the FBI do something illegal? Would they take action even if it had no basis in law? House and Senate oversight of the FBI General Counsel's Office and the Inspector General's report on the matter indicate they were in a regular practice of doing exactly that.

Part four will reveal how the U.S. Government essentially became one with private industry when it infiltrated Twitter.

Twitter        Elon Musk        FBI        Patriot Act        Valerie Caproni



Open in app ↗

Get unlimited access

🔍 Search Medium

Jason Goodman
Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save    [Twitter] [Facebook] [LinkedIn] [Link]

# THE TWITTER COUP Part 4



President Barack Obama and Twitter CEO Jack Dorsey at the Whitehouse Twitter Town Hall July 6, 2011

**The Marriage of the U.S. Government and Social Media**

Although Barack Obama does not consider himself a luddite, during a 2022 address at the Stanford Internet Observatory he admitted he has to ask his "daughters how to work basic functions" on his phone. Even fifteen years after joining Twitter, Barack Obama's background, experience and technological profile is inconsistent with that of

someone who could have foreseen the impact social media would have on politics all the way back in 2007.

It is impossible to understand the U.S. Government's infiltration into Twitter without exploring the role of the man who is most likely to have presided over this unholy union. Today, he is the President and CEO of the National Academy of Television Arts and Sciences ("NATAS"), an obscure individual named Adam Sharp. Before handing out EMMY awards, Sharp joined Twitter in its pre-IPO days, early in November of 2010. Hot topics in DC at that time included regulation of social media firms. It was quietly coming out that many had hired lobbyists to get in front of the issue. Just prior to Sharp joining Twitter, in October of 2010, the LA Times ran an op-ed reporting "Facebook lobbies California on online privacy act (but shhh — don't tell anyone).

Evidence indicates Sharp's interest in Twitter began long before he was hired there. While serving as an Executive Producer for C-SPAN in 2009, Sharp launched a public affairs database that included "Twitter and Facebook API integration". API stands for application programming interface and describes a set of software tools provided to developers to enable customization and integration with other products. Sharp's utilization of Twitter's development API is an indication that he was very familiar with the inner workings and unrealized potential of Twitter at least by 2009, likely prior.

Sharp's online resume fails to discuss Valerie Caproni's appearance on C-SPAN3 in June of 2009 during the time he was the Executive Producer and managed primetime programming. It is difficult to imagine that the Executive Producer would not interact at all with such an important FBI guest. At very least, as programming manager, Sharp would be aware of the content of the broadcast in which Caproni articulated the FBI's goals to penetrate online communications. It remains unknown if any interaction occurred between Sharp and Caproni. Even in the event that there was none, Sharp was very likely aware of the FBI's concerns about "Going Dark" as long ago as 2009.

While at Twitter, Sharp made incredible inroads both for the company and the U.S. Government. https://www.cnn.com/2015/02/03/politics/twitter-washington-office

Throughout his time at Twitter, Sharp separately owned and operated Sharp Political Consulting, LLC. Sharp incorporated this firm in April of 2007. This is notably close in time proximity to the March 5, 2007 creation of the @barackobama Twitter account

cited in the Atlantic Magazine article, "You're Not Really Following @BarackObama on Twitter".

Creation of Obama's now famous Twitter account is especially notable because Twitter was virtually unknown in 2007. Jack Dorsey had published the world's first Tweet less than one year prior on March 21, 2006. Obama was not only one of the first politicians to join Twitter, but he was also among the first of all users. Technology moguls including current Twitter CEO Elon Musk, and former Microsoft CEO Bill Gates would not join until years later in June 2009. No other person fits the profile or was in the position to put Barack Obama and Twitter together in the way Adam Sharp clearly was.

Journalist Phillip Bump told Atlantic Magazine readers that Obama's "Twitter account was created by a staffer on March 5, 2007, two months before he formally announced his Presidential candidacy." The Senate staffer has never been identified, but Sharp was serving as Deputy Chief of Staff for Senator Mary L. Landrieu at the time. An election postmortem from the New York Times citing Obama's genius in leveraging social media declared an anonymous "friend" brought Marc Andreessen to the Obama campaign. Could both of these anonymous King Makers be Sharp? The answer remains a mystery, but it is likely 'yes'.

Even after Sharp became Twitter's official Government Liaison, Sharp Political Consulting, LLC remained active and engaged in matters that do not seem to have clear connections to Twitter.

Sharp Political Consulting made over $50,000 in political contributions to Democrat candidates in 2014.

In January 2016, pollsters calculated a 71% likelihood of a Hillary Clinton presidential win. For reasons that are unclear, Sharp voluntarily dissolved Sharp Political Consulting, LLC on January 29, 2016. In December 2016, less than one year later and precisely one month after Donald Trump's largely unexpected victory over Clinton, Sharp abruptly left his beloved Twitter and promptly formed SharpThings, LLC, just one week after the press release announcing his departure. Sharp would spend a lot of time lecturing about Disinformation in various public speaking engagements from 2016 through 2018 and then during his tenure as CEO of NATAS beginning in 2018. Was

Sharp's departure motivated by an urgent need to step up *la Résistance* to Donald Trump?

Part five will bring the story up to today and connect the suspected conspirators to the events being exposed in The TWITTER FILES.

Obama        Jack Dorsey        Twitter        FBI        Elon Musk

Open in app ↗

Get unlimited access



Jason Goodman

Dec 22, 2022 · 3 min read · ▶ Listen

Save

# THE TWITTER COUP Part 5



President Barack Obama, Twitter Head of News, Politics and Elections Adam Sharp, Twitter General Counsel Alexander Macgillivray and other staff members celebrate their success at the Whitehouse on July 6, 2011

## Operational Deployment of FBI–Twitter

For more than a decade, FBI leadership was acutely focused on a "Going Dark" public relations campaign. James Comey and Christopher Wray each spoke about it throughout their respective tenures as FBI Director.

But it was Valerie Caproni's disciples in the FBI General Counsel's office that finally made the plans operational. Her direct successor Andrew Weissman led the Mueller Investigation into Russian Collusion with the Donald Trump Presidential Campaign. This investigation was marred by the abuse of the secret FISA Court process and was distinctly categorized by Mueller's team as a Counterintelligence investigation rather than a criminal investigation. This distinction allowed investigators to access the unconstitutional and disputed powers imbued upon the FBI by Caproni. Ultimately, no evidence was found to substantiate the Mueller accusations.

