**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                  :

JASON GOODMAN,                  :

                      :    No. 21 Civ. 10878-AT-JLC

             Plaintiff,    :

                      :    *Pro Se* Case

         -against-    :

                      :

CHRISTOPHER BOUZY, et al.,    :

                      :

         Defendants.   :

                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF DEFENDANTS CHRISTOPHER BOUZY, BOT SENTINEL INC., <u>SETH BERLIN, AND MAXWELL MISHKIN</u>

Seth D. Berlin (SB7978)
Maxwell S. Mishkin (admitted *pro hac vice*)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy,*
*Bot Sentinel Inc., Seth Berlin, and Maxwell Mishkin*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

INTRODUCTION ............................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................. 4

    A.    The Plaintiff ......................................................................... 4

    B.    The Movants ......................................................................... 5

    C.    The Underlying Dispute......................................................... 5

    D.    The Initial Complaint ........................................................... 7

    E.    The Amended Complaint ....................................................... 9

ARGUMENT ................................................................................................ 10

I.    BOT SENTINEL SHOULD BE DISMISSED BECAUSE IT IS NOT
ALLEGED TO HAVE PUBLISHED ANYTHING OR ENGAGED IN ANY
OTHER CONDUCT .................................................................... 11

II.    THE DEFAMATION CLAIM AGAINST BOUZY SHOULD BE
DISMISSED .............................................................................. 13

    A.    Goodman Fails To Plausibly Allege That The Challenged Tweet Is
False ................................................................................. 13

    B.    The Challenged Tweet Cannot Support The Implication Goodman
Ascribes To It...................................................................... 15

    C.    Bouzy's Conclusions Are Absolutely Protected Expressions Of Opinion ........... 17

    D.    Goodman Fails To Allege Facts That, If Proven, Would Constitute
Actual Malice ..................................................................... 20

        1.    Goodman Is Required To Prove Actual Malice......................... 21

        2.    Goodman Fails To Plausibly Allege That Bouzy Published
The Challenged Tweet With Actual Malice ............................. 24

III.    THE CIVIL CONSPIRACY CLAIM ALSO FAILS AS A MATTER OF LAW............ 26

IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST
BERLIN OR MISHKIN .............................................................. 26

V.    THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH
PREJUDICE ............................................................................. 29

CONCLUSION............................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos End-Payor Antitrust Litigation*,
  848 F.3d 89 (2d Cir. 2017)...............................................................................10

*Adelson v. Harris*,
  973 F. Supp. 2d 467 (S.D.N.Y. 2013).............................................................5, 10

*Albert v. Loksen*,
  239 F.3d 256 (2d Cir. 2001)...............................................................................12

*Aristocrat Plastic Surgery, P.C. v. Silva*,
  206 A.D.3d 26 (1st Dep't 2022) .........................................................................24

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................................13, 25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................10

*Biro v. Condé Nast*,
  622 F. App'x 67 (2d Cir. 2015) ..........................................................................23

*Biro v. Condé Nast*,
  883 F. Supp. 2d 441 (S.D.N.Y. 2012)....................................................10, 18, 19

*Biro v. Condé Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)..................................................5, 21, 22, 25

*Braden v. News World Communications, Inc.*,
  No. CA-10689'89, 1991 WL 161497 (D.C. Super. Ct. Mar. 1, 1991) ...................22

*Brahms v. Carver*,
  33 F. Supp. 3d 192 (E.D.N.Y. 2014) ..................................................................19

*Brimelow v. N.Y. Times Co.*,
  No. 21-66-CV, 2021 WL 4901969 (2d Cir. Oct. 21, 2021)...................................25

*BYD Co. v. VICE Media LLC*,
  531 F. Supp. 3d 810 (S.D.N.Y. 2021)..................................................................11

*CACI Premier Technology, Inc. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ..............................................................................19

*Casper Sleep, Inc. v. Mitcham*,
  204 F. Supp. 3d 632 (S.D.N.Y. 2016).................................................................10

*Celle v. Filipino Reporter Enterprises, Inc.*,
    209 F.3d 163 (2d Cir. 2000)............................................................................17, 23

*Chapadeau v. Utica Observer-Dispatch, Inc.*,
    38 N.Y.2d 196 (1975)...........................................................................................24

*Chapin v. Knight-Ridder, Inc.*,
    993 F.2d 1087 (4th Cir. 1993) ......................................................................14, 16

*Chau v. Lewis*,
    771 F.3d 118 (2d Cir. 2014).................................................................................18

*Coleman v. Grand*,
    523 F. Supp. 3d 244 (E.D.N.Y. 2021) .................................................................23

*Center for Medical Progress v. Planned Parenthood Federation of America*,
    551 F. Supp. 3d 320 (S.D.N.Y. 2021)..................................................................23

*Ellis v. Time, Inc.*,
    No. Civ.A.94-1755(NHJ), 1997 WL 863267 (D.D.C. Nov. 18, 1997) ...................22

*Falls Lake National Insurance Co. v. DNA Plumbing Contractors, Inc.*,
    No. 20CV2798RJDRER, 2021 WL 3518279 (E.D.N.Y. May 4, 2021).................11

*Faltas v. State Newspaper*,
    928 F. Supp. 637 (D.S.C. 1996)...........................................................................20

*Farber v. Jefferys*,
    103 A.D.3d 514 (1st Dep't 2013) .........................................................................22

*Ganske v. Mensch*,
    480 F. Supp. 3d 542 (S.D.N.Y. 2020).............................................................2, 17

*Garrison v. Louisiana*,
    379 U.S. 64 (1964)...............................................................................................21

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974).............................................................................................22

*Goldman v. Reddington*,
    No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462 (E.D.N.Y. Sept. 9, 2021).......24

*Goodman v. Sharp*,
    No. 21-CV-10627 (VEC), 2022 WL 2702609 (S.D.N.Y. July 12, 2022) ................8

*Gross v. N.Y. Times Co.*,
    623 N.E.2d 1163 (N.Y. 1993)..............................................................................18

*Sussman ex rel. Guilden v. Bank of Israel*,
  56 F.3d 450 (2d Cir. 1995)..............................................................................27

*Harte-Hanks Communications, Inc. v. Connaughton*,
  491 U.S. 657 (1989)..........................................................................................25

*Harvey v. CNN, Inc.*,
  520 F. Supp. 3d 693 (D. Md. 2021) ..................................................................12

*Houlahan v. World Wide Association of Specialty Programs & Schools*,
  No. 04-01161(HHK), 2006 WL 2844190 (D.D.C. Sept. 29, 2006).......................22

*Immuno AG. v. Moor-Jankowski*,
  549 N.E.2d 129 (N.Y. 1989)..............................................................................20

*Immuno AG v. Moor-Jankowski*,
  567 N.E.2d 1270 (N.Y. 1991) ............................................................................13

*Jacobson v. CBS Broadcasting Inc.*,
  19 N.E.3d 1165 (Ill. Ct. App. 2014) ..................................................................23

*Jacobus v. Trump*,
  51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017) ..............................................................17

*Janklow v. Newsweek, Inc.*,
  759 F.2d 644 (8th Cir. 1985) ............................................................................16

*Kahl v. Bureau of National Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) ..........................................................................10

*Katzman v. Victoria's Secret Catalogue*,
  167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................................29

*Kim v. Kimm*,
  884 F.3d 98 (2d Cir. 2018)................................................................................28

*Kinsey v. N.Y. Times Co.*,
  991 F.3d 171 (2d Cir. 2021)................................................................................2

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)..............................................................................26

*Lauderback v. ABC*,
  741 F.2d 193 (8th Cir. 1984) ............................................................................19

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1977)........................................................................17, 18

*Libre By Nexus v. Buzzfeed, Inc.*,
  311 F. Supp. 3d 149 (D.D.C. 2018) ...........................................................15

*Mayfield v. NASCAR, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ....................................................................21

*McCafferty v. Newsweek Media Group*,
  955 F.3d 352 (3d Cir. 2020) .....................................................................21

*McDougal v. Fox News Network, LLC*,
  489 F. Supp. 3d 174 (S.D.N.Y. 2020) .....................................................21

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ..................................................................21

*National Academy of Television Arts & Sciences, Inc. v. Multimedia System Design, Inc.*,
  551 F. Supp. 3d 408 (S.D.N.Y. 2021) ........................................................4

*National Association of Letter Carriers v. Austin*,
  418 U.S. 264 (1974) ..................................................................................13

*Nelson Auto Center v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) ....................................................................21

*Palin v. N.Y. Times Co.*,
  510 F. Supp. 3d 21 (S.D.N.Y. 2020) ........................................................23

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986) ..................................................................................13

*Pippen v. NBCUniversal Media*,
  734 F.3d 610 (7th Cir. 2013) ....................................................................21

*Pollnow v. Poughkeepsie Newspapers, Inc.*,
  107 A.D.2d 10 (2d Dep't 1985) ................................................................24

*Ram v. Moritt*,
  612 N.Y.S.2d 671 (App. Div. 1994) .........................................................20

*Rinaldi v. Viking Penguin, Inc.*,
  420 N.E.2d 377 (N.Y. 1981) .....................................................................25

*Ryniewicz v. Clarivate Analytics*,
  803 F. App'x 858 (6th Cir. 2020) .............................................................21

