IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN

          Plaintiff,

vs.

CHRISTOPHER ELLIS BOUZY, BOT
SENTINEL, INC, GEORGE WEBB
SWEIGERT, DAVID GEORGE SWEIGERT,
BENJAMIN WITTES, NINA JANKOWICZ,
ADAM SHARP, MARGARET ESQUENET,
THE ACADEMY OF TELEVISION ARTS
AND SCIENCES, SETH BERLIN,
MAXWELL MISHKIN

          Defendants

Case No.: 1:21-cv-10878-AT-JLC

**MEMORANDUM IN SUPPORT OF
APPLICATION FOR PRELIMINARY
INJUNCTION OR RESTRAINING
ORDER**

       Pro Se plaintiff Jason Goodman ("Goodman") by and for himself respectfully moves the

Court for a preliminary injunction or otherwise a temporary restraining order pursuant to FRCP

Rule 65(b)(1)(A) enjoining Defendant David George Sweigert ("Sweigert") from

communicating with any member of the public, aside from this Court or any attorney he may

retain to represent him, concerning matters relating to this case, the Plaintiff, Plaintiff's family

members and associates.

## PRELIMINARY STATMENT

       This motion seeks an order from the Court to immediately command Sweigert to cease

and desist from his vexatious harassment of Goodman, his family, and his associates.  Goodman

has already informed the Court of his travel for a family member's scheduled surgery.  That

surgery is complete, and Goodman remains outside of New York tending to his octogenarian

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR
RESTRAINING ORDER - 1

mother during her recovery. Sweigert has seized on this opportunity to further antagonize Goodman and his family members in the hope of gaining a strategic advantage in this and other litigation or otherwise disrupting Goodman. Sweigert's cruel efforts are impacting the mental health and physical well being of Goodman's mother during her recovery, causing anguish, loss of sleep and complicating recovery from a dangerous surgical procedure. This truly evil action must be stopped. It is within the Court's inherent power to curb vexatious and abusive or inappropriate actions by litigants. Sweigert's wicked demeanor is well known to this Court, but these truly depraved acts are beyond the pale, even for him.

### NEW VEXATIOUS ACTION BY DEFENDANT DEMANDS INJUCTIVE RELIEF

Motions that merely seek to cease imminent pecuniary damage are insufficient to move the Court to take the extreme action of preliminary injunction. In this case however, Sweigert's deeply evil, overt acts seek to inflict emotional and permanent physical damage that, if allowed to succeed, could not be restored through financial relief or remuneration.

Upon learning of Goodman's need to travel for a family member's planned surgery, Sweigert seized on the opportunity to launch a harassment campaign targeting Goodman's elderly father. Goodman does not favor sharing superfluous personal matters related to his family on the internet or with the Court. The reason these have been discussed previously was to seek necessary leave for the extension of time required to complete the amended complaint. Further details must now be shared in order to put an end to Sweigert's dangerous harassment that has a history of improperly affecting litigation and is now affecting the health and well-being of Goodman's mother during critical post operative recovery.

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR RESTRAINING ORDER - 2

After the Court granted Goodman the extension of time, which was properly and fully utilized to draft and file the Amended Complaint, Sweigert began posting insulting, intimidating, and harassing content on Twitter and elsewhere on the internet targeting Goodman's father. Sweigert's years long harassment campaign has been a cause of great concern and tremendous anguish for all of Goodman's family members.  They are well aware of the excessive litigation and extremely troubled by the destruction of business opportunity that has so greatly damaged Goodman and occupied so much of his time over the past six years.  Sweigert continues his campaign to destroy Goodman's ability to conduct regular business while he mocks this Court's authority over him in the process by posting unnecessary and harassing images and messages solely intended to harm Goodman.

