IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

JASON GOODMAN

        Plaintiff,

vs.

CHRISTOPHER ELLIS BOUZY, BOT
SENTINEL, INC, GEORGE WEBB
SWEIGERT, DAVID GEORGE SWEIGERT,
BENJAMIN WITTES, NINA JANKOWICZ,
ADAM SHARP, MARGARET ESQUENET,
THE ACADEMY OF TELEVISION ARTS
AND SCIENCES, SETH BERLIN,
MAXWELL MISHKIN

        Defendants

Case No.: 1:21-cv-10878-AT-JLC

**PLAINTIFF'S RICO CASE STATEMENT**

Pro Se plaintiff Jason Goodman ("Goodman") files this RICO case statement.

1. **State whether the alleged unlawful conduct is in violation of 18 U.S.C. §§ 1962(a), (b), (c), and/or (d).**

Plaintiff asserts violations of 18 U.S. Code § 1962(b)(c) and (d).

2. **List each defendant and state the alleged misconduct and basis of liability of each defendant.**

    1) Defendant - Christopher Ellis Bouzy ("Bouzy") is a New Jersey citizen and CEO of Bot Sentinel, Inc., which claims to be an artificial intelligence technology company that identifies and eliminates so called "disinformation" as determined by Bouzy.  Bouzy became a culpable person when he voluntarily joined the association in fact Enterprise and began communicating with existing participants.  Bouzy received information from the Enterprise

PLAINTIFF'S RICO CASE STATEMENT - 1

and used it in furtherance of the common purpose to damage Goodman and his business property.

2) Defendant – David George Sweigert ("Sweigert") is believed to be a homeless California citizen, a retired Air Force radio communications and Information Technology Specialist, a professional hacker, the author of the Ethical Hacker's Field Operations Guide and self-proclaimed contractor to the U.S. Dept of Homeland Security and other Government Agencies.  Sweigert is a culpable person who has stalked and harassed Goodman since 2017.

Plaintiff alleges as follows with regard to Sweigert;

   a. Sweigert has practiced law without a license in the U.S. District Court for the Southern District of New York in violation of New York Consolidated Laws, Education Law - EDN § 6512 by writing and filing pro se pleadings on behalf of his brother George Webb Sweigert ("Webb").

   b. Sweigert conspired with multiple third parties and in violation of violation of 18 U.S.C. § 35 to cause a false report of a bomb to incite panic and provoke a public incident in the Port of Charleston, SC in June of 2017.

   c. Sweigert participated in a scheme to cause a fraudulent email to be sent to the National Academy of Television Arts and Sciences ("NATAS") in or around July 2020 creating a pretext for malicious litigation calculated to financially damage Goodman by wrongfully

suing a corporation owned by Goodman to benefit Sweigert and his coconspirators in violation of 18 U.S. Code § 1343.

d. Sweigert inappropriately interfered with litigation and harassed litigants in NATAS v MSD with the intent of affecting the outcome in violation of 18 U.S. Code § 1512 and causing substantial financial damage to Goodman beginning in 2020.

e. Sweigert participated in a scheme to cause a fraudulent document to be filed via the Pro Se Electronic Filing web site hosted by the Court in the Eastern District of Michigan ("MIED") in violation of 18 U.S. Code § 1343.

f. Sweigert participated in a scheme to obstruct justice in this Court with frivolous filings and other acts intended to harass litigants and delay proceedings in violation of 18 U.S. Code § 1503.

3) Defendant - George Webb Sweigert ("Webb") is a Georgia citizen and a journalist. Webb is a culpable person who has conspired with his brother Sweigert for the common purpose of damaging Goodman and his business property.

Plaintiff alleges as follows with regard to Webb;

a. Webb conspired with multiple third parties and in violation of violation of 18 U.S.C. § 35 and 18 U.S.C. § 1343 to cause a false report of a bomb to incite panic and provoke a public incident in the Port of Charleston, SC in June of 2017.

PLAINTIFF'S RICO CASE STATEMENT - 3

b. Webb participated in a scheme to cause a fraudulent document to be filed via the Pro Se Filing web site hosted by the Court in the Eastern District of Michigan ("MIED") in violation of 18 U.S. Code § 1343.

c. Webb participated in a scheme to obstruct justice in this Court with frivolous filings and other acts intended to harass litigants and delay proceedings in violation of 18 U.S. Code § 1503.

d. Webb defamed Goodman alleging false, unfounded claims of heinous criminal acts alleged perpetrated by Goodman with the deliberate intent of inciting public hatred against Goodman

4) Defendant - Christopher Ellis Bouzy ("Bouzy") is a New Jersey citizen and CEO of Bot Sentinel, Inc.  Bot Sentinel claims to be an artificial intelligence technology company that identifies and eliminates disinformation on the internet and is closely integrated with Twitter.  Bouzy became a culpable person when he agreed to cooperate with members of the Enterprise for the common purpose of damaging Goodman and his business property.

Plaintiff alleges as follows with regard to Bouzy;

a. Bouzy participated in a scheme in violation of 18 U.S. Code § 4 to deliberately obscure facts related to the death of Peter W. Smith ("Smith").

b. Bouzy participated in a scheme in violation of 18 U.S. Code § 1513 when he threated Goodman to publicly promote false rape allegations in an attempt to prevent Goodman from reporting information Bouzy disfavored.

