## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Jason Goodman,**<br>**Plaintiff,**<br>**Proposed Pro Se Counter-**<br>**Defendant**<br><br>                    -against-<br><br>**D. G. Sweigert,**<br>**Defendant**<br>**Proposed Pro Se Counter-Plaintiff** | **PRO SE**<br><br>**21-cv-10878-AT-JLC**<br><br>**District Judge Analisa Torres**<br><br>**Magistrate Judge James L. Cott** |

## NOTICE OF DEFENDANT'S <u>OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE OF COURT ECF no. 142</u>

---

The *pro se* Defendant (Proposed Counter Plaintiff) (undersigned) files these papers in

OPPOSITION to **ECF no. 142.**  Undersigned disputes that personal jurisdiction can be

conferred upon him and opposes such finding of personal jurisdiction by this Court.

March 6, 2023 (3/6/23)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................................................3

MEMORANDUM OF LAW AND ARGUMENT ...................................................................6

BACKGROUND...........................................................................................................6

LAW AND ARGUMENT................................................................................................15

CONCLUSION............................................................................................................25

SUMMARY ................................................................................................................26

## TABLE OF AUTHORITIES

**Cases**

Cf. Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n,

    Inc., Loc. 1889 AFT AFL-CIO, 38 N.Y.2d 397 (1975).........................................................21

Abacus Fed. Sav. Bank v. Lim, 75 A.D.3d 472, 905 N.Y.S.2d 585, 588 (2010) .......................23

Alexander of New York, Inc. v. Fritzen, 68 N.Y.2d 968, 969, 503 N.E.2d 102, 102, 510

    N.Y.S.2d 546, 547 (1986) (mem.) ...........................................................................................22

Canyon Cnty., 519 F.3d at 972.....................................................................................................24

Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988).......................................................21

Chaney v. Berkshire Hathaway Auto., 2017 WL 6520662, at *5 n.4 (D. Ariz. Sept. 25, 2017).24

Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) ..........................................................................22

Ganske v. Mensch 19-CV-6943 (RA) (S.D.N.Y.) ........................................................................20

Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 170–71 (S.D.N.Y. 2019) ............23

Gilman v. Marsh & McLennan Cos. 15-0603 (2d Cir. Jun. 16, 2016).........................................22

Goodman v. Sharp, 21-CV-10627 (VEC) (S.D.N.Y. Jul. 12, 2022)............................................20

Goodman v. Sharp, et. al, 21-cv-10627-VEC (S.D.N.Y.) ...........................................................18

Hauser v. Bartow, 273 N.Y. 370,  374 (1937) ............................................................................21

Illoominate Media, Inc., et al v. Cair Florida, Inc., et al, No. 19-14741 (11th Cir. 12/29/2020)...8

Jones v. Nat'l Commc'n Surveillance Networks, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006)...17,

    23

Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)............................................19

Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc. No. 20-CV-7269 (VEC),

    2021 U.S. Dist. LEXIS 142733 (S.D.N.Y. July 30, 2021)..............................................10, 18

Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019) .............................................20

Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60 n.5 (1993)...........22

Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook, 41 F.3d at 80).....22

Sweigert v. Cable News Network, Inc. (2:20-cv-12933), District Court, E.D. Michigan...........12

Sweigert v. Goodman 18-cv-08653-VEC-SDA (S.D.N.Y.)......................................................12

United States v. Atcheson, 94 F.3d 1237, 1243 (9th Cir. 1996) ...............................................15

United States v. Bolton, 68 F.3d 396, 399 (10th Cir. 1995) .....................................................15

Xiotech Corp. v. Express Data Prods. Corp., 11 F. Supp. 3d 225, 239 (N.D.N.Y. 2014)...........19

## Statutes

18 U.S. Code §1962(b) .........................................................................................................23

18 U.S.C. § 1503 ...........................................................................................................10, 13

18 U.S.C. § 1513 ...........................................................................................................11, 13

18 U.S.C. § 1951, the Hobbs Act .........................................................................................12

18 U.S.C. § 1962(c) (1988)..................................................................................................16

18 U.S.C. § 1964(c) (1988)..................................................................................................16

18 U.S.C. 1343 ...................................................................................................................15

AMENDMENT I of the U.S. Constitution ..............................................................................15

Commerce Clause................................................................................................................15

Confrontation Clause of the U.S. Constitution .......................................................................14

P.L. 97-291.........................................................................................................................14

Public Law 97-291, § 4(a).....................................................................................................14

United States v. Lopez, --- U.S. ---, 115 S.Ct. 1624, 1630 (1995)...............................................15

**Treatises**

*Goodman vs Bouzy & Bot Sentinel | Default Judgment | Plaintiff Jason Goodman Guest,*

    *11/22/22,* (https://www.youtube.com/watch?v=85kophkOfBM&t=2731s) ............................6

*How to Lose the Information War,* I.B. Tauris, 2020, ISBN: 978-0-7556-4208-3 ......................8

Serial Number #87752970 – by the United States Patent and Trademark Office (USPTO).........9

*The Counter Lawfare Report with Attorney John Snyder – Allegations of Corruption in Federal*

    *Court, 6/30/2021,* (https://www.patreon.com/posts/counter-lawfare-53141470) ..................10

**NOTICE OF DEFENDANT'S <u>OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE</u>**
<u>**OF COURT ECF no. 142**</u>

## MEMORANDUM OF LAW AND ARGUMENT

**Procedural history.** It is assumed that all parties are familiar with the procedural history of

this action up to the point where Plaintiff Goodman filed a motion seeking leave of the court to

file a Third Amended Complaint (TAC), Dkt. 142 which relies heavily on the Racketeering

Influenced and Corrupt Organizations (RICO) law. This instant pleading is filed in opposition

to Dkt. 142.

