**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

JASON GOODMAN,

                    Plaintiff,

        v.

CHRISTOPHER ELLIS BOUZY, et al.,

                    Defendants.

Case No. 1:21-cv-10878-AT-JLC

**DEFENDANTS BENJAMIN WITTES' AND NINA JANKOWICZ'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE
AMENDED COMPLAINT WITH PREJUDICE**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................. 3

STANDARD OF REVIEW ............................................................................................. 6

ARGUMENT .................................................................................................................. 8

   I.     Plaintiff Fails to State a Substantive RICO Claim or a RICO Conspiracy. ................... 8

     A.   Plaintiff Has Not Alleged a RICO Enterprise. .............................................. 10

     B.   Even if the Complaint Alleges a RICO Enterprise, It Fails to Allege that Wittes or Jankowicz Had any Role in It. ...................................................................... 12

     C.   Plaintiff Does Not Allege a Pattern of Racketeering Activity. ..................................... 13

     D.   Plaintiff Has Not Alleged RICO Injury or Causation. ................................................. 16

     E.   Plaintiff Has Not Alleged a Conspiracy to Violate RICO. ........................................... 17

   II.    Even if the First and Fourth Causes of Action Are Construed as Common Law Fraud and Civil Conspiracy Claims, They Still Fail to State a Claim. ................................. 18

   III.   The Defamation and Abuse of Process Claims Are Not Pled against Wittes or Jankowicz and, in any event, Fail as a Matter of Law. ................................................. 19

   IV.   Dismissal Should Be with Prejudice. .......................................................................... 21

CONCLUSION ............................................................................................................. 23

## TABLE OF AUTHORITIES

**Cases:**

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006) ......................................................................................... 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................... 8

*Azzarmi v. Neubauer*,
  No. 20-CV-9155 (KMK), 2022 WL 4357865 (S.D.N.Y. Sept. 20, 2022) ............... 7

*Barsella v. United States*,
  135 F.R.D. 64 (S.D.N.Y. 1991) ........................................................................... 7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 8

*Bell v. Jendell*,
  980 F. Supp. 2d 555 (S.D.N.Y. 2013) ................................................................ 6

*Black v. Ganieva*,
  No. 21 CIV. 8824 (PAE), 2022 WL 2374514 (S.D.N.Y. June 30, 2022) .......... 9, 11, 16, 17, 21

*Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*,
  187 F.3d 229 (2nd Cir. 1999) ........................................................................... 13

*Cohen v. S.A.C. Trading Corp.*,
  711 F.3d 353 (2d Cir. 2013) ............................................................................. 14

*Commc'n Opportunity, Inc. v. Davis*,
  No. 97 Civ. 3604 (NG), 1998 WL 240527 (E.D.N.Y. Apr. 28, 1998) ................... 21

*Crawford v. Franklin Credit Mgmt. Corp.*,
  758 F.3d 473 (2d Cir. 2014) ............................................................................. 17

*Cuoco v. Moritsugu*,
  222 F.3d 99 (2d Cir. 2000) ............................................................................... 22

*Curiano v. Suozzi*,
  469 N.E.2d 1324 (N.Y. 1984) ........................................................................... 20

*D'Addario v. D'Addario*,
  901 F.3d 80 (2d Cir. 2018) ............................................................................... 10

*DeFalco v. Dirie,*
 923 F. Supp. 473 (S.D.N.Y. 1996) ........................................................................ 13

*Democratic Nat'l Comm. v. Russian Fed'n,*
 392 F. Supp. 3d 410 (S.D.N.Y. 2019) .................................................. 10, 12, 16, 18

*Elsevier Inc. v. W.H.P.R., Inc.,*
 692 F. Supp. 2d 297 (S.D.N.Y. 2010) ................................................................... 10

*Ganske v. Mensch,*
 480 F. Supp. 3d 542 (S.D.N.Y. 2020) ................................................................... 21

*Holmes v. Secs. Inv. Prot. Corp.,*
 503 U.S. 258 (1992) ............................................................................................... 17

*Kim v. Kimm*, 884 F.3d 98
 (2d Cir. 2018) ......................................................................................................... 13

*Kimm v. Chang Hoon Lee & Champ, Inc.,*
 196 F. App'x 14 (2d Cir. 2006) .............................................................................. 16

*Martinez v. Ravikumar,*
 536 F. Supp. 2d 369 (S.D.N.Y. 2008) ..................................................................... 8

*Mills v. Polar Molecular Corp.,*
 12 F.3d 1170 (2d Cir. 1993) ..................................................................................... 7

*Moore v. PaineWebber, Inc.,*
 189 F.3d 165 (2d Cir. 1999) ..................................................................................... 9

*Moss v. Morgan Stanley,*
 719 F.2d 5 (2d Cir.1983) ...................................................................................... 9, 13

*Nat'l Acad. of Television Arts and Sci., Inc. v. Multimedia Sys. Design, Inc.,*
 No. 20-CV-7269 (VEC), 2022 WL 524737 (S.D.N.Y. Feb. 22, 2022). ................... 3

*Nygard v. Bacon,*
 No. 19 CIV. 1559 (LGS), 2021 WL 3721347 (S.D.N.Y. Aug. 20, 2021) ............... 10

*Palin v. New York Times Co.,*
 940 F.3d 804 (2d Cir. 2019) ................................................................................... 20

*Pasternack v. Lab'y Corp. of Am. Holdings,*
 59 N.E.3d 485 (N.Y. 2016) .................................................................................... 18

*Perez v. Lopez*,
    948 N.Y.S.2d 312 (N.Y. App. Div. 2012) ............................................................................. 19

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ............................................................................................................... 12

*Salahuddin v. Cuomo*,
    861 F.2d 40 (2d Cir. 1988) .................................................................................................... 21

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
    No. 97 CIV. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998) .............................. 7, 18

*Sweigert v. Goodman*,
    No. 18-CV-8653, 2019 WL 11662227 (S.D.N.Y. Aug. 20, 2019) ....................................... 3, 16

*Sweigert v. Goodman*,
    No. 18-CV-8653, 2020 WL 8918877 (S.D.N.Y. Aug. 19, 2020) .............................................. 3

*Sweigert v. Goodman*,
    No. 18-CV-8653, 2021 WL 2678621 (S.D.N.Y. June 30, 2021) ............................................. 1

*Sweigert v. Goodman*,
    No. 18-CV-8653, 2022 WL 168080 (S.D.N.Y. Jan. 19, 2022) ................................................ 3

