**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X
                                                                         :
JASON GOODMAN,                                                           :
                                                                         :          No. 21 Civ. 10878-AT-JLC
                                        Plaintiff,                       :
                                                                         :          *Pro Se* Case
                        -against-                                        :
                                                                         :
                                                                         :
CHRISTOPHER BOUZY, et al.,                                               :
                                                                         :
                                        Defendants.                      :
                                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   X


**COMBINED REPLY/RESPONSE MEMORANDUM BY DEFENDANTS
CHRISTOPHER BOUZY, BOT SENTINEL INC., SETH BERLIN, AND MAXWELL
MISHKIN IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO
PLAINTIFF'S MOTIONS FOR LEAVE TO FILE AMENDED COMPLAINTS**

Seth D. Berlin (SB7978)
Maxwell S. Mishkin (admitted *pro hac vice*)
BALLARD SPAHR LLP
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy,*
*Bot Sentinel Inc., Seth Berlin, and Maxwell Mishkin*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT ...................................................................................................................... 3

I.     GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST
BOT SENTINEL ..................................................................................................... 3

II.    GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST
BOUZY ................................................................................................................... 4

     A.    Goodman's First Amended Complaint Fails to State a Claim
Against Bouzy ............................................................................................. 4

     B.    Goodman's Third Amended Complaint Fails to State a Claim
Against Bouzy ............................................................................................. 8

III.    GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST
BERLIN AND MISHKIN ..................................................................................... 10

IV.    GOODMAN DOES NOT AND CANNOT STATE A CLAIM FOR
CONSPIRACY OR RICO ENTERPRISE ............................................................ 12

CONCLUSION ................................................................................................................. 15

**<u>TABLE OF AUTHORITIES</u>**

**Cases**                                                                      **Page(s)**

*Arlinghaus v. Ritenour*,
  622 F.2d 629 (2d Cir. 1980)........................14

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................13

*Biro v. Condé Nast*,
  807 F.3d 541 (2d Cir. 2015)........................4

*Bologna v. Allstate Insurance Co.*,
  138 F. Supp. 2d 310 (E.D.N.Y. 2001) ........................10

*Edwards v. National Audubon Society, Inc.*,
  556 F.2d 113 (2d Cir. 1977)........................7

*First Capital Asset Management v. Satinwood, Inc.*,
  385 F.3d 159 (2d Cir. 2004)........................13

*Harte-Hanks Communications v. Connaughton*,
  491 U.S. 657 (1989)........................7

*Hengjun Chao v. Mount Sinai Hospital*,
  476 F. App'x 892 (2d Cir. 2012) ........................9

*Kahl v. Bureau of National Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017)........................1

*Kaplan v. NYS Department of Labor*,
  No. 18 CIV. 3629 (KPF), 2019 U.S. Dist. LEXIS 121131
  (S.D.N.Y. July 19, 2019) ........................1

*Kirk v. Heppt*,
  423 F. Supp. 2d 147 (S.D.N.Y. 2006)........................2

*Michel v. NYP Holdings*,
  816 F.3d 686 (11th Cir. 2016) ........................7

*Moss v. Morgan Stanley Inc.*,
  719 F.2d 5 (2d Cir. 1983)........................13

*NAACP v. Claiborne Hardware Co.*,
  458 U.S. 886 (1982)........................14

*NOW v. Scheidler*,
  510 U.S. 249 (1994)........................15

*O'Handley v. Weber*,
   No. 22-15071, --- F.4th ---, 2023 U.S. App. LEXIS 5729
   (9th Cir. Mar. 10, 2023) ...........................................................................................9

*Scherer v. United States*,
   241 F. Supp. 2d 1270 (D. Kan. 2003) ...................................................................10

*Shahin v. Darling*,
   606 F. Supp. 2d 525 (D. Del. 2009) ...................................................................4, 10

*Sheehy v. Brown*,
   335 F. App'x 102 (2d Cir. 2009) ........................................................................4, 10

*St. Amant v. Thompson*,
   390 U.S. 727 (1968) ..................................................................................................7

*Tannerite Sports, LLC v. NBCUniversal News Group*,
   864 F.3d 236 (2d Cir. 2017) ................................................................................3, 5