Because the mere suggestion of Russian interference with a U.S. Presidential election represents a national security threat, the accusation alone absent evidence, was legally sufficient to open an investigation under the Patriot Act. This would have allowed Andrew Weissmann to use National Security Letters to merely allege that Trump represented a national security threat and initiate the years long and highly disruptive probe. This is perhaps the clearest example of naked abuse of the Patriot Act since its inception and provides good grounds for its termination.

Weissmann's successor James Baker. Director Comey appointed Baker General Counsel of the FBI on January 15, 2014. Baker was reassigned by Wray in 2017 and then resigned amid accusations that he leaked classified documents related to the Mueller investigation of Trump.

Senior Fellow in Governance Studies at the Brookings Institution, Benjamin Wittes was the likely recipient of the leak. Wittes is the editor of Lawfare, an online publication of the Brookings Institution that James Comey told an audience he reads every day. Wittes has claimed to be among James Comey's closest friends. Baker would transition to Brookings and Lawfare after departing the FBI and prior to becoming Twitter's Deputy General Counsel. The Brookings Institution is a non-profit think tank and a potential incubator for domestic coup d'etats, perhaps along the lines of what was done with Twitter. Baker appeared on MSNBC as recently as 2019 restating unconstitutional FBI demands to access everyone's data at any time.

## FBI All in at Twitter

On or around May 28, 2020, a new Twitter policy began adding warnings to "fact check" users' Tweets. After warnings were applied to Tweets sent from @realDonaldTrump, the President issued executive order 13925 titled "Preventing Online Censorship". The order sought to curb perceived abuse of 47 USC § 230, the infamous Communications Decency Act that shields online service providers from liability even if they editorialize content that does not violate the law or civil torts. If implemented, the proposed changes threatened to expose Twitter to thousands of civil legal actions. Less than three weeks after Trump's order, former FBI General Counsel Baker joined Twitter as Deputy General Counsel. Was this a coincidence or was Baker still serving the demands of his long-time FBI colleagues? Baker had transitioned through the FBI revolving door of non-profit think tanks, including the Brookings Institution, Lawfare and the R Street Institute, following the plan articulated in Obama's 2015 Stanford inspired order.

It has now been widely reported that during Baker's time as Deputy General Counsel, Twitter suppressed a true and accurate news story published by the New York Post that likely affected the outcome of the 2020 Presidential election. Dr. Michael Shellenberger provides evidence of communications between FBI Special Agent Elvis Chan and employees of Twitter in the Twitter Files 7.

The communications indicate the FBI had foreknowledge of facts that would be asserted by the New York Post and knew them to be true, but falsely informed Twitter it was the product of a Russian "hack and leak" operation.

Now we stand at the brink of world war in Ukraine. Even stating the opinion "Joe Biden and Twitter rigged the 2020 election with the help of the FBI" is considered spreading disinformation. The FBI and CISA have determined disinformation is a national security threat. This logically could lead to the FBI investigating you if they decide something you say is false.

America has been transformed right before our eyes, and all that was needed was a pen and a phone.

Sources and Additional Information



Open in app ↗

Get unlimited access

Search Medium

Jason Goodman
Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save

# The Twitter Coup Sources and Additional Information

**Sources and Additional Information**

March 20, 2007 — FBI Use of National Security Letters — https://www.c-span.org/video/?197219-1/fbi-national-security-letters

January 2008 — National Cyber Investigative Joint Task Force — https://www.fbi.gov/investigate/cyber/national-cyber-investigative-joint-task-force

https://irp.fas.org/offdocs/nspd/nspd-54.pdf

March 2008 — Alumnus runs for Congress in Virginia — https://www.gwhatchet.com/2008/03/03/alumnus-runs-for-congress-in-virginia/

November 2008 — How Obama Tapped Into Social Networks' Power — https://www.nytimes.com/2008/11/10/business/media/10carr.html

November 2008 — Election Blog: How Did Obama Win? The Top 10 Reasons — https://www.mercurynews.com/2008/11/04/election-blog-how-did-obama-win-the-top-10-reasons/

December 2008 — Domestic Investigations and Operations Guide — https://int.nyt.com/data/int-shared/nytdocs/docs/264/264.pdf



January 2009– Authority of Acting FBI Officials to Sign National Security Letters
https://www.justice.gov/olc/file/2009-01-16-acting-fbi-nsl/download

January 2010 — A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records —
https://www.oversight.gov/sites/default/files/oig-reports/s1001r.pdf

October 2010 — Opinion: Facebook lobbies California on online privacy act (but shhh — don't tell anyone) — https://www.latimes.com/archives/blogs/top-of-the-ticket/story/2010-10-28/opinion-facebook-lobbies-california-on-online-privacy-act-but-shhh-dont-tell-anyone

November 2010 — Twitter hires first D.C. staffer. But don't call Adam Sharp a lobbyist — https://www.latimes.com/archives/blogs/top-of-the-ticket/story/2010-11-04/opinion-twitter-hires-first-d-c-staffer-but-dont-call-adam-sharp-a-lobbyist

November 2010 — Twitter Hires C-SPAN's Sharp in DC —
https://www.prweek.com/article/1265866/twitter-hires-c-spans-sharp-dc

January 2011 — Twitter, as a Helpmate, Goes to Capitol Hill —
https://www.nytimes.com/2011/01/30/us/politics/30twitter.html

February 2011 — GOING DARK: LAWFUL ELECTRONIC SURVEILLANCE IN THE FACE OF NEW TECHNOLOGIES — https://www.govinfo.gov/content/pkg/CHRG-112hhrg64581/html/CHRG-112hhrg64581.htm

February 2011 — Newly Released Documents Detail FBI's Plan to Expand Federal Surveillance Laws — https://www.eff.org/deeplinks/2011/02/newly-released-documents-detail-fbi-s-plan-expand

February 2011 — As Online Communications Stymie Wiretaps, Lawmakers Debate Solutions — https://www.nytimes.com/2011/02/18/us/18wiretap.html

April 2011 — An Interview With Twitter's Forgotten Founder, Noah Glass —
https://www.businessinsider.com/twitter-cofounder-noah-glass-2011-4

June 2011 F.B.I. Agents Get Leeway to Push Privacy Bounds —
https://www.nytimes.com/2011/06/13/us/13fbi.html

May 2012 — FBI quietly forms secretive Net-surveillance unit —
https://www.cnet.com/news/privacy/fbi-quietly-forms-secretive-net-surveillance-unit/

August 2012 — A new barometer for the election —
https://blog.twitter.com/en_us/a/2012/a-new-barometer-for-the-election

February 2013 — Former FBI official questioned on abuse of intelligence-gathering
tools — https://www.washingtonpost.com/world/national-security/former-fbi-official-
questioned-on-abuse-of-intelligence-gathering-tools/2013/02/04/b228c4dc-6eef-11e2-
aa58-243de81040ba_story.html