*San Antonio Express-News v. Dracos*,
  922 S.W.2d 242 (Tex. App. 1996) ............................................................23

*Sandals Resorts International Ltd. v. Google, Inc.*,
    86 A.D.3d 32 (1st Dep't 2011) ........................................................................18

*Schatz v. Republican State Leadership Committee*,
    669 F.3d 50 (1st Cir. 2012) ......................................................................21, 25

*Scherer v. United States*,
    241 F. Supp. 2d 1270 (D. Kan. 2003) ...........................................................27

*Sheehy v. Brown*,
    335 F. App'x 102 (2d Cir. 2009) ....................................................................27

*Small Business Bodyguard Inc. v. House of Moxie, Inc.*,
    230 F. Supp. 3d 290 (S.D.N.Y. 2017)............................................................19

*Steele v. Goodman*,
    No. 3:21CV573, 2022 WL 4274120 (E.D. Va. Sept. 15, 2022)........................8

*Stepanov v. Dow Jones & Co.*,
    120 A.D.3d 28 (1st Dep't 2014) .....................................................................16

*Sweigert v. Goodman*,
    No. 118CV08653VECSDA, 2021 WL 4295262 (S.D.N.Y. Sept. 21, 2021) ...........8

*Sweigert v. Goodman*,
    No. 18-CV-8653 (VEC), 2021 WL 2678621 (S.D.N.Y. June 30, 2021)................1

*Tah v. Global Witness Publishing, Inc.*,
    991 F.3d 231 (D.C. Cir. 2021) .......................................................................21

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017)......................................................................13, 14

*Tavoulareas v. Piro*,
    759 F.2d 90 (D.C. Cir. 1985) .........................................................................12

*In re Terrorist Attacks on Sept. 11, 2001*,
    No. 03MD01570GBDSN, 2022 WL 4227151 (S.D.N.Y. May 3, 2022)...............11

*Tocker v. Philip Morris Cos.*,
    470 F.3d 481 (2d Cir. 2006)...........................................................................29

*Turner v. Wells*,
    879 F.3d 1254 (11th Cir. 2018) ................................................................21, 23

*United Transportation Union v. State Bar of Michigan*,
    401 U.S. 576 (1971)........................................................................................28

*US Dominion, Inc. v. MyPillow, Inc.*,
No. 1:21-CV-0445 (CJN), 2022 WL 1597420 (D.D.C. May 19, 2022)..................................29

*Virginia v. Black*,
538 U.S. 343 (2003)..................................27

*Walker v. Beaumont Independent School District*,
938 F.3d 724 (5th Cir. 2019) ..................................21

*In re White*,
No. 2:07cv342, 2013 WL 5295652 (E.D. Va. Sept. 13, 2013)..................................27

*Wright v. Dennis*,
No. 0604318/2006, 2008 WL 475914 (N.Y. Sup. Ct. Feb. 11, 2008)..................................13

*Yeager v. National Public Radio*,
773 F. App'x 1030 (10th Cir. 2019) ..................................21, 23

**Statutes**

N.Y. Civ. Rights Law § 76-a ..................................23

**Other Authorities**

Fed. R. Evid. 201(d)..................................2

2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017)..................................11

Defendants Christopher Bouzy ("Bouzy"), Bot Sentinel Inc. ("Bot Sentinel"), Seth Berlin ("Berlin") and Maxwell Mishkin ("Mishkin") (together, "Movants") respectfully submit this Memorandum of Law in Support of their Motion to Dismiss Plaintiff Jason Goodman's Amended Complaint ("Am. Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## INTRODUCTION

As Judge Caproni recently observed, Plaintiff Jason Goodman is one of several "*pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet." *Sweigert v. Goodman*, No. 18-CV-8653 (VEC), 2021 WL 2678621, at *1 (S.D.N.Y. June 30, 2021).[1]  Other courts have harshly criticized Goodman for his "acrimonious and vexatious litigation practices," which have extended beyond his principal antagonists to others with nominal involvement and even to Court personnel.  *See* Order Enjoining Defendant From Contacting Court Personnel And Family at 2, *Sweigert v. Goodman*, No. 22-cv-10002 (E.D. Mich. Feb. 11, 2022), ECF No. 12 (enjoining Goodman from "obtain[ing] the personal cellular and home phone numbers of Court staff and their family members and contact[ing] them outside of Court business hours"); Order Striking Filings at 3, *Sweigert v. Multimedia Sys. Design, Inc.*, No. 2:22-cv-10642-GAD-EAS (E.D. Mich. July 20, 2022), ECF No. 46 (noting that "Goodman continues to engage in this inappropriate behavior in this case, despite the Court's command that [he] stop making harassing phone calls to Court personnel").

---

[1] *See, e.g.*, *Sweigert v. Multimedia Sys. Design, Inc.*, No. 22-cv-12696 (E.D. Mich.); *Sweigert v. Goodman*, No. 22-cv-02788 (S.D.N.Y); *Sweigert v. Multimedia Sys. Design, Inc.*, No. 22-cv-10642 (E.D. Mich.); *Sweigert v. Goodman*, No. 22-cv-10002 (E.D. Mich.); *Sweigert v. Goodman*, No. 18-cv-8653 (S.D.N.Y.); *Sweigert v. Goodman*, No. 18-cv-1633 (D.S.C.); *Steele v. Goodman*, No. 3:21CV573 (E.D. Va.).  Pursuant to Local Rule 7.2, Movants are providing unrepresented parties with printed copies of all decisions cited herein "that are unpublished or reported exclusively on computerized databases."

This case initially arose out of another unsolicited telephone call made by Goodman in the wake of another online dispute, this time with Brookings scholar Benjamin Wittes, whom Goodman accused of covering up a murder. When Bouzy criticized Goodman on Twitter for making such a far-fetched accusation, Goodman placed a lengthy phone call to Bouzy. In that call, Goodman (1) volunteered that he has been accused online of rape (though he denies that accusation), and (2) threatened to sue Bouzy if he were to speak publicly about that already-public accusation. *See* Declaration of Seth D. Berlin ("Berlin Decl.") ¶ 7 & Ex. 3; *see also* Compl. at 3, ¶¶ 13-16.[2] Goodman subsequently sent Bouzy an "official demand" along the same lines. *See* Berlin Decl. ¶ 4 & Ex. 1.

Finding all this remarkable, Bouzy published on Twitter an accurate summary of his interactions with Goodman, writing that "Jason Goodman, the man who falsely accused Wittes of being part of a murder cover up, and called my cell after finding my number on the internet, sent me a cease and desist in [a direct message]. Jason doesn't want me tweeting that he threatened me not to tweet about his rape allegations" (the "Challenged Tweet"). Goodman responded by filing his Initial Complaint, asserting a defamation claim against Bouzy; his company Bot Sentinel, which is not alleged to have published the Challenged Tweet; and George Webb Sweigert, who has no connection to Bouzy or Bot Sentinel (or the Challenged Tweet).

---

[2] Because the three exhibits submitted with the Berlin Declaration are referenced in and integral to the Amended Complaint (two were also attached to the Initial Complaint), and are subject to judicial notice in any event, the Court may consider them on a motion to dismiss without converting it into a summary judgment motion. *See Kinsey v. N.Y. Times Co.*, 991 F.3d 171, 174 (2d Cir. 2021); *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545-46 (S.D.N.Y. 2020) (on a motion to dismiss, court can consider "documents attached to the complaint as exhibits or incorporated in the complaint by reference," as well as records that the court may "take judicial notice of," including "tweets [that] are integral to the allegations in the complaint and necessary to place [challenged] comments in context") (citation omitted); Fed. R. Evid. 201(d). Nevertheless, since Movants are submitting "additional written materials," they are in an abundance of caution filing and serving the notice required by Local Civil Rule 12.1.

Following a pre-motion letter to Goodman (the "Pre-Motion Letter"), Bouzy and Bot Sentinel moved to dismiss the Initial Complaint for failure to state a claim. ECF Nos. 78-81. Goodman filed a Rule 11 motion against them and Berlin over the Pre-Motion Letter. ECF Nos. 86, 94-95. Separately, the Court dismissed Sweigert for lack of personal jurisdiction, but granted Goodman leave to amend. ECF Nos. 59, 82.

Rather than simply plead additional jurisdictional allegations against Sweigert as authorized, Goodman filed a sprawling Amended Complaint in which his penchant for "outlandish conspiracy theories," as Judge Caproni put it, is on full display. The new Complaint reads like a "greatest hits" of Goodman's many past disputes, and expressly describes how most of them have already been heard by other tribunals. Am. Compl. at 17-18 (complaining about multiple actions in E.D. Va.), 21-32 (same for multiple actions in E.D. Va., S.D.N.Y., and E.D. Mich.), 39 ¶ 75 (same, adding D.S.C. proceeding); *see also* note 1 *supra*. In the new Complaint, Goodman tries to spin a web of these completely unrelated claims into a fraudulent conspiracy involving two Sweigerts, scholars from Brookings and the Woodrow Wilson Center, the sponsors of the Emmy Awards, their lawyers, and a host of non-parties ranging from a *Washington Post* reporter to an employee of the Eastern District of Michigan Clerk's office.