In the two weeks since undergoing spinal surgery, Goodman's mother has experienced extreme pain, difficulty walking, discomfort in conducting normal daily tasks and difficulty sleeping.  Goodman is tending to her and his father, cooking, shopping, doing household chores and caring for them in general.  Sweigert's messages and vexatious actions are visible to the public including Goodman's parents who suffer emotional distress and extreme anguish at the truly outlandish and hateful character of everything Sweigert does relative to Goodman.  These actions are the cause of additional loss of sleep above and beyond that caused by the pain and discomfort associated with recovery.  The general displeasure due to stress caused by Sweigert's extreme hateful conduct toward Goodman is having a dangerous and potentially irreversible impact on Goodman's mother.

Most recently, Sweigert attacked the deprecated remains of Goodman's online business, filing additional vexatious complaints with YouTube resulting in the destruction of yet another

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR RESTRAINING ORDER - 3

of Goodman's social media assets that allow him to conduct business.  On January 26, 2023, Goodman posted a video on a YouTube channel titled Crowdsource the Truth 7 ("CSTT 7"), that included an interview with a British citizen by the name of Sadie Quinlan ("Quinlan").  Quinlan is a retiree whose sole source of income aside from a modest pension was advertising revenue garnered from a YouTube channel she created ("Yankee Wally") using just her mobile phone. Quinlan, like Goodman, had been a target of harassment caused by Defendant Bouzy ultimately resulting in the destruction of her valuable Yankee Wally YouTube channel and total loss of income.  Quinlan became known to Goodman when she posted an excerpt from a phone call with Defendant Bouzy previously cited in this case.  Quinlan recently contacted Goodman after seeing Goodman on YouTube discussing this instant action.

In an effort to help Quinlan restore her ability to earn income so she might pay for food, rent and health care, Goodman assisted Quinlan in creating her own independent accounts on Patreon.com and SubscribeStar.com.  Goodman invited Quinlan to participate in an interview that would be broadcast on her new accounts and was intended to help her gain paying subscribers and restore her income.  Only hours after a video promoting Quinlan's new accounts was posted on YouTube, Goodman alleges Sweigert or agents acting on his behalf, engaged in a mass complaint campaign in the same manner Bouzy previously boasted about, that resulted in the permanent removal of the CSTT 7 YouTube channel.  The purely malicious act was intended to damage Goodman and in turn Quinlan who is innocent in this matter and merely trying to earn a living making video broadcasts about celebrity gossip and the British Royal Family.

**ARGUMENT**

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR RESTRAINING ORDER - 4

It is well settled, generally, that the decision to grant preliminary injunctive relief falls within the sound discretion of the district court. Himes v. Sullivan, 779 F. Supp. 258, 272 (W.D.N.Y. September 4, 1991) (citing Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co., 604 F.2d 755, 758 (2d Cir. 1979) (citing Doran v. Salem Inn, Inc., 422 U.S. 922, 931-32, 95 S. Ct. 2561, 45 L. Ed. 2d 648 (1975). A court is reminded that a preliminary injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion," Mazurek v. Armstrong, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (citations omitted), since its purpose is to "preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the merits." Candelaria v. Baker, No. 00-CY-0912E, 2006 U.S. Dist. LEXIS 13238, at *9, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 08, 2006) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam)).  Nicholson v. Fischer, No. 13-CV-6072FPG, 2014 U.S. Dist. LEXIS 158759, at *6-7 (W.D.N.Y. Nov. 10, 2014)

## SWEIGERT'S ACTIONS ARE UNNESSARY AND HARMFUL

The video produced by Goodman and Quinlan had no impact on this litigation and no direct or implied impact on Sweigert or his ability to properly defend himself in this or any other action.  By contrast, his ongoing efforts to terminate Goodman's ability to conduct business online are intended to stop Goodman from earning a living, waste Goodman's valuable time required to prosecute this action and defend himself in other litigation, and to generally harass Goodman.  Nothing in Goodman's video triggered automated algorithms employed by YouTube intended to prevent dangerous or illegal content as evidenced by the fact that Goodman's Crowdsource the Truth 8 YouTube channel simulcast a duplicate of the same video that did not

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR RESTRAINING ORDER - 5

trigger a takedown.  This evidence is highly likely to prove that Sweigert and his agents

including non-party Dean Fougere ("Fougere") deliberately contacted YouTube in a tactic

known as mass flagging.  This method involves transmitting a large number of complaints in a

short period of time to create a sense of public outrage and increase the likelihood of arbitrary

enforcement of rules.  There is also evidence including public boasts from defendants that

indicate they may have direct contacts who are employed at YouTube, Twitter and elsewhere

who are able to take action outside of the normal rules.