PLAINTIFF'S RICO CASE STATEMENT - 4

c.  Bouzy made false statements and fraudulent misrepresentations over the internet in violation of 18 U.S. Code § 1343 with the malicious intention to deprive Goodman of property and deliberately destroy his social media accounts and causing substantial financial damage to Goodman beginning n 2020.

d.  Bouzy participated in a scheme to obstruct justice in this Court with frivolous filings and other acts intended to harass litigants and delay proceedings in violation of 18 U.S. Code § 1503.

e.  Bouzy participated in a scheme to harass and defame Goodman by alleging false, unfounded claims of heinous criminal activity with the deliberate intent of inciting public hatred against Goodman.

5)  Defendant - Bot Sentinel, Inc ("Bot Sentinel") is a U.S. Corporation registered in New Jersey that claims to be an online artificial intelligence tool for detecting and reporting inauthentic activity and disinformation on Twitter. Bot Sentinel became a culpable person when Bouzy used it to assist the Enterprise in furtherance of the common plan and for the common purpose of damaging Goodman and his business property.

Plaintiff alleges as follows with regard to Bot Sentinel;

a.  Bot Sentinel is a tool for identifying, attacking, and destroying "enemy" social media accounts and a corporate conduit for Bouzy to receive anonymous online payments for alleged unlawful activity.

b.  Bot Sentinel participated in a scheme in violation of 18 U.S. Code §1513, 18 U.S. Code 875(d) and New York Consolidated Laws,

Penal Law - PEN § 135.60 when it was used to maliciously destroy social media accounts owned by Goodman based on the false claim that the accounts had published false information purportedly with the intent to harm the public.

6) Defendant - Benjamin Wittes ("Wittes") is a Washington D.C. citizen, journalist, and Senior Fellow at the Brookings Institution.  Wittes is the editor in chief of the Lawfare blog and podcast.  Wittes became a culpable person when he agreed to cooperate with the Enterprise and incited Bouzy to cyber stalk and cyber harass Goodman with the common purpose and shared goal of the Enterprise, to damage Goodman and his business property.

Plaintiff alleges as follows with respect to Wittes;

    a.   Wittes participated in a scheme in violation of 18 U.S. Code § 4 to deliberately obscure facts related to the death of Smith.

    b.  Wittes participated in a scheme in violation of 18 U.S. Code § 875(d) and New York Consolidated Laws, Penal Law - PEN § 135.60 when he instructed Bouzy to prevent Goodman from broadcasting information Wittes disfavored.

    c.  Wittes participated in a scheme in violation of 18 U.S. Code § 1503 when he provided money to Bouzy via payments to Bot Sentinel so that Bouzy could retain Ballard Spahr.

    d.  Wittes participated in a scheme in violation of 18 U.S. Code § 1503 when he agreed to cooperate with Sweigert and Jankowicz to cause

PLAINTIFF'S RICO CASE STATEMENT - 6

false statements to be made to the Arlington General District Civil Court.

7) Defendant – Nina Jankowicz ("Jankowicz") is the sole proprietor of Sophias Strategies, LLC the former Executive Director of the U.S. Department of Homeland Security Disinformation Governance Board and a Virginia citizen. Jankowicz became a culpable person when she agreed to participate in a scheme with Sweigert in furtherance of the common purpose and with the common goal of damaging Goodman and his business property.

Plaintiff alleges as follows with respect to Jankowicz;

    a. Jankowicz participated in a scheme in violation of 18 U.S. Code § 1343 when she transmitted a fraudulent claim over the internet to Twitter in violation of 22 U.S. Code § 612.

    b. Jankowicz participated in a scheme in violation of 18 U.S. Code § 875(d) and New York Consolidated Laws, Penal Law - PEN § 135.60 when she made a fraudulent claim to Twitter in an effort to compel Goodman to remove information she disfavored.

    c. Plaintiff alleges Jankowicz violated 22 U.S.C. § 612 by failing to register as an agent of a foreign principal while she was employed as the Executive Director of a U.S. Dept of Homeland Security working group, the Disinformation Governance Board.

    d. Jankowicz participated in a scheme in violation of 18 U.S. Code § 1503 when he agreed to cooperate with Sweigert and Wittes to cause

PLAINTIFF'S RICO CASE STATEMENT - 7

false statements to be made to the Arlington General District Civil
Court.

8) Defendant – Adam Sharp ("Sharp") is the Founder and CEO of Sharp Things,
LLC, the President and CEO of the National Academy of Television Arts and
Sciences and the former Government Liaison for Twitter, Inc.  Sharp became
a culpable person when he agreed to participate in a scheme with Sweigert in
furtherance of the shared purpose and common goal to damage Goodman and
his business property.

    a. Sharp coordinated a scheme with Sweigert, either directly or through
intermediaries, to sue MSD for an internet post made by Goodman in
violation of 47 U.S. Code § 230.

    b. Sharp, by his counsel participated in a scheme to make false
statements to the Court in violation of 18 U.S. Code § 1343 when he
falsely declared his private for-profit company Sharp Things, LLC
was inactive during 2020, 2021 and 2022.

    c. Sharp participated in a scheme in violation of 18 U.S. Code §
section 1344 and New York Not for Profit Corp L § 717 (2012) to
use tax exempt funds to sue a corporation owned by Goodman in
violation of the authorized organizational purpose and the by-laws
by which NATAS is granted tax exempt status by the Internal
Revenue Service ("IRS").