Because both parties are *pro se* (Plaintiff and Defendant Sweigert), the Court should construe

all of their pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interprets

them to raise the "strongest [claims] that they suggest," Triestman v. Fed. Bureau of Prisons,

470 F.3d 471, 474 (2d Cir. 2006) (quotation marks and citations omitted) (emphasis in original).

Although a *pro se* Defendant, the undersigned has eight (8) computer industry professional

certification concerning critical infrastructure protection and two masters' degrees. The

undersigned is a designated Certified Homeland Protection Associate III as certified by the

Homeland Protection Professional Certification Board, National Sheriff's Association. The

Defendant has meticulously documented Goodman's activities described herein and can provide

evidence at trial to substantiate all assertions made in this document. In many cases document

references are not specifically provided so as to not burden this Court.

## BACKGROUND

1.      Jason Goodman is a paralegal YouTube propagandist attempting to make himself

relevant in the on-line legal community by operating the COUNTER LAWFARE FUND social

media entertainment program under the trademark CROWDSOURCE THE TRUTH to raise money via private subscriber Internet sites. (https://www.patreon.com/posts/counter-lawfare-53141470) (https://www.patreon.com/posts/counterlawfare-v-77771621?l=es)

2.      Goodman's "business model" mimics a New York lawyer named Nathaniel Broughty, who operates as "NateTheLawyer" on YouTube (https://www.youtube.com/@NateTheLawyer) and Twitter (https://twitter.com/NatetheLawyer) via the popular #LAWtube and #LAWnerds hashtags.  Mr. Broughty previously raised $30,000.00 via YouTube pledges, donations and "crowdsourcing" for "legal fees" to file his own defamation lawsuit against defendant Christopher E. Bouzy, who is defended by Ballard Spahr attorneys and defendants Seth Berlin and Maxwell Mishkin.  See BROUGHTY v. BOUZY, 11/4/2022 as 2:2022-cv-06458, US District Court for the District of New Jersey, Judge S. D. Wigento

(https://www.law360.com/pulse/articles/1564014)

(https://www.pacermonitor.com/public/case/46713303/BROUGHTY_v_BOUZY )

3.      If it had not been for the collusion between Goodman and Broughty this legal action may have been dismissed months ago, but it has now entered into a realm "one upmanship" as these two competitive YouTubers try to top each other in social media podcasts about their lawsuits against Christopher Bouzy.

4.      This instant legal action is retaliatory and part of Goodman's "NateTheLawyer" knock-off business, which brings forth sham litigation in bad faith that spawns endless hours of social media videos with the accompanying pleas to the public for funds to "fight social engineers" like Christopher Bouzy.  Goodman's collusion with Broughty is obvious on NateTheLawyer podcasts, e.g. *Goodman vs Bouzy & Bot Sentinel | Default Judgment | Plaintiff Jason Goodman Guest, 11/22/22*, (https://www.youtube.com/watch?v=85kophkOfBM&t=2731s).

5.     Goodman's "business" model uses a two staged social media approach to receive monies from consumers.  There is the (1) public promotion / publicity component (13 social media properties accessible by the general public with no user authentication) and (2) the private Internet component accessible only after a user is authenticated by password on a subscriber / membership basis (Patreon, SubscribeStar and Odysee).

6.     This is also the "business" model of Goodman's former room-mate and fellow YouTuber George Webb Sweigert (estranged brother of the undersigned).  Like Goodman, "George Webb" files sham foundationless legal actions in Michigan and Georgia to provide content for his conspiracy theory broadcasts.

7.     The bulk of the Third Amended Complaint (TAC) allegations concerning supposed injury to business or deprivation of property orbit the non-monetized non-commercial public broadcasts (stage one of two) that serve as an advertising, publicity and a promotional device. Goodman does not allege that password protected (stage two of two) subscriber content (Patreon, SubscribeStar and Odysee) requiring consumer credit card payments has been harmed or injured. See (https://www.patreon.com/posts/counter-lawfare-53141470)

(https://www.patreon.com/posts/counterlawfare-v-77771621?l=es)

**8.**     As stated in the TAC, page 22, "Goodman built an audience on YouTube and eventually monetized the effort by creating a subscription video service through which individual viewers become monthly sponsors and gain access to sponsor exclusive content on www.patereon.com ("Patreon"), www.subscribestar.com ("SubscribeStar") and www.odysee.com ("Odysee")."

9.     Goodman is apparently upset that his non-monetized stage one social media companies terminated his public promotional YouTube/Twitter channels for his violations of the Terms of Service of said platforms and intends to blame his poor content decisions on innocent victims

like the defendants.  In fact, both Twitter and YouTube Terms of Service allow

Twitter/YouTube to ban Goodman from their platforms for any reason at all.  So even if

defendants instructed Twitter/YouTube to ban his account, they did not tortiously interfere with

a business relationship because Goodman did/does not have legal or contractual rights in the

continued use of his accounts.

10.     Goodman's conspiratorial allegations against the defendants about a supposed "Twitter

ban" is an identical parallel to a string of lawsuits lost by Goodman's fellow YouTuber and

"close personal friend" Laura Loomer for nearly the same allegations.  See Illoominate Media,

Inc., et al v. Cair Florida, Inc., et al, No. 19-14741 (11th Cir. 12/29/2020)

(https://media.ca11.uscourts.gov/opinions/unpub/files/201914741.pdf )

(https://www.miaminewtimes.com/news/laura-loomer-loses-lawsuit-appeal-against-cair-and-

twitter-11788420 )

11.     Plaintiff's TAC recounts a convoluted history of the undersigned Defendant, a certified

cyber and critical infrastructure protection expert with two masters' degrees, accusing

Defendant of committing wildly implausible acts.  Thus, in the opening paragraphs of the TAC

Goodman alleges a fantastical government operation funded by the U.S. Department of

Homeland Security that, according to Goodman's conspiracy theory allegations, includes the

undersigned Defendant and defendant Nina Jankowicz (TAC, Dkt. 142, pages 1 to 4).