*Sweigert v. Goodman*,
    No. 18-CV-8653, 2022 WL 562561 (S.D.N.Y. Feb. 24, 2022) ................................................ 3

*Town of Mamakating, N.Y. v. Lamm*,
    No. 15cv2865, 2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015) ................................................ 10

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) .............................................................................. 9, 12, 21

*United States v. Pierce*,
    224 F.3d 158 (2d Cir. 2000) ............................................................................................. 14, 15

*Zappin v. Comfort*,
    No. 18CV01693ALCOTW, 2022 WL 6241248 (S.D.N.Y. Aug. 29, 2022) ........................... 20

**Statutes:**

18 U.S. Code § 1513 ...................................................................................................................... 13

18 U.S.C. § 1961 ..................................................................................................................... 10, 13

18 U.S.C. § 1962 ................................................................................................................... 8, 9, 12

iv

18 U.S.C. § 1964 .......................................................................................................... 16

18 U.S.C. § 1965 ............................................................................................................ 3

**Rules:**

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 8

Fed. R. Civ. P. 8 ............................................................................................................. 7

Fed. R. Civ. P. 9(b) ........................................................................................................ 7

Pursuant to Federal Rules of Civil Procedure 8, 9, and 12, Defendants Benjamin Wittes ("Wittes") and Nina Jankowicz ("Jankowicz" and with Wittes, "Movants") submit this Memorandum of Law in support of their Motion to Dismiss *pro se* Plaintiff Jason Goodman's Amended Complaint with prejudice.[1]

## INTRODUCTION

This case started as yet another battle in the war between Jason Goodman ("Plaintiff" or "Goodman") and D. George Sweigert, "*pro se* litigants whose occupations appear to consist chiefly of concocting outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet." *Sweigert v. Goodman*, No. 18-CV-8653, 2021 WL 2678621, at *1 (S.D.N.Y. June 30, 2021) (Caproni, J.). Plaintiff's Amended Complaint ("Complaint"), however, inexplicably dragged numerous innocent individuals into the battle, including Movants Benjamin Wittes and Nina Jankowicz. What began as a simple claim for defamation having nothing to do with Wittes or Jankowicz has morphed into a 43-page complaint alleging a sprawling racketeering conspiracy supposedly composed of eleven defendants and numerous non-parties with no plausible common structure or purpose, and no alleged motive other than to harass and defame Plaintiff. While Goodman may think that he has remedied the initial complaint's failure to allege personal jurisdiction with help of RICO's provision for nationwide jurisdiction (he has not), his amended pleading suffers from a whole host of other fatal defects.

---

[1] After serving Movants with the Amended Complaint, Plaintiff filed a Notice of Motion Seeking Leave to File Second Amended Complaint, *see* Dkt. 137, and a Notice of Motion Seeking Leave to File Third Amended Complaint, *see* Dkt. 142. Because those motions (which Movants intend to oppose in a separate filing) remain pending at the time of this filing, Movants have only addressed the allegations in Plaintiff's Amended Complaint. Movants reserve all rights to address the Second Amended Complaint and/or Third Amended Complaint's deficiencies in full if the Court determines amendment is appropriate.

*First*, to the extent the Complaint purports to plead a claim under the federal Racketeer Influenced and Corrupt Organizations Act ("RICO")—which is not entirely clear—it does not plausibly do so. Plaintiff does not satisfy ordinary pleading requirements, much less Rule 9(b)'s heightened requirements. The list of failures here is long. The Complaint does not allege (i) a RICO enterprise; (ii) that Wittes or Jankowicz had any role in it; (iii) that Movants participated in a pattern of racketeering activity by each committing two predicate acts; (iv) that Movants caused Plaintiff to suffer a cognizable RICO injury; or (v) that Movants participated in a RICO conspiracy. Any one of these failures requires dismissal.

*Second*, if the Complaint's "fraud" and "civil conspiracy" claims are construed instead as common law tort claims, they nonetheless fail. The Complaint makes no specific allegation of fraud whatsoever with respect to Wittes. As for Jankowicz, Plaintiff does not even attempt to plead that he relied on Jankowicz's allegedly fraudulent statements to his detriment, as he must to plead a common law fraud claim.

*Third*, the remaining claims for defamation and abuse of process are not pled against Movants. The Court can and should stop its analysis there. But even if the Complaint could somehow be construed as alleging these claims against Movants (and it cannot), the allegations upon which these counts are based fail to state a claim.

*Fourth*, given the glaring fatal defects with the claims as pleaded against Wittes and Jankowicz, Plaintiff's claims against Movants should be dismissed with prejudice because leave to amend would be futile. Nothing can cure the Complaint's patently frivolous allegations, which are implausible on their face.

At bottom, Plaintiff's allegations of racketeering, fraud and abuse of process come down to little more than a laundry list of individuals who he claims are out to get him. These accusations

reflect a vast conspiracy theory detached from reality and fail to allege any legally cognizable theory of recovery. Movants respectfully request that the Court dismiss the Complaint with prejudice as to them and spare them from any further litigation of these clearly frivolous claims.[2]

## BACKGROUND

Plaintiff Jason Goodman describes himself as, among other things, an "investigative journalist" and "founder" of the website, Crowdsource the Truth. Dkt. 100, Amended Compl. ("Compl.") ¶ 13. Goodman is also a serial litigant with a documented history of "frivolous filings,"[3] who has been engaged in an "ongoing feud with D. George Sweigert . . . that plays out, among other places, on the internet and via federal court litigation."[4]

---

[2] Movants do not concede that Plaintiff has met his burden of pleading personal jurisdiction over them. Plaintiff has not shown that Wittes or Jankowicz—residents of Washington, D.C. and Virginia, respectively—personally targeted New York or otherwise established meaningful contacts, ties, or relations with the state such that specific jurisdiction would be appropriate. Nor do "the ends of justice" warrant haling Movants into court in New York pursuant to 18 U.S.C. § 1965 where the Complaint plainly fails to state a colorable RICO claim against them. Nonetheless, Movants will focus this brief on the substantive arguments in opposition to Plaintiff's claims in the hope that the Court will address, and dismiss with prejudice, all claims on the merits and thereby discourage the re-filing of these same claims against Movants in another jurisdiction.

[3] *Sweigert v. Goodman*, No. 18-CV-8653, 2022 WL 562561, at *1-2 (S.D.N.Y. Feb. 24, 2022).