*Town of Mamakating, N.Y. v. Lamm*,
   No. 15-CV-2865 KBF, 2015 U.S. Dist. LEXIS 121471
   (S.D.N.Y. Sept. 11, 2015) ......................................................................................14

**Statutes**

18 U.S.C. § 1343 ............................................................................................................10

18 U.S.C. § 1503 ......................................................................................................10, 11

18 U.S.C. § 1513 ..............................................................................................................4

**Other Authorities**

Fed. R. Civ. P. 9 .............................................................................................................14

Pursuant to the Court's March 3, 2023 Order, ECF No. 148, Defendants Christopher Bouzy ("Bouzy"), Bot Sentinel Inc. ("Bot Sentinel"), Seth Berlin ("Berlin") and Maxwell Mishkin ("Mishkin") (together, "Movants") respectfully submit this Combined Memorandum of Law (1) in Reply in further support of their Motion to Dismiss Plaintiff Jason Goodman's First Amended Complaint ("FAC"), and (2) in Opposition to Goodman's Motions for Leave to File either a Second Amended Complaint or a Third Amended Complaint ("TAC").

## PRELIMINARY STATEMENT

As then-Judge Kavanaugh observed, "[t]o preserve First Amendment freedoms and give reporters, commentators, bloggers, and tweeters (among others) the breathing room they need to pursue the truth, the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits." *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 108-09 (D.C. Cir. 2017). It is time for the Court to weed out this wholly unmeritorious lawsuit against Movants, root and branch.

In his First Amended Complaint, Goodman vaguely attempted to state claims against Bouzy and Bot Sentinel for defamation and civil conspiracy, *see* FAC ¶¶ 67, 90, ECF No. 100, and against Berlin and Mishkin for obstruction of justice, racketeering, or civil conspiracy, *see id.* ¶¶ 50-51, 91. In moving to dismiss that complaint, Movants explained in detail that Goodman had failed to state any of those claims as a matter of law for multiple, independent reasons. ECF No. 107. Goodman responded with a cursory four-page Opposition brief ("Opp."), ECF No. 140, which ignores, and therefore concedes, the lion's share of Movants' grounds for dismissal. *See, e.g.*, *Kaplan v. NYS Dep't of Lab.*, No. 18 CIV. 3629 (KPF), 2019 U.S. Dist. LEXIS 121131, at *14-15 (S.D.N.Y. July 19, 2019) (by "fail[ing] to address or oppose a defendant's arguments requesting dismissal of [a] claim," plaintiff concedes them) (citing

*Adams* v. *NYS Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases)).[1] As to the few arguments that Goodman actually attempted to address, his responses are wholly without merit.  There is no question, therefore, that the Court should grant Movants' motion and dismiss the First Amended Complaint.

Goodman has also submitted two motions for leave, first to file a Second Amended Complaint, ECF No. 137; *see also* ECF No. 132 (proposed second amended pleading), and then, supplanting and presumably mooting that request, to file a Third Amended Complaint, ECF No. 142; *see also* ECF No. 142-1 (proposed third amended pleading).  His proposed Third Amended Complaint – which, remarkably, now names as a co-defendant the *pro se* case administrator for the Clerk of the U.S. District Court for the Eastern District of Michigan – demonstrates that dismissal with prejudice is warranted, because his fourth pleading attempt would, if filed, still not state a claim as a matter of law against Movants.  *See Kirk v. Heppt*, 423 F. Supp. 2d 147, 149 (S.D.N.Y. 2006) ("A proposed amendment to a pleading is deemed to be futile if the amended pleading fails to state a claim or would be subject to a successful motion to dismiss on some other basis."); *see also* Mem. at 30 (explaining that dismissal with prejudice is particularly warranted here to prevent Goodman from "exploit[ing] the Court's processes, including to punish protected speech, through further meritless proceedings").

Below, we address Goodman's failure in both the operative First Amended Complaint and his proposed Third Amended Complaint to state a claim against Movants, first individually, and then, in the final section, as part of an alleged conspiracy.  Because Goodman does not and

---

[1] Goodman also fails to address, and thus concedes, that (a) the First Amended Complaint superseded the initial Complaint, mooting the default against Bouzy and Bot Sentinel, Mem. at 11 n.7, and (b) the Court can take judicial notice of Movants' three exhibits, *id.* at 2-6 nn.2-4.

cannot state a claim, the Court should grant Movants' motion to dismiss, deny Goodman's

motions for leave, and dismiss the case against Movants with prejudice.