March 19, 2013 — Grassley Judiciary Committee letter to the OIG
https://www.grassley.senate.gov/imo/media/doc/judiciary/upload/Caproni-03-19-13-
letter-to-OIG-requesting-information.pdf

March 20, 2013 — New Technologies, National Security, and the Law — https://www.c-
span.org/video/?311627-1/technologies-national-security-law

April 2013 — You're Not Really Following @BarackObama on Twitter —
https://www.theatlantic.com/politics/archive/2013/04/youre-not-following-
barackobama-twitter/316523/

June 2013 — Privacy Advocates: With PRISM, FBI Has No 'Going Dark' Argument —
https://www.usnews.com/news/articles/2013/06/07/privacy-advocates-with-prism-fbi-
has-no-going-dark-argument

June 2013 — Grassley Talks About B. Todd Jones, Tony West, Valerie Caproni, Metal
Theft Legislation — https://www.grassley.senate.gov/news/news-releases/grassley-talks-
about-b-todd-jones-tony-west-valerie-caproni-metal-theft

September 2013 — Former FBI Lawyer Who Oversaw Years Of Fourth Amendment
Violations By The Agency Nominated For Federal Judge Seat —
https://www.techdirt.com/2013/09/09/former-fbi-lawyer-who-oversaw-years-fourth-
amendment-violations-agency-nominated-federal-judge-seat/

January 2014 — Wielding A Pen And A Phone, Obama Goes It Alone

https://www.npr.org/2014/01/20/263766043/wielding-a-pen-and-a-phone-obama-goes-it-alone

October 2014 — FBI again claims it's Going Dark thanks to encryption — https://www.csoonline.com/article/2834837/fbi-again-claims-its-going-dark-thanks-to-privacy-solutions-like-encryption.html

October 2014 — Vivian Schiller Departs as Twitter's Head of News — https://archive.nytimes.com/bits.blogs.nytimes.com/2014/10/09/schiller-departs-as-twitters-head-of-news/

February 2015 — Obama Calls for New Cooperation to Wrangle the 'Wild West' Internet — https://www.nytimes.com/2015/02/14/business/obama-urges-tech-companies-to-cooperate-on-internet-security.html

February 2015 — Executive Order 13691 — Promoting Private Sector Cybersecurity Information Sharing - https://obamawhitehouse.archives.gov/the-press-office/2015/02/13/executive-order-promoting-private-sector-cybersecurity-information-shari

February 2015 Privacy Versus Security in Silicon Valley — https://www.newyorker.com/business/currency/stanford-obama-tim-cook-privacy-security

March 2015 President Obama Taps Twitter Vet Jason Goldman As White House's First Chief Digital Officer — https://techcrunch.com/2015/03/24/president-obama-taps-twitter-vet-jason-goldman-as-white-houses-first-chief-digital-officer/

May 2015 — Tech Giants Urge Obama to Reject Policies That Weaken Encryption -

https://www.nytimes.com/2015/05/20/technology/tech-giants-urge-obama-to-reject-policies-that-weaken-encryption-technology.html

September 2015 — How Twitter plays offense in D.C. — https://www.cnn.com/2015/02/03/politics/twitter-washington-office

October 2015 — Obama Won't Seek Access to Encrypted User Data — https://www.nytimes.com/2015/10/11/us/politics/obama-wont-seek-access-to-encrypted-user-data.html

October 2016 — Obama Brought Silicon Valley to Washington — https://www.nytimes.com/2016/10/30/magazine/barack-obama-brought-silicon-valley-to-washington-is-that-a-good-thing.html

October 2016 — Lawful hacking and the case for a strategic approach to "Going Dark" — https://www.brookings.edu/research/lawful-hacking-and-the-case-for-a-strategic-approach-to-going-dark/

January 2017 — Encryption and the Updated January 25, 2017 " Going Dark " Debate — https://crsreports.congress.gov/product/pdf/R/R44481

February 2018 — OFFICE OF THE GENERAL COUNSEL Unit Chief — https://www.justice.gov/legal-careers/job/unit-chief-5

March 2018 — FBI has a unit solely devoted to its 'going dark' problem — https://www.cyberscoop.com/fbi-going-dark-iphone5c-encryption-ig-report/

March 2018 — A Special Inquiry Regarding the Accuracy of FBI Statements Concerning its Capabilities to Exploit an iPhone Seized During the San Bernardino Terror Attack Investigation — https://oig.justice.gov/reports/2018/o1803.pdf

September 2018–10 questions with Adam Sharp — https://www.fromthedesk.org/10-questions-adam-sharp/

September 2021 — Shining Light on the "Going Dark" Phenomenon: U.S. Efforts to Overcome the Use of End-to-End Encryption by Islamic State Supporters — https://harvardnsj.org/2021/09/shining-light-on-the-going-dark-phenomenon-u-s-efforts-to-overcome-the-use-of-end-to-end-encryption-by-islamic-state-supporters/

September 2022 — Audit of the Roles and Responsibilities of the Federal Bureau of Investigation's Office of the General Counsel in National Security Matters — https://oig.justice.gov/sites/default/files/reports/22-116.pdf

October 2022 — Foreign Actors Likely to Use Information Manipulation Tactics for 2022 Midterm Elections -

https://www.cisa.gov/sites/default/files/publications/PSA-information-activities_508.pdf

December 2022 — THE TWITTER FILES: PART 7 — https://twitter.com/ShellenbergerMD/status/1604871630613753856

December 2022 — No, The FBI Is NOT 'Paying Twitter To Censor' - https://www.techdirt.com/2022/12/20/no-the-fbi-is-not-paying-twitter-to-censor/

Twitter      Coup      Obama      Elon Musk      FBI

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

The National Academy of Televi v. Multimedia System Design, Inc.

**CERTIFICATE OF SERVICE***

v.

Docket Number: 22-592

I, Jason Goodman _____, hereby certify under penalty of perjury that
(print name)

on January 4, 2023 _____, I served a copy of Motion seeking relief from Order and Judgement
(date)

pursuant to Rule 60 (b)(3) to be filed with District Court

(list all documents)

by (select all applicable)**

___ Personal Delivery          ___ United States Mail          ___ Federal Express or other
                                                                Overnight Courier

___ Commercial Carrier          X E-Mail (on consent)

on the following parties:

Margaret Esquenet    margaret.esquenet@finnegan.com

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

*A party must serve a copy of each paper on the other parties, or their counsel, to the appeal or proceeding. The Court will reject papers for filing if a certificate of service is not simultaneously filed.