The Amended Complaint makes precious few factual allegations against Movants, who were not involved in the prior proceedings Goodman details. It essentially re-alleges his prior defamation claim against Bouzy and Bot Sentinel, adding an allegation that *Bouzy* falsely accused *Goodman* of falsely accusing *Wittes* of a cover-up. It also asserts vague conspiracy claims against Berlin and Mishkin over the Pre-Motion Letter and the (false) allegation that Wittes is funding the defense of Bouzy and Bot Sentinel. Because none of these allegations is sufficient to state a claim, the Court should dismiss the Amended Complaint against Movants.

At the outset, Bot Sentinel should be dismissed since it did not publish the Challenged Tweet, and Goodman does not plead otherwise. The Challenged Tweet likewise cannot give rise to a defamation claim against Bouzy for multiple reasons. First, the tweet is undeniably true because, as Goodman has conceded, he was publicly accused of rape and demanded that Bouzy not tweet about that accusation. Second, as a matter of law, the Challenged Tweet does not convey the defamatory implication Goodman ascribes to it – namely, that he is actually *guilty* of rape. Third, in any event, that conclusion – as well as Bouzy's suggestions that Goodman was foolish for volunteering the rape accusation and had falsely accused Wittes of a cover-up – are constitutionally protected expressions of opinion. Fourth, Goodman is required to plead facts that, if proven, would demonstrate that Bouzy published the statements at issue with "actual malice" fault, but Goodman failed to do so. And, since there is no viable underlying tort claim, Goodman's claim for civil conspiracy against Bouzy also fails.

Finally, the Court should dismiss Goodman's vague claims against Berlin and Mishkin. Neither sending a Pre-Motion Letter contemplated by the Court's rules nor allegedly receiving funds for litigation defense costs – even if it were true, which it is not – gives rise to a claim, whether for obstruction of justice, racketeering, or civil conspiracy.

Because no amount of re-pleading can transform protected speech or counsel's lawful conduct into a viable claim, the claims against Movants should be dismissed with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Plaintiff

Plaintiff Goodman describes himself as "a documentary filmmaker," "investigative journalist," "talk show host," and creator of the social media property "Crowdsource the Truth," Am. Compl. ¶ 13, which Judge Caproni described as a site that "produces video content that, *inter alia*, traffics in wild conspiracy theories," *Nat'l Acad. of Television Arts & Scis., Inc. v.*

*Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 417 (S.D.N.Y. 2021). Goodman previously published on Twitter under the handle @csthetruth. Am. Compl. at 33.

### B. The Movants

Defendant Bouzy is the founder and CEO of Defendant Bot Sentinel. Am. Compl. ¶ 14. Bot Sentinel's stated mission is to help users of Twitter avoid disinformation and other "untrustworthy internet activity." *Id.* ¶¶ 14-15. Bouzy regularly publishes comments on Twitter under the handle @cbouzy. Am. Compl. Ex. I.

Defendant Berlin is a Senior Counsel at Ballard Spahr LLP, which represents Bouzy and Bot Sentinel. Am. Compl. ¶ 23. Berlin has practiced law since 1991 and has been a member in good standing of the bar of this Court since 2003. Berlin Decl. ¶ 1. Defendant Mishkin is an Associate at Ballard Spahr, Am. Compl. ¶ 24, and has been admitted *pro hac vice*, ECF No. 87.

### C. The Underlying Dispute

In December 2020, Goodman engaged in a heated online exchange with Defendant Wittes, a Senior Fellow at the Brookings Institution and editor-in-chief of the *Lawfare* blog. Am. Compl. at 18-19. Goodman had theorized that Peter Smith, the GOP operative who sought Hillary Clinton's emails from Russia, was murdered in 2017, and that Wittes participated in covering up that murder. *Id.*[3] According to the Amended Complaint, Wittes "agreed to engage in a text interview with Goodman over Twitter," but, in Goodman's view, "avoided answering

---

[3] *See, e.g.*, Shane Harris & Reid J. Epstein, *GOP Activist Who Sought Hillary Clinton Emails Killed Himself*, The Wall Street Journal (July 14, 2017), https://www.wsj.com/articles/gop-activist-who-sought-clinton-emails-killed-self-1500002994 ("Peter W. Smith, a Republican political activist and financier from Chicago who mounted an effort to obtain former Secretary of State Hillary Clinton's emails from Russian hackers, died on May 14 after asphyxiating himself in a hotel room in Rochester, Minn., according to local authorities."). The Court may consider this news report on a motion to dismiss because it is offered not for the truth of its contents but to demonstrate a background fact, namely, a pre-existing public controversy. *See Adelson v. Harris*, 973 F. Supp. 2d 467, 483-84 (S.D.N.Y. 2013), *aff'd*, 876 F.3d 413 (2d Cir. 2017); *Biro v. Condé Nast*, 963 F. Supp. 2d 255, 279 (S.D.N.Y. 2013), *aff'd*, 622 F. App'x 67 (2d Cir. 2015).

pertinent questions and prematurely terminated the session." *Id.* at 19. Goodman subsequently tweeted that "Wittes refuses to answer serious questions about his role, be it witting or unwitting, in the coverup of Peter Smith's death, which I allege was murder." Berlin Decl. Ex. 2.

Bouzy interjected his own tweet, defending Wittes for allowing Goodman "to ask questions" about what Bouzy characterized as "unsubstantiated garbage weaved together from [Goodman's] imagination." *Id.* In response to Bouzy's message, Goodman "search[ed] the internet for Bouzy's phone number" and "call[ed] him up [to] speak for more than one hour." Compl. at 20. Goodman later published a recording of that call. *Id.*[4]

During the call, Goodman characterized Bouzy's tweet as "insulting" and "bullying," and Bouzy responded that Goodman's accusations against Wittes were neither "verified" nor "credible." Berlin Decl. Ex. 3 at 4:11-22. Bouzy then posed the following hypothetical: "Let's say I find someone who alleges that you raped them, or, you know, some other piece of evidence that seems credible to me, and I put that online. Then let's say it's not true, and let's say I retract it." *Id.* at 8:12 – 9:1 (cross-talk omitted). Remarkably, to Bouzy's surprise, Goodman responded by *admitting* that there already *were* such allegations against him, volunteering that, although he had not raped anyone, "You will find a litany of social engineering liars who have been pursuing me for years with false claims along the lines of what you're suggesting," *id.* at 9:17-21, and that "[a]nyone can put out an allegation that someone has raped someone," *id.* at 11:8-9. Goodman

---

[4] Goodman titled this recording "Is Botsentinel CEO Christopher Bouzy A Malicious Internet Super Troll Protecting Ben Wittes?" and, as of this filing, it remains available online at https://odysee.com/@Crowdsourcethetruth:d/BOUZYBOTSENTINEL:a. The Court may properly consider the recording in reviewing this Motion because it is integral to and incorporated by reference into the Amended Complaint, at 20. *See* note 2 *supra*. For the Court's convenience, a transcript of the first ten minutes of the hour-long call, which contains the portion of dialogue relevant here, is also attached as Exhibit 3 to the Berlin Declaration.

threatened that, "if you start publishing shit about me . . . we're going to get into a lawsuit," *id.* at 11:17-19, further asserting, "I will sue you for libel and slander," *id.* at 9:2-3.

Goodman subsequently sent Bouzy a direct message (the "DM") stating, "This is an official demand that you cease and desist from making false public allegations implying that Jason Goodman has been involved in the crime of rape." Berlin Decl. Ex. 1. In the DM, Goodman stated that he "has never been accused of rape by any putative *victim*," but, as he had in his phone call to Bouzy, acknowledged that there were in fact such "false allegations made on the internet by a *third party*," while contending that this third party had "no actual knowledge" or "supportive evidence to substantiate the alleged accusations." *Id.* (emphasis added).

After receiving the DM, Bouzy published a screenshot of it on Twitter, together with the Challenged Tweet observing that "Jason Goodman, the man who falsely accused Wittes of being part of a murder cover up, and called my cell after finding my number on the internet, sent me a cease and desist in [a direct message]. Jason doesn't want me tweeting that he threatened me not to tweet about his rape allegations." Berlin Decl. Ex. 1.

### D. The Initial Complaint

Acting *pro se*, Goodman filed his Initial Complaint in this matter in December 2021. Goodman alleged a single cause of action for defamation arising solely out of the Challenged Tweet, Compl. ¶¶ 27-35, and sought unspecified compensatory and punitive damages, *id.* at 7.