Upon learning of the removal of Goodman's YouTube channel, Quinlan became highly

agitated and expressed her feelings of guilt, presuming she was the proximate cause of damage to

Goodman.  Although Goodman disagreed with her conclusion, Quilan's feelings of guilt and

shame, especially considering her great appreciation for Goodman's assistance in helping her

restore her income, were the source of mental anguish for another innocent woman.

Goodman does not seek this injunction to stop the ongoing and increasing financial

damage Sweigert's wrongful actions cause to him, but rather to end the emotional and physical

distress caused to innocent third parties including Quinlan and most particularly Goodman's

mother.  Even one night of lost sleep is having a direct impact her health and comfort.  It is well

known that the earliest days after such traumatic surgery could have critical and long-lasting

impact on the overall long-term recovery.  The inherent psychopathy displayed by such cruel

actions should not go without consideration.  Sweigert must be stopped immediately, and it is

within the Court's inherent power to do so, should it see fit.  Defendant displays no sympathy for

two completely innocent elderly women in his extraordinarily obsessive six year long pursuit of

Goodman.  The Court should enjoin Sweigert with an order preventing his evil behavior.

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR
RESTRAINING ORDER - 6

**PUBLIC INTEREST WOULD BE SERVED BY ENJOINING DEFENDANT**

Sweigert's actions serve no public benefit and are calculated exclusively to harm Goodman, his family, and his associates.  The balance of equities and public interest are decidedly in Goodman's favor.  Defendants do not have a first amendment right to unnecessarily antagonize, harass and cyberstalk Goodman.  Sweigert's efforts are undeniably outside the bounds of legal first amendment activity.  Even if the Court disagrees and finds the malicious harassment of Goodman's family is within Sweigert's first amendment rights, this is outweighed by the ongoing irreparable harm to Goodman's mother's mental and physical health as a result of this outrageous and cruel behavior.   The cumulitive impact of Sweigert's malicious actions are intended to deny Goodman his constitutional right to a fair trial.  See Am. Beverage Ass'n v. City & Cty. of San Francisco, 916 F.3d 749, 758 (9th Cir. 2019) ("'[I]t is always in the public interest to prevent the violation of a party's constitutional rights.'") (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)); Rodriguez v. Robbins, 715 F.3d at 1127

Goodman merely seeks to conduct this litigation without ongoing extrajudicial disruption by Sweigert.  Public interest is further served in general by preventing anyone from engaging in the crimes of cyber stalking and harassment.

**REMEDY**

Because Goodman's request meets the criteria for a preliminary injunction, he respectfully requests an order enjoining Sweigert from continuing his vexatious harassment and specifically preventing him from communicating with any other party with regard to Goodman outside of motions on the docket in properly issued legal process.  This should specifically include enjoining Sweigert from contacting or publicly antagonizing any person or company

MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR RESTRAINING ORDER - 7

1

2   Goodman conducts business with including but not limited to YouTube, Twitter, Facebook,

3   Odysee, Patreon, and SubscribeStar, with regard to Goodman, Crowdsource the Truth or any co-

4   host or guest who appears on any Crowdsource the Truth branded media.

5   Signed this 28th day of January 2023

6   Respectfully submitted,

7

8   _____                    Jason Goodman, Plaintiff, Pro Se
                                                    252 7th Avenue Apt 6s
9                                                   New York, NY 10001
                                                    (323) 744-7594
10                                                  truth@crowdsourcethetruth.org

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   MEMORANDUM IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTION OR
     RESTRAINING ORDER - 8