9) Defendant – Margaret Esquenet ("Esquenet") is an attorney with is an
attorney with Finnegan, Henderson, Farabow, Garrett & Dunner, LLP

PLAINTIFF'S RICO CASE STATEMENT - 8

("Finnegan") who represented Defendants in prior action against Goodman's dormant corporation MSD.  Esquenet became a culpable person when she agreed to participate in a scheme with Sweigert in furtherance of the shared purpose and common goal to damage Goodman and his business property.

a. Esquenet coordinated a scheme with Sweigert, either directly or through intermediaries, to sue MSD for an internet post made by Goodman in violation of 47 U.S. Code § 230.

b. Esquenent participated in a scheme with Sharp to make false statements to the Court in violation of 18 U.S. Code § 1343 when she falsely declared Sharp's private for-profit company Sharp Things, LLC was inactive during 2020, 2021 and 2022.

c.  Esquenet participated in a scheme in violation of 18 U.S. Code § section 1344 and New York Not for Profit Corp L § 717 (2012) to use tax exempt funds to sue a corporation owned by Goodman in violation of the authorized organizational purpose and the by-laws by which NATAS is granted tax exempt status by the Internal Revenue Service ("IRS").

d. Esquenet participated in a scheme with Sweigert to ghost write a "Statement of Issues" pleading on Sweigert's behalf without informing the Court (ECF No. 122)

10) Defendant – The Academy of Television Arts and Sciences ("ATAS" or "Television Academy") is one of the key plaintiffs in a vexatious suit wrongfully brought against Goodman's dormant corporation MSD for an

PLAINTIFF'S RICO CASE STATEMENT - 9

improper purpose.  ATAS became a culpable person when it agreed to participate in a scheme with Sweigert in furtherance of the shared purpose and common goal to damage Goodman and his business property.

11) Defendant - Seth Berlin ("Berlin") is an attorney with Ballard Spahr and counsel for Bouzy and Bot Sentinel in this case.  Berlin became a culpable person when he agreed to participate in a scheme in furtherance of the common goal and for the common purpose to harass Goodman prior to filing a notice of appearance representing defendants.

12) Defendant - Maxwell Mishkin ("Miskin") is an attorney with Ballard Spahr and counsel for Bouzy and Bot Sentinel in this case. Mishkin became a culpable person when he agreed to participate in a scheme in furtherance of the common goal and for the common purpose to harass Goodman prior to filing a notice of appearance representing defendants.

3. **List the alleged wrongdoers, other than the defendants, and state the misconduct of each wrongdoer.**

1) Non-party Steven Biss ("Biss") is a Virginia Attorney who represents the estate of the late Robert David Steele ("RDS") in litigation against Goodman. Through intermediaries, Biss coordinated with Sweigert to foment frivolous litigation against Goodman beginning in 2017 and then to disrupt Goodman with extrajudicial harassment and the intent of gaining an advantage in litigation in violation of 18 U.S. Code § 1503.  Biss participated in a scheme beginning in 2022 intended

PLAINTIFF'S RICO CASE STATEMENT - 10

2) Non-party Manuel Chavez III ("Chavez") was one of the intermediaries who communicated with Biss and Sweigert via e-mail telephone and other means. In or around 2018, Chavez claims to have broken contact with Defendants. Chavez provided emails that were presented as evidence in Steele v Goodman and were helpful in dismissing the frivolous case.

3) Non-party Margaret Esquenet ("Esquenet") is an attorney with Finnegan, Henderson, Farabow, Garrett & Dunner, LLP ("Finnegan") and represented NATAS in legal action against a corporation owned by Goodman, Multimedia System Design, Inc ("MSD"). Esquenet coordinated a scheme with Sweigert, either directly or through intermediaries, to sue MSD for an internet post made by Goodman in violation of 47 U.S. Code § 230.

4) Non-party Roy Warren Marshall aka Steve Quest ("Quest") is a notorious internet personality (alternately known as "Montagraph"). Quest is infamous for antagonizing and harassing people online and fixating on toxic vendettas that calculates to include real world consequences. Marshall posted videos on YouTube in the days prior to the June 14, 2017 Port of Charleston closure that are likely to prove he and other individuals had prior knowledge of a planned event.

5) Non-party Scott Anthony ("Anthony") is a New Jersey Information Technology consultant and an associate of Marshall. Anthony posted comments on his web page and in response to videos posted by Marshall on YouTube in the days prior to the June 14, 2017 Port of Charleston closure that

PLAINTIFF'S RICO CASE STATEMENT - 11

are likely to prove Anthony and other individuals had prior knowledge of a planned event.

6) Non-party Richard Loury ("Loury") is a clerk at the U.S. District Court in the Eastern District of Michigan ("MIED"). Loury participated in a scheme to cause a fraudulent document to be filed via the Pro Se Filing web site hosted by MIED in violation of 18 U.S. Code § 1343.

7) Non-party Jonathan Snyder ("Snyder") is an attorney who represented MSD in litigation against NATAS. Snyder withdrew prior to trial citing stalking and cyber harassment by Sweigert. (*See* Case 1:20-cv-07269-VEC-OTW Document 101)

8) Non-party Seth Berlin ("Berlin") is an attorney with Ballard Spahr. Berlin participated in a scheme in violation of 18 U.S. Code § 1503 when he sent harassing extrajudicial letters to Goodman in an effort to obstruct litigation brought by Goodman against Bouzy and Bot Sentinel.

9) Non-party Maxwell Mishkin ("Mishkin") is an attorney with Ballard Spahr. Mishkin participated in a scheme in violation of 18 U.S. Code § 1503 when he sent harassing extrajudicial letters to Goodman in an effort to obstruct litigation brought by Goodman against Bouzy and Bot Sentinel.