Jankowicz deals with so-called disinformation at a political level as discussed in her book *How

to Lose the Information War,* I.B. Tauris, 2020, ISBN: 978-0-7556-4208-3, while the

undersigned is a technical computer security expert interested in critical infrastructure

protection.  To substantiate a Jankowitz/Sweigert DHS conspiracy theory Goodman includes 23

pages of irrelevant government documents as EXHIBIT D.  Goodman will undoubtedly share

these sensational findings of the conspiracy with his COUNTER LAWFARE FUND audience with requests for more monies.

12.     Then Goodman identifies the existence (page 4) of the "LAWFARE BLOG" operated by Ben Wittes and claims that Goodman is the victim of "lawfare".  Goodman then proposes his own incorrect definition of lawfare "lawfare is generally regarded as the weaponization of the legal system against an enemy and masking the attack as legitimate litigation."  In contrast, as stated on Wikipedia, "Benjamin Wittes, Robert Chesney, and Jack Goldsmith employed the word in the name of the Lawfare Blog, which focuses on national security law and which has explored the term and the debate over what lawfare means and whether it should be considered exclusively a pejorative." (https://en.wikipedia.org/wiki/Lawfare)

13.     Goodman is apparently upset that Ben Wittes did not write the article about the death of Peter Smith that Goodman (under the direction of Charles Ortel) wanted.  Apparently, Ortel is upset that he was interrogated by two Special Agents from the Federal Bureau of Investigation (F.B.I.) concerning the Peter Smith death.  Apparently, Ortel was embarrassed by the F.B.I. interview because of his transgender son/daughter named Sloane Ortel, aka William Charles Gormley Ortel, II.  Goodman is suing Wittes to make good on his threats to "write your article my way, or else".  The TAC then provides a bare bones tutorial on racketeering law (page 5).

14.     The TAC states at para. 11 that Goodman's company, Multimedia System Design, Inc. has never been associated with the brand name Crowdsource The Truth, which is easily disprovable by searching the trademark database of the U.S. Patent and Trademark Office. "The CROWDSOURCE THE TRUTH trademark was assigned a Serial Number #87752970 – by the United States Patent and Trademark Office (USPTO). Assigned Trademark Serial Number is a Unique ID to identify the CROWDSOURCE THE TRUTH trademark application

in the USPTO.  The CROWDSOURCE THE TRUTH mark is filed in the category of Education and Entertainment Services. The legal correspondent for CROWDSOURCE THE TRUTH trademark is MULTIMEDIA SYSTEM DESIGN, INC, 252 7TH AVENUE, 6S NEW YORK, NY 10001 . The current status of the CROWDSOURCE THE TRUTH filing is **REGISTERED**." ( https://www.trademarklite.com/trademark/trademark-detail/87752970/CROWDSOURCE-THE-TRUTH )  The trademark entry even provides the same personal address as Goodman listed on this Court's docket.

15.     Considering the foregoing misrepresentations, it would be very difficult for this Court to infer, as para. 13 indicates, that the Defendant violated 18 U.S.C. § 1503 with published "death threats" about Goodman's attorney John Hoover Snyder, who represented Goodman in Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc. No. 20-CV-7269 (VEC), 2021 U.S. Dist. LEXIS 142733 (S.D.N.Y. July 30, 2021), aka NATAS v. MSDI.

16.     Like Mr. Broughty, Mr. Snyder appeared with Goodman on YouTube broadcasts about "Corruption in the Federal Courts" and became a public figure for the purposes of public criticism.  See *The Counter Lawfare Report with Attorney John Snyder – Allegations of Corruption in Federal Court, 6/30/2021*, (https://www.patreon.com/posts/counter-lawfare-53141470)[1]

17.     Like Goodman, Mr. Snyder became apparently upset by those who dared to publicly criticize him on Internet blogs, like www.sdny.org, for his remarkably uninformed knowledge of federal civil procedure and allowing Goodman to provide false facts to Judge Valerie E.

---

[1] See also Published on Jun 30, 2021
The Counter Lawfare Report retuns [sic] to Crowdsource the Truth with a new legal expert. Harvard JD, tech entrepreneur and legal expert Jonathan Snyder joins me to explore allegations of corruption within the Federal Court system. This is going to be an explosive episode. Join us on SubscribeStar and Patreon.  https://www.altcensored.com/watch?v=MVzocok1fy8

Caproni in a 4/30/2021 hearing in NATAS v. MSDI about Goodman's YouTube channel, terminated 4/14/2021 (TAC, page 21, para. 109.b).  The bulk of the hearing addressed Goodman's inability to respond to NATAS discovery requests for access to Goodman's videos that remained on the now terminated JASON GOODMAN channel (4/14/2021).  At said hearing attorneys for NATAS accused Goodman of spoliating said video evidence to which Goodman blamed on the undersigned.  In fact, evidence demonstrated that the undersigned had only filed one copyright complaint against that YouTube channel in the previous three (3) years, which was denied.  The allegation that was reported to the New York Bar centered on Snyder allowing Goodman to provide false statements to Judge Caproni in Snyder's presence (rigorously documented by the undersigned in two legal actions).  Apparently, humiliated by his association with Goodman, Mr. Snyder withdrew from the case.  Even Goodman has called Snyder and an incompetent lawyer in several court pleadings in other actions.