[4] *Nat'l Acad. of Television Arts and Sci., Inc. v. Multimedia Sys. Design, Inc*., No. 20-CV-7269 (VEC), 2022 WL 524737, at *1 (S.D.N.Y. Feb. 22, 2022). *See also e.g., Sweigert v. Goodman*, No. 18-CV-8653, 2022 WL 168080, at *1 (S.D.N.Y. Jan. 19, 2022) ("As the Court has explained in the past, this action is between two pro se litigants who spend a great deal of time accusing 'one another of criminal conduct and other misbehavior on the internet.'"); *Sweigert v. Goodman*, No. 18-CV-8653, 2020 WL 8918877, at *1 (S.D.N.Y. Aug. 19, 2020) (noting that the court had "described the parties as being engaged in 'outlandish conspiracy theories and accusing one another of criminal conduct and other misbehavior on the internet'"); *Sweigert v. Goodman*, No. 18-CV-8653, 2019 WL 11662227, at *1 (S.D.N.Y. Aug. 20, 2019) ("This is a frivolous dispute between two litigants whose voluminous court filings rehash their incomprehensible and illogical online conspiracy theories.").

Defendant Benjamin Wittes is a senior fellow in Governance Studies at the Brookings Institution and the editor-in-chief of *Lawfare*. Compl. ¶ 18. Defendant Nina Jankowicz is a researcher and writer specializing in disinformation in Russia and Eastern Europe. *See id.* ¶ 19.

While it is difficult to grasp the true nature of Plaintiff's apparent dispute with Wittes and Jankowicz from the far flung and disparate allegations in the 43-page Complaint (127 pages including exhibits), as best Movants can discern from the face of the Complaint, it stems at least in part from a Twitter exchange that Wittes and Goodman had in December 2020 regarding the death of a political operative named Peter Smith. *Id.* at pp. 18-19.[5] Goodman has theorized that Mr. Smith, who infamously sought Hilary Clinton's emails from Russian hackers in the run up to the 2016 election, was murdered. *Id.* at p. 19. News reports, however, indicate that Smith committed suicide.[6] Goodman alleges that during the Twitter "interview," Wittes "avoided answering pertinent questions and prematurely terminated the session coincident with the unexpected interruption of unwanted, disruptive, and insulting public Twitter messages from Bouzy." *Id.* at 19. Bouzy is the founder and CEO of Defendant Bot Sentinel, whose stated mission is to fight internet disinformation. *Id.* ¶¶ 14-15. As Goodman tells it, Bouzy's tweets were so "offensive and misleading," they "prompted him to search the internet for Bouzy's phone number, call him up and speak for more than an hour." *Id.* at p. 20. Following the phone call, Goodman alleges that Bouzy engaged in a "days-long Twitter defamation campaign" against him that "included false, baseless, and unsubstantiated allegations Goodman had committed the crime of

---

[5] The Complaint's 22-page "Factual Background" does not employ paragraphing like the rest of the Complaint. Citations to allegations within this section will therefore be to page number, *i.e.,* p. x.

[6] *See, e.g.*, Shane Harris & Reid J. Epstein, *GOP Activist Who Sought Hillary Clinton Emails Killed Himself*, The Wall Street Journal (July 14, 2017), https://www.wsj.com/articles/gop-activist-who-sought-clinton-emails-killed-self-1500002994.

rape." *Id.* Goodman does not allege that Wittes participated in the hour-long call or the subsequent Twitter defamation campaign. *See id.*

On December 19, 2021, Goodman, acting *pro se*, filed a complaint against Bouzy and Bot Sentinel, as well as George Webb Sweigert ("Webb"), consisting of a single claim for defamation. *See* Dkt. 1, Complaint for Conspiracy to Defame. The original complaint alleges that Webb, who is described as a "journalist" living in Georgia, published a YouTube video in 2018 falsely accusing Goodman of raping a Somali fashion model and that Bouzy repeated these false accusations in a series of tweets in December 2020 and 2021. *Id.* at pp. 3-4. Although the original complaint references Goodman's Twitter exchange with Wittes, it makes no claims directly against Wittes. *See id.* at p. 3. Nor does it even mention Jankowicz. *See id*. The original complaint was dismissed for lack of personal jurisdiction, but Goodman was granted leave to replead. *See* Dkt. 82, Order Adopting Report and Recommendation.

Goodman filed an Amended Complaint on January 17, 2023. *See* Compl. Rather than simply attempting to cure the identified deficiencies with his personal jurisdiction allegations, Goodman's amended pleading adds eight additional defendants (including Wittes and Jankowicz) and three additional claims (fraud, abuse of process and civil conspiracy). *Id.* ¶¶ 16, 18-24, 52-61, 74-92. Goodman also alleges, for the first time, that the eleven defendants and numerous non-parties (ranging from journalists, lawyers, experts in internet disinformation, a former employee of the CIA, "homeless vagrant[s]," and the National Academy of Television Arts and Sciences) engaged in a racketeering enterprise for the apparent sole motive of damaging Goodman's reputation and, as a consequence, his financial interests. *Id.* ¶¶ 1-11, 14-35. Most of the Complaint focuses on events having no stated connection to Wittes or Jankowicz. This includes the Sweigert brothers' "Cyber Militia," something referred to as the "Port of Charleston incident," and a "series

of vexatious and abusive lawsuits" initiated by the Sweigerts and others against Goodman. *Id.* at pp. 15-18, 21-32.

The allegations against Wittes center on his supposed relationship with Bouzy and Bot Sentinel. The Complaint alleges that, in retaliation for Goodman's publication of "information that was unfavorable to Wittes concerning Smith's death," Wittes (i) "engaged Bouzy's services to harass Goodman and eliminate his access to social media," and (ii) "retain[ed] Ballard Spahr and fund[ed] the Enterprise's legal defense with payments to Bot Sentinel." *Id.* ¶ 45 & p. 20.

The Complaint does not allege that Jankowicz participated in, or had any connection with, the Twitter conversation between Wittes and Goodman or Bouzy's subsequent interactions with Goodman. Rather, Goodman's dispute with Jankowicz appears to stem from a separate incident that allegedly began with Goodman's publication of an "investigative report" on YouTube discussing, among other things, Jankowicz's supposed failure to register as a foreign agent while employed by the Department of Homeland Security. *Id.* at p. 32. The Complaint alleges that Goodman's Patreon and Twitter accounts were suspended after the social media companies found that he had violated their terms of service by publishing private information about Jankowicz online. *Id.* at pp. 33-34. The Complaint further alleges that Jankowicz "conspired with Sweigert to strategically attack Goodman's Patreon account" and "coordinated" with Sweigert and/or Bouzy and/or Twitter to get Goodman's Twitter account suspended as "revenge" for revealing damaging information about her. *Id.* at pp. 33, 35.