## ARGUMENT

## I.    GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST BOT SENTINEL.

As Movants explained in seeking dismissal of Goodman's First Amended Complaint, he

fails to state a claim against Bot Sentinel because it is not mentioned in any of the causes of

action and, in the balance of the complaint, he pleads no facts that would plausibly allege that

Bot Sentinel published *anything* about him – let alone anything actionable – or engaged in any

other tortious or unlawful conduct.  Mem. at 9, 11-12.  In his opposition, Goodman did not

respond to that argument and thus has conceded that his First Amended Complaint fails to state a

claim as to Bot Sentinel.

Goodman fares no better in stating a claim against Bot Sentinel in his proposed Third

Amended Complaint, in which he advances two additional allegations in a conclusory fashion.

First, he alleges that Bot Sentinel purportedly "conspired with Defendants to destroy Goodman's

business and reputation and terminate his access to social media using Bot Sentinel technology

under Bouzy's control with the objective of harming Goodman."  TAC ¶ 40.  Putting aside the

alleged conspiracy, which we address in Part IV *infra*, the gravamen of this allegation is a

purported injury to Goodman's reputation, which ultimately sounds in defamation.  But, like his

first three complaints, his proposed amended pleading does not state a plausible defamation

claim against Bot Sentinel, failing to allege that it communicated *anything* about Goodman to a

third party, much less anything materially false and published with actual malice.  *See, e.g.*,

*Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 245 (2d Cir. 2017) ("[A]

plaintiff in New York courts generally must identify *how* the defendant's statement was false to

survive a motion to dismiss.") (emphasis added); *Biro v. Condé Nast*, 807 F.3d 541, 546 (2d Cir.

2015) ("actual malice must be plausibly alleged").[2]

Second, Goodman alleges, again in a conclusory fashion, that Bot Sentinel "participated

in a scheme in violation of 18 U.S. Code § 1513(b)(2) to retaliate against Goodman for bringing

legal action against it and Bouzy."  TAC ¶ 40.  That allegation likewise fails as a matter of law

both because "Section 1513 is the criminal statute for retaliation against a witness, victim, or an

informant," and because in any event "[a] private right of action is not recognized under this

criminal statute."  *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009), *aff'd*, 350 F.

App'x 605 (3d Cir. 2009) (per curiam); *see also Sheehy v. Brown*, 335 F. App'x 102, 104 (2d

Cir. 2009) ("federal criminal statutes do not provide private causes of action").

Because neither the First Amended Complaint nor the proposed Third Amended

Complaint states a claim against Bot Sentinel, the Court should enter dismissal with prejudice.

## II.     GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST BOUZY.

### A.     Goodman's First Amended Complaint Fails to State a Claim Against Bouzy.

Bouzy raised four grounds for dismissing the First Amended Complaint's defamation

claim against him.  Goodman fails to address – and therefore concedes – two of them.  And his

cursory responses to the other two are entirely unavailing.

---

[2] Although this sort of vague and conclusory allegation is insufficient to overcome a motion
to dismiss, to the extent that it suggests that Bot Sentinel uses bots or some other technology to
improperly *communicate with* social media platforms, it is both misleading and contrary to
Goodman's own description of Bot Sentinel as an entity that uses technology to *police against*
bots – or, as its name indicates, to serve as a "sentinel" against nefarious online practices.  *See*
FAC ¶ 14 (describing Bot Sentinel as an "online platform that identifies and eliminates so called
'disinformation'"); TAC ¶ 21 (describing Bot Sentinel as "an online platform intended to detect
and eliminate untrustworthy internet activity").