**If different methods of service have been used on different parties, please complete a separate certificate of service for each party.

January 4, 2023 _____          _____
Today's Date                                    Signature

Certificate of Service Form (Last Revised 12/2015)

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

**Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500**

**MOTION INFORMATION STATEMENT**

Docket Number(s): _____     _____Caption [use short title]_____

Motion for: _____

_____

_____

Set forth below precise, complete statement of relief sought:

_____

_____

_____

_____

_____

_____

MOVING PARTY:_____ OPPOSING PARTY:_____

      ___Plaintiff         ___Defendant

      ___Appellant/Petitioner   ___Appellee/Respondent

MOVING ATTORNEY:_____ OPPOSING ATTORNEY:_____

          [name of attorney, with firm, address, phone number and e-mail]

_____   _____

_____   _____

_____   _____

Court- Judge/ Agency appealed from: _____

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
     ___Yes ___No (explain):_____
     _____

Opposing counsel's position on motion:
     ___Unopposed ___Opposed ___Don't Know
Does opposing counsel intend to file a response:
     ___Yes ___No ___Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:**

Has this request for relief been made below?     ___Yes ___No
Has this relief been previously sought in this court?    ___Yes ___No
Requested return date and explanation of emergency:   _____
_____
_____
_____
_____

Is oral argument on motion requested?     ___Yes ___No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?     ___ Yes ___No If yes, enter date:_____

**Signature of Moving Attorney:**

_____Date:_____ Service by: ___CM/ECF   ___Other [Attach proof of service]

Form T-1080 (rev.12-13)

Catherine O'Hagan Wolfe
Clerk of the Court
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

Re: Case 22-592 National Academy of Television Arts and Sciences, Inc. v Jason Goodman

January 6, 2023

Dear Ms. Wolfe,

I, Jason Goodman, pro se Counter-Claimant-Counter-Defendant-Appellant respectfully submit this letter motion by and for myself on my own behalf seeking leave for an extension of time to file a response to Appellees reply brief in this appeal. This extension is being requested because new evidence has been discovered while preparing this appeal and I am drafting a Motion Seeking Relief from Judge Caproni's final ruling and her ruling denying me intervention in the original case pursuant to Fed R Civ P Rule 60(b)(3). I seek leave from the Second Ciruit Appellate Court for an extension of time to file my response to Appellee's reply brief and will file that response promptly once the Rule 60(b)(3) filing has been made with the District Court and added to the record of this appeal.

The evidence is presented in an investigative journalism exposé I completed and published on December 22, 2022, and have attached to this letter. Evidence in the article, obtained from the public domain, is likely to prove CEO for Plaintiff National Academy of Television Arts and Sciences ("NATAS"), Adam Sharp ("Sharp") conspired with former U.S. President Barack Obama ("Obama") and then FBI General Counsel, U.S. District Court judge Valerie Caproni, ("Caproni") to secretly infiltrate Twitter and turn it into a clandestine surveillance tool of the FBI and other departments of the U.S. Government.

Additional evidence released after the filing of my appellate brief by Twitter's new management under CEO Elon Musk, confirms that the FBI was in regular communication with Twitter employees and compelled them to take action that violated users' first amendment and fourth amendment rights.  https://www.washingtonpost.com/politics/2022/12/20/twitter-fbi-story-relies-far-more-insinuation-than-evidence/

More evidence is being released by Musk weekly, including a new traunch earlier today.  To my knowledge, neither Musk nor the Washington Post are presently aware of the public domain evidence I have found pertaining to Sharp, Obama and Caproni and the FBI's decades long efforts to penetrate encrypted communications technologies on the internet.

The Musk Twitter Files reveal FBI investigations on Twitter that go well beyond what the public has been previously told.  This is also beyond anything a reasonable person might expect or the law would allow.  All the while, FBI ignored serious criminal allegations including child abuse and exploitation as cited in this unrelated case.  https://endsexualexploitation.org/wp-content/uploads/Doe-v-Twitter_1stAmndComplaint_Filed_040721.pdf

Evidence presented by Musk indicates FBI agents and others repeatedly interacted with Twitter employees requesting they remove politically sensitive messages that were unfavorable to Joe Biden, including the now infamous suppression of information related to his son's laptop computer.

As outrageous as this allegation seems on its face, every element is supported by evidence and the co-conspirators will fail to disprove these claims.  This new evidence was unknown to me at the outset of this appeal, but is so important and so irrefutable, it must be considered.

I have alleged ab initio that my corporation was selected as a target of this litigation by Plaintiffs not because it bears responsivity for their alleged injury, but rather to deliberately prevent me from mounting my own defense pro se.  Evidence is likely to prove this was a deceitful plan executed by Plaintiffs with the assistance of vexatious non-party David George Sweigert and calculated to financially damage me and prevent a proper defense.  Plaintiffs will fail to demonstrate that they learned of my corporation without the assistance of Sweigert.

While it is true that I own the corporation Multimedia System Design, Inc ("MSD") which is the defendant in the original case, that corporation is wrongly named and has nothing to do with the internet posting that is the source of controversy in this case.  Even if the Court finds the corporation had some relationship to the specific actions cited, 47 USC § 230 should prevent a litigant for suing any corporation for the private internet postings of one of its employees even if that employee is the CEO.

Judge Caproni is aware of these allegations because she separately presided over Sweigert v Goodman (Case 1:18-cv-08653-VEC-SDA) throughout the entire duration of the original case that is the subject of this appeal.  Instead of seeking to confirm or deny my well founded and evidence backed allegations, Caproni took every opportunity to unjustly rule in Plaintiffs' favor and prevent me from substituting myself as the proper defendant.  Based on new information

learned in preparing this appeal, I allege that was done with intent by the judge to protect her former colleagues at the FBI and maintain their recently revealed clandestine control of Twitter.

These accusations are so serious, and the evidence backing them so unimpeachable, it requires the attention of the appellate board, even if my pro se status prevents me from presenting it in accordance with the strictest adherence to procedure.

The degree of seriousness this willful attack on the first amendment represents is so severe, it goes well beyond the significance of this case or me as a litigant.  The perpetrators well established pattern and practice of the alleged behavior is so well documented, it must receive not only the full attention of the appellate review board, but a recommendation of impeachment by Congress for both Valerie Caproni and former President Obama.  Only such extreme remedies could re-establish faith in the Judicial and Executive branches of the U.S. Government and the coveted constitutional protections this Appellate Court is intended to protect and defend.