On November 23, 2022, shortly after Magistrate Judge Cott issued a Report and Recommendation concluding that Goodman had effected service on Bouzy and Bot Sentinel, undersigned counsel notified the Court that Bouzy and Bot Sentinel "intend[ed] to follow the procedures set out in Rule III.B. of [this Court's] Individual Practices in connection with moving to dismiss Plaintiff's claims." ECF No. 68. Undersigned counsel then served Goodman with the Pre-Motion Letter on behalf of Bouzy and Bot Sentinel on December 5, 2022. The next day,

Goodman responded by threatening to seek sanctions against undersigned counsel, *see* ECF No. 74, as he has done multiple times in other litigation,[5] thereby making it clear that a formal motion to dismiss would be required. On December 12, 2022, Bouzy and Bot Sentinel moved to dismiss Goodman's Initial Complaint against them for failure to state a claim. ECF Nos. 78-81.[6]

The next day, December 13, 2022, the Court issued an Order adopting in large part Magistrate Judge Cott's Report and Recommendation dismissing Defendant Sweigert for lack of personal jurisdiction, but granting Goodman leave to file an amended complaint. ECF No. 82; *see also* ECF No. 59 at 1 (R&R recommending "that Goodman be given leave to amend his complaint against Sweigert"); *id.* at 11 (recommending that Goodman be "allow[ed] a final opportunity to plead facts with specificity that could support a finding of personal jurisdiction"); *id.* at 12 ("Goodman should be given the opportunity to plead cognizable jurisdictional facts" against Sweigert); *id.* at 15 ("[T]he Court should grant Sweigert's motion to dismiss . . . , but Goodman should be given leave to amend his complaint against Sweigert.").

On December 27, 2022, Goodman moved for Rule 11 sanctions against Bouzy, Bot Sentinel, and Berlin over the Pre-Motion Letter, which Goodman attached to that motion. ECF No. 86. Bouzy, Bot Sentinel, and Berlin filed an opposition explaining that they had not presented the Pre-Motion Letter to the Court and it was entirely proper in any event. ECF No.

---

[5] *See Steele v. Goodman*, No. 3:21CV573, 2022 WL 4274120, at *5 (E.D. Va. Sept. 15, 2022) (denying Goodman's motion for sanctions); *id.*, ECF No. 46, at 5-7 (E.D. Va. Jan. 25, 2023) (same); *Goodman v. Sharp*, No. 21-CV-10627 (VEC), 2022 WL 2702609, at *9 (S.D.N.Y. July 12, 2022) (same); *Sweigert v. Goodman*, No. 118CV08653VECSDA, 2021 WL 4295262, at *1 (S.D.N.Y. Sept. 21, 2021) (denying Goodman's contempt motion).

[6] In a December 20, 2022 Order, ECF No. 83, the Court noted that Goodman had obtained from the Clerk a certificate of default against Bouzy and Bot Sentinel, treated their November 23, 2022 letter to the Court (ECF No. 68) as a motion to set aside that default, directed them to file a letter by January 3, 2023 explaining their delay in responding (which they did, *see* ECF No. 90), and held their motion to dismiss in abeyance pending resolution of the default issue.

94. The response also sought their fees and costs, *id.*, and submitted a declaration from Berlin explaining under oath that those fees had been paid by Bouzy, ECF No. 95 ¶ 18.

### E. The Amended Complaint

On January 17, 2023, Goodman filed the now-operative Amended Complaint. ECF No. 100. In it, Goodman alleges causes of action for fraud (Count I), defamation (Count II), abuse of process (Count III), and civil conspiracy (Count IV). The Amended Complaint adds eight new defendants, and a host of allegations that do not pertain to Movants. In particular, Counts I and III relate exclusively to prior proceedings, in no way involving Movants.

Count II essentially re-alleges the same defamation claim that Goodman had asserted in the Initial Complaint. Goodman adds a reference to Bouzy's allegedly false "statements . . . declaring [that] Goodman had falsely accused Wittes" of covering up Smith's murder. Am. Compl. ¶ 67. Goodman's civil conspiracy claim also vaguely alleges that Bouzy "derived income as a direct or indirect result of [his] participation" in an alleged "Enterprise." *Id.* ¶ 90.

Bot Sentinel is not mentioned specifically in any of the Amended Complaint's causes of action. Although Bot Sentinel is alleged to be a "tool deployed by Bouzy to engage in cyber harassment," *id.* at 20, Goodman does not allege Bouzy did so here, instead complaining only about a post by him on Twitter, *id.* at 20-21, ¶¶ 63-73; *see also id.* ¶ 41 (advancing identical allegation against Bouzy).

As for Berlin and Mishkin, the Amended Complaint also mentions them only in passing. *Id.* ¶¶ 24-25 (identifying them as parties), ¶¶ 50-51 (alleging jurisdiction over them based on sending purportedly "harassing extrajudicial letters . . . prior to appearing as counsel for Defendants Bouzy and Bot Sentinel in violation of 18 U.S. Code § 1503"); ¶ 91 (complaining that Wittes "invested money" derived from the so-called "Enterprise" in "financ[ing] the civil defense of Bouzy and Bot Sentinel by retaining Ballard Spahr attorneys Berlin and Mishkin").

Because the allegations against Movants fail to state a claim, and amendment would be futile, the Amended Complaint should be dismissed with prejudice as to them.

## **ARGUMENT**

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *In re Actos End-Payor Antitrust Litig.*, 848 F.3d 89, 97 (2d Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Courts review a complaint's factual allegations to determine whether they plausibly support plaintiff's legal claim for relief. *Id.* at 98. Those "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and "[t]he Court need not credit . . . 'mere conclusory statements' or 'threadbare recitals of the elements of a cause of action,'" *Casper Sleep, Inc. v. Mitcham*, 204 F. Supp. 3d 632, 637 (S.D.N.Y. 2016) (quoting *Iqbal*, 556 U.S. at 678).

In a case alleging defamation or otherwise challenging speech, the task of evaluating the legal sufficiency of a complaint at this preliminary stage is also one of constitutional importance:

> The First Amendment guarantees freedom of speech and freedom of the press. Costly and time-consuming defamation litigation can threaten those essential freedoms. To preserve First Amendment freedoms and give reporters commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits.

*Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 108-09 (D.C. Cir. 2017) (Kavanaugh, J.). For that same reason, New York courts have emphasized the "particular value in resolving defamation claims at the pleading stage, so as not to protract litigation through discovery and trial and thereby chill the exercise of constitutionally protected freedoms." *Biro v. Condé Nast*, 883 F. Supp. 2d 441, 457 (S.D.N.Y. 2012) (internal marks omitted) (quoting *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 828 (N.Y. 1995)); *see also Adelson*, 973 F. Supp. 2d at 481

10

("Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage.") (internal marks omitted). Furthermore, pre-discovery adjudication of defamation claims is particularly effective because "unlike in most litigation, in a libel suit the central event – the communication about which suit has been brought – is ordinarily before the judge at the pleading stage. . . . He or she may assess it upon a motion to dismiss, firsthand and in context." 2 Robert D. Sack, *Sack on Defamation* § 16.2.1 (5th ed. 2017).[7]

## I. BOT SENTINEL SHOULD BE DISMISSED BECAUSE IT IS NOT ALLEGED TO HAVE PUBLISHED ANYTHING OR ENGAGED IN ANY OTHER CONDUCT.

"Under New York law, a defamation plaintiff must establish (1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *BYD Co. v. VICE Media LLC*, 531 F. Supp. 3d 810, 818 (S.D.N.Y. 2021) (citation and internal marks omitted), *aff'd*, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022), *cert. denied*, 143 S. Ct. 103 (2022). Here, any claim against Bot Sentinel fails as a matter of law because Goodman pleads no facts that would even plausibly allege that Bot Sentinel published the Challenged Tweet, which he

---

[7] Although the Court held in abeyance Bouzy and Bot Sentinel's motion to dismiss the Initial Complaint pending resolution of the default issue, *see* note 6 *supra*, Goodman's Amended Complaint "superseded the prior complaint[] and mooted the default[]" against them. *In re Terrorist Attacks on Sept. 11, 2001*, No. 03MD01570GBDSN, 2022 WL 4227151, at *34 (S.D.N.Y. May 3, 2022) ("courts in this Circuit consistently find that when an amended complaint becomes operative entries of default predicated on the original complaint are mooted") (collecting cases); *Falls Lake Nat'l Ins. Co. v. DNA Plumbing Contractors, Inc.*, No. 20CV2798RJDRER, 2021 WL 3518279, at *3 (E.D.N.Y. May 4, 2021) ("an amended complaint renders a prior entry of default a nullity and moots a pending motion for default judgment") (collecting cases), *report and recommendation adopted*, 2021 WL 2702571 (E.D.N.Y. July 1, 2021). Accordingly, any prior potential default is moot, and this motion is ripe for adjudication.

instead alleges was published by Bouzy. *See* Am. Compl. ¶ 63. Indeed, none of the Amended

Complaint's paragraphs describing the alleged defamation or conspiracy references Bot Sentinel.