**4. List the alleged victims and state how each victim was allegedly injured.**

1) Plaintiff – Jason Goodman was and continues to be injured in his business and suffered a loss of property because of a Defendants' acts in violation of multiple predicate acts as defined in 18 U.S.C. § 1961. Moreover, Plaintiff was injured by the collective activity of the Enterprise. No single complaint

PLAINTIFF'S RICO CASE STATEMENT - 12

to a social media company is normally sufficient to destroy a user's account. Defendants, through the Enterprise, endeavor to simulate a large public outcry by using a large group of complaint to affect the victim.  Without the collective effort of the Enterprise, Defendants would not have succeeded in damaging Goodman and his business property.  Defendants formed and participated in an association in fact enterprise through which they cooperated with one another in furtherance of a common purpose and for the common goal of damaging Goodman and depriving him of property and income. Defendants through this Enterprise, engaged in a pattern of racketeering activity that harmed Goodman financially, destroyed his property and damagaged his public reputation.  In furtherance of their collective purpose, the Defendants acted as an association in fact enterprise formed by the collective cooperation and work towards a common goal of removing Goodman from the internet and stopping him from reporting facts that are likely to prove Defendants have engaged in criminal action.  Defendants received income derived, directly or indirectly, from this pattern of racketeering activity and used that income in furtherance of their common purpose to obtain control over the Enterprise and in continuation of the operation of the Enterprise.  The Enterprise engaged in activities that have affected interstate commerce by interfering with Goodman's business transactions with out of state service providers including YouTube, Twitter, Patreon, SubscribeStar, Odysee, and numerous individuals.

**5.   Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim**

  a.   **List the alleged Predicate acts**

    1.   On June 14, 2017 video conference via Skype, with Goodman, Defendant Webb, in violation of 18 U.S.C. § 35 and 18 U.S.C. § 1343 fraudulently represented that he had evidence there was dangerous, illicit bomb material on board the cargo ship Maersk Memphis that represented an imminent deadly threat to the Port of Charleston, SC.  Webb attempted to convince Goodman to report the threat to authorities rather than report it himself.  Webb was in Ohio and or West Virginia during the hours long call, Goodman was in New York.

    2.   Webb and his brother Sweigert concocted a scheme in violation of 18 U.S.C. § 1343 to fraudulently represent that Goodman planned the events of June 14, 2017, involving the Maersk Memphis cargo vessel and the closure of the Port of Charleston, SC.

    3.   In violation of 18 U.S.C. § 1343, Sweigert contacted Senator Hugh Leatherman by email and or U.S.P.S and via the website Change.org ([https://www.change.org/p/s-c-senator-hugh-leatherman-indict-the-charleston-iii-for-closing-the-port-of-charleston-with-a-dirty-bomb-hoax](https://www.change.org/p/s-c-senator-hugh-leatherman-indict-the-charleston-iii-for-closing-the-port-of-charleston-with-a-dirty-bomb-hoax)).  Sweigert made false statements and provided fabricated evidence while demanding

PLAINTIFF'S RICO CASE STATEMENT - 14

an investigation into Goodman's alleged activities related to the June 14, 2017 incident.

4. In violation of 18 U.S.C. § 1343, Sweigert authored, sold and continues to sell a book titled "The Port of Charleston Dirty Bomb Hoax and Social Media Liability" (https://www.amazon.com/Report-Charleston-Dirty-Social-Liability/dp/1717056792/ref=sr_1_2?crid=23SL0KQSZ92OU &keywords=sweigert+port+of+charleston&qid=1673354352& sprefix=sweigert+port+of+charleston%2Caps%2C107&sr=8-2).  The book presents fraudulent claims that Goodman maliciously planned a hybrid cognitive cyberattack on the Port of Charleston, SC on June 14, 2017, for the specific purpose of disrupting critical infrastructure, inciting panic, and creating public alarm, for the purpose of generating YouTube advertising revenue based on evidence that Goodman allegedly knew to be false.  Since its publication in 2018, up to and including today, Sweigert derives revenue from the false claims and fraudulent misrepresentations made in the book in violation of 18 U.S. Code § 1343 and U.S. Code § 1513.

5. Non-party co-conspirator Marshall published a video on YouTube in June of 2022 in which he threatened Goodman with the destruction of his vendor account on Patreon.com if Goodman contacted law enforcement or otherwise reported

PLAINTIFF'S RICO CASE STATEMENT - 15

evidence that is likely to prove Marshall knew of a preconceived plan to stage a bomb hoax in the port of Charleston in June 2017 and falsely attribute the hoax to Goodman. Marshal made threats over the internet and published the threats on YouTube in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1513.

6. In or around June 2022, in retaliation for reporting facts about the activities of Marshall and Defendants, Marshall contacted Skype or Microsoft or some other agency in violation of 18 U.S.C. § 1343 and made false representations that resulted in the termination of Goodman's regular access to his Skype voice over IP account causing the permanent, irreversible loss of multiple business telephone numbers associated with the Skype account.

7. Webb, Sweigert and Loury participated in a scheme to cause a fraudulent document to be filed via the Pro Se Filing web site hosted by the U.S. District Court in the Eastern District of Michigan ("MIED") in violation of 18 U.S. Code § 1343 and Michigan Penal Code 750.249. On June 21, 2021, a document was fraudulently back dated and filed by the clerk Loury against Court rules, outside the normal Pro Se electronic filing procedure and in violation of 18 U.S.C. § 1343 and 18 U.S.C. § 1503. Defendants interfered with normal court procedures

PLAINTIFF'S RICO CASE STATEMENT - 16

with the specific intent of obstructing the Court's ability to administer justice and to deny Goodman the right to a fair trial.