18.     Mr. Snyder never mentioned "death threats" to the court when withdrawing from the NATAS v. MSDI action, contrary to the claims pushed by Goodman, rather Snyder stated:

> *"In moving to withdraw, I intend no criticism of Mr. Goodman or his journalistic pursuits.  Mr. Goodman is a cordial and cooperative client who works extremely hard on his craft.  Nevertheless, Mr. Goodman's work seems to have attracted opposition that is outside of my comfort zone".  Declaration of (attorney) John H. Snyder –  Document 101, 8/13/2021, NATAS vs. MSD* [https://trackingmeroz.wordpress.com/2022/01/30/the-attorney-who-feared-dave-sweigert-more-than-a-russian-american-mobster/](https://trackingmeroz.wordpress.com/2022/01/30/the-attorney-who-feared-dave-sweigert-more-than-a-russian-american-mobster/)

19.     Simply stated, Mr. Snyder withdrew from the NATAS v. MSDI shortly after Goodman and his company lost on Summary Judgement on 7/30/2021.  See Case 1:20-cv-07269-VEC-OTW Document 98 Filed 07/30/21.  Mr. Snyder withdraw via motion two weeks later.

(https://storage.courtlistener.com/recap/gov.uscourts.nysd.543701/gov.uscourts.nysd.543701.98.0.pdf)

20.     In similar exaggerations, Goodman believes that he is a "witness" who is suffering retaliation for docketing an Amicus Curiae Brief (TAC paras. 41 and 42), and seeks redress pursuant to 18 U.S.C. § 1513, a witness retaliation law.  As explained in the Initial Complaint (Dkt. 1) para. 19, "Plaintiff has submitted an Amicus Curiae brief in Sweigert [George Webb, not the undersigned] v CNN that alleges criminal activity on the part of Webb and others. (See Case 2:20-cv-12933-GADKGA ECF No. 20, Eastern District of Michigan)."  See para. 20 (Dkt. 1) "On information and belief, Plaintiff alleges that Webb engaged Bouzy to harass and defame Plaintiff in retaliation for the Amicus filing and to deliberately harm Plaintiff."

21.     Goodman's self-important YouTube channel "JASON GOODMAN", terminated 100 days prior to the filing of the Amicus Curiae brief, is described in a magistrate's Memo Endorsement — Document #246 in Sweigert v. Goodman 18-cv-08653-VEC-SDA (S.D.N.Y.) Document 246 Filed 04/15/21 Page 1 of 3, quoted in relevant part:

> "Yesterday the Defendant [Goodman] informed his social media podcast viewers that Google, LLC (YouTube.Com) had deleted the "Jason Goodman" YouTube channel with its so-called 119,000 (119K) subscribers. The account termination was based on violations of "Community Standards", according to the Defendant. 2,333 videos, dozens that contained evidence of Defendant's defamation per se, are no longer available to be viewed.[name added for clarity]"

22.     Thus, it is impossible for a claim of witness retaliation to be made for a 4/15/2021 YouTube channel termination that resulted from an Amicus Curiae brief docketed on 7/20/2021 (ECF no. 20, Sweigert v. Cable News Network, Inc. (2:20-cv-12933), District Court, E.D. Michigan (M.I.E.D.)).

23.      In paras 9 and 10, TAC, Dkt. 142, there is an almost unintelligible reference to a

"fraudulent e-mail" message about a trademark violation and someone's grandmother (EXHIBIT

E) that is supposedly illegal pursuant to 18 U.S.C. § 1951, the Hobbs Act.  Goodman does not

allege what "false statements" are made in the e-mail message, rather he apparently believes that

the undersigned sent the e-mail (which is denied).  Like the account termination 100 days prior

to the Amicus Curiae brief, this supposedly illegal e-mail, sent in retaliation for something, was

sent a year prior to the Amicus Curiae brief being docketed.  Further, Goodman does not

elaborate how his so-called business may have been harmed by such an e-mail.

24.      Concerning the "grandmother" e-mail, Goodman demonstrated his ability to exploit his

status as a *pro se* litigant as observed by Judge Caproni who issued a sanctions order against,

noting in particular an e-mail message sent by Goodman; quoted in relevant part:

> "I'm also planting the seed with [Plaintiffs'] lawyers that they're aligned with a crazy
> guy and if they don't unalign themselves it's gonna give me more evidence to show
> that they're working together. I also sent this to [the confidential email address]
> first time I ever emailed that address. Let's see if there's any response. Now that
> I don't have an attorney whatever I do my attorney can't get sanctioned and I'm not
> even Pro Se so they could just yell at me and tell me not to do it again."
> Case 1:20-cv-07269-VEC-OTW Document 156 Filed 02/22/22 Page 1 of 7
> (https://storage.courtlistener.com/recap/gov.uscourts.nysd.543701/gov.uscourts.nysd.54
> 3701.156.0.pdf)

25.      In para. 13 Goodman again cites criminal law for supposed threats ("extortion") against

attorney Snyder, implying some level of "extortion" by citing 18 U.S.C. § 1951.  This is a sub-

theme of the TAC: page 5 "extorting attorney Jonathan Snyder", para. 8 "extort Goodman into

terminating broadcasts", page 19 "extortion of money from him via vexatious and fraudulent

litigation", para. 13 "extorting Snyder into withdrawal", para. 55.g "to extort Goodman into

terminating broadcasts", para. 58 "forcibly extort Goodman into terminating broadcasts", and

para. 100 "extorting him into ceasing news broadcasts"[2].