## STANDARD OF REVIEW

"[T]he liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp.

2d 555, 559 (S.D.N.Y. 2013).[7] Plaintiff's Complaint therefore must comply with the Federal Rules of Civil Procedure just like any other complaint.

Federal Rule of Civil Procedure 8 requires that a complaint set forth "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1) "Complaints which ramble, which needlessly speculate, accuse and condemn, and which contain circuitous diatribes far removed from the heart of the claim do not comport with these goals and this system and must be dismissed." *Barsella v. United States*, 135 F.R.D. 64, 66 (S.D.N.Y. 1991). Courts in the Second Circuit regularly dismiss incomprehensible complaints pursuant to Rule 8. *Azzarmi v. Neubauer*, No. 20-CV-9155 (KMK), 2022 WL 4357865, at *4 (S.D.N.Y. Sept. 20, 2022) (collecting cases).

Federal Rule of Civil Procedure 9(b) imposes the additional requirement that a plaintiff plead allegations of fraud with "particularity." Fed. R. Civ. P. 9(b). A complaint must (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker, (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993). Pleadings alleging fraud "must be sufficiently particular to serve the three goals of Rule 9(b): (1) to provide a defendant with fair notice of the claims against it; (2) to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud; and (3) to reduce the number of strike suits." *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 CIV. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998). "Courts are especially vigilant in applying Rule 9(b) where a complaint is made against multiple defendants . . . . [A] complaint may not rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud." *Id.*

---

[7] Internal quotations and citations omitted unless other stated.

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "For purposes of ruling on a motion to dismiss against a pro se plaintiff, the Court accepts the version of the facts and their related inferences in the manner most favorable to the plaintiff." *Martinez v. Ravikumar*, 536 F. Supp. 2d 369, 370 (S.D.N.Y. 2008). Nonetheless, "even pro se plaintiffs cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id*. The plaintiff must plead facts "allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.     Plaintiff Fails to State a Substantive RICO Claim or a RICO Conspiracy.

Plaintiff's RICO claim is fatally flawed for multiple reasons and should be dismissed with prejudice.[8] To plead a RICO claim, Plaintiff must allege that Movants violated each element of the substantive RICO statute, 18 U.S.C. § 1962, in "(1) that the defendant (2) through the

---

[8] The Complaint does not label any of its causes of action as RICO claims, yet Plaintiff makes repeated references to the RICO statute and to racketeering activity throughout his Complaint. *E.g.,* Compl. at pp. 17-22. The First Cause of Action, although denoted "Fraud," repeatedly cites to the federal wire fraud statute, a RICO predicate act. *Id.* ¶¶ 54-66. The Complaint's Fourth Cause of Action, although denoted "Civil Conspiracy," refers repeatedly to racketeering activity. *Id.* ¶¶ 86-98. Movants therefore construe this these claims as asserting a substantive RICO violation and a claim for a RICO conspiracy under § 1962(d), respectively. As discussed further herein, *see infra* § II, both claims also fail if the Court alternatively construes them as the respective common law torts of fraud and/or civil conspiracy.

commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affects interstate or foreign commerce." *Moss v. Morgan Stanley,* 719 F.2d 5, 17 (2d Cir.1983), *cert. denied,* 465 U.S. 1025 (1984). RICO claims sounding in fraud also must be pleaded with particularity under Rule 9(b). *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2d Cir. 1999). And to allege a RICO conspiracy under Section 1962(d), Plaintiff must allege that Movants "by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise." *United States Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 453–54 (S.D.N.Y. 2004). "Conclusory allegations" that vaguely allege "that all of the defendants conspired among themselves . . . are insufficient." *Id*.

Courts are encouraged "to flush out frivolous RICO allegations at an early stage of the litigation" to mitigate the "almost inevitable stigmatizing effect" that RICO allegations have on defendants. *Id.* at 443. Here, Plaintiff's RICO claims are facially deficient with respect to every aspect of the RICO statute. The Complaint alleges a wide-ranging conspiracy, which—despite its multitude of co-conspirators and perceived intrigue—amounts to nothing more than a list of people with no plausible connection to each other and no alleged common motive other than to "damage Goodman's business and reputation by exposing him to public hatred, contempt and aversion." Compl. ¶ 9. But RICO "demands more than general synchronicity or shared enmity." *Black v. Ganieva*, No. 21 CIV. 8824 (PAE), 2022 WL 2374514, at *15 (S.D.N.Y. June 30, 2022) (allegations that defendants "all sought to spread[ ] lies about, injur[e], bring[ ] down, and cancel" the plaintiff failed to state a RICO claim). Nor may plaintiffs "shoehorn what are effectively defamation claims into the RICO framework, because it is firmly established that defamation and

many other similar allegations do not provide the requisite predicate for RICO violations." *Nygard v. Bacon*, No. 19 CIV. 1559 (LGS), 2021 WL 3721347, at *3 (S.D.N.Y. Aug. 20, 2021). Plaintiff's RICO claims are clearly frivolous and therefore should be dismissed with prejudice as to Movants.

### A.     Plaintiff Has Not Alleged a RICO Enterprise.

Plaintiff's RICO allegations fail right out of the gate, as the Complaint cannot maintain a RICO claim without first alleging a RICO "enterprise." A RICO enterprise includes "any . . . corporation, association, or other legal entity . . . or group of individuals associated in fact," 18 U.S.C. § 1961(4), and must exist "separate and apart from the pattern of activity in which it engages." *D'Addario v. D'Addario*, 901 F.3d 80, 99 (2d Cir. 2018). Plaintiff alleges an association-in-fact enterprise, Compl. ¶ 3, which requires that "the members of the association [] share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes," *Democratic Nat'l Comm. v. Russian Fed'n*, 392 F. Supp. 3d 410, 439 (S.D.N.Y. 2019).