**Falsity:**  As Movants demonstrated, the Challenged Tweet offered a substantially accurate account of Bouzy's interactions with Goodman, in that Goodman (a) admitted there were rape allegations against him, (b) threatened Bouzy with a libel suit if he published them, and (c) did not want Bouzy to tweet that Goodman had demanded that Bouzy not tweet about his rape allegations.  Mem. at 14.  In response, Goodman accuses Bouzy of relying on "a gerrymandered transcript" of his recorded telephone call with Bouzy and points to a passage in which Goodman told Bouzy, "'[G]o try to find somebody who claims I raped them.  You will not find that.'"  Opp. at 2.  But Goodman fails to acknowledge that, in the very next line of the transcript, he admits, "You *will* find a litany of social engineering liars who have been pursuing me for years with false claims *along the lines of what you're suggesting*."  ECF No. 108-3 at 9:19-21 (emphasis added).  Moreover, Goodman made the same claim he advances here in his "cease-and-desist" DM to Bouzy, which Bouzy screenshotted in his Twitter posting.  ECF No. 108-1.

Goodman thus concedes that he *has* been accused of rape and, to the extent that he seeks to draw a distinction between being accused by a victim and being accused by a third party, that contention was expressly included in Bouzy's post.  As such, Goodman has not plausibly alleged the Challenged Tweet was false, and he cannot state a claim for defamation arising out of that tweet as a matter of law.  *See, e.g.*, *Tannerite Sports*, 864 F.3d at 247.[3]

**Defamation By Implication:**  To the extent Goodman's First Amended Complaint could somehow be read as asserting a claim that the Challenged Tweet *implies* he was *in fact* guilty of

---

[3] Moreover, the transcript presented to the Court was not "gerrymandered," as it expressly included the passage Goodman invokes, ECF No. 108-3 at 9:17-19, and both Bouzy's tweets and his moving papers accurately reflected the distinction that Goodman seeks to draw between being accused of rape directly by a victim and being accused of rape by others, ECF No. 108-1 (Bouzy's tweet including screenshot of Goodman's DM); Mem. at 6-7, 14-15.

rape, Movants explained that such a defamation-by-implication claim would fail because Goodman does not and cannot satisfy either prong of New York's demanding two-part test for asserting such a claim.  Mem. at 15-17.  Goodman does not respond at all to either point and therefore concedes them.[4]

**Opinion**:  Movants further explained in their moving papers that, to the extent Goodman objects that the Challenged Tweet (a) portrays him as foolish for volunteering to a stranger that he had been accused of rape, (b) implies that he actually committed the crime of rape, and/or (c) suggests that Goodman falsely accused Wittes of being part of a murder cover up, these would be absolutely protected expressions of opinion, under both the First Amendment and New York's heightened protection for opinions.  Mem. at 17-20.  Goodman does not address these arguments, and therefore concedes them as well.

**Actual Malice**:  Goodman does not dispute that he is required to plead and ultimately prove actual malice, under both the First Amendment, because he is a limited purpose public figure, and New York law, because the challenged speech addresses a matter of public concern. *Id.* at 22-24.[5]  As Movants explained, Goodman's First Amended Complaint failed to plead facts that, if proven, would constitute clear and convincing evidence that Bouzy published the Challenged Tweet with actual malice – *i.e.*, with knowledge that it was false or despite a high degree of awareness that it was probably false.  *Id.* at 24-25.

---

[4] In his proposed Third Amended Complaint, Goodman expressly concedes that this two-prong test is the applicable standard for implication claims, TAC ¶ 94 (citing *Golan v. Daily News, L.P.*, 175 N.Y.S.3d 871 (Sup. Ct. N.Y. Cnty. 2022)), yet makes no effort to satisfy it there either.

[5] In his proposed Third Amended Complaint, Goodman generally appears to acknowledge that the actual malice fault standard applies to his claims, *see* TAC ¶¶ 85, 89, 91, although in at least one other instance he confusingly seems to assert that a so-called "reckless negligence" fault standard governs instead, *see id.* ¶ 94.