Respectfully submitted,

Jason Goodman

**(EXHIBIT B)**

**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

### MOTION INFORMATION STATEMENT

Docket Number(s): 22-592                                    Caption [use short title]

Motion for: Leave of Court to file Amicus Brief

The National Academy of Television Arts and Sciences, Inc., and Academy of Television Arts & Sciences, Plaintiffs-Appellees,

v.

Jason Goodman, D/B/A CrowdSource The Truth Counter-Claimant-Counter Defendant-Appellant.

Set forth below precise, complete statement of relief sought:

The addition of the amicus brief to enlighten the Court

concerning Jason Goodman's allegations

about the author of the amicus brief

MOVING PARTY: D. George Sweigert, Amicus                OPPOSING PARTY: Jason Goodman
☐ Plaintiff          ☐ Defendant
☐ Appellant/Petitioner   ☐ Appellee/Respondent

MOVING ATTORNEY: D. G. Sweigert                        OPPOSING ATTORNEY:
[name of attorney, with firm, address, phone number and e-mail]

D. G. SWEIGERT, C/O                                    PMB 13339, 514 Americas WayBox Elder,

Spoliation-notice@mailbox.org                          South Dakota 57719

Court-Judge/Agency appealed from: S.D.N.Y. Hon. Valerie E. Caproni

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):_____

Opposing counsel's position on motion:
☐ Unopposed ☑ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below?                    ☐ Yes ☐ No
Has this relief been previously sought in this Court?      ☐ Yes ☐ No
Requested return date and explanation of emergency:_____

Is oral argument on motion requested?   ☐ Yes ☑ No  (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ☑ No  If yes, enter date:_____

Signature of Moving Attorney:
D. George Sweigert_____ Date: 1/7/2023_____   Service by: ☐ CM/ECF   ☑ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

## CERTIFICATE OF SERVICE

 I certify that on January 7, 2023, the foregoing document was served on the parties

below via email and to the Court via Temporary Pro Se Electronic Filing.

seth.katz@finnegan.com

MaryKate.Brennan@finnegan.com

 margaret.esquenet@finnegan.com

b.brett.heavner@finnegan.com

truth@crowdsourcethehuth.org

Signed this 7th day of January, 2022.

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**

# 22-592

## In the United States Court of Appeals

### FOR THE SECOND CIRCUIT

Jason Goodman,

*Counter-Claimant-Counter- Defendant Appellant*

v.

The National Academy of Television Arts and Sciences, Inc., Academy of Television Arts & Sciences,

*Plaintiffs-Appellees*

On Appeal from the United States District Court for the
Southern District of New York
Case No. 20-cv-7269 (VEC)  Valerie E. Caproni

**BRIEF OF *AMICUS CURIAE* D. GEORGE SWEIGERT,**

***Proposed Intervenor,***

**BRIEF SUPPORTS THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, PLAINTIFF-APPELLEES, AND AFFIRMANCE**

**PRO SE PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**AMERICA'S RV MAILBOX, PMB 13339**
**514 Americas Way, Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

**December 17, 2022**

## CORPORATE DISCLOSURE STATEMENT

In Accordance with the Federal Rules of Appellate Procedure rule 26.1, *Amicus Curiae* states as follows:

- Amicus maintains no financial interest in any company and/or subsidiary related to the parties of this appeal.

**December 17, 2022**

**PRO SE AMICUS**
**D. G. SWEIGERT, C/O**
**AMERICA'S RV MAILBOX, PMB 13339**
**514 Americas Way, Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

2

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................ 4

**AUTHORITY TO FILE** ................................................................. 5

**IDENTITY AND INTEREST OF AMICUS CURIAE** ..................................... 5

**INTRODUCTION AND SUMMARY OF ARGUMENT** ................................. 7

**ARGUMENT** ........................................................................... 8

**CONCLUSION** ........................................................................10

**FRAP RULE 29 AND 32 COMPLIANCE** .......................................10

**CERTIFICATE OF SERVICE** .......................................................11

# TABLE OF AUTHORITIES

**Cases**

*Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010)...... 9

*Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d* 968, 969, 503 N.E.2d 102, 102,

510 N.Y.S.2d 546, 547 (1986) (mem.)................................................................. 8

*Sweigert v. Goodman*, No. 18-CV-8653 (VEC) ..................................................... 9

*Sweigert v. Goodman,* 18-cv-08653-VEC-SDA, S.D.N.Y ...................................... 6

*United States v. Heleniak*, 14CR42A (W.D.N.Y. Jul. 10, 2015)............................. 5

*Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)...................... 5

**Rules**

F.R.A.P. 32(a)(5) ................................................................................................10

F.R.A.P. 32(a)(6) ................................................................................................10

F.R.A.P. 32(a)(7)(B) ...........................................................................................10

F.R.A.P. Rule 29(a)(4).........................................................................................10

## AUTHORITY TO FILE

No new issues are injected into this appeal by this brief.  *Universal City Studios, Inc. v. Corley*, 273 F.3d 429 (2d Cir. 2001)

When the *amicus* has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide "*United States v. Heleniak*, 14CR42A (W.D.N.Y. Jul. 10, 2015)

## IDENTITY AND INTEREST OF AMICUS CURIAE

*Amicus* (D. George Sweigert) files this instant brief in support of AFFIRMING the district court's order in question (which is a garden variety sanctions order against non-party Jason Goodman).  Movant *amicus* writes in support of the National Academy of Television Arts and Sciences, Inc., Academy of Television Arts & Sciences, *Plaintiffs-Appellees* (herein NATAS).

The Movant *amicus* was the *proposed-intervenor* in the district court action and was implicated into a conspiracy theory by Mr. Goodman, which he broadcast in dozens of social media podcasts (widely distributed to thousands of viewers).

The conspiracy theory, which Mr. Goodman now re-hashes again in this appeal, supposes the Movant *amicus* secretly plotted with NATAS, *Appellee,* agents to send a pre-litigation e-mail message to NATAS which commenced the legal

action.  To this end, Mr. Goodman's *Appellant* brief mentions Sweigert more than

twenty (20) times to lay-out Mr. Goodman's conspiracy theory (see below).

*Appellant's* brief presents this question to the Court.

> *3. Whether the Plaintiffs -Appellees conspired with non-party David George*
>
> *Sweigert ("Sweiget") to wrongfully bring about litigation, harass Goodman*
>
> *and his corporation's attorney with the specific intent to influence the*
>
> *outcome of the proceedings and repeatedly deceive the court with material*
>
> *misrepresentations, false statements, and illegal acts.*
>
> (Herein THIRD ISSUE)

Mr. Goodman's THIRD ISSUE seeks to re-litigate the conspiracy theories

contained within *Sweigert v. Goodman,* 18-cv-08653-VEC-SDA, S.D.N.Y. (Judge

Valerie E. Caproni (VEC)) appealed as No. 21-78 and No. 22-682 in this

Honorable Court (both appeals dismissed).