Goodman's Amended Complaint appears to imply that, because Bot Sentinel and Bouzy

are connected and share common goals with respect to speech on the Internet, Bot Sentinel may

be held liable for Bouzy's publication. But in the context of the defamation tort, "publication is

a term of art." *Albert v. Loksen*, 239 F.3d 256, 269 (2d Cir. 2001). Specifically, Goodman must

show that the Bot Sentinel was the actual author or publisher of the Challenged Tweet. *See, e.g.*,

*Tavoulareas v. Piro*, 759 F.2d 90, 136 (D.C. Cir. 1985) (even individual who "participated in the

investigation" by a newspaper but "played no role in the actual preparation of the story" or its

"ultimate publication" was not a "publisher");[8] *Harvey v. CNN, Inc.*, 520 F. Supp. 3d 693, 714

(D. Md. 2021) (recognizing that a "plaintiff 'must . . . establish that the defendant made the

allegedly defamatory statement in issue'" and dismissing defamation claims against CNN arising

out of statements that plaintiff did not plausibly allege it published) (quoting Robert D. Sack,

*Sack on Defamation* § 2:5.1 (5th ed. 2017)). Because Goodman does not and could not state a

claim against Bot Sentinel for a tweet posted by Bouzy, the Amended Complaint should be

dismissed with prejudice as to Bot Sentinel.[9]

---

[8] The *Tavoulareas* case has a long and complex procedural history, which we have omitted here. We note for the avoidance of doubt that, although the *en banc* D.C. Circuit subsequently vacated most of the cited panel decision, the portion Movants rely on was not vacated. *See* 763 F.2d 1472, 1481 (D.C. Cir. 1985) (*per curiam*) (*en banc* order stating "that this Court's Judgment and opinion of April 9, 1985, are vacated except to the extent they affirmed the judgment of the District Court notwithstanding the verdict in favor of appellee Sandy Golden," who was held to not have "published" the article at issue) (text of order available only on Westlaw).

[9] Although we have framed the remaining arguments in response to the defamation claim on Bouzy's behalf, those arguments would apply with equal force to Bot Sentinel as well. In addition, in pleading jurisdiction over Bot Sentinel, Goodman alleges in a conclusory fashion that it participated in a conspiracy "to destroy Goodman's business and reputation and terminate his access to social media" and a "scheme in violation of 18 U.S. Code § 1513 to retaliate against

## II.    THE DEFAMATION CLAIM AGAINST BOUZY SHOULD BE DISMISSED.

### A.    Goodman Fails To Plausibly Allege That The Challenged Tweet Is False.

While at common law "truth was a defense," both the U.S. Supreme Court and New York courts now require that a defamation plaintiff plead and prove the falsity of the challenged statements. *See Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776 (1986) ("the common law's rule on falsity – that the defendant must bear the burden of proving truth – must similarly fall here to a constitutional requirement that the plaintiff bear the burden of showing falsity, as well as fault, before recovering damages" with respect to speech addressing issues of public concern); *Immuno AG v. Moor-Jankowski*, 567 N.E.2d 1270, 1275 (N.Y. 1991) ("a libel plaintiff has the burden of showing the falsity" of the challenged statement).  Simply put, Goodman's defamation claim fails at the outset of this litigation because "[t]he *sine qua non* of recovery for defamation . . . is the existence of falsehood," *Nat'l Ass'n of Letter Carriers v. Austin*, 418 U.S. 264, 283 (1974), and Goodman has not plausibly alleged that the Challenged Tweet is false.

As the Second Circuit has explained, because "falsity – or lack of substantial truth – is an element of a New York defamation claim, it follows that a plaintiff must plead facts demonstrating falsity to prevail on a motion to dismiss the complaint in federal court." *Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 247 (2d Cir. 2017).  Thus, "a plaintiff in New York courts generally must identify *how* the defendant's statement was false to survive a motion to dismiss." *Id.* (emphasis added); *see also Wright v. Dennis*, No. 0604318/2006, 2008 WL 475914 (N.Y. Sup. Ct. Feb. 11, 2008) (dismissing defamation claim because plaintiff "fail[ed] to plead, and would be unable to prove, the falsity of the defamatory statement – an

---

Goodman for bringing legal action against it and Bouzy."  Am. Compl. ¶ 42.  Since he otherwise pleads no facts that would support those contentions, they fail to state a claim as a matter of law. *See Iqbal*, 556 U.S. at 678 ("mere conclusory statements" are insufficient).

essential element of a defamation claim"). Demonstrating literal falsity alone will not suffice: a defamation plaintiff must demonstrate that the challenged publication is *materially* false, which is to say the challenged publication is not *substantially* true. *Tannerite Sports*, 864 F.3d at 242 (citing *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516 (1991)).

Goodman cannot satisfy this burden. Bouzy wrote that Goodman "doesn't want me tweeting that he threatened me not to tweet about his rape allegations." Berlin Decl. Ex. 1. In his Initial Complaint, Goodman alleged that, in a May 2018 video, Defendant Sweigert "made the false allegation that [Goodman] had raped then underage Somali fashion model Halima Aden." Compl. ¶ 14. Goodman's Amended Complaint likewise admits that he *has* been accused of rape, though to be sure he denies the accusation. Am. Compl. ¶¶ 63-66 (alleging that Webb and Sweigert made such an accusation). Goodman also clearly threatened Bouzy not to tweet about that rape allegation. Berlin Decl. Ex. 3 at 11:16-19 ("[I]f you start publishing shit about me, we're gonna find out how serious your evidence is because we're gonna get into a lawsuit."). And by sending the DM, which was incorporated into the Challenged Tweet, Goodman conveyed in no uncertain terms that he did not want Bouzy to mention that Goodman had threatened him not to post about that rape allegation. *See id.* Ex. 1. In sum, the Challenged Tweet offered a substantially accurate account of Bouzy's interactions with Goodman: (a) that he admitted there were rape allegations against him, (b) that Goodman threatened Bouzy with a libel suit if he published them, and (c) that Goodman did not want Bouzy to tweet that Goodman had threatened Bouzy not to tweet about his rape allegations. Given that these facts are either affirmatively alleged in Goodman's Amended Complaint or found in records it expressly references, it fails "to plead facts that, if proven, would allow a reasonable person to consider the statement false." *Tannerite Sports*, 864 F.3d at 247; *see also Chapin v. Knight-Ridder, Inc.*, 993

F.2d 1087, 1092, 1094 (4th Cir. 1993) (affirming Rule 12(b)(6) dismissal where "[e]verything in these statements is true" based on plaintiff's own contentions); *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 155-58 (D.D.C. 2018) (dismissing claim because statement was not "plausibly false" given allegations of complaint and document hyperlinked in challenged article).

Because Goodman has not carried his burden of pleading a falsehood in the Challenged Tweet, the Court should dismiss his Amended Complaint.

## B. The Challenged Tweet Cannot Support The Implication Goodman Ascribes To It.

It is not entirely clear from Goodman's Amended Complaint whether he alleges only that the Challenged Tweet is false on its face (an allegation that is insufficient for the reasons discussed in Part II.A. *supra*) or that the text of the Challenged Tweet also somehow conveys an allegedly false *implication* about him. Yet even if Goodman claims the latter, the Court must evaluate whether that implication is actually conveyed by the Challenged Tweet as a matter of law. Moreover, even if such an implication were actually conveyed, it is not actionable if it is a protected opinion, as explained in the next section. *See* Part II.C. *infra*.

Fairly viewed, the only even arguably reasonable implication to be drawn from the Challenged Tweet is that Goodman was foolish to volunteer to a stranger that he had been accused of rape while expecting the stranger not to say anything about that disclosure. Indeed, in another tweet (not placed at issue, but attached to the Initial Complaint), Bouzy said as much: "I had no clue someone had previously accused him of rape, and it's a bizarre thing to tell a stranger in a phone call. It's also odd to tell someone they would be part of ongoing litigation if they tweeted about it. Why bring it up?" Berlin Decl. Ex. 1; *see also* Compl. Ex. A ("And it's definitely not normal to warn someone not to talk about your rape allegations"). As explained

below, that commentary is a protected expression of Bouzy's conclusions about the highly unusual phone call and DM he received from Goodman.

Goodman, however, appears to argue that the Challenged Tweet did more: by *stating* (truthfully) he had been *accused* of rape, it falsely *implied* he is *guilty* of rape. *See, e.g.*, Am. Compl. ¶ 64 (alleging that Bouzy "accused Goodman of rape"). To the extent Goodman is trying to advance such a libel-by-implication claim here, it fails as well.

"[B]ecause the constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true." *Chapin*, 993 F.2d at 1092-93. Under New York law, "[t]o survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both [1] to impart a defamatory inference and [2] to affirmatively suggest that the author intended or endorsed that inference." *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 37-38 (1st Dep't 2014). That threshold question is decided by the Court as a matter of law. *Id.*

Goodman cannot satisfy either prong of this test. On the first part, the concededly true statement that Goodman has been accused of rape does not reasonably convey the allegedly false implication that Goodman is guilty of rape. *See, e.g.*, *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 649 (8th Cir. 1985) (rejecting plaintiff's argument that a challenged article accurately reporting he had been accused of rape "could be read to imply that [he] was actually guilty of the alleged rape" where "the article in question cannot be read to imply that [defendant] espoused the validity of the rape allegation"), *aff'd on reh'g*, 788 F.2d 1300 (8th Cir. 1986).

On the second prong, nothing about the Challenged Tweet affirmatively suggests that Bouzy intended or endorsed that implication. To the contrary, Bouzy expressly stated that his

only source of information about the accusation is Goodman himself, *see* Berlin Decl. Ex. 1 ("Until creepy Jason Goodman called me, I had no clue someone previously accused him of rape"), and Bouzy republished Goodman's own emphatic denial from the DM, *see id.* ("Jason Goodman has never been involved in any way in rape."). As a result, the Challenged Tweet is not capable of conveying such a defamatory implication as a matter of law.