8.  Sharp and Sweigert participated in a scheme to fraudulently represent that an anonymous email alerted NATAS of an alleged copyright infringement.  The email was sent or caused to be sent by Sweigert in violation of 18 U.S. Code § 1343 and 18 U.S. Code § 1503.

9.  Sharp and Sweigert participated in a scheme to harass and intimidate Snyder and compel his withdrawal as counsel for MSD in an effort to gain an advantage in litigation and in violation of 18 U.S. Code § 1503.

10. Sweigert participated in a scheme to file hundreds of vexatious pleadings in multiple divisions of U.S. District Court and to unjustly interfere with numerous cases of civil litigation involving Goodman with the express intent of gaining an advantage against Goodman and in violation of 18 U.S. Code § 1503.

11. Sweigert participated in a scheme with Wittes and Jankowicz to interfere with civil litigation brought by Goodman against Defendants and in violation of 18 U.S. Code § 1503.

12. Wittes participated in a scheme in violation of 18 U.S. Code § 4 to deliberately obscure facts related to the death of Peter W. Smith ("Smith").

PLAINTIFF'S RICO CASE STATEMENT - 17

13. Wittes participated in a scheme in violation of 18 U.S. Code § 1513 when he instructed Bouzy to harass and threaten Goodman in an attempt to prevent Goodman from reporting information related to the death of Peter W. Smith.

14. Wittes participated in a scheme to hire Ballard Spahr to represent Bouzy and Bot Sentinel in violation of 18 U.S. Code § 1503.

15. Bouzy, Sweigert and Jankowicz participated in a scheme in violation of 18 U.S. Code § 1343 to maliciously make false representations to third parties including Twitter.com, YouTube.com, Facebook.com, Patreon.com, SubscribeStar.com and Odysee.com with the specific wrongful intent of destroying Goodman's intellectual property and terminating his access to internet accounts his business relied on, proximately causing significant financial damage to Goodman beginning in 2020.

16. Sweigert and Sharp participated in a scheme to make fraudulent represents to the Court alleging that MSD, a corporation owned by Goodman, engaged in copyright infringement for actions taken by Goodman in his personal capacity in violation of 47 U.S. Code § 230 and 18 U.S. Code § 1503. Defendants acted with the deliberate intent of financially damaging Goodman and bankrupting his corporation with

PLAINTIFF'S RICO CASE STATEMENT - 18

vexatious litigation proximately causing significant financial damage beginning in 2020.

17. Bouzy and Bot Sentinel participated in a scheme to destroy social media accounts and financially harm Goodman's business based on malicious false statements and in violation of 18 U.S. Code § 1343 and 18 U.S. Code § 1503.

18. These acts together form a pattern of racketeering because they are all related to one another and share the common purpose of harassing Goodman, destroying his business and extorting money from him through vexatious litigation. Defendants derived income from these illegal acts and operated as an association in fact enterprise with a common purpose and for a common goal, to destroy Goodman's ability to report true facts and to earn income as an investigative journalist and documentarian.

19. These acts and their perpetrators are related to each other and are part of a common plan to classify Goodman's statements as "disinformation" and to halt Goodman's ability to communicate with the public via the internet or to earn money as an investigative journalist and documentarian.

20. On January 9, 2023, Sweigert, Jankowicz and Wittes participated in a scheme to obtain an order of protection enjoining Goodman from communicating with or about

Jankowicz on the basis of false statements made to the Arlington General District Court in violation of 18 U.S. Code §§ 1503 and 1513.

b. **Provide the dates of, the participants in, and a description of the facts surrounding the predicate acts;**

1. June 14, 2017, Webb provided Goodman with false information about the Maersk Memphis cargo ship that led to an incident resulting in the closure of the Port of Charleston, SC.

2. June 14, 2018 Sweigert published a book containing false claims and fabricated evidence in support of the scheme intended to frame Goodman for the closure of the Port of Charleston, SC

3. Throughout 2018, 2019, 2020, 2021 and 2022 Webb, Sweigert, Biss, Chavez, Quest and others were in communication over telephone and the internet in furtherance of a scheme to bring multiple civil lawsuits against Goodman in an effort to obstruct his rights, destroy his property, extort money from him and interfere with the due administration of justice in the U.S. District Courts.

4. September 4, 2020, Sharp brought legal action against MSD, a corporation owned by Goodman, for intellectual property and internet posts created by Goodman in his personal capacity and

unrelated to MSD for the wrongful purpose of preventing

Goodman from engaging in protected first amendment activity

and to extort money from Goodman by bankrupting his

corporation with vexatious litigation.

5.  December 2020, Bouzy and Bot Sentinel made false and

materially misleading claims that defamed Goodman with the

specific intent of subjecting Goodman to public hatred and

scorn.

6.  December 2020, Bouzy and Bot Sentinel made false claims to

Twitter, Facebook, YouTube and others with the express intent

of damaging Goodman's business and destroying his social

media accounts and his public reputation.

7.  June 2022, Quest threatened, harassed, and cyber stalked

Goodman with video posts and other statements published to

third parties.

8.  June 2022, Quest destroyed Goodman's irreplaceable property

when he made a false representation to Skype.com and or

Microsoft or some other agency in retaliation for Goodman

contacting the Columbia, SC FBI Field office and speaking

with Chief Division Counsel Donald A. Wood to present

evidence that is likely to prove Quest had prior knowledge of

events that took place related to the Maersk Memphis and the

closure of the Port of Charleston in June of 2017.