26.     Goodman asserts 18 U.S.C. *§* 1503 (relating to obstruction of justice) in a conclusory

manner nine (9) times: "statements to law enforcement" (para. 18), Twitter tweets (para. 48),

pre-litigation letters (para, 49), a court employee in Michigan (para. 50), a mysterious "forged

document" (para. 55.e) which points to a non-existent "EXHIBIT D", a Twitter tweet by

defendant Christopher E. Bouzy (para. 55.f), "harassing e-mails" sent by attorneys for Mr. Bouzy

(para. 55.g), a supposed "false statement" made to Twitter (para. 55.h) and false statements to

"law enforcement" (para. 55.i), which increases suspicions that Goodman's TAC is retaliatory in

nature and designed to settle old scores.

## LAW AND ARGUMENT

### *Goodman attempts to improperly clothe himself with 18 U.S.C. § 1503*

27.     Goodman attempts to clothe himself with 18 U.S.C. § 1503, an obstruction of justice

protection law, and 18 U.S.C. § 1513, a retaliation against a "witness" law, which can serve as a

predicate racketeering offense under RICO[3].  18 U.S.C. § 1513 was created as part of Public Law

---

1.        [2] 18 U.S.C § 1951 makes it a federal crime to affect interstate commerce in any way or degree
by engaging in any of the following criminal offenses:

- Extortion by force or the threat of force;
- Extortion under color of official right, or in other words, by using a public office that
  one holds to unfairly influence someone to part with money or property.
- Robbery, which is generally defined as unlawfully depriving someone of property, either
  without their consent or by force, violence, or threat.

[3] Goodman specifically calls out 18 U.S. Code § 1513(b)(2) in paras. 39, 40, 41, and 42, quoting the law:

(b) Whoever knowingly engages in any conduct and thereby causes bodily injury to another person or
damages the tangible property of another person, or threatens to do so, with intent to retaliate against any
person for—

97-291, § 4(a).  But an Amicus Curiae, like Goodman, is not a "witness" as envisioned by either

P.L. 97-291 or the Confrontation Clause of the U.S. Constitution as there is no ability to cross

examine or acquire testimonial evidence from an Amicus.  Indeed, the Defendant has never been

in a forum where he could cross-examine Goodman concerning the myriad of criminal

allegations Goodman publishes on the Internet and deposits in gadfly fashion in courthouses

under the guise of an Amicus Curiae.  In fact, this present legal action is just another Amicus

Curiae brief on steroids which will fuel Goodman's COUNTER LAWFARE FUND social media

podcasts for months with public solicitations for monies and funds to fight "social engineers".

28.     For example, persons who merely observe matters pertinent to a criminal prosecution do

not become "witnesses against" the defendant unless and until they convey their observations in

the form of testimony or its functional equivalent. See White, 502 U.S. at 360 (Thomas, J.,

concurring in part and concurring in the judgment) (quoting Craig, 497 U.S. at 864-865 (Scalia,

J., dissenting)). Cf. United States v. Hubbell, 530 U.S. 27, 34 (2000) ("The word 'witness' in the

constitutional text [of the Fifth Amendment privilege against compelled self-incrimination]

limits the relevant category of compelled incriminating communications to those that are

'testimonial' in character.").

29.     Goodman fails to provide any details as to what law enforcement agencies he was

communicating with, or the specifics of perceived retaliation, as to who, what, where, when and

how, except for *"Bouzy because he participated in a scheme in violation of 18 U.S. Code §*

---

(1) the attendance of a witness or party at an official proceeding, or any testimony given or any record, document, or other object produced by a witness in an official proceeding; or

(2) any information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, supervised release, parole, or release pending judicial proceedings given by a person to a law enforcement officer;

or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both.

1513(b)(2) to retaliate against Goodman for <u>bringing legal action</u> against him and Bot Sentinel (para. 39). [emphasis added]".  This does not describe a witness encounter but garden variety civil litigation.

***Hobbs Act "extortion" allegations***

30.     The Hobbs Act regulates extortion and robbery, which Congress has determined have a substantial effect on interstate and foreign commerce by reason of their repetition and aggregate effect on the economy.  Therefore, the proscribed offenses fall within the category of crimes based on the Commerce Clause whose "de minimis character of individual instances arising under [the] statute is of no consequence."  United States v. Bolton, 68 F.3d 396, 399 (10th Cir. 1995) (upholding Hobbs Act convictions for robberies whose proceeds the defendant would have used to purchase products in interstate commerce), quoting, United States v. Lopez, --- U.S. ---, 115 S.Ct. 1624, 1630 (1995); material in brackets added; see also United States v. Atcheson, 94 F.3d 1237, 1243 (9th Cir. 1996) (robbery of out-of-state credit and ATM cards).

31.     Amongst other things, Goodman's TAC criminalizes the undersigned's rights pursuant to AMENDMENT I of the U.S. Constitution by contending that the undersigned's book (Exhibit C), published in 2018, is an artifice of wire fraud, 18 U.S.C. 1343 and is a criminal violation of the Hobbs Act (18 U.S.C. § 1951) (para. 5).

32.     Goodman's use of the Hobbs Act, 18 U.S.C. § 1951, is another exaggeration of the supposed importance of "Crowdsource The Truth" on interstate commerce.  Stage one non-monetized publicity and promotion videos would not impact interstate commerce in any manner, as absolutely no money or credit transactions take place in that venue whatsoever.  The only possible aspect of interstate commerce could conceivably be Goodman's private pay-per-view

stage two channels (Patreon, SubscribeStar and Odysee); however, no allegations exist that stage two private paywall channels have been impacted in the slightest.