Plaintiff has not come close to plausibly alleging a RICO enterprise at all, let alone one involving Wittes and Jankowicz. The Complaint describes the RICO Enterprise as a "Cyber Militia" (a term coined by Sweigert) that operates through "deceptive anonymous online accounts and a multitude of clandestine, encrypted communication schemes" with the purpose of damaging Goodman's reputation and destroying him financially. Compl. at pp. 13-14. Yet there are no plausible allegations that Wittes and/or Jankowicz were aware of Sweigert or his Cyber Milia, let alone a part of it. A plaintiff may not simply "string[ ] together . . . various defendants and label[ ] them an enterprise." *Town of Mamakating, N.Y. v. Lamm*, No. 15cv2865, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015), *aff'd*, 651 F. App'x 51 (2d Cir. 2016); *see also, e.g., Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307 (S.D.N.Y. 2010) (dismissing RICO claims where

"[n]othing in the Complaint explains how these particular people, located in different parts of the country, came to an agreement to act together—or even how they knew each other. Indeed, the Complaint does not even allege *that* they knew each other[.]") (emphasis in original).

Nor are there any plausible allegations that the eleven defendants, including Wittes and Jankowicz, coordinated their alleged actions for a common purpose. The Complaint makes no attempt to connect (1) Wittes' alleged engagement of Bouzy to harass Goodman in apparent retaliation for their disagreement over the nature of Smith's death, and (2) Jankowicz's supposed Twitter and Patreon complaints against Goodman in apparent retaliation for outing her as a purported unregistered foreign agent. These allegations are nothing more than two separate incidents where Goodman got in an altercation with separate individuals regarding separate conspiracy theories. At most, what the Complaint alleges unites the Defendants is not an "illegal plot," but a perceived "aversion" to Goodman that does not rise to the common purpose a RICO enterprise requires. *See Black*, 2022 WL 2374514 at *15 (further recognizing that "antisocial conduct toward another, however unseemly, does not qualify as a RICO predicate" and that an alleged "agreement to engage in such conduct does not establish the common purpose required of a viable RICO enterprise").

Finally, the Complaint fails to allege the Enterprise's existence separate and apart from its alleged racketeering activity. There is no plausible indication in the Complaint that the "Cyber Militia" exists as a coherent entity that operates independently of the racketeering activity that Goodman alleges.

For all of these reasons, Plaintiff fails to allege a RICO enterprise, a foundational requirement of any cognizable RICO claim. The Court therefore can and should stop here and dismiss Plaintiff's RICO claim with prejudice.

**B.     Even if the Complaint Alleges a RICO Enterprise, It Fails to Allege that Wittes or Jankowicz Had any Role in It.**

Even assuming Plaintiff has alleged a plausible RICO enterprise (he has not), he has made no attempt to describe what role Wittes or Jankowicz played in the purported enterprise. Plaintiff must allege that both Wittes and Jankowicz had "*some* part in directing the enterprise's affairs" such that they "participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 179, 183 (1993). This test is "extremely rigorous" in this Circuit. *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 441. "[I]is not enough to merely take directions and perform tasks that are necessary and helpful to the enterprise." *Id.* Nor is the standard met "where a defendant merely attends to its own business; 'liability depends on showing that the defendants conducted or participated in the conduct of the *enterprise's* affairs, not just their *own* affairs.'" *Id.* (quoting *Reves*, 507 U.S. at 185) (emphasis in original).

Plaintiff makes no attempt to describe any actions by Wittes or Jankowicz that could possibly rise to the level of directing the alleged Enterprise's affairs, much less explain what their role was with respect to any other Defendant. To the extent that Complaint specifies any conduct by Wittes and Jankowicz vis-à-vis the alleged racketeering conspiracy, it amounts to nothing more than the conduct of their own affairs, *not* the operation or management of any purported RICO enterprise or "Cyber Militia." This, too, is an independent basis for the Court to dismiss Plaintiff's RICO claim with prejudice.[9]

---

[9] The Complaint also alleges that Wittes "invested money derived directly or indirectly from his involvement with the Enterprise when he financed the civil defense of Bouzy and Bot Sentinel by retaining Ballard Spahr attorneys Berlin and Mishkin." Compl. ¶ 91. To the extent this is meant to allege a violation of § 1962(a), it fails because, among other things, there are no plausible allegations that Wittes "received income from a pattern of racketeering activity." *United States Fire Ins. Co.*, 303 F. Supp. 2d at 448-49.

### C.      Plaintiff Does Not Allege a Pattern of Racketeering Activity.

Plaintiff also fails to plausibly allege any "racketeering activity," much less a "pattern" of the same. *See Moss,* 719 F.2d at 17. As with all aspects of his RICO claim, Plaintiff must allege both of these elements with respect to each individual defendant. This requires allegations that Wittes and Jankowicz each personally committed at least two of the predicate acts of racketeering enumerated in 18 U.S.C. § 1961. *DeFalco v. Dirie*, 923 F. Supp. 473, 477 (S.D.N.Y. 1996). In addition, the predicate acts must be related to each other and amount to or pose a threat of continued criminal activity. *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.,* 187 F.3d 229, 242 (2nd Cir. 1999). Plaintiff's claim of a pattern of racketeering fails as a matter of law for several reasons.

*First*, the Complaint only alleges that Wittes committed one predicate act—not two—which requires dismissal of the RICO claim against him as a matter of law. Plaintiff alleges that Wittes "participated in a scheme in violation of 18 U.S. Code § 1513 to retaliate against Goodman for bringing legal action against Bouzy and Bot Sentinel by retaining Ballard Spahr and funding the Enterprise's legal defense with payments to Bot Sentinel." Compl. ¶ 45. This section of the federal criminal code deals with retaliating against a witness, victim or informant; Goodman is none of these things. Nor are there any allegations in the Complaint that Wittes "attempt[ed] to kill" Goodman, or caused or threatened to cause Goodman "bodily injury" or "damage [his] tangible property." 18 U.S. Code § 1513 (a), (b). Instead, Goodman merely alleges that Wittes paid Bouzy's legal expenses. Even if this were true—which it is not—paying another's litigation costs or otherwise engaging in unwanted litigation activities is not a basis for criminal or civil liability under § 1513 or otherwise. *See also Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (similarly recognizing that "allegations of frivolous, fraudulent, or baseless litigation activities—without more—cannot constitute a RICO predicate act").