In response, Goodman points to the same line of the call transcript discussed above and asserts that "a reasonable observer who takes that statement as confirmation there was an accusation would have to deliberately disregard the truth or be completely unable to discern truth from falsity." Opp. at 2. This argument fails for multiple reasons. First, as noted *supra*, in the very next line of the transcript, Goodman admitted that he *has* been accused of rape. Second, Bouzy's tweet included a screenshot of Goodman's DM, which includes his denial of that accusation and his assertion that it was not made by a victim. *See Michel v. NYP Holdings*, 816 F.3d 686, 703 (11th Cir. 2016) (including "perspectives contrary to the publisher's own" serves "to rebut, not establish, the presence of actual malice"). Third, what "a reasonable observer" would conclude from the call is irrelevant to the actual malice analysis. As the Supreme Court put it, actual malice "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968). Finally, Goodman contends that Bouzy was required to credit Goodman's denial of the *truth* of the rape accusation, even though what is relevant is that Goodman admitted the *existence* of the rape accusation. Regardless, Goodman's insistence that Bouzy was required to credit his denial runs counter to black-letter defamation law. *See, e.g.*, *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 691 n.37 (1989) (denials – "however vehement" – do not establish actual malice); *Edwards v. Nat'l Audubon Soc'y, Inc.*, 556 F.2d 113, 121 (2d Cir. 1977) ("denials are so commonplace in the world of polemical charge and countercharge that, in themselves, they hardly alert" a speaker "to the likelihood of error"). Because Goodman has not plausibly alleged facts that, if proven,

would establish that Bouzy published the Challenged Tweet with actual malice, his defamation claim fails for that additional reason as well.

**Civil Conspiracy:**  Finally, Goodman does not dispute, and therefore concedes, that his failure to state a claim against Bouzy for defamation necessarily means he also has failed to state a claim against Bouzy for civil conspiracy.  Mem. at 26.  Goodman's First Amended Complaint therefore fails to state any claim against Bouzy.

**B.  Goodman's Third Amended Complaint Fails to State a Claim Against Bouzy.**

The proposed Third Amended Complaint largely rehashes the prior allegations against Bouzy, all of which fail for the reasons discussed above as to the First Amended Complaint.

**Defamation**:  Goodman continues to claim that Bouzy defamed him in various ways, including through "information provided by [co-defendant] Sweigert," TAC ¶ 68, through "false claims to Twitter," *id.* ¶ 76, through the Challenged Tweet, *id.* ¶¶ 82-83, and by falsely asserting that Goodman falsely accused Wittes of covering up the murder of GOP operative Peter W. Smith, *id.* ¶ 86.  Each of these allegations was also included in the First Amended Complaint, *see* FAC at 19-21, and, as explained in Movants' opening papers and above, they would fail to state a claim.

Goodman's proposed Third Amended Complaint briefly expands his earlier allegation that Bouzy made "false claims to Twitter," TAC ¶ 76, now adding that they had the effect of "destroy[ing] Goodman's business reputation and terminat[ing] his access to social media," *id.* ¶ 40.  Not only would such a defamation claim seeking to remedy purported injury to reputation fail for each of the reasons set forth above, but also it would fail because any communications Bouzy may have had with Twitter concerning Goodman would be protected under New York's common interest privilege, "which encompasses communications made by one person to another

upon a subject in which both have an interest." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F.

App'x 892, 894-95 (2d Cir. 2012) (internal marks omitted).

In this regard, Bouzy and Twitter share a common interest in enforcing civil discourse on

platforms like Twitter.  Bouzy's mission is to operate "an online platform intended to detect and

eliminate untrustworthy internet activity," TAC ¶ 21, while Twitter likewise seeks to enforce its

platform rules to achieve the same purpose, *see, e.g., Platform manipulation and spam policy*,

Twitter (Apr. 2022), https://help.twitter.com/en/rules-and-policies/platform-manipulation ("We

want Twitter to be a place where people can make human connections, find reliable information,

and express themselves freely and safely. To make that possible, we do not allow spam or other

types of platform manipulation.").  Indeed, to advance this interest, Twitter expressly reserves

the right to "suspend or terminate [a user's] account or cease providing [a user] with all or part of

the Services at any time for any or no reason." *Terms of Service* § 4 ("Ending These Terms"),

Twitter (June 10, 2022), https://twitter.com/en/tos; *see also O'Handley v. Weber*, No. 22-15071,

--- F.4th ---, 2023 U.S. App. LEXIS 5729, at *10 (9th Cir. Mar. 10, 2023) (rejecting claim that

defendant improperly pressured Twitter "to remove disfavored content" where Twitter "decide[s]

how to respond to those [third parties'] recommendations independently, in conformity with the

terms of its own content-moderation policy," such that "Twitter never took its hands off the

wheel" with respect to that decision).