**District Court History.**  At the initial commencement of this action the Movant

*amicus* advised the district court, via letter of "related litigation", that Mr.

Goodman was a defendant in *Sweigert v. Goodman,* 18-cv-08653-VEC-SDA,

S.D.N.Y..

Nine (9) months later Movant *amicus* Sweigert sought intervention in this action.

By Judge Caproni's ORDER Sweigert  was permitted to file a formal motion

seeking intervention.  Sweigert submitted his motion.  *Appellant* Mr. Goodman's

attorney filed a motion in opposition. Sweigert filed a reply in opposition. Judge

Caproni denied the motion to intervene, thus Sweigert was an unsuccessful

intervenor.

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

**Mr. Goodman has NO standing**. Mr. Goodman was the sole owner and chief

corporate officer for the defendant in this action; e.g. Multimedia Systems Design,

Inc. (M.S.D.I.). Mr. Goodman, although the sole stockholder and operator of

M.S.D.I. (which owns the trademark for "Crowdsource The Truth") has no

standing in this legal action as he – like the Movant *amicus* – was an unsuccessful

intervenor.

Both, Mr. Goodman and Sweigert attempted to intervene in this legal action, and

both were denied such access. Mr. Goodman does not appeal the decision of Judge

Caproni regarding his unsuccessful attempt to intervene, but her sanction order

concerning the violation of the Stipulated Protection Order (S.P.O.). Not only

should this Honorable Court ignore Sweigert as an unsuccessful intervenor (as

suggested by NATAS, *Appellee*), it should also ignore Mr. Goodman (as he has the

same legal status as Sweigert – unsuccessful intervenor).

**Goodman complains of supposed pre-litigation activities**. If this Honorable

Court chooses to entertain Mr. Goodman's THIRD CLAIM conspiracy theory, it

would be wise to remember *Appellant* Goodman is alleging some sort of <u>pre-litigation civil conspiracy</u> between Sweigert and NATAS, *Appellee*. Essentially, Mr. Goodman contends another non-party (Adam Sharp) conspired with Sweigert to have an email sent to NATAS alerting them to a trademark violation appearing in one of Mr. Goodman's "Crowdsource the Truth" social media podcasts. Mr. Goodman suspects some kind of vague chicanery with the e-mail. Assuming *arguendo* the foregoing is true (which is flatly denied by Sweigert) New York State only recognizes a civil conspiracy when it is connected to a separately pleaded underlying tort, which remains unknown in this present case.

**<u>Failures of Mr. Goodman's legal counsel.</u>** Mr. Goodman openly blames his attorney in the district court proceeding for the problems he may have suffered. Problems unrelated to the Movant *amicus*. Movant *amicus* did re-publish the attorney's Twitter photo of himself with his daughter (with daughter's face blacked out). The attorney used that opportunity to withdraw from the case.

## <u>ARGUMENT</u>

**<u>Civil Conspiracy.</u>** New York does not recognize an independent tort of conspiracy. See *Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d* 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986) (mem.) ("[A]s we long ago held, a

mere conspiracy to commit a tort is never of itself a cause of action." (internal quotation marks and citation omitted; alteration incorporated)).

To state a claim for civil conspiracy under New York law, a plaintiff, in addition to alleging an underlying tort, must plead facts sufficient to support an inference of the following elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010) (internal citation omitted) (internal quotation marks omitted).

To sum up, Mr. Goodman has failed to establish any basis for a tortious pre-litigation civil conspiracy and his conclusory assertions of extra-judicial misconduct have been presented to Judge Caproni, who saw fit to take no judicial action on them.

This Court will note that at no time during the district court's proceedings was Sweigert identified as a witness, a custodian of records sought in discovery, nor held any position that could sway the presiding judge.  Except that, Judge Caproni was also the trial judge in *Sweigert v. Goodman*, No. 18-CV-8653 (VEC).  Judge Caproni stated her observation that Mr. Goodman "trafficked in conspiracy theories" after three and a half (3.5) years of presiding over Mr. Goodman's protracted litigation in *Sweigert v. Goodman.*

9

## CONCLUSION

For the foregoing reasons this Honorable Court should ignore the undersigned

Movant and Mr. Goodman and dismiss this appeal.

Signed December 17, 2022 under the penalties of perjury.

**PROPOSED INTERVENOR/AMICUS**

## FRAP RULE 29 AND 32 COMPLIANCE

This motion complies with the type-volume limitation of F.R.A.P. 32(a)(7)(B) as it

contains 2212 words.  F.R.A.P. Rule 29(a)(4) states brief must not exceed 2,600

words (1,477 words).

This reply complies with the typeface requirements of F.R.A.P. 32(a)(5) and the

type style requirements of F.R.A.P. 32(a)(6) because this brief has been prepared

in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times

New Roman font.

Signed December 17, 2022 under the penalties of perjury.

**PROPOSED INTERVENOR/AMICUS**
**D. G. SWEIGERT, C/O**
**PMB 13339, 514 Americas Way, Box Elder, SD 57719**
**Spoliation-nation@mailbox.org**

## <u>CERTIFICATE OF SERVICE</u>

 I certify that on December 18, 2022, the foregoing document was served on the

parties below via email and to the Court via Temporary Pro Se Electronic Filing.

seth.katz@finnegan.com

MaryKate.Brennan@finnegan.com

 margaret.esquenet@finnegan.com

b.brett.heavner@finnegan.com

truth@crowdsourcethehuth.org

Signed this 18th day of December, 2022.

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**

# UNITED STATES COURT OF APPEALS
# FOR THE
# SECOND CIRCUIT

| | |
|---|---|
| The National Academy of Television Arts and Sciences, Inc., and Academy of Television Arts & Sciences, Plaintiffs-Appellees,<br><br>v.<br><br>Jason Goodman, D/B/A CrowdSource The Truth Counter-Claimant-Counter Defendant-Appellant. | Docket No. 22-592 |

## MOTION FOR LEAVE OF COURT WITH ACCOMPANYING BRIEF OF *AMICUS CURIAE* D. GEORGE SWEIGERT,

*Proposed Intervenor,*

## BRIEF SUPPORTS AFFIRMANCE OF THE NATIONAL ACADEMY OF TELEVISION ARTS AND SCIENCES, PLAINTIFF-APPELLEES

**December 17, 2022**

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

## <u>CORPORATE DISCLOSURE STATEMENT</u>

In Accordance with the Federal Rules of Appellate Procedure rule 26.1, *Amicus Curiae* states as follows:

- Amicus maintains no financial interest in any company and/or subsidiary related to the parties of this appeal.