### C.  Bouzy's Conclusions Are Absolutely Protected Expressions Of Opinion.

Because a defamation claim requires a false statement of *fact*, statements of opinion are non-actionable. Bouzy's conclusions – whether actually expressed or those that Goodman contends are implied – are absolutely protected as expressions of his opinion. Whether a statement is an opinion is a threshold issue of law to be decided by the Court. *See, e.g.*, *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 178 (2d Cir. 2000); *Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1977) (affirming dismissal on opinion grounds).

**<u>First</u>**, portraying someone as foolish for revealing unflattering information about himself is a characterization or judgment that reflects a classic statement of opinion. *See, e.g.*, *Jacobus v. Trump*, 51 N.Y.S.3d 330, 341 (N.Y. Sup. Ct. 2017) (statements published on Twitter calling plaintiff "a real dummy" and "really dumb" are expressions of opinion), *aff'd*, 156 A.D.3d 452 (1st Dep't 2017). This conclusion is reinforced here by the context, which is properly considered by the Court in making this threshold legal determination. *Levin*, 119 F.3d at 197 (courts examine the statement itself as well as the "immediate context and the broader social context of the statement"). Bouzy's post was communicated in breezy language, rather than the typical prose of, say, a news report, and it conveyed and commented on both Goodman's denials and his demands. Berlin Decl. Ex. 1. In addition, the post appeared on Twitter, a forum well known to users for expressions of opinion that are often filled with far stronger rhetoric and hyperbolic assertions than the text at issue here. *See, e.g.*, *Ganske*, 480 F. Supp. 3d at 545 ("If the Internet is

akin to the Wild West, as many have suggested, Twitter is, perhaps, the shooting gallery, where verbal gunslingers engage in prolonged hyperbolic crossfire."); *Sandals Resorts Int'l Ltd. v. Google, Inc.*, 86 A.D.3d 32, 43 (1st Dep't 2011) (informal communications like "Internet communications, as distinct from that of print media such a newspapers and magazines," are more likely to contain opinions because of their "freewheeling, anything-goes writing style") (citation omitted). In such circumstances, any implication that Goodman behaved foolishly is a non-actionable statement of opinion that cannot support a claim for defamation.

**Second**, any alleged implication that Goodman actually committed the crime of rape (an implication that, as explained above, the Challenged Tweet did not reasonably convey) would in this context be a protected expression of opinion based on disclosed facts – namely, what Goodman said to Bouzy, and how he conducted himself. Under both the First Amendment and New York law, when the factual basis for a conclusion is apparent to readers of a challenged statement, that conclusion is itself protected as an opinion based on disclosed facts. *See Levin*, 119 F.3d at 197 ("if a statement of opinion either discloses the facts on which it is based or does not imply the existence of undisclosed facts, the opinion is not actionable"); *Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1168 (N.Y. 1993) (same). As Judge Oetken summarized this principle: "If the Constitution protects an author's right to draw an explicit conclusion from fully disclosed facts, then an unstated inference that may arise in a reader's mind after reading such facts is also protected as an implicit expression of the author's opinion." *Biro*, 883 F. Supp. 2d at 468.

This protection applies even where the conclusion might otherwise sound like a statement of fact, including an allegation of criminal conduct. *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 128-29 (2d Cir. 2014) (comments about 2008 financial crisis in *The Big Short*, including statements that people like plaintiff were either "crooks or morons," were deliberately "getting lots of

unqualified borrowers to . . . buy a house they couldn't afford," and were creating financial instruments out of "whole cloth," were protected expressions of opinion); *CACI Premier Tech., Inc. v. Rhodes*, 536 F.3d 280, 299-302 (4th Cir. 2008) (statements that company "mercenaries" and "hired killers," who "want to kill for the sake of killing," "torture people," and "never have to come under the long arm of the law" were protected opinions); *Lauderback v. ABC*, 741 F.2d 193, 197-98 (8th Cir. 1984) (broadcast suggesting that plaintiff was a "crook" was protected opinion based on disclosed facts); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (conclusion that plaintiff "engaged in 'extortion, manipulation, fraud, and deceit" was protected opinion); *Brahms v. Carver*, 33 F. Supp. 3d 192, 200 (E.D.N.Y. 2014) (statement that plaintiff was "2-bit thief and counterfeiter" based on news articles was protected opinion).

Here, the Challenged Tweet discloses to readers the bases for the implication proffered by Goodman, including details of the prior interactions between Bouzy and Goodman as well as a screen shot of the DM that Goodman sent to Bouzy. *See* Berlin Decl. Exs. 1 & 2. It is also apparent from the Challenged Tweet that Bouzy did not know Goodman or have any unstated information about him or the rape allegation; instead, it is clear on the face of the tweet that Bouzy was basing his statements on the telephone call and DM, and nothing else. Any "unstated inference that may arise in a reader's mind after reading" the Challenged Tweet is therefore "also protected as an implicit expression of [Bouzy's] opinion" and cannot give rise to a viable defamation claim. *Biro*, 883 F. Supp. 2d at 468.

**Third,** for the same reason, Goodman also fails to state a defamation claim over the portion of the Challenged Tweet stating that Goodman "falsely accused Wittes of being part of a murder cover up." *See* Am. Compl. ¶ 67. In this context, characterizing Goodman's accusation

as false clearly represents an expression of Bouzy's personal opinion. *See Ram v. Moritt*, 612 N.Y.S.2d 671, 672 (App. Div. 1994) (where defendant called plaintiff, a doctor, a "'liar', a "cheat', and a 'debtor' in the presence of patients in the doctor's waiting room," the court's "review of the statements convinces us that they . . . constituted personal opinion and rhetorical hyperbole rather than objective fact, and thus were constitutionally protected"); *Faltas v. State Newspaper*, 928 F. Supp. 637, 643, 646-47 (D.S.C. 1996) (statement that plaintiff "will lie to suit her agenda" and use "her status . . . as an opportunity to present lies as truth" was protected opinion), *aff'd*, 1998 U.S. App. LEXIS 16316 (4th Cir. 1998) (per curiam). Indeed, just as it is Goodman's opinion that Wittes covered up a murder, so too is it Bouzy's opinion that Goodman's accusation was "unsubstantiated garbage weaved together from [Goodman's] imagination." Berlin Decl. Ex. 2.[10]

Because the First Amendment and New York law afford absolute protection for expressions of opinion, including for implications that Goodman contends the Challenged Tweet conveys, his defamation claim fails as a matter of law for this reason as well.

### D. Goodman Fails To Allege Facts That, If Proven, Would Constitute Actual Malice.

Even assuming *arguendo* that the Challenged Tweet somehow stated or implied a false statement of fact, the Amended Complaint should be dismissed for the separate and independent reason that Goodman failed to allege facts that, if proven, would constitute clear and convincing evidence that Bouzy published his tweet with "actual malice" fault. Actual malice is a term of

---

[10] Moreover, in suggesting that Goodman "weaved together" his allegations from his "imagination," Bouzy was commenting on Goodman's motivations and thought processes, a hallmark of opinion. *See, e.g.*, *Immuno AG. v. Moor-Jankowski*, 549 N.E.2d 129, 134-35 (N.Y. 1989) ("Speculations as to the motivations . . . are not readily verifiable, and are therefore intrinsically unsuited as a foundation for libel."), *reaffirmed after remand*, 567 N.E.2d at 1281 (reiterating that "statements regarding plaintiff's motivations" were protected opinion).

art meaning that a defendant published a challenged statement either knowing it was false or with a "high degree of awareness of [its] probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). The standard adopted in *Iqbal* and *Twombly* applies to the pleading of "actual malice" fault as an essential element of a defamation claim. *Biro*, 807 F.3d at 544-45. Indeed, "every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-02 (11th Cir. 2016) (collecting cases).[11] As a result, "[a]ctual malice is a high bar" even at the motion to dismiss stage. *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 185, 188 (S.D.N.Y. 2020) (dismissing defamation claim where "the Court cannot find a plausible inference that actual malice exists"). Goodman has not cleared, and cannot clear, this high bar.

### 1. Goodman Is Required To Prove Actual Malice.

Goodman himself embraces the actual malice standard. Am. Compl. ¶ 70 (alleging that "Bouzy made these statements with actual malice"). But even had Goodman not done so, he would be required to plead (and ultimately prove) actual malice, both because he is a public figure under the First Amendment and because New York law separately imposes that burden on him since the speech at issue involves a matter of public concern, as that term is used in the law.

---

[11] *See, e.g.*, *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 57-58 (1st Cir. 2012); *Biro*, 807 F.3d at 544-45; *McCafferty v. Newsweek Media Grp.*, 955 F.3d 352, 360 (3d Cir. 2020); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012); *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 745 (5th Cir. 2019); *Ryniewicz v. Clarivate Analytics*, 803 F. App'x 858, 868 (6th Cir. 2020); *Pippen v. NBCUniversal Media*, 734 F.3d 610, 614 (7th Cir. 2013); *Nelson Auto Ctr. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020); *Yeager v. Nat'l Pub. Radio*, 773 F. App'x 1030, 1031-32 (10th Cir. 2019); *Turner v. Wells*, 879 F.3d 1254, 1273-74 (11th Cir. 2018); *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 239-40 (D.C. Cir. 2021), *cert. denied*, 142 S. Ct. 427 (2021).