PLAINTIFF'S RICO CASE STATEMENT - 21

9.  Sweigert, Bouzy, Bot Sentinel, Wites, Berlin and Mishkin participated in a scheme to obstruct justice when they improperly interfered in, and otherwise disrupted and delayed litigation brought by Goodman against Bouzy, Bot Sentinel.

c.  **Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made**

1.  April 14, 2018 Sweigert published a book replete with false claims alleging Goodman planned a bomb hoax.  (June 14, 2017, Webb provided Goodman with false information about the Maersk Memphis cargo ship that led to an incident resulting in the closure of the Port of Charleston, SC. Sweigert claims to have sent the contents of this publication to lawmakers including South Carolina Senator Hugh Leatherman.

2.  Throughout 2018, 2019, 2020, 2021 and 2022 Webb, Sweigert, Biss, Chavez, Quest and others were in communication over telephone and the internet in furtherance of a scheme to bring multiple civil lawsuits against Goodman in an effort to obstruct his rights, destroy his property, extort money from him and interfere with the due administration of justice in the U.S. District Courts.

PLAINTIFF'S RICO CASE STATEMENT - 22

3. September 4, 2020, Sharp brought legal action against MSD, a corporation owned by Goodman, in violation of 47 U.S. Code ¬ß and for the wrongful purpose of preventing Goodman from engaging in protected first amendment activity and to extort money from Goodman by bankrupting his corporation.

4. December 2020, Bouzy and Bot Sentinel made false and materially misleading claims to Twitter, Facebook, YouTube and others with the express intent of damaging Goodman's business and destroying his access to social media and his public reputation.

5. June 2022, Quest threatened, harassed, and intimidated Goodman.  Quest destroyed Goodman's irreplicable property when he made a false representation to Skype.com and or Microsoft or some other agency in retaliation for Goodman contacting the Columbia, SC FBI Field office and speaking with Chief Division Counsel Donald A. Wood to present evidence that is likely to prove Quest had prior knowledge of events that took place related to the Maersk Memphis and the closure of the Port of Charleston in June of 2017.

6. Sweigert, Bouzy, Bot Sentinel, Wites, Jankowicz, Berlin and Mishkin participated in a scheme to obstruct justice when they improperly interfered in, and otherwise disrupted and delayed litigation brought by Goodman against Bouzy, Bot Sentinel.).

PLAINTIFF'S RICO CASE STATEMENT - 23

7. On January 9, 2023, Jankowicz made a false statement to the Arlington General District Court in violation of 18 U.S. Code §§ 1503 and 1513 claiming she had been threatened with violence by Goodman in order to fraudulently obtain an order of protection against Goodman and in furtherance of the common scheme to damage Goodman.

d. **State whether a predicate act is based upon a criminal conviction.**

1. To the best of Plaintiff's knowledge, none of these alleged crimes have resulted in charges or conviction of any of the alleged perpetrators

e. **State whether civil litigation has resulted in a judgment with regard to the predicate acts;**

1. No judgement has resulted from any civil litigation of these allegations as predicate acts under RICO as of yet.

f. **Describe how the predicate acts form a "pattern of racketeering activity"**

1. The predicate acts form a pattern of racketeering activity because they were calculated and coordinated to achieve the common goal of denying Goodman's first amendment and second amendment rights, destroying Goodman's ability to conduct legitimate investigative news reporting on matters of public interest, destroying Goodman's business and public

PLAINTIFF'S RICO CASE STATEMENT - 24

reputation, eliminating Goodman's ability to access major
social media platforms including Twitter, YouTube, Facebook
and others, denying Goodman's ability to earn money, denying
Goodman's right to freely access the courts, and denying
Goodman's right to a fair trial,.

g. **State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail**

1. The alleged predicate acts are related to each other as part of a
common plan because they were calculated to harm Goodman
financially and coordinated by Sweigert and his co-
conspirators with the common goal of terminating Goodman's
ability to do business and earn a living as an investigative
journalist.. The coconspirators coordinated through clandestine
communications on Twitter, YouTube and other means
including email, direct messaging, and steganographic
encoding methods.

6. **Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:**

a. **State the names of the individuals, partnerships, corporations, associations, or other legal entities that allegedly constitute the enterprise;**

1. The alleged enterprise is managed and coordinated by
Sweigert. His brother Webb was the initial point of contact

PLAINTIFF'S RICO CASE STATEMENT - 25

with Goodman and Webb has continued to conspire with Sweigert to wrongfully sue Goodman in various Districts around the U.S.  Goodman alleges Sweigert opportunistically contacted Sharp after Goodman created a parody of the EMMYs statuette providing an irresistible opportunity for Sharp's non-profit corporation NATAS to sue.  Sweigert, Sharp, Esquenet and her partners at Finnegan, Henderson, Farabow and Dunnar, LLP calculated a plan to sue a corporation owned by Goodman, thereby compelling him to spend dozens of thousands of dollars retiaing counsel rather than rightfully being allowed to defend himself pro se against their claims.  Prior to litigation, Esquenet was directly alerted by Goodman of the high probability that a vexatious outside party (Sweigert) was attempting to draw her client into litigation. Esquenet ignored this well-founded warning and proceeded to sue at great expense to her non-profit client NATAS and went on to continue to communicate with and accept helpful information from Sweigert that was used throughout the course of litigation against Goodman's corporation.  Jankowicz became involved in the enterprise while she was the executive director of the U.S. Dept of Homeland Security Disinformation Governance Board and after Goodman released a report revealing her failure to

register pursuant to 22 U.S. Code § 612.  Jankowicz and or
Sweigert contacted Patreon.com and made false claims in an
effort to terminate Goodman's business relationship with
Patreon.com and stop Goodman from earning a living as an
investigative journalist.  On January 9, 2023 in violation of 18
U.S. Code §§ 1503 and 1513, Jankowicz coordinated with
Wittes and Sweigert to obtain an order of protection against
Goodman by making a false statement to the Arlington General
District Court.