33.     Goodman's invocation of Hobbs Act offenses (extort or extortion) in the TAC occurs eight (8) times.  The bulk of these allegations claim that Goodman was "extorted" into ceasing his distribution of stage one publicity podcasts on social media.  To be clear, nothing in the TAC's allegation related to Goodman's pay-per-view channels (Patreon, SubscribeStar and Odysee) claim these stage two channels have ever been impacted, only Goodman's non-monetized publicity channels, like his YouTube channel (terminated 100 days prior to filing a document in the M.I.E.D.).

**34.**     Goodman fails to provide the mechanics of the alleged "extortion" as to threats of physical force, robbery, etc.  Extortion is defined as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear." Id. § 1951(b)(2).  Goodman offers no explanation as to factual particularity, as required by F.R.C.P. Rule 9(b), for these "extortions".

35.     Goodman's inability to assert any plausible Hobbs Act violations against him or "Crowdsource The Truth" results in a failure to establish "racketeering activity" within the meaning of 18 U.S.C. § 1962(c) (1988). 18 U.S.C. § 1964(c) (1988) poses still another obstacle to Goodman's RICO claim, for it provides a civil remedy only to "[a]ny person injured in his business or property by reason of a violation of section 1962."

36.     Goodman has failed to allege what thing of value, if anything, could have been transferred to the defendants.  These stage one publicity / promotion video channels were not transferred to the defendants, neither was the video content.  Thus, these allegations of "extortion" should be dismissed for vagueness.

*Goodman's allegations do not meet the RICO threshold for damage to business*

37.     The plaintiff in a civil RICO claim must show that the defendant's racketeering activity or predicate offenses were "the 'proximate cause' of the plaintiff's injury." See NBM LLC, 359 F.3d at 176 (citation omitted). To plead "injury," a plaintiff must allege harm to "business or property" caused by the alleged racketeering activity or its predicate acts. Geiss v. Weinstein Co. Holdings LLC, 383 F. Supp. 3d 156, 170–71 (S.D.N.Y. 2019). "Personal injuries," such as loss of professional opportunities, are not, however, actionable. Id.

38.     Contrary to Goodman's assertions none of these activities demonstrate the required predicate acts or pattern needed to pled racketeering pursuant to 18 U.S. Code §1962(b). Goodman cites vague, ambiguous, overly broad and speculative damages to his so-called "business".  "[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims," particularly given the "stigmatizing effect a RICO claim can have on a defendant." Jones v. Nat'l Commc'n Surveillance Networks, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006).

## FIRST CAUSE OF ACTION

39.     The TAC's FIRST CAUSE OF ACTION alleges a bizarre commandeering of the role of the National Guard by the Defendant, which Goodman believes is a predicate act of racketeering. Again, there are mysterious allegations about a "fraudulent e-mail" sent to the EMMY Awards (NATAS, Sharp, et. al.).  The Defendant denies sending such an e-mail message.  Then there is the discussion of how the undersigned supposedly conspired with George Webb (undersigned's estranged brother) and Richard Loury (employee of the M.I.E.D. court), to file some kind of fraudulent document on that court (which is completely denied).  Goodman does not describe how such an instance would have harmed him specifically.  Goodman proceeds to accuse the undersigned, and defendants Jankowicz and Ben Wittes, of conspiring to provide "law

enforcement" with "false statements", which is completely denied, but assuming *arguendo* it is true Goodman does not articulate how such activity harmed his business or deprived him of property.

### SECOND CAUSE OF ACTION

40.     The TAC's SECOND CAUSE OF ACTION re-hashes issues settled in two previous legal actions: see Goodman v. Sharp, et. al, 21-cv-10627-VEC (S.D.N.Y.) and Nat'l Acad. of TV Arts & Scis., Inc. v. Multimedia Sys. Design, Inc. No. 20-CV-7269 (VEC), 2021 U.S. Dist. LEXIS 142733 (S.D.N.Y. July 30, 2021) (https://www.copyright.gov/fair-use/summaries/Natl%20Acad%20of%20TV%20Arts%20Scis%20v.%20Multimedia%20Sys%20Design%2020-cv-7269%20(S.D.N.Y.%202021).pdf)

41.     Goodman assumes an implausible theory that the Washington, D.C. trademark attorneys (defendant Esquenet) for the EMMY Awards (NATAS) are too stupid to locate a well-publicized New York State corporation named Multimedia Systems Design, Inc. (M.S.D.I.) which owns the trademark "Crowdsource The Truth" ( https://www.trademarkelite.com/trademark/trademark-detail/87752970/CROWDSOURCE-THE-TRUTH ) and required some kind of mysterious e-mail about someone's grandmother to piece together this mystery.  See para. 64 "Acting as individuals, Sharp, Esquenet and ATAS could not have known Goodman owned MSD because it is not directly associated with Crowdsource the Truth or defendants' allegations of copyright infringement, trademark dilution or other claims."

### THIRD CAUSE OF ACTION

42.     The TAC's THIRD CAUSE OF ACTION seems to allege that it was a predicate act of racketeering for the undersigned, George Webb (undersigned's estranged brother) and Richard Loury of the M.I.E.D. court to forge a document that "would draw" Goodman into the M.I.E.D.

litigation.  In other words, Goodman seems to believe that he may have been tempted or lured to become involved in the M.I.E.D. legal action where decided on his own accord to file a so-called Amicus Curiae Brief in Michigan.  Goodman does not explain how this harmed his business (para. 75) or deprived him of property.  But he does apparently think that any loss of his non-monetized YouTube channel 100 days prior to the filing of the Amicus Curiae may somehow be related.  The Court is left to guess as to how this act could deprive Goodman of his property or hurt his business.