*Second*, the Complaint does not plausibly allege that Jankowicz committed two RICO predicate acts. Plaintiff alleges that Jankowicz committed wire fraud when she "knowingly transmitted [] fraudulent privacy complaint[s]" to Patreon and Twitter with the "malicious intent" to terminate Goodman's access to these valuable social media accounts. Compl. ¶¶ 60-61.[10] "The elements of wire fraud under 18 U.S.C. § 1343 are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires." *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000). Because these claims sound in fraud, Plaintiff must meet Rule 9(b)'s heightened pleading standards by, among other things, "specif[ying] the time, place, speaker, and content of the alleged misrepresentations. . . ." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013). The Complaint does not satisfy any of these pleading requirements. To begin with, the Complaint fails to allege *who* filed the alleged complaint with Patreon that led to the removal of Goodman's subscriber channel. The allegation is instead framed in the passive, *i.e.,* "a fraudulent complaint *was filed* with Patreon in violation of 18 U.S.C. § 1343." Compl. at p. 33 (emphasis added). Goodman then goes on to allege that Jankowicz must have conspired with Sweigert because it is "unlikely Jankowicz would be aware of the comparatively obscure Patreon account and its inherent value to Goodman without being informed by Sweigert." *Id.* These allegations amount to nothing more than conjecture and innuendo; they fall far short of the concrete and specific allegations required by Rules 8 and 9.

Moreover, while the Complaint makes vague references to "fraudulent claim[s]" that the information Goodman posted about Jankowicz was private, it does not specify any alleged misrepresentations of *fact* contained within the Patreon or Twitter complaints. *See id.* at pp. 33-

---

[10] The Complaint also alleges that Jankowicz "made false claims in violation of 22 U.S. Code § 612," Compl. ¶ 46, but a violation of FARA is not a RICO predicate act.

35. Instead, as the Complaint makes clear, Goodman faults the suspension of his social media accounts on a supposed *legal* error. *Id.* at pp. 34-35 (alleging that the inclusion of information "in a public FARA registration would convert it into public information and legally mandate its disclosure pursuant to the statute" and referencing "numerous appeals citing 22 U.S. code § 612 and its legal requirements"). A contrary interpretation of the legal requirements of the FARA statute—even if relevant to the suspension of an account for violation of Patreon's or Twitter's terms of use—does not constitute a "scheme to defraud." *See Pierce*, 224 F.3d at 165 ("In the context of mail fraud and wire fraud, the words 'to defraud' commonly refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit, chicane or overreaching."). Nor can Jankowicz's legal claims about the violation of her privacy rights have been "material," as RICO requires,[11] because Patreon and Twitter both necessarily made their own determinations that Goodman had violated their terms of use and that his accounts should be suspended. And Goodman's allegation that Jankowicz "informed Twitter to ignore [his] well-founded appeal and citations of law," Compl. at p. 34, is both implausible and fails to specify how any such conduct could arise to a "scheme to defraud" to "get money or property" from Goodman. *See Pierce*, 224 F.3d at 165.

*Third*, even if Plaintiff had plausibly alleged that Wittes and Jankowicz each committed two RICO predicate acts, he has not plausibly alleged that the acts are related such that they amount to a pattern of racketeering activity. Predicate acts are "related" for RICO purposes only when they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated

---

[11] To establish a scheme to defraud, the plaintiff must establish, *inter alia*, "the materiality of the misrepresentations." *Pierce*, 224 F.3d at 165.

events." *Democratic Nat'l Comm.*, 392 F. Supp. 3d at 442. For all the reasons discussed above, the alleged acts here involved different purposes, different participants and different methods of commission.

Here, too, the Complaint falls far short of RICO's basic requirement that Plaintiff plead a pattern of racketeering activity, providing yet another basis for the Court to dismiss Plaintiff's RICO claim with prejudice.

### D.     Plaintiff Has Not Alleged RICO Injury or Causation.

The Complaint's pleading deficiencies with respect to its RICO claim continue. A RICO plaintiff must allege injury to her "business or property by reason of" a RICO violation. 18 U.S.C. § 1964(c). The Complaint vaguely makes reference to "damage [to] Goodman's business and reputation" and demands costs and fees associated with bringing and defending lawsuits on behalf of Goodman and his "dormant corporation," as well as $2.2 million in "lost business revenue." Compl. ¶¶ 9, 12. None of these injuries are cognizable. A "loss of professional opportunities" is not cognizable under RICO. *Sweigert*, 2019 WL 11662227, at *1; *see also Black*, 2022 WL 2374514 at *27 n. 23 ("reputation is not a cognizable property interest under civil RICO"). Moreover, any business revenue allegedly lost as a result of the damage to Goodman's reputation is purely speculative. *See Kimm v. Chang Hoon Lee & Champ, Inc.*, 196 F. App'x 14, 16 (2d Cir. 2006) ("[G]eneralized reputational harms . . . including the risk of future lost business commissions, are too speculative to constitute an injury to business or property."); *Sweigert*, 2019 WL 11662227, at *1 (dismissing RICO claim for lack of causation where plaintiff "has not alleged a single business opportunity that was or may be lost as a result" of the alleged misconduct). And because the allegedly frivolous lawsuits filed against Goodman cannot be the basis for a RICO

predicate act, he cannot recover for the fees and costs associated with those lawsuits. *See Black*, 2022 WL 2374514 at *27.

Even if Plaintiff alleged a cognizable injury under RICO, Plaintiff's claim fails because he does not allege that Wittes or Jankowicz caused any such injury. Plaintiff must plead that the alleged RICO violation—the racketeering activity—was both the "but-for" and proximate cause of Plaintiff's injury. *Holmes v. Secs. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992). He has done neither. RICO's proximate cause requirement is particularly stringent, requiring a "direct relation" between the "injury asserted and the injurious conduct alleged." *Id.* In other words, the "central question" is whether the "alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). Wittes and Jankowicz had nothing to do with the alleged racketeering activity here or its supposed injury to Goodman, much less a "direct relation" to it. As the initial complaint makes clear, this is an effort to recover for defamation to Goodman allegedly perpetrated by Webb and Bouzy/Bot Sentinel. Neither Wittes nor Jankowicz were involved in the alleged defamatory conduct and cannot be held responsible for any injury flowing from that conduct.

## E.   Plaintiff Has Not Alleged a Conspiracy to Violate RICO.

Finally, to the extent the Court construes the Complaint to plead a RICO conspiracy claim, it also must be dismissed with prejudice. "A [RICO] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense." *Crawford v. Franklin Credit Mgmt. Corp*., 758 F.3d 473, 489 (2d Cir. 2014). As discussed above, the Complaint fails to plead every element of a RICO claim. Among other things, Goodman fails to plausibly allege that Wittes, Jankowicz and the other Defendants even knew each other, much less agreed to engage in conduct of the type that would be sufficient to constitute a pattern of

17

racketeering activity. Because Plaintiff's substantive RICO claim is deficient, his conspiracy claim must be dismissed as well. *See Democratic Nat'l Comm.*, 392 F. Supp. 3d at 446.