Although the common interest privilege can be defeated by a showing either of actual

malice or that common law malice was the statement's sole purpose, here Goodman has not

"allege[d] facts supporting a plausible inference that [Bouzy] spoke with malice." *Hengjun*

*Chao*, 476 F. App'x at 895 (internal marks omitted).  Goodman therefore "cannot overcome the

privilege" and his proposed amendment fails for that additional reason. *Id.*

**Criminal Statutes**:  Goodman repeatedly asserts that Bouzy has violated federal criminal statutes, specifically 18 U.S.C. §§ 1343, 1503, and 1513.  TAC ¶¶ 39, 55(f), 55(h).  But the cited "federal criminal statutes do not provide private causes of action."  *Sheehy*, 335 F. App'x at 104. Indeed, courts have specifically ruled that none of these three criminal statutes creates a private right of action.  *See Bologna v. Allstate Ins. Co.*, 138 F. Supp. 2d 310, 322 (E.D.N.Y. 2001) ("no private right of action exists under . . . 18 U.S.C. § 1343"); *Scherer v. United States*, 241 F. Supp. 2d 1270, 1282 (D. Kan. 2003) ("Federal courts have consistently denied a private civil right of action under 18 U.S.C. § 1503, the criminal statute against jury tampering, witness intimidation, and obstruction of justice."), *aff'd*, 78 F. App'x 687 (10th Cir. 2003); *Shahin*, 606 F. Supp. 2d at 539 ("Section 1513 is the criminal statute for retaliation against a witness, victim, or an informant," and "[a] private right of action is not recognized under this criminal statute.").

**Pre-Motion Letter**:  Finally, Goodman alleges that Bouzy "conspired to harass [him] with extrajudicial communications in an effort to gain an advantage in litigation," TAC ¶ 77, which is presumably a reference to the Pre-Motion Letter at the center of Goodman's claims against Berlin and Mishkin.  As Movants explain, *see* Mem. at 27-29 & Part III *infra*, that Pre-Motion Letter cannot give rise to a claim as a matter of law.

## III.   GOODMAN DOES NOT AND CANNOT STATE A CLAIM AGAINST BERLIN AND MISHKIN.

As Movants noted in moving to dismiss Goodman's First Amended Complaint, while his claims against Berlin and Mishkin are not a model of clarity, he appeared to focus on (1) the Pre-Motion Letter, ECF No. 86 Ex. A, which Movants sent to Goodman before moving to dismiss his Initial Complaint, and (2) Goodman's contention that Berlin and Mishkin received funds from Wittes to pay defense costs for Bouzy and Bot Sentinel.  Mem. at 26-27.

With respect to the Pre-Motion Letter, Goodman fails to address, and therefore concedes, all but one aspect of Movants' arguments.  Specifically, he does not dispute Movants' showing that (a) pre-motion letters generally are both encouraged and entirely lawful, (b) this Pre-Motion Letter specifically did not constitute a "true threat," (c) the federal obstruction of justice statute does not create a private right of action, and (d) "litigation activities" cannot "constitute a RICO predicate act."  Mem. at 26-29 (citations omitted).  Goodman's *only* argument as to the Pre-Motion Letter in his Opposition is that he "construed" the letter to be "extrajudicial harassment" because Berlin and Mishkin had not yet filed notices of appearance in this matter when they sent the letter, and thus "they did not actually legally represent [Bouzy and Bot Sentinel] at that time."  Opp. at 2.  Yet Goodman cites no authority for the idea that counsel must file a notice of appearance before sending correspondence to an adverse party.  Indeed, even entirely outside of the litigation context, lawyers routinely correspond with opposing counsel or parties by letter and those communications do not give rise to a claim.  In any event, Berlin and Mishkin notified this Court and Goodman on November 23, 2022 – nearly two weeks before sending the Pre-Motion Letter – that they were being retained to represent Bouzy and Bot Sentinel in this case.  *See* ECF Nos. 68, 86 Ex. A.  Goodman's sole remaining objections are therefore baseless.