**December 17, 2022**

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**
**Spoliation-notice@mailbox.org**

2

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES**................................................................. 4

**MOTION FOR LEAVE OF COURT** ................................................. 5

**AUTHORITY TO FILE** ...................................................................... 7

**IDENTITY AND INTEREST OF AMICUS CURIAE** ..................... 7

**INTRODUCTION AND SUMMARY OF ARGUMENT** ................. 8

**CONCLUSION** .................................................................................... 9

**FRAP RULE 32 COMPLIANCE**......................................................10

**CERTIFICATE OF SERVICE** ..........................................................11

# TABLE OF AUTHORITIES

**Cases**

*Ryan v. CFTC* , 125 F.3d 1062, 1064 (7th Cir. 1997)............................................... 7

*Sweigert v. Goodman*, 18-CV-08653-VEC, S.D.N.Y............................................ 8

*United States v. Heleniak*, 14CR42A (W.D.N.Y. Jul. 10, 2015)............................. 7

**Rules**

F.R.A.P. Rule 29(a)(3)............................................................................... 5

F.R.A.P. Rule 29....................................................................................... 5

## <u>MOTION FOR LEAVE OF COURT</u>

Under Fed. R. App. P. 29, an *amicus curiae* must file a motion for leave to file a brief, include the proposed brief, state the movant's interest and the reason why an amicus brief is desirable and relevant to the disposition of the case. *See* Fed. R. App. P. 29.

F.R.A.P. Rule 29(a)(3) states:

> *Motion for Leave to File. The motion must be accompanied by the proposed brief and state:***(A)** *the movant's interest; and***(B)** *the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.*

**(A)      the movant's interest; the reduction in slanderous, conclusory and scurrilous materials injected into these proceedings by Mr. Jason Goodman, the Defendant-Appellant.**

During the life of the underlying legal action in the Southern District of New York (S.D.N.Y.) the *amicus curiae* acted as a proposed intervenor.

The proposed intervenor had a three-year litigation history with the Jason Goodman, *Counter-Claimant-Counter- Defendant Appellant.*

*The proposed intervenor-amicus* has been discussed at great length by the *Counter-Claimant-Counter- Defendant Appellant Jason Goodman* (herein Goodman) in his

5

initial brief, in which Mr. Goodman mentions the proposed-intervenor over twenty (20) times.

In Mr. Goodman's initial brief, under STATEMENT OF ISSUES PRESENTED FOR REVIEW, Mr. Goodman presents this question to the Court.

> *3. Whether the Plaintiffs -Appellees conspired with non-party David George Sweigert ("Sweiget") to wrongfully bring about litigation, harass Goodman and his corporation's attorney with the specific intent to influence the outcome of the proceedings and repeatedly deceive the court with material misrepresentations, false statements, and illegal acts.*

**(B) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.**

The *pro se* movant/amicus/intervenor D. George Sweigert presents the evidence from the original district court case record that exonerates the movant from Mr. Goodman's conclusory assertions, upon which Mr. Goodman seeks consideration as an appealable issue (ISSUE THREE, STATEMENT OF ISSUES).

This approach fosters the efficiency of the administration of justice by reduction the amount of time the Court must spend considering obvious errors proffered by Mr. Goodman.

## **AUTHORITY TO FILE**

When the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide "United States v. Heleniak, 14CR42A (W.D.N.Y. Jul. 10, 2015)

An amicus brief is appropriate where "the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide" (quoting Ryan v. CFTC , 125 F.3d 1062, 1064 (7th Cir. 1997) )

## **IDENTITY AND INTEREST OF AMICUS CURIAE**

The *amicus* was the *proposed-intervenor* in the district court action.  This Honorable Court may decide to treat this brief as submitted by a proposed intervenor of the original action or as an amicus brief.

The underlying district court case orbited issues concerning the posting of social media posts made by Mr. Goodman, *Counter-Claimant-Counter- Defendant Appellant.*  Mr. Goodman publishes social media posts on platforms such as YouTube, Twitter, and Facebook which are accessible to the public over the interstate wires of the Internet.

Besides posting social media posts about the National Academy of Television Arts and Sciences, Inc., Academy of Television Arts & Sciences, *Plaintiffs-Appellees,*

(herein **NATAS**) Mr. Goodman also included the proposed

intervenor/amicus/movant in these publications.

As a preliminary matter, when the underlying district court action was filed the

Movant *amicus* advised the district court of related litigation via letter, *Sweigert v.*

*Goodman*, 18-CV-08653-VEC, S.D.N.Y..  Then Movant amicus sought

intervention into the action, which was unsuccessful.  Judge Caproni presided over

this instant legal action under appeal (NATAS, *Appellee*) and the *Sweigert v.*

*Goodman* action.


## INTRODUCTION AND SUMMARY OF ARGUMENT


In this case, *Plaintiff-Appellant* sued *Defendant-Appellee* over social media posts

that used a protected image of the "EMMY AWARDS".

Jason Goodman, *Counter-Claimant-Counter- Defendant Appellant,* relies

predominantly on his personal speculation to create conclusory statements about an

alleged conspiracy between Movant *amicus* and NATAS, *Appellee*.

Mr. Goodman proffers broad conspiracy claims that supposedly interconnect the

Movant *amicus* with the NATAS, *Appellee*.  In essence, Mr. Goodman is alleging

some sort of civil conspiracy theory involving an e-mail message used to notify

NATAS of the offending social media podcast displaying the protected image.

## **CONCLUSION**

Therefore, in view of the foregoing, the undersigned respectfully requests that this

Honorable Court approve this request to file an *amicus curie* brief.

Signed December 17, 2022 under the penalties of perjury.

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**

9

## FRAP RULE 32 COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) as it contains 1119 words.

This reply complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and

the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been

prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-

point Times New Roman font.

Signed December 17, 2022 under the penalties of perjury.

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**
**Spoliation-nation@mailbox.org**

## CERTIFICATE OF SERVICE

I certify that on December 18, 2022, the foregoing document was served on the parties below via email and to the Court via Temporary Pro Se Electronic Filing.

seth.katz@finnegan.com

MaryKate.Brennan@finnegan.com

 margaret.esquenet@finnegan.com

b.brett.heavner@finnegan.com

truth@crowdsourcethehuth.org

Signed this 18th day of December, 2022.