**First**, under the First Amendment, public figures are required to show actual malice. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342 (1974). Here, Goodman affirmatively pleads facts that render him a limited purpose public figure because he "(1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media." *Biro*, 963 F. Supp. 2d at 270. In this action, Goodman alleges that he is "an investigative journalist, documentary filmmaker, talk show host, and founder of the widely trusted news, information, and entertainment brand Crowdsource the Truth." Am. Compl. ¶ 13. And, he actively participated in pre-existing public controversies with both Wittes (over the death of Peter Smith) and Sweigert (over whether Goodman raped an internationally famous model when she was younger). *Id.* at 18-19 & ¶ 63.

Moreover, courts routinely hold that journalists and commentators are public figures in relation to the topics they cover, because they play a prominent role in the debate over such controversies and because discussion and criticism of their work is relevant to the credibility of their reporting. *See, e.g.*, *Farber v. Jefferys*, 103 A.D.3d 514, 515 (1st Dep't 2013) (journalist was public figure because "through her publication of countless articles, she voluntarily injected herself into the controversial debate on whether HIV causes AIDS with a view toward influencing the debate").[12] In that regard, Goodman expressly pleads that, as a "professional

_____

[12] *See also, e.g.*, *Houlahan v. World Wide Ass'n of Specialty Programs & Sch.*, No. 04-01161(HHK), 2006 WL 2844190, at *2 n.4 (D.D.C. Sept. 29, 2006) (United Press International reporter covering the "teen behavior modification industry" was limited-purpose public figure regarding statements criticizing his reporting); *Braden v. News World Commc'ns, Inc.*, No. CA-10689'89, 1991 WL 161497, at *8-9 (D.C. Super. Ct. Mar. 1, 1991) (former host of CNN's *Crossfire* was a public figure); *Ellis v. Time, Inc.*, No. Civ.A.94-1755(NHJ), 1997 WL 863267, at *6 (D.D.C. Nov. 18, 1997) (photojournalist was limited-purpose public figure in connection

investigative journalist," his "reputation for truthfulness is inherently valuable." Am. Compl.

¶ 68. Accordingly, this Court should conclude based on Goodman's own allegations that he is a public figure. *See, e.g.*, *Celle*, 209 F.3d at 176 (a defamation plaintiff's status as a public figure "is a question of law for the court"); *Biro v. Condé Nast*, 622 F. App'x 67, 69 (2d Cir. 2015) (affirming district court's dismissal, including holding that plaintiff was limited-purpose public figure); *Turner*, 879 F.3d at 1271 (noting that court had "little difficulty" concluding that plaintiff was public figure at motion-to-dismiss stage); *Yeager*, 773 F. App'x at 1031 (affirming order concluding plaintiff was a public figure and granting motion to dismiss).

**Second**, as a matter of New York law, any defamation plaintiff suing over speech made "in a place open to the public or a public forum in connection with an issue of public interest" must prove, as an element of the cause of action, that the defendant published the allegedly defamatory statement with "actual malice." N.Y. Civ. Rights Law § 76-a; *Palin v. N.Y. Times Co.*, 510 F. Supp. 3d 21, 26 (S.D.N.Y. 2020) (New York law "requires public figures . . . to prove actual malice by clear and convincing evidence").[13] An issue of public interest "encompass[es] all but purely private matters." *Coleman*, 523 F. Supp. 3d at 259 (email and letter describing allegedly abusive romantic relationship addressed "an issue of public interest"); *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332

---

with his public criticism of another news organization's photography practices); *Jacobson v. CBS Broad. Inc.*, 19 N.E.3d 1165, 1176-78 (Ill. Ct. App. 2014) (local television reporter was public figure in context of report calling into question her relationship with source); *San Antonio Express-News v. Dracos*, 922 S.W.2d 242, 252-53 (Tex. App. 1996) (observing that "journalists and television reporters . . . as well as other individuals who regularly comment on public affairs, have often been considered public figures" and collecting cases).

[13] Although courts are grappling with whether to apply other provisions of New York's Anti-SLAPP law in federal court, "a federal court sitting in diversity must apply § 76-a because it is a substantive, rather than a procedural, provision." *Palin*, 510 F. Supp. 3d at 26; *Coleman v. Grand*, 523 F. Supp. 3d 244, 258 (E.D.N.Y. 2021) (Section 76-a "is 'manifestly substantive,' governing the merits of libel claims and increasing defendants' speech protections").

(S.D.N.Y. 2021) (same, for statements about allegations against plaintiff on news websites "open to the public"), *aff'd sub nom. Daleiden v. Planned Parenthood Fed'n of Am.*, No. 21-2068-CV, 2022 WL 1013982 (2d Cir. Apr. 5, 2022); *Goldman v. Reddington*, No. 18-cv-3662 (RPK) (ARL), 2021 WL 4099462, at *4 (E.D.N.Y. Sept. 9, 2021) ("Facebook and LinkedIn posts accusing [plaintiff] of sexual assault" related to "more than 'a purely private matter'"); *Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 32 (1st Dep't 2022) (collecting cases and concluding that "defendant's negative website reviews of plaintiffs' services constitute a matter of 'public interest' as set forth in" Section 76-a).

Here, Bouzy published the Challenged Tweet in a forum open to the public, namely on Twitter, in connection with several issues of public interest. These include (a) Goodman's allegations against Wittes, a noted Brookings scholar, concerning the death of a GOP operative; (b) the allegations that Goodman raped an internationally famous model; (c) how Goodman's bizarre choice to volunteer those accusations reflects on the credibility of his allegations against Wittes and the allegations against him; and (d) Goodman's threat to sue Bouzy for engaging in public commentary. Accordingly, under New York law, Goodman is required to plausibly allege that Bouzy published the Challenged Tweet with actual malice.[14]

### 2. Goodman Fails To Plausibly Allege That Bouzy Published The Challenged Tweet With Actual Malice.

To survive a motion to dismiss, Goodman must plead sufficient facts that, if proven, would constitute clear and convincing evidence that Bouzy published the Challenged Tweet with

---

[14] Moreover, even if Goodman were deemed a private figure and the Challenged Tweet were found not to involve a matter of public concern, such that the actual malice standard did not apply, Goodman would still need to plead facts that, if proven, would demonstrate that the Challenged Tweet was published with "gross irresponsibility." *See, e.g.*, *Chapadeau v. Utica Observer-Dispatch, Inc.*, 38 N.Y.2d 196 (1975); *Pollnow v. Poughkeepsie Newspapers, Inc.*, 107 A.D.2d 10 (2d Dep't 1985), *aff'd*, 67 N.Y.2d 778 (N.Y. 1986). Here, Goodman makes no effort to plead, much less satisfy, this standard.

knowledge that it was false or despite a high degree of awareness that it was probably false. *Biro*, 807 F.3d at 544-45. A defamation complaint "us[ing] actual-malice buzzwords" that are not "backed by well-pled facts" does not satisfy that pleading standard. *Schatz*, 669 F.3d at 56.

Here, Goodman fails to allege *any* such facts concerning actual malice. Instead, he advances the conclusory assertion that "[a]t the time the Defendants made these statements, the Defendants knew the statements to be false and defamatory." Am. Compl. ¶ 71. Such a bare assertion that "'defendants' statements were known by [them] to be false at the time they were made, were malicious or were made with reckless disregard as to their veracity' is entirely insufficient. This kind of conclusory allegation – mere recitation of the legal standard – is precisely the sort of allegations that *Twombly* and *Iqbal* rejected." *Biro*, 963 F. Supp. 2d at 280 (quoting *Mayfield*, 674 F.3d at 377-78); *see also Iqbal*, 556 U.S. at 678-79 (the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions").

The only other allegation that Goodman advances with respect to Bouzy's state-of-mind is the assertion that Bouzy published the Challenged Tweet with "the express intent to malign and injure [him]." Am. Compl. ¶ 72. But "the actual malice standard is *not* satisfied merely through a showing of ill will or 'malice' in the ordinary sense of the term." *Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 666 (1989) (emphasis added); *accord Rinaldi v. Viking Penguin, Inc.*, 420 N.E.2d 377, 382-83 (N.Y. 1981) (actual malice, when "used in its First Amendment constitutional sense, is not to be equated with a base or unworthy motive"). Such an allegation of ill will therefore does not suffice to plausibly allege publication with actual malice fault. *See Brimelow v. N.Y. Times Co.*, No. 21-66-CV, 2021 WL 4901969, at *3 (2d Cir. Oct. 21, 2021) (affirming dismissal of defamation complaint for, *inter alia*, failing to plausibly allege actual malice, where plaintiff "alleged ill will toward [him] harbored" by the defendant but "the

Complaint provides no basis for plausibly inferring that [defendant] had any doubts about the truth of its statements" regarding plaintiff), *cert. denied*, 142 S. Ct. 1210 (2022).

Goodman's failure to plausibly allege that Bouzy published the Challenged Tweet with actual malice is yet another basis for dismissal of his Amended Complaint at the pleading stage.