b. **Describe the structure, purpose, function and course of conduct
of the enterprise;**

1. The Enterprise is designed to mimic the structure of
anonymized, decentralized computer applications similar to
peer-to-peer networks like the now defunct Napster.  *See* A&M
Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th. Cir., 2001)
Napster allowed anonymous users around the world to illegally
distribute copyright protected music and other data without the
use of a traditional central server or data center and through
encrypted, clandestine peer-to-peer connections.  These tactics
seek to encrypt and carefully hide connections between
members of the Enterprise just as Napster concealed
communications between network nodes to avoid detection and
"dance between the raindrops" of the law, enabling illegal

activity prior to the groundbreaking ruling against the

technology startup.  Just as with Napster, the Enterprise utilizes

methods that are intended to hide the activities of the

collective, obscure direct connections between the participants

and to avoid prosecution or civil litigation.  The openly stated

goal of several members of the Enterprise is to counteract so

called "disinformation" and the function of the Enterprise is the

same but focused solely on Goodman.  Information

Governance is the self-appointed duty of Sweigert, Bouzy and

in the case of Jankowicz, it is the widely publicized purpose of

the Disinformation Governance Board of which she was the

Executive Director during the course of her wrongdoing.  No

such information policing role is granted to the U.S.

Government or any subdivision of it in the Constitution or

otherwise codified in law.  Because of this, any parties engaged

in information governance of the kind the Enterprise is, must

rely on pseudo-regulation and arbitrary rules otherwise referred

to as "terms of service" as described by the private sector

corporations that control major social media platforms and

internet service providers.  The Enterprise seeks to coordinate

and even deceive groups of individuals including unsuspecting

members of the public to engage in mass complaints in an

effort to eliminate unfavorable social media users such as

PLAINTIFF'S RICO CASE STATEMENT - 28

Goodman.  By defaming Goodman, public hatred against him was amplified and the Enterprise increased its ability to turn public opinion against Goodman in an effort to undermine his factual reporting on the basis of false statements.  The Enterprise utilizes deceptive, pseudonymous accounts to amplify its activity and increase the perception of mass hatred toward Goodman.  The enterprise has also engaged in a campaign of coordinating vexatious litigation against Goodman and a corporation owned by Goodman in an effort to overwhelm Goodman financially and logistically and prevent him from continuing with his investigative journalism that is likely to implicate members of the Enterprise in criminal activity that is newsworthy and in the public interest.  The purpose of the Enterprise is to prevent Goodman from succeeding in his efforts by destroying his business and public reputation and denying him access to social media web sites through which Goodman publishes his investigative reports.

    c.  **State whether any defendants are employees, officers or directors of the alleged enterprise;**

        1.  The collective in question is an association in fact Enterprise and not an incorporated or other traditional business entity.  As such, the existence of any legitimate employees is unknown and unlikely.  However, it is equally unlikely that so many

PLAINTIFF'S RICO CASE STATEMENT - 29

individuals could maintain such concentrated and sophisticated activity for as long as they have without ongoing financial support.  Participants in the Enterprise earn money through various anonymized methods including YouTube "super chat", PayPal, GoFundMe, Venmo, bitcoin, steemit or other crypto currencies and other online payments that can be made through pseudonymous or completely anonymous accounts.

d. **State whether any defendants are associated with the alleged enterprise;**

    1. Each of the named defendants are directly associated with the alleged Enterprise and have each engaged in predicate acts pursuant to 18 U.S. Code § 1962.

e. **State whether you are alleging that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise; and**

    1. To the best of Goodman's knowledge, the Defendants are individual members of the Enterprise, and each is an independent legal entity operating collectively with the exception of Bot Sentinel and ATAS.  These corporate entitles are themselves each a culpable person because they participated in the Enterprise in furtherance of the common goal and for the common purpose to damage Goodman.

f.   **If any defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity**.

1.   Each of the Defendants are members of the Enterprise and perpetrators of the alleged racketeering activity.

7.   **Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all**

1)   The Enterprise has no legitimate purpose outside of harassing and intimidating Goodman and eliminating his ability to earn a living as an investigative journalist and documentary filmmaker.  There is no usual daily activity of the Enterprise aside from defaming and harassing Goodman and engaging in predicate acts.  The Enterprise exclusively engages in a pattern of racketeering activity aimed at destroying Goodman's business and public reputation.

8.   **State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

1)   The sole and exclusive purpose of the Enterprise is to engage in a pattern of racketeering activity aimed at damaging Goodman.  There is no separate function of the Enterprise that Goodman is aware of.  The evidence that defines the pattern of racketeering activity also describes the Enterprise.