43.     Without explaining to a level of specificity as required by F.R.C.P. Rule 9(b) Goodman states, ". Defendants Sweigert, Wittes and Bouzy agreed and conspired to make false claims to Twitter with the express intent of harming Goodman."  The Court should recall that Goodman claims he has been posting social content in his personal capacity to a non-monetized publicity / promotion (stage one) account on Twitter.  Again, Goodman does not elaborate as to causation of harm or injury.  See "The Second Circuit has explained that, in order to comply with Rule 9(b), "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993) (citation omitted)," Xiotech Corp. v. Express Data Prods. Corp., 11 F. Supp. 3d 225, 239 (N.D.N.Y. 2014).  Goodman has not done this.

44.     Without explaining how such activity harmed Goodman's "business", para. 79 states "Defendants Sweigert, Wittes and Jankowicz agreed and conspired to make false statements to law enforcement in Arlington, VA to obtain a fraudulent order of protection against Goodman with the express intent of harming Goodman."  Apparently, this refers to permanent restraining

orders issued against Goodman personally and not his business.  Goodman provides no

explanation as to any harm, directly or indirectly, caused of this event.

**FOURTH CAUSE OF ACTION**

45.     The TAC's FOURTH CAUSE OF ACTION does not describe any specific statements

that would constitute libel or slander.  Further para. 82 focuses on unspecified Twitter

statements.  In Ganske v. Mensch 19-CV-6943 (RA) (S.D.N.Y.) a defamation suit stemming

from a "battle by Tweet," the court held that the allegedly defamatory statements in the

defendant's Tweet were nonactionable statements of opinion and dismissed the case.  The

court also noted that social media communications such as Tweets are generally "informal"

and "unedited," which leads readers to give less credence to such remarks even when they are

allegedly defamatory.

46.     To successfully allege defamation under New York law, the following elements must be

met: "(1) a written defamatory statement of and concerning the plaintiff, (2) publication to a third

party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se

actionability." Palin v. New York Times Co., 940 F.3d 804, 809 (2d Cir. 2019).  Goodman has

not done this.

**FIFTH CAUSE OF ACTION**

47.     The TAC's FIFTH CAUSE OF ACTION seeks supplemental jurisdiction (28 U.S.C. §

1367) of a State abuse of process claim which the Court can decline to hear as RICO justification

is lacking.  See footnote 9, Goodman v. Sharp, 21-CV-10627 (VEC) (S.D.N.Y. Jul. 12, 2022),

"Because this Court lacks subject matter jurisdiction over any claim in this case, the Court has no

basis for exercising supplemental jurisdiction over Plaintiff's state-law claims of abuse of

process, unjust enrichment, and attorney misconduct. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988)."

48.     As is obvious from the foregoing S.D.N.Y. Judge Valerie E. Caproni cite, Goodman attempts to re-litigate already settled "abuse of process" claims addressed in Goodman v. Sharp, see "Plaintiff's abuse of process claim falls well short of the requisite pleading standard. As in Curiano, Plaintiff's complaint alleges only that the plaintiffs in the NATAS Action were improperly motivated, not that they misused the civil litigation process. Cf. Bd. of Ed. of Farmingdale Union Free Sch. Dist. v. Farmingdale Classroom Tchrs. Ass'n, Inc., Loc. 1889 AFT AFL-CIO, 38 N.Y.2d 397 (1975)", Goodman v. Sharp, 21-CV-10627 (VEC) (S.D.N.Y. Jul. 12, 2022), and "Even if Defendants harbored some ill will toward Plaintiff as the principal of MSD, they nonetheless had every right to bring a lawsuit to protect their intellectual property; Plaintiff's allegations do not suggest otherwise. Further, even if the Academies intended to "financially overwhelm" Plaintiff by suing his company, bad motive alone is insufficient to support an abuse of process claim. See Hauser v. Bartow, 273 N.Y. 370,  374 (1937) ("Every one [sic] has a right to use the machinery of the law, and bad motive does not defeat that right.")." Goodman v. Sharp, 21-CV-10627 (VEC) (S.D.N.Y. Jul. 12, 2022).

49.     The National Academy of Television Arts and Sciences (NATAS) v. Multimedia Systems Design, Inc. (NATAS v. MSDI) action is also addressed.  "Moreover, the fact that Defendants who were plaintiffs in NATAS v. MSD prevailed in their prior suit against MSD severely undermines the claim that they abused process when vindicating their rights in federal court. It is generally understood that a winning lawsuit is "a reasonable effort at petitioning for redress and therefore not a sham." Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.,

508 U.S. 49, 60 n.5 (1993)," Goodman v. Sharp, 21-CV-10627 (VEC) (S.D.N.Y. Jul. 12, 2022).

The undersigned Defendant was not a party in either action.

50.     Concerning the undersigned in this regard, all Goodman claims is that the Defendant

sent a pre-litigation mysterious "grandmother" e-mail (flatly denied by the undersigned) to the

EMMY Awards (not even to the law firm representing NATAS) about the supposed trademark

violation.   Pre-litigation activities are excluded from state abuse of process claims.   "As we

recognized in Cook v. Sheldon, "[t]he gist of abuse of process is the improper use of process

after it is regularly issued."   Gilman v. Marsh & McLennan Cos. 15-0603 (2d Cir. Jun. 16, 2016).

Therefore, the substance of Plaintiff's claim for abuse of process claim is without merit.   In order

to establish liability for malicious abuse of process a plaintiff must establish the claim's elements

under state law.   See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994) and Savino v. City of New

York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook, 41 F.3d at 80).

### SIXTH CAUSE OF ACTION

51.     The TAC's SIXTH CAUSE OF ACTION is for civil conspiracy.   Goodman

characteristically only offers vague allegations about the "grandmother" e-mail (para. 101) which

violates 18 U.S. Code § 1343 as an artifice of wire fraud, but offers no explanation about what is

fraudulent about the e-mail or how it was used or caused to be used during the course of the

fraud, which must be pled to the heighten pleading standard of F.R.C.P. Rule 9(b).