## II. Even if the First and Fourth Causes of Action Are Construed as Common Law Fraud and Civil Conspiracy Claims, They Still Fail to State a Claim.

For all the reasons discussed above, Plaintiff's Complaint appears to allege RICO and RICO conspiracy claims that are deficient as a matter of law and should be dismissed with prejudice. But to the extent the Court instead construes the Complaint's "fraud" and "civil conspiracy" claims a as common law tort claims, they fare no better.

To start, there are no allegations of fraud made specifically against Wittes. *See* Compl. ¶¶ 53-61. Nor may Plaintiff "rely upon blanket references to the acts of all of the defendants without identifying the nature of each defendant's participation in the fraud." *Scone Invs., L.P.*, 1998 WL 205338, at *4. The Complaint's allegations of wire fraud against Jankowicz similarly fail to comport with Rule 9(b), as discussed *supra* § I.C.

Any common law fraud claim against Jankowicz also fails for a separate and independent reason: lack of reliance. Common law fraud requires "justifiable reliance *of the other party* on the misrepresentation or material omission." *Pasternack v. Lab'y Corp. of Am. Holdings*, 59 N.E.3d 485, 491 (N. Y. 2016) (emphasis added). A plaintiff cannot establish reliance by showing only that a third party relied on the defendant's false statements. *Id.* at 493.  Here, Plaintiff does not allege that *he* ever relied on Jankowicz's supposedly fraudulent claims to Patreon and/or Twitter. Rather his fraud claim is premised upon the theory that Jankowicz somehow "deliberately deceived" *Patreon and/or Twitter* into independently concluding that Plaintiff violated their policies, or alternatively, that Jankowicz "coordinated" with the social media companies to have Plaintiff's social media accounts suspended, in which case there was no alleged reliance by *anyone*, much less Plaintiff. *See* Compl. at p. 35.

Plaintiff's civil conspiracy claim is also deficient. "In order to properly plead a cause of action to recover damages for civil conspiracy, the plaintiff must allege a cognizable tort, coupled with an agreement between the conspirators regarding the tort, and an overt action in furtherance of the agreement." *Perez v. Lopez*, 948 N.Y.S.2d 312, 314 (N.Y. App. Div. 2012). Because Plaintiff has not alleged a cognizable tort against Wittes or Jankowicz, he also cannot maintain a claim that either conspired to commit any tort. *See also infra* § III (explaining that, in addition to failing to plead any common law fraud claim, Plaintiff has not alleged claims against Movants for defamation or abuse of process).

### III.    The Defamation and Abuse of Process Claims Are Not Pled against Wittes or Jankowicz and, in any event, Fail as a Matter of Law.

The Complaint's remaining two counts allege claims for defamation and abuse of process. Neither claim is pled against Movants. The Second Cause of Action (defamation) references only defamatory statements allegedly made by Defendants Webb, Sweigert and Bouzy. Compl. ¶¶ 63-73. The Third Cause of Action (abuse of process) alleges abuse of process only by Defendants Sweigert and Sharp. *Id.* ¶¶ 75-77. Nor do any other allegations in the Complaint implicate Movants in these two counts.[12]

Even if the Complaint could be construed to plead claims for defamation or abuse of process against Movants, it would still fail to state a claim. To successfully allege defamation under New York law, the following elements must be met: "(1) a written defamatory statement of

---

[12] Wittes is mentioned in the defamation count but not as the alleged speaker or author of a defamatory statement. Instead, Plaintiff denies *he* defamed *Wittes* when he accused Wittes of misleading the public regarding the death of the political operative, Peter Smith. Compl. ¶ 67. With regard to abuse of process, the Complaint refers to a "Years Long Lawfare Assault" against Goodman, *id.* at p. 21, but since Wittes is not mentioned in that section at all, Goodman's use of the word "lawfare" does not appear to be a reference to Wittes' online magazine but instead generally to "weaponizing the legal process against enemies and concealing it as legitimate action," *id.* at p. 19.

and concerning the plaintiff, (2) publication to a third party, (3) fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019). Goodman's claim for defamation fails because, among other reasons, his Complaint concedes that the alleged defamatory statement—that he had been accused of rape—is true. *See* Compl. at p. 25 & ¶ 63.[13]

"Abuse of process has three essential elements: (1) regularly issued process, either civil or criminal, (2) an intent to do harm without excuse or justification, and (3) use of the process in a perverted manner to obtain a collateral objective." *Curiano v. Suozzi*, 469 N.E.2d 1324, 1326 (N.Y. 1984). The Complaint alleges that Sweigert abused regularly issued process by bringing "multiple civil actions and attempt[ing] to intervene in existing civil actions against Goodman" and that Sharp initiated "vexatious litigation against a company owned by Goodman." Compl. ¶¶ 75-76. However, the mere "institution of a civil action by summons and complaint is not legally considered process capable of being abused," even if it is alleged to be "intended to cause the plaintiff[ ] expense and to burden [him] with the defense of a protracted legal proceeding." *Curiano* 469 N.E.2d at 1326. Nor does "[m]otion practice in civil lawsuits [] qualify as legal process sufficient to state an abuse of process claim." *Zappin v. Comfort*, No. 18CV01693ALCOTW, 2022 WL 6241248, at *13 (S.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, No. 18CV1693ALCOTW, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022). To the extent the Court

---

[13] The original complaint alleges that in May 2018, Webb published a video on YouTube that "made the false allegation that Plaintiff had raped then underage Somali fashion model Halima Aden." Dkt. 1 ¶ 14. This allegation is conveniently missing from subsequent iterations of the complaint. Nonetheless, Plaintiff continues to refer to the accusation obliquely in the Complaint when he alleges that Webb defamed him. Compl. ¶ 63.

construes the Complaint to state an abuse of process claim against Movants, it therefore should be dismissed with prejudice.[14]

### IV.    Dismissal Should Be with Prejudice.

While *pro se* litigants may be given wide latitude and leave to amend in some cases, this is not one of those cases. Courts are empowered to dismiss *pro se* claims with prejudice in extraordinary circumstances like these, where a pleading that has already been amended remains deficient, or when the claims are frivolous on their face. *Salahuddin v. Cuomo*, 861 F.2d 40, 42–43 (2d Cir. 1988). "[P]articularly in the case of pleading a claim under a statute such as RICO, which sets forth exacting pleading requirements, leave to replead can be denied where granting it would be futile." *Commc'n Opportunity, Inc. v. Davis*, No. 97 Civ. 3604 (NG), 1998 WL 240527, at *3 (E.D.N.Y. Apr. 28, 1998). Indeed, courts should be especially vigilant about "flush[ing] out frivolous RICO allegations at an early stage of the litigation" due to the "inevitable stigmatizing effect on those named as defendants." *United States Fire Ins. Co.*, 303 F. Supp. 2d at 443; *see e.g., Black*, 2022 WL 2374514, at *30 (dismissing RICO claims with prejudice). Given the Complaint's glaring and fundamental deficiencies, and Plaintiff's previous opportunity to amend, Movants submit that the Court can—and should—dismiss the claims against them here with prejudice.