In Goodman's proposed Third Amended Complaint, he recycles the allegation that Berlin and Mishkin "harassed [him] with emails and letters while they did not legally represent defendants" and "conspired to harass [him] with extrajudicial communications in an effort to gain an advantage in litigation."  TAC ¶¶ 69, 77; *see also id.* ¶¶ 48-49, 55(h) (averring that Berlin and Mishkin violated 18 U.S.C. §§ 1343, 1503, and 1513).  Because these contentions cannot give rise to a claim, as explained in Movants' opening brief, Mem. at 26-29, and above,

the proposed amendments as to Berlin and Mishkin are futile and leave to amend should be denied.

Finally, with respect to Goodman's claim that Berlin and Mishkin improperly received funds from Defendant Wittes to pay the defense costs of Bouzy and Bot Sentinel, Goodman's Opposition does not address, and therefore concedes, that, even if true, such conduct would not be tortious and that ruling otherwise would threaten First Amendment speech and association rights. Mem. at 28. Tellingly, in his proposed Third Amended Complaint, Goodman does not even mention these purported payments, abandoning entirely his claims based on them.

## IV.   GOODMAN DOES NOT AND CANNOT STATE A CLAIM FOR CONSPIRACY OR RICO ENTERPRISE.

Finally, in addition to the handful of specific factual allegations against each of the Movants, he broadly alleges that they have engaged in coordinated activity with the other defendants in the form of a conspiracy or racketeering enterprise.

With respect to the First Amended Complaint, Goodman does not – other than in a couple of sentences restating conclusory allegations from his pleading – address Movants' arguments with respect to his passing claims for conspiracy or engaging in racketeering as part of an enterprise. *Compare* Mem. at 26, 28-29 & n.15, *with* Opp. at 3. Accordingly, he has conceded that the First Amended Complaint fails to state a claim against Movants for conspiracy or, to the extent that it is referenced in passing, a RICO violation.

To the extent that the Third Amended Complaint purports to allege more directly a conspiracy among all the defendants, or that they jointly participated in a racketeering enterprise, that claim against Movants fails for multiple reasons as well. First, Goodman fails to plausibly allege that Defendants are conspiring with one another at all, or that they even know one another, rather than merely engaging in separate, parallel conduct in their interactions with Goodman and

other third parties.  As the Supreme Court has explained, "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57, (2007).  Rather, to survive a motion to dismiss, a plaintiff must plead specific factual "allegations plausibly suggesting (not merely consistent with) agreement."  *Id.* at 557.  Goodman's bald assertions of joint action, such as that Movants and the other Defendants "willfully targeted [him], his business, and his property with their pattern of fraudulent, and malicious conduct," TAC at 21, fail to "nudge" his allegation of conspiracy "across the line from conceivable to plausible."  *Id.* at 570.  Indeed, Goodman seeks leave to assert a conspiracy that includes Bouzy and Bot Sentinel, the brothers Sweigert (who by all accounts are estranged from one another), respected scholars from the Brookings Institution and the Woodrow Wilson Center, the sponsors of the Emmy Awards, multiple members of the bar in good standing, and (presumably because no good deed goes unpunished) the *pro se* case administrator for the U.S. District Court for the Eastern District of Michigan.  Without any pleaded facts that would show coordinated action or agreement among these disparate parties, such a sprawling conspiracy or enterprise is highly *implausible*.

Second, to the extent Goodman purports to assert civil RICO claims, he fails to plead several essential elements, most importantly the existence of an "enterprise."  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  He has "failed to provide [the Court] with any solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise, from which [it] could fairly conclude that its members functioned as a unit."  *First Cap. Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (internal marks omitted) (affirming dismissal of RICO claim where plaintiff "failed to allege adequately that the

13

[alleged conspiracy] was indeed a RICO enterprise").  Here, too, Goodman has the same "fatal

flaw," in that he "essentially strings together the various defendants and labels them an

enterprise," which "is insufficient to state a RICO claim."  *Town of Mamakating, N.Y. v. Lamm*,

No. 15-CV-2865 KBF, 2015 U.S. Dist. LEXIS 121471, at *23 (S.D.N.Y. Sept. 11, 2015), *aff'd*,