**PROPOSED INTERVENOR**
**D. G. SWEIGERT, C/O**
**PMB 13339**
**514 Americas Way**
**Box Elder, SD 57719**

**(EXHIBIT C)**

From: **Jason Goodman** truth@crowdsourcethetruth.org
Subject: Re: Goodman v. Bouzy - 21-cv-10878
Date: January 6, 2023 at 2:11 PM
To: Berlin, Seth D. BerlinS@ballardspahr.com
Cc: Mishkin, Maxwell S. MishkinM@ballardspahr.com



I saw it and I disagree with your position. George Webb Sweigert is a non-party to this case. I see no reason for you to extend courtesies to non-parties aside from an ongoing need to communicate with coconspirators. This is a demand that you cease including non-parties on communications with me pertaining to this case.

> On Jan 6, 2023, at 2:07 PM, Berlin, Seth D. <BerlinS@ballardspahr.com> wrote:
>
> Please refer to our earlier email on the subject. Thank you.
>
> **Seth D. Berlin**
> **(He/Him/His)**
> 2022 Pro Bono Honor Roll – Gold
>
> **Ballard Spahr**
> LLP
>
> 1909 K Street, NW, 12th Floor
> Washington, DC 20006-1157
> 202.508.1122 DIRECT
> 202.661.2299 FAX
>
> berlins@ballardspahr.com
> VCARD
>
> --------------------------------
> www.ballardspahr.com
>
> _____
>
> **From:** Jason Goodman <truth@crowdsourcethetruth.org>
> **Sent:** Friday, January 6, 2023 2:06 PM
> **To:** Mishkin, Maxwell S. (DC) <MishkinM@ballardspahr.com>
> **Cc:** Berlin, Seth D. (DC) <BerlinS@ballardspahr.com>
> **Subject:** Re: Goodman v. Bouzy - 21-cv-10878
>
> ⚠ **EXTERNAL**
>
> I have asked you previously to stop including parties on our communications who are not parties to this case. Your continued inclusion of George Webb Sweigert furthers my belief that you have inappropriately conspired with him and his brother in this matter. Please explain why you insist on doing something that is not required and I have previously objected to.
>
>> On Jan 6, 2023, at 1:58 PM, Mishkin, Maxwell S. <MishkinM@ballardspahr.com> wrote:
>>
>> Mr. Goodman: I have attached a copy of the Memorandum of Law in Opposition to Plaintiff's Motion for Sanctions and accompanying Declaration of Seth D. Berlin (with exhibit thereto) filed today in *Goodman v. Bouzy*, Case No. 21-cv-10878-AT-JLC, on behalf of defendants Christopher Bouzy and Bot Sentinel Inc. Service copies are being sent by mail as well. Thank

and Def. Counsel incl. Service copies are being sent by mail as well." Thank you.

**Maxwell S. Mishkin**
**(he/him/his)**

## Ballard Spahr
<sub>LLP</sub>

1909 K Street, NW, 12th Floor,
Washington, DC 20006-1157
202.508.1140 direct

mishkinm@ballardspahr.com
vcard

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
www.ballardspahr.com


<21-cv-10878 - Dkt. 94 - Opp. to Rule 11 Sanctions Mot.PDF><21-cv-10878 - Dkt. 95 - Berlin Decl. ISO Opp. to Sanctions Mot.PDF>

**(EXHIBIT D)**

**From:** spoliation@posteo.net 📎

**Subject:** Jason Goodman hit with $12K Rule 11 motion -- Lawsuit directed at Twitter -- Laura Loomer 2.0

**Date:** January 6, 2023 at 2:34 PM

**To:** Spoliation spoliation@posteo.net, Jason jason@21stcentury3d.com, Jason Goodman truth@crowdsourcethetruth.org, George webb george.webb@gmail.com, Abuse abuse@twitter.com, Legal legal@twitter.com, Press press@twitter.com, Privacy privacy@twitter.com, Security security@twitter.com, Abuse abuse@odysee.com, Bjorn bjorn@odysee.com, Business business@odysee.com, Hello hello@odysee.com, Josh Finer josh@odysee.com, Julian julian@odysee.com, Legal legal@odysee.com, Security security@odysee.com, Spoliation notice spoliation-notice@mailbox.org, Letters letters@nypost.com, Comments comments@cnn.com, Tips tips@cnn.com, Colin colin@patreon.com, Copyright copyright@patreon.com, Disable disable@patreon.com, Legal legal@patreon.com, Privacy privacy@patreon.com, Richard_loury richard_loury@mied.uscourts.gov, Usms wanted usms.wanted@usdoj.gov, Tech pitches tech.pitches@vice.com, Presscanada presscanada@vice.com, Press press@vice.com, Issues pitches issues.pitches@vice.com, Culture pitches culture.pitches@vice.com, Ads ads@rumble.com, Bd bd@rumble.com, Licensing licensing@rumble.com, Pr pr@rumble.com, Support support@rumble.com, DHS OIG OfficePublicAffairs DHS-OIG.OfficePublicAffairs@oig.dhs.gov, Mediainquiry mediainquiry@hq.dhs.gov, Spoliation notice spoliation-notice@mailbox.org, Ccubedvp ccubedvp@hq.dhs.gov

---

Here is the Rule 11 sanctions motion against Jason Goodman who runs CrowdSource the Truth on the Odysee network.

Best,

rule-ll-email.pdf   ballard-spahr-
                    rule11-...ns.pdf

**(EXHIBIT E)**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**
**AT DETROIT**

George Webb Sweigert,          : CASE
                               :
        Plaintiff,             : NO - 2:20-cv-12933-GAD-KGA
                               :
V.                             : US DISTRICT COURT JUDGE
                               :
                               : Judge Gershwin A. Drain
                               :
CABLE NEWS NETWORK, INC        : RESPONSE TO ORDER
                               :
                               : TO SHOW CAUSE

**PLAINTIFF'S**

Plaintiff hereby files th
and, for the reasons s

The Plaintiff, George
lawsuit in District of C
transactions were co
added to some of the
the Court.

The Defendant, Cable
than the CNN Headqu
confused in person e

The Plaintiff requests
served on the Defend
Service.



**(EXHIBIT F)**



**E.U. Concerned Citizen** @LiberateYoutube · Nov 22, 2022

Agent Goonman, legal expert of #LAWFARE #BotSentinel #Bouzy #Defamation #lawtube @benjaminwittes Jason Goodman
 #Markle #AmberHeard @richardaeden
 chris bouzy
@NatetheLawyer
@rollingstone
@taylorlorenz
@wiczipedia
@vp
@ImperatorTruth