## III.    THE CIVIL CONSPIRACY CLAIM ALSO FAILS AS A MATTER OF LAW.

Although the only cause of action that Goodman actually pleads against Bouzy is defamation, Am. Compl. ¶¶ 67-73, he makes a passing reference to Bouzy in his claim for "Civil Conspiracy" as well, *id.* ¶ 90 (alleging that Bouzy "derived income as a direct or indirect result of [his] participation in the Enterprise").  Because Goodman fails to state a claim against Bouzy for defamation (or any other underlying tort), however, he also fails to state a claim for civil conspiracy.  Indeed, as the Second Circuit has explained, "New York does not recognize an independent tort of conspiracy.  Therefore, since [plaintiff] fails to state causes of action for either of the torts underlying the alleged conspiracy, defamation or tortious interference with prospective economic advantage, [plaintiff] necessarily fails to state an actionable claim for civil conspiracy."  *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401 (2d Cir. 2006) (citations omitted).

## IV.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST BERLIN OR MISHKIN.

Although it is not at all clear what claim Goodman is trying to assert against Berlin and Mishkin, he seems to rest on two factual allegations.  Neither can give rise to a claim as a matter of law.

<u>**First**</u>, Goodman complains about the Pre-Motion Letter, which he asserts "violat[ed] 18 U.S. Code § 1503," the federal obstruction of justice statute.  Am. Compl. ¶¶ 50-51.  He attached the Pre-Motion Letter to his Motion for Sanctions, ECF No. 86 Ex. A, so the Court can see for itself that it simply "set out the specific grounds on which [Bouzy and Bot Sentinel]

intend[ed] to move to dismiss this matter" and "ask[ed] that" Goodman "voluntarily dismiss the Complaint" rather than requiring such motion practice. The Pre-Motion Letter cannot give rise to liability, including based on an alleged violation of 18 U.S.C. § 1503, for multiple reasons.

For one, "federal criminal statutes do not provide private causes of action." *Sheehy v. Brown*, 335 F. App'x 102, 104 (2d Cir. 2009); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1282 (D. Kan. 2003) ("Federal courts have consistently denied a private civil right of action under 18 U.S.C. § 1503, the criminal statute against jury tampering, witness intimidation, and obstruction of justice.") (collecting cases), *aff'd*, 78 F. App'x 687 (10th Cir. 2003). For another, while Goodman claims the Pre-Motion Letter was intended to threaten or "intimidate" him, Am. Compl. ¶¶ 50-51, the First Amendment prohibits liability unless challenged speech is a "true threat," meaning "a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). The Court can see for itself that the Pre-Motion Letter does not come anywhere near communicating such a threat.

Quite the contrary, the Second Circuit has instructed that this type of pre-motion letter is not improper – let alone tortious – as such "prelitigation letters airing grievances and threatening litigation" consequences "are commonplace, sometimes with salutary results, and do not suffice to show an improper purpose." *Sussman ex rel. Guilden v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995) (citation omitted). Consistent with the reasoning of *Sussman*, Berlin and Mishkin properly sent the Pre-Motion Letter on their clients' behalf seeking to address disputed issues with a litigation adversary prior to burdening the Court with motions practice. *See In re White*, No. 2:07cv342, 2013 WL 5295652, at *50 (E.D. Va. Sept. 13, 2013) (threat to instigate legal

action, "and thereby invoke constitutionally prescribed powers and processes," is not a true threat).

**Second,** Goodman contends that Berlin and Mishkin received funds from Wittes to "finance[] the civil defense of Bouzy and Bot Sentinel." Am. Compl. ¶ 91. Setting aside that the Opposition to Goodman's Motion for Sanctions made clear that Bouzy and Bot Sentinel have paid the expenses of this litigation, ECF No. 94 at 10-11 (Berlin Sanctions Decl.) ¶ 18, there would be nothing tortious if Wittes (or any other third party) had paid their defense costs. There are all sorts of circumstances where litigants are indemnified or funded by others for defending litigation – including payment by insurers, employers, public interest organizations, or friends and family members – and there is nothing improper about doing so, let alone for a lawyer to receive such a lawful payment. Indeed, Goodman's theory here – that Wittes could not lawfully pay to defend a lawsuit challenging Bouzy's speech supporting him – would have profound First Amendment implications. *See, e.g.*, *United Transp. Union v. State Bar of Mich.*, 401 U.S. 576, 585-86 (1971) (union's referral to counsel and reimbursement of fees was protected because such "collective activity undertaken to obtain meaningful access to the courts is a fundamental right within the protection of the First Amendment" and it "would be a hollow promise if courts could deny" the ability to help others "meet the costs of legal representation") (citations omitted).

**Finally**, to the extent that Goodman is attempting to allege that Berlin and Mishkin have engaged in "racketeering" or "conspiracy" as part of an "enterprise" by representing Bouzy and Bot Sentinel, Am. Compl. ¶¶ 50-51 & footer, such a claim is foreclosed as a matter of law. The Second Circuit has expressly held that even "frivolous, fraudulent, or baseless litigation activities – without more – cannot constitute a RICO predicate act." *Kim v. Kimm*, 884 F.3d 98, 104 (2d

Cir. 2018); *see also, e.g.*, *US Dominion, Inc. v. MyPillow, Inc.*, No. 1:21-CV-0445 (CJN), 2022 WL 1597420, at *6 (D.D.C. May 19, 2022) (dismissing counterclaims against opposing counsel based on their issuance of "over 150 'cease and desist' letters threatening companies and individuals" with "ruinous litigation," because "those cease-and-desist letters, no matter how threatening, constitute litigation-related activity," and "courts have dismissed RICO actions targeting pre-litigation communications").[15]

At the end of the day, Berlin and Mishkin were sued for defending Bouzy's protected speech and for engaging in legitimate litigation activity on behalf of their clients. The Court should reject Goodman's misuse of its processes and dismiss his claims against Berlin and Mishkin.

## V. THE AMENDED COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

The Court should dismiss the Amended Complaint with prejudice as to Movants. Particularly given that, in filing his Amended Complaint, Goodman already had the benefit of Movants' comprehensive motion to dismiss the Initial Complaint and the response to his Motion for Sanctions, further "amendment would be futile." *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006). No amount of re-pleading can impose liability on Bot Sentinel when it did not publish anything. Neither can amendment transform a true statement into a false one, convert a statement saying one thing into an implication of something else, or morph an expression of opinion into a statement of fact. Nor can further revision allow Goodman to

---

[15] Indeed, Goodman's invocation of a RICO conspiracy is so frivolous as to be sanctionable. *See Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 660 (S.D.N.Y. 1996) (noting that "[c]ourts in this Circuit have on numerous occasions imposed Rule 11 sanctions based upon the filing of a frivolous RICO action," where "even a cursory examination of the requirements for bringing suit under RICO would have revealed the impossibility of the claim's success," and the "total lack of substance . . . gives rise to the inference that the action was filed for improper purposes"), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

plausibly plead that Bouzy had any subjective awareness of falsity. Likewise, the Pre-Motion Letter and the (alleged) receipt of litigation funds cannot give rise to any claim Goodman might assert against Berlin and Mishkin as a matter of law. Particularly given that the Amended Complaint itself demonstrates the extent to which Goodman has in the past engaged in frivolous litigation, sought sanctions without a basis for doing so, and has substituted "outlandish conspiracy theories" for valid legal claims, the Court should not empower Goodman to continue to exploit the Court's processes, including to punish protected speech, through further meritless proceedings.

## CONCLUSION

For the foregoing reasons, Bouzy, Bot Sentinel, Berlin, and Mishkin respectfully request that this Court enter an order dismissing this action against them in its entirety with prejudice.[16]

Respectfully submitted,

BALLARD SPAHR LLP

By:     */s/ Seth D. Berlin*
          Seth D. Berlin (SB7978)
          Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy,*
*Bot Sentinel Inc., Seth Berlin, and Maxwell Mishkin*

---

[16] For the reasons stated herein, Movants respectfully submit that this case is entirely without merit, and part of a long-standing pattern of vexatious litigation filed by Goodman against his perceived adversaries. Accordingly, although Movants hope that additional litigation would not be necessary, they reserve their right to seek attorneys' fees and costs following adjudication of this motion.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of January 2023, I caused true and correct copies of

the foregoing Memorandum of Law in Support of Motion to Dismiss of Defendants Christopher

Bouzy, Bot Sentinel Inc., Seth Berlin, and Maxwell Mishkin to be served by email and U.S. Mail

First Class on the following:

Mr. Jason Goodman
252 7th Ave., Apt. 6S
New York, NY 10001
truth@crowdsourcethetruth.org

*Plaintiff*

Mr. George Webb Sweigert
209 St. Simons Cove
Peachtree City, GA 30269
Georg.webb@gmail.com

*Defendant*

Mr. Benjamin Wittes
1775 Massachusetts Ave., NW
Washington, DC 20036
benjamin.wittes@lawfareblog.com

*Defendant*

Mr. David George Sweigert
Mailbox, PMB 13339
514 Americas Way, Box Elder, SD 57719
Spoliation-notice@mailbox.org

*Defendant*

Ms. Nina Jankowicz
One Woodrow Wilson Plaza
1300 Pennsylvania Ave. NW
Washington, DC 20004-3027
nina.jankowicz@wilsoncenter.org

*Defendant*

Ms. Margaret Esquenet
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

Mr. Adam Sharp
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

National Academy of Television Arts and Sciences, Inc.
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

<u>/s/ *Seth D. Berlin*    </u>
Seth D. Berlin (SB7978)