9.  **Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.**

    1)  The primary goal of the Enterprise is to eliminate Goodman's ability to report allegations of criminal activity ascribed to members of the Enterprise.  This benefits members by avoiding public scrutiny and reducing the likelihood of criminal prosecution while simultaneously furthering their political and financial goals.  In the case of Jankowicz, she has publicly disclosed her financial compensation earned during the course of her participation with the Enterprise.  Sweigert has benefited financially through the publication of a book which contains false statements intended to implicate Goodman in the planning of a bomb hoax that affected the Port of Charleston, SC.  Webb earns money through Venmo and other payment methods in part as a function of his participation in the Enterprise and predicate acts he has committed in the course of harming Goodman.  Bouzy earns money through donations to Bot Sentinel which he promotes in conjunction with his malicious efforts aimed at destroying Goodman's property.

10.  **Describe the effect of the activities of the enterprise on interstate or foreign commerce.**

    1)  The Enterprise has disrupted Goodman's ability to conduct business on the internet with viewer customers around the world and with multiple companies around the world including YouTube, Twitter, Patreon, SubscribeStar and Odysee.  The Enterprise has continually sought to disrupt Goodman's business relationships with Patreon.com, SubscribeStar.com and Odysee.com,

three websites through which Goodman processes credit card payments and provides sponsor viewers with access to premium video content available only to paying subscribers.  Since 2020, the activity of the Enterprise has a had a direct and ongoing negative affect on Goodman's ability to reach new customers and retain existing customers by reducing Goodman's access to social media sites used to promote his subscription service to customers around the United States and the world.

**11. If the complaint alleges a violation of 18 U.S.C. § 1962(a), provide the following information:**

   a.  State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt; and

   b.  Describe the use or investment of such income.

      1.

12. if the complaint alleges a violation of 18 U.S.C. § 1962(b), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

   a.  Sweigert acquired interest in the Enterprise when created the Cyber Militia which is an amorphous collection of individuals that he maintains and controls through online activity in a similar manner to a social media group on Facebook or Twitter.

   b.  The Cyber Militia interfaces with members of the U.S. Department of Homeland Security's working group of civilian professionals

PLAINTIFF'S RICO CASE STATEMENT - 33

known as the Disinformation Governance Board including Jankowicz and Wittes.

c. Defendant Bouzy acquired interested in the Enterprise and became an active participant in the Cyber Militia when he received information from Sweigert via Twitter and used that information in furtherance of the Enterprise's common purpose and for the common goal of damaging Goodman and his business property.

d. Defendants Sharp and Esquenet acquired interested in the Enterprise and became active participants in the Cyber Militia when they received information from Sweigert and used that information in furtherance of the Enterprise's common purpose and for the common goal of damaging Goodman and his business property.

**13. If the complaint alleges a violation of 18 U.S.C. § 1962(c):**

a. The Enterprise is not an incorporated entity and has no employees but each of the defendants are associated with the Enterprise. They share communications between one another to cooperate and coordinate in furtherance of their common goal and for the common purpose of damaging Goodman.

b. The culpable people are the individual participants in the Enterprise.

14. If the complaint alleges a violation of 18 U.S.C. § 1962(d), describe in detail the alleged conspiracy.

Defendants conspired with one another and third parties to maliciously and fraudulently file mass complaints against plaintiff in various venues. Defendants coordinated with one

PLAINTIFF'S RICO CASE STATEMENT - 34

another to make false statements to YouTube, Facebook, Twitter and various Courts including

U.S. District Courts and the Arlington General District Court.

15. Describe the alleged injury to business or property.

While the specific predicate acts, when evaluated on their own, were insufficient to cause injury

to business or property individually, the cumulative effect of the Enterprise and all of the actions

in combination resulted in the damage to Goodman's public reputation and business property.

Goodman's access to YouTube, Twitter and Facebook was wrongfully obstructed as a result of

the conspiracy between defendants and the direct actions of the Enterprise.

16. Describe the direct causal relationship between the alleged injury and the violation of

the RICO statute.

Because small individual actions are frequently insufficient to trigger algorithms or

provoke a review of any alleged violation, the defendants utilized the Enterprise in furtherance of

their common purpose and for the common goal of suppressing Goodman's first amendment and

second amendment rights, to damage his public reputation and to destroy his access to the

business property that was his valuable branded social media accounts.

17. List the damages sustained for which each defendant is allegedly liable.

Each of the defendants are jointly and severally liable for the damage caused to Goodman's

reputation and business because they each participated in the Enterprise for the common goal and

with the common purpose of damaging Goodman's public reputation and destroying his ability

to conduct business or access his business property.

18. List all federal causes of action, if any, and provide the relevant statute numbers.

Defendants jointly and severally violated

a.   18 U.S. Code § 1962(b)(c) and (d)

PLAINTIFF'S RICO CASE STATEMENT - 35

  b. 18 U.S. Code § 1512

  c. 18 U.S. Code § 1503

  d. 18 U.S. Code § 1543

  e. 18 U.S. Code § 1513(b)(1)

  f. 18 U.S. Code § 1513(b)(2)

  g. 22 U.S. Code § 612

19. List all federal causes of action, if any, and provide the relevant statute numbers.

  a. 18 U.S. Code § 1962(b)(c) and (d)

20. List all pendent state claims, if any.

  a. New York Not-For-Profit Corporation Law - NPC § 712-a

  b. New York Judiciary Law - JUD § 487

Signed this 17th day of February 2023

Respectfully submitted,

                Jason Goodman, Plaintiff, Pro Se
                   252 7th Avenue Apt 6s
                   New York, NY 10001
                    (323) 744-7594
                 truth@crowdsourcethetruth.org

PLAINTIFF'S RICO CASE STATEMENT - 36