52.     At para. 102 Goodman again harps on the supposed forged document filed in the

M.I.E.D. but does not explain how such a document would harm his business or deprive him of

property.

53.     Goodman complains about the termination of his YouTube channel "JASON

GOODMAN", which occurred 4/14/2021 (para. 109.b) and could have been terminated for any

reason by YouTube.

54.     New York does not recognize an independent tort of conspiracy. See *Alexander of New*

*York, Inc. v. Fritzen, 68 N.Y.2d* 968, 969, 503 N.E.2d 102, 102, 510 N.Y.S.2d 546, 547 (1986)

(mem.) ("[A]s we long ago held, a mere conspiracy to commit a tort is never of itself a cause of

action." (internal quotation marks and citation omitted; alteration incorporated)).

55.     To state a claim for civil conspiracy under New York law, a plaintiff, in addition to

alleging an underlying tort, must plead facts sufficient to support an inference of the following

elements: "(1) an agreement between two or more parties; (2) an overt act in furtherance of the

agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and

(4) resulting damage or injury." *Abacus Fed. Sav. Bank v. Lim,* 75 A.D.3d 472, 905 N.Y.S.2d

585, 588 (2010) (internal citation omitted) (internal quotation marks omitted).

56.     As no remaining torts have survived critical legal analysis there remains no underlying

tort to support Goodman's "dot-connecting" theories of civil conspiracy.

## **CONCLUSION**

57.     The plaintiff in a civil RICO claim must show that the defendant's racketeering activity

or predicate offenses were "the 'proximate cause' of the plaintiff's injury." See NBM LLC, 359

F.3d at 176 (citation omitted). To plead "injury," a plaintiff must allege harm to "business or

property" caused by the alleged racketeering activity or its predicate acts. Geiss v. Weinstein Co.

Holdings LLC, 383 F. Supp. 3d 156, 170–71 (S.D.N.Y. 2019). "Personal injuries," such as loss

of professional opportunities, are not, however, actionable. Id.

58.     Contrary to Goodman's assertions none of these activities demonstrate the required predicate acts or pattern needed to pled racketeering pursuant to 18 U.S. Code §1962(b). Goodman cites vague, ambiguous, overly broad and speculative damages to his so-called "business".  "[C]onclusory allegations are insufficient to survive a motion to dismiss RICO claims," particularly given the "stigmatizing effect a RICO claim can have on a defendant." Jones v. Nat'l Commc'n Surveillance Networks, 409 F. Supp. 2d 456, 473 (S.D.N.Y. 2006).

59.     It is instructive to note that in the TAC PRAYER FOR RELIEF (pg. 36-37) Goodman seeks "Declaring that the Defendants statements were libelous and defamatory" (para. 1) and "lost past and future earnings; (para. 5)".  Damages, reputational harm, and loss of future income, are generally not cognizable under RICO. See Westchester Cnty. Indep. Party v. Astorino, 137 F.Supp.3d 586, 612 (S.D.N.Y. 2015) (collecting cases).

## SUMMARY

60.     In sum, Goodman's TAC, Dkt. 142, "fails to state a RICO claim upon which relief should be granted".  Goodman's speculative injuries, supposedly caused by a group of independent defendants, who received no monies from such conduct, fails to state a colorable RICO claim or establish the Court's jurisdiction over this action.  Goodman asserts that a RICO conspiracy between the undersigned, Adam Sharp, the EMMY Awards aka National Academy of Television Arts and Sciences (NATAS), and a variety of other defendants.  But he does not plead, as he must, that any of the alleged predicate acts concretely injured his business or property—either proximately or factually, as RICO requires. This defect also fatally deprives him of constitutional standing (and thus this Court of subject matter jurisdiction) because his alleged injuries are not "fairly traceable" to the complained-of conduct.

61.     To have statutory standing, a civil RICO plaintiff must show that his harm "was 'by reason of' the RICO violation, which requires the plaintiff to establish proximate causation," and that his alleged harm "qualifies as injury to [her] business or property[.]" Canyon Cnty., 519 F.3d at 972 (emphasis added) (citing Holmes v. Sec. Inv. Prot. Corp., 503 U.S. 258, 268 (1992)). This is "an even more rigorous standing requirement than Article III." Chaney v. Berkshire Hathaway Auto., 2017 WL 6520662, at *5 n.4 (D. Ariz. Sept. 25, 2017). Goodman cannot make either of these mandatory showings.

62.     Regarding the issue of personal jurisdiction, the undersigned certifies under the penalties of perjury that he has never (1) owned any real or personal property in the State of New York; (2) solicited business, advertised or marketed any goods or services in the State of New York; (3) maintained offices or leased any real or personal property in the State of New York; or (4) held bank accounts, phone numbers, facsimile numbers, or corporate records in the State of New York.

63.     Goodman's ramblings simply do not pass the "so what" test.

March 6, 2023 (3/6/23)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O
PMB 13339, 514 Americas Way,
Box Elder, SD 57719**

## CERTIFICATE OF SERVICE

**It is hereby certified under the penalties of perjury that a true copy PDF file has been sent via e-mail message to the following:**

Jason Goodman, sole stockholder of MULTIMEDIA SYSTEM DESIGN, INC.

truth@crowdsourcethetruth.org

And

Georg.webb@gmail.com

berlins@ballardspahr.com

mishkinm@ballardspahr.com

margaret.esquenet@finnegan.com

liz.lockwood@alilockwood.com

Certified under penalties of perjury.

March 6, 2023 (3/6/23)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**