---

[14] In addition to the failure to state a claim, Plaintiff's abuse of process claim is duplicative of his defamation claim. "A defamation cause of action has broad reach because, unlike most torts, defamation is defined in terms of the injury, damage to reputation, and not in terms of the manner in which the injury is accomplished. As such, New York law considers claims sounding in tort to be defamation claims, not only where those causes of action seek[ ] damages only for injury to reputation, but also where the entire injury complained of by plaintiff flows from the effect on his reputation." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 566 (S.D.N.Y. 2020). Goodman's abuse of process claim is premised on the injury to his reputation stemming from the allegations of rape and other allegations made in the lawsuits brought against him. These defamatory statements, in turn, allegedly resulted in financial injury to Goodman and to his business. Because this damage flows from the alleged effect on Goodman's reputation, the abuse of process claim is duplicative and must be dismissed.

*First*, for all the reasons already discussed herein, *see supra* §§ I-III, the Complaint, even liberally construed, does not contain allegations suggesting that Plaintiff has any valid claims against Movants or that Plaintiff has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to reframe." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). On the contrary, repleading would be futile because the "problem with [the] causes of action is substantive; better pleading will not cure it." *Id.* Plaintiff cannot implicate Wittes or Jankowicz in a racketeering conspiracy with a motley group of individuals he cannot plausibly allege they even knew, let alone acted in concert with toward a common purpose. Even if Plaintiff could produce specific and plausible allegations of a RICO enterprise, he cannot allege that Movants committed any racketeering activity because the acts allegedly committed by Wittes and Jankowicz—hiring counsel to defend another in a lawsuit and filing a complaint with a social media company alleging a violation of privacy rights—are not, no matter how you frame them, predicate acts. And, on top of all this, the injuries of which Plaintiff complains—reputational harm and the costs and fees associated with litigation—are not cognizable under RICO. Furthermore, the Complaint does not allege that Movants played any part in the alleged acts of defamation or abuse of process.

*Second*, Plaintiff has already had one opportunity to amend and, instead of curing the problems with his personal jurisdiction allegations, his amended pleading only compounds the Complaint's pleading defects. And Plaintiff's attempts to file a Second Amended Complaint and Third Amended Complaint only further demonstrate that it would be futile to permit Plaintiff leave to amend. For example, while the Second Amended Complaint adds ten additional pages to the Plaintiff's pleading, it is largely composed of legal argument, *not* new fact allegations. For example, the Second Amended Complaint discusses the elements of wire fraud, including conceding that predicate acts sounding in fraud must be pleaded with particularity, but it fails to

include any additional factual detail that would actually satisfy Rule 9's requirements. *See* Dkt. 132 at pp. 18-19. Similarly, although it discusses the legal requirement for a pattern of racketeering activity, the Second Amended Complaint adds no new conduct by Wittes or Jankowicz that would constitute RICO predicate acts, let alone predicate acts that constitute a pattern of racketeering activity. *See id.* at pp. 21-22. The Third Amended Complaint also fails to cure Plaintiff's pleading deficiencies, and instead only highlights the frivolous and harassing nature of Plaintiff's claims by attempting to reframe Plaintiff's RICO claim as predicated in part on Jankowicz's (successful) effort to obtain a Protective Order against Goodman. *See* Dkt. 142-1 ¶¶ 18, 44, 55(j), 71. That Order, issued by the Arlington General District Court and effective under February 13, 2025, prohibits Plaintiff Goodman from having any "contact of any kind" with Jankowicz, coming within "100 feet" of her residence, or "posting any social media" regarding her. *See* Dkt. 142-1 at 126-27 (Ex. F).

For all of these reasons, any efforts to replead the claims as to Movants would be futile. The Court should therefore dismiss Plaintiff's claims against Movants in full and with prejudice.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court dismiss the Amended Complaint with prejudice as to them and that it grant them such other and further relief as is appropriate.

Dated: March 6, 2023

Respectfully submitted,

*/s/ Elizabeth C. Lockwood*
Elizabeth C. Lockwood
ALI & LOCKWOOD LLP
300 New Jersey Avenue NW, Suite 900
Washington, D.C. 20001

(202) 651-2477
liz.lockwood@alilockwood.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of March 2023, I caused true and correct copies of the

foregoing Motion to Dismiss to be served electronically via ECF on the following:

Seth D. Berlin
Ballard Spahr LLP (DC)
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 508-1122
berlins@ballardspahr.com

Maxwell Mishkin
Ballard Spahr LLP (DC)
1909 K Street NW, 12th Floor
Washington, DC 20006
(202) 508-1140
mishkinm@ballardspahr.com

I additionally certify that on the 6th day of March, 2023, I caused true and correct copies

of the foregoing Motion to Dismiss to be served via email and U.S. Mail First Class on the

following:

Mr. Jason Goodman
252 7th Ave., Apt. 6S
New York, NY 10001
truth@crowdsourcethetruth.org
*Plaintiff*

Mr. George Webb Sweigert
209 St. Simons Cove
Peachtree City, GA 30269
Georg.webb@gmail.com
*Defendant*

Mr. David George Sweigert
Mailbox, PMB 13339
514 Americas Way, Box Elder, SD 57719
Spoliation-notice@mailbox.org
*Defendant*

Ms. Margaret Esquenet
Finnegan, Henderson, Farabow, Garrett
& Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com
*Defendant*

Mr. Adam Sharp
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com
*Defendant*

National Academy of Television Arts and
Sciences, Inc.
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com
*Defendant*

By: */s/ Elizabeth Lockwood* _____

25