651 F. App'x 51 (2d Cir. 2016).[6]

Finally, *even if* Movants and the other Defendants were working together in concert,

cooperation alone is not tortious; rather, some underlying activity must be improper for the

alleged "conspiracy" as a whole to be improper.  In other words, while a "defendant may be held

liable in tort for conspiracy to do an unlawful thing, or to do a lawful thing in an unlawful

manner," *Arlinghaus v. Ritenour*, 622 F.2d 629, 639 (2d Cir. 1980) (internal marks omitted),

there can be no tortious conspiracy to do a *lawful* thing in a *lawful* manner.  Here, despite four

attempts at pleading claims against Bouzy and Bot Sentinel, and three for Berlin and Mishkin,

Goodman has failed to plausibly allege any wrongful conduct that could tie them to a purported

unlawful conspiracy or enterprise.  Mem. at 26.  Such a conclusion applies with particular force

where, as here, the underlying conduct involves speech protected by the First Amendment,

whether, for example, posting a constitutionally-protected tweet, as alleged against Bouzy, or

sending a lawful pre-motion letter, as alleged against Berlin and Mishkin.  *See, e.g.*, *NAACP v.

Claiborne Hardware Co.*, 458 U.S. 886, 888 (1982) (recognizing that the "term 'concerted

---

[6] Defendants Wittes and Jankowicz recently moved to dismiss the First Amended Complaint, construing it as potentially asserting RICO claims and explaining exhaustively all of the reasons why Goodman does not and could not plead a RICO violation or other conspiracy.  ECF No. 154 at 8-19.  Because Movants believe that such a claim is so implausible on its face, as explained in their moving papers and herein, we have not undertaken a comparably detailed analysis of Goodman's many failures in pleading a viable RICO claim and complying with Rule 9(b) of the Federal Rules of Civil Procedure.  To the extent that the Court finds it necessary to consider those failures in detail, we respectfully refer the Court to the arguments advanced by Wittes and Jankowicz, which would apply with equal force to Movants.

action' encompasses unlawful conspiracies and constitutionally protected assemblies" and finding that protected speech, including boycotting, leafletting, and protesting, were non-actionable); *NOW v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J., concurring) ("Conduct alleged to amount to . . . extortion" or "one of the other, somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis.") (citing *Claiborne Hardware Co.*, 458 U.S. at 917).

In sum, neither the operative First Amended Complaint nor Goodman's proposed Third Amended Complaint states a claim against any of the Movants as part of an alleged conspiracy or racketeering enterprise.

## **CONCLUSION**

For the foregoing reasons and those set forth in their initial brief, Movants respectfully request that this Court grant their motion to dismiss, deny Goodman's motions for leave to amend, and dismiss this action against Movants in its entirety and with prejudice.

Respectfully submitted,

BALLARD SPAHR LLP

By:     */s/ Seth D. Berlin*
        Seth D. Berlin (SB7978)
        Maxwell S. Mishkin (admitted *pro hac vice*)
1909 K Street NW, 12th Floor
Washington, DC 20006
Tel: 202-661-2200
Fax: 202-661-2299
berlins@ballardspahr.com
mishkinm@ballardspahr.com

*Counsel for Defendants Christopher Bouzy,*
*Bot Sentinel Inc., Seth Berlin, and Maxwell Mishkin*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 14th day of March 2023, I caused true and correct copies of

the foregoing Combined Memorandum of Law (1) in Further Support of Movants' Motion to

Dismiss Plaintiff Jason Goodman's First Amended Complaint and (2) in Opposition to

Goodman's Motion for Leave to File a Third Amended Complaint to be served on counsel of

record via ECF and by email and U.S. Mail First Class on the following:

Mr. Jason Goodman
252 7th Ave., Apt. 6S
New York, NY 10001
truth@crowdsourcethetruth.org

*Plaintiff*

Mr. George Webb Sweigert
209 St. Simons Cove
Peachtree City, GA 30269
Georg.webb@gmail.com

*Defendant*

Mr. David George Sweigert
Mailbox, PMB 13339
514 Americas Way,
Box Elder, SD 57719
Spoliation-notice@mailbox.org

*Defendant*

Ms. Margaret Esquenet
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

Mr. Adam Sharp
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

National Academy of Television Arts and Sciences, Inc.
c/o Margaret Esquenet
901 New York Avenue, NW
Washington, DC 20001-4413
margaret.esquenet@finnegan.com

*Defendant*

/s/ *Seth D. Berlin*
Seth D. Berlin (SB7978)