# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **Jason Goodman,**<br>**Plaintiff,**<br>**Proposed Pro Se Counter-**<br>**Defendant**<br><br>-against-<br><br>**D. G. Sweigert,**<br>**Defendant**<br>**Proposed Pro Se Counter-Plaintiff** | **PRO SE**<br><br>**21-cv-10878-AT-JLC**<br><br>**District Judge Analisa Torres**<br><br>**Magistrate Judge James L. Cott** |

## NOTICE OF DEFENDANT'S SWORN STATEMENT TO PRECLUDE PERSONAL JURISDICTION RESPONSE TO PLAINTIFF'S EVIDENTIARY HEARING DKT. 178

---

The *pro se* Defendant (Proposed Counter Plaintiff) (undersigned) files these papers to allow the Court to take notice of a sworn statement for the upcoming evidentiary hearing. Undersigned disputes that personal jurisdiction can be conferred upon him and opposes such finding of personal jurisdiction by this Court.

April 7, 2023 (04/07/23)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

## NOTICE OF DEFENDANT'S SWORN STATEMENT TO
## PRECLUDE PERSONAL JURISDICTION
## RESPONSE TO PLAINTIFF'S EVIDENTIARY HEARING DKT. 178

### SUMMARY OF EVIDENCE

1.      The undersigned, an adult over 18 years of age, makes this statement under the penalties of perjury to aid the Court in deciding issues related to the lack of jurisdiction of this Court on the undersigned.  Evidence is attached that is aligned with the statements made by so-called Plaintiff Jason Goodman.

2.      Plaintiff's states several claims in Dkt. 179 under the heading of *Ghost Writing Pleadings for Pro Se Defendant David George Sweigert.*  The undersigned states, under penalties of perjury, that he himself created the document in question (Dkt. 143) by conducting a rigorous review of **EXHIBIT ONE.**

3.      The undersigned denies that he is romantically involved with the attorney known as Margaret Esquenet, a Finnegan lawyer, who focuses on contemporary issues in U.S. and global copyright, advertising, and trademark law.  However, the undersigned notes that this lawyer represents the EMMY AWARDS.  These EMMY AWARDS bestowed an EMMY AWARD on a reporter for the Cable News Network named Donie O'Sullivan for his news story on George Webb Sweigert, a co-defendant.

4.      Plaintiff Jason Goodman has stated in several social media video productions that he maintains a liaison with George Webb Sweigert's ex-girlfriend, Corean Elizabeth Stoughton of Fort Meade, Maryland (known on Twitter as "DEEP NSA").  Undersigned states under penalties of perjury that Ms. Stoughton explained to him via telephone calls that she was in daily communications with the subject of the EMMY AWARD story, Matthew Benassi, a U.S. Air Force civilian employee who is assigned to the Secretary of the Air Force in a public relations capacity.

5.      Ms. Stoughton advised the undersigned that she had unauthorized access to all of George Webb Sweigert's messaging accounts and had electronically sent dozens of megabytes of files from Webb's e-mail messaging accounts to the attorneys for the Cable News Network over several weeks.

6.      Plaintiff Jason Goodman claims in his Dkt. 179 papers that "*This is only the latest egregious example of defendants' ongoing outrageous efforts to take unfair advantage of a far less sophisticated, far less experienced pro se litigant, rather than rely on the law and the facts.*"  Attached as **EXHIBIT TWO** is the ORDER (7/20/2022) of the Honorable Gershwin A. Drain of the U.S. District Court serving Detroit, Michigan.  Judge Drain explains that he was forced to STRIKE twelve (12) documents authored by Plaintiff Jason Goodman.  A copy of the docket entries for those papers is attached as **EXHIBIT THREE.**

7.      As a courtesy to the Court the undersigned has transmitted Plaintiff's Dkt. 179 to the District of Columbia Office of Disciplinary Counsel for a review in a good faith effort.  This act should demonstrate that there is no romantic love affair between the undersigned and Ms. Esquenet.

8.      Presently the undersigned is engaged in jurisdictional discovery that demonstrates that the natural person "JASON GOODMAN" is a questionable party to bring this instant lawsuit against the undersigned.

Certified under penalties of perjury.

April 7, 2023 (4/7/2023)

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

## **CERTIFICATE OF SERVICE**

**It is hereby certified under the penalties of perjury that a true copy PDF file has been sent via e-mail message to the following:**

---

Jason Goodman, sole stockholder of MULTIMEDIA SYSTEM DESIGN, INC.

truth@crowdsourcethetruth.org

And

MaryKate.Brennan@finnegan.com

Georg.webb@gmail.com

berlins@ballardspahr.com

mishkinm@ballardspahr.com

liz.lockwood@alilockwood.com

Certified under penalties of perjury.

April 7, 2023

**D. G. SWEIGERT PRO SE DEFENDANT, C/O**
**PMB 13339, 514 Americas Way,**
**Box Elder, SD 57719**

# EXHIBIT ONE

**U.S. DISTRICT FOR COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| D. GEORGE SWEIGERT | 1-18-CV-08653-VEC-SDA |
|---|---|
| Vs. | |
| JASON GOODMAN | VALERIE E. CAPRONI |

## PLAINTIFF'S VERIFIED RESPONSE TO ORDER TO SHOW CAUSE (OSC), DKT. 358

The Court (*sua sponte*) seeks an inherent powers (*IHP*) sanction, via a filing restriction injunction, (see Order to Show Cause (herein OSC) Dkt. 358 (pg. 20, 1/19/2022)) for the non-attorney Sanctionee, who has F.R.C.P. Rule 11 immunity per *Sassower v. Field,* 973 F.2d 75, 80-81 (2d Cir. 1992), cert. denied, 113 S. Ct. 1879 (1993)). In the Second Circuit an *IHP* sanction is "akin to a contempt of court" which resembles Rule 11(c)(3), that provides no Rule 11 Safe Harbor. In such circumstances, the stringent test of subjective bad faith is required for *IHP* sanctions under the "*Pennie* bad faith test"; *Pennie & Edmonds LLP* - 323 F.3d 86 (2d Cir. 2003). This requires establishing the heightened *mens rea* of subjective bad faith. *Schlaifer Nance & Co. v. Est. of Warhol,* 194 F.3d 323, 334 at 338 (2d Cir. 1999). No such *mens rea* finding has been made by Judge Caproni. Thus, under *Pennie* the Sanctionee's "substantial rights" have been impaired, see *Carlisle v. United States,* 517 U.S. 416, 417-418, 425-428 (1996) and *Bank of Nova Scotia v. United States*, 487 U.S. 250, 254 (1988).

Instead of establishing *mens rea*, the OSC (Dkt. 358) memorializes the annoyance Judge Caproni has with the court docket. "Judges are not immune from feelings and expressions of "impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "[A] stern and short-tempered

1

judged" is still a judge with the power to render judgments. See *id.* at 556 (discussing whether

judge's personal views and temperament form a sufficient basis for disqualification).

  For example, on 11/10/2021 the Defendant filed a 28 U.S.C. § 144 RECUSAL (Dkt. 324)

against Judge Caproni (DENIED) (note the Defendant was served with Dkt. 87, 8/20/2019

MEMORANDUM ORDER, stating "As a threshold matter, *pro se* litigants may not file an

affidavit pursuant to 28 U.S.C. § 144").  Defendant filed another RECUSAL on 1/10/2022 (Dkt.

353).  A day prior, in *Goodman v. Sharp*, 1:21-cv-10627-VEC, the Defendant filed an identical

RECUSAL affidavit (Dkt 16).  Dkt. 16 (21-cv-10627-VEC) and Dkt. 353 were denied (and

ignored in the OSC (Dkt. 358) (a CopyLeaks.Com text comparison of Dkt. 16 and Dkt. 353

indicates a 98% text match).  Dkt. 324 and Dkt. 353 RECUSALs focus on Judge Caproni's

"baggage" in the so-called 1996 crash of TWA flight 800 and subsequent "criminal cover-up"

while a U.S. Attorney.  See "a guest on my show alleged Judge Caproni violated the law

regarding TWA 800," Dkt. 353, Para. 34, page 7.  To the *Counter Lawfare* audience ("my

show"), the OSC is seen as arbitrary in nature – to suppress papers "exposing" TWA 800

allegations.  Presumably, Judge Caproni wants to quash papers exposing "her baggage" in this

conspiracy.  "Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful or

unreasonable," *Delno v. Market St. Ry.*, 124 F.2d 965, 967 (9 Cir. 1942) quoted in *Buffalo*

*Courier-express, Inc. v. Buffalo Evening News, Inc.,* 601 F.2d 48 (2d Cir. 1979)

  As for bad faith, it is the Defendant's business model to docket inflammatory pleadings to in-

turn provide content for his *Counter Lawfare* podcast disseminated via Twitter, Russia's

SPUTNIK, YouTube, Patreon, SubScribeStar, FaceBook, Rumble, etc.  These podcasts accuse

Judge Caproni (and the Sanctionee) of criminal activities in a coercive manner before literally

thousands.  See Rule 3(A)(1) of the Canons of Judicial Conduct (A judge… should not be swayed by partisan interests, public clamor, or fear of criticism [emphasis added]).

 Most of the OSC (Dkt. 358) is cut-n-paste boilerplate citing almost verbatim precedents lifted from other Caproni *IHP* court orders, see first cite "*Komatsu v. City of New York,* No. **20-CV-7502**, 2020 WL 7251384, at *1 (S.D.N.Y. Nov. 17, 2020) (citing Polur v. Raffe, 912 F.2d 52, 57 (2d Cir. 1990)".  For perspective, the Chief Judge of the S.D.N.Y. opined, "Between August 29, 2020, and November 11, 2020, Plaintiff, proceeding pro se…filed nine actions … Those nine actions have been consolidated into one action currently pending before Judge Edgardo Ramos.  See *Komatsu v. City of New York*, No. **20-CV-7046**."  *Komatsu v. City of New York*, **21-CV-0204** (CM), (S.D.N.Y. Feb. 11, 2021)."  As Judge Caproni observed in her opinion of Mr. Komatsu in *Komatsu v. City of New York*, **20-CV-10942 (VEC)** (reposted as Dkt. 311), citing precisely identical precedents to justify identical filing restrictions against the Sanctionee, "Mr. Komatsu … has repeatedly used disrespectful language … (suggesting that the undersigned try her luck as a stand-up comedian) … (referring to the undersigned as an "utterly despicable con artist" and accusing Judge Schofield of being stupid and lazy)… (noting that he has "no tolerance for that horseshit")" [emphasis added].  The OSC (Dkt. 358) paints the Sanctionee with this *Komatsu* brush with no specifics as to bad faith (aka "throwing bad apples").  *Komatsu's* misbehavior is in a universe far away from this action, which has been tested and/or developed over years during the general course of litigation.

 Other cut-n-paste cases cited in the OSC (Dkt. 358) speak directly to subjective bad faith; *Truong v. Hung Thi Nguyen*, 503 F. App'x 34, 35 (2d Cir. 2012), (*Truong* - requires a **bad faith** determination, "sanctions are appropriate only if there is clear evidence that the conduct at issue is (1) entirely without color and (2) motivated by improper purposes…. district court did not

3

make a specific finding of **bad faith**.") [emphasis added]. *Schlaifer Nance & Co. v. Est. of Warhol,* 194 F.3d 323, 334 (2d Cir. 1999) (involved multiple law firms and several lawsuits which resulted in sanctions for **bad faith** in filing duplicative lawsuits). A finding of **bad faith** must be supported by a "high degree of specificity" in the factual findings. *Schlaifer Nance,* 194 F.3d at 338. However, this is no statement about bad faith in the OSC (Dkt. 358), in facts those words are never used except to propose a signature disclaimer in a filing restriction.

Such cut-n-paste boilerplate "bad appling" indicates a lack of thoughtful analysis of subjective bad faith and is inconsistent with the careful administration of *IHP,* which must be a "reasonable response to the problems and needs that provoke it" *Degen v. United States*, 517 U.S. 820, 823-824 (1996), *Chambers v. NASCO, Inc.*, 501 U.S. 32, 37, 44-51 (1991) and *Link v. Wabash R.R. Co.*, 370 U.S. 626, 627- 628, 630-631 (1962).

In an "iron fist inside a velvet glove" manner, the OSC (Dkt. 358) majors on minor mistakes of the Sanctionee, while minoring on major bad faith papers of the Defendant. For example, the OSC (Dkt. 358) describes a Rule 12(f) (Dkt. 306) motion as simply "frivolous" (conclusory language); see footnote 25 "The Court considers Goodman's request for declaratory relief in his motion for summary judgment as well as Sweigert's Rule 56(h) and Rule 12(f) motions to be examples of frivolous motions" [emphasis added]. This language might qualify as an objective reasonable test if used earlier in the course of litigation (allowing for Rule 11 Safe Harbor) but does not address subjective bad faith *mens rea* required at such a late stage in the proceedings. *In re Pennie & Edmonds*, 323 F.3d at 89-91 (discussing the negative impact of sanctions when there is no opportunity for lawyers to correct or withdraw the challenged submission). As explained in *Braun ex rel. Advanced Battery Techs., Inc. v. Fu*, 11-cv-04383 (CM) (DF) (S.D.N.Y. Jun. 19, 2015), "*Pennie* and its progeny hold that the **bad faith** standard applies when

sanctions proceedings are initiated by a district court "long after" the party has an opportunity to correct or withdraw the challenged submission. *Pennie*, 323 F.3d at 92; see also *ATSI Communications,* 579 F.3d at 150. While *Pennie* does not specifically define "long after," in *Pennie* itself the district court had issued a <u>*sua sponte* order to show cause</u> (initiating a sanctions proceeding) <u>at the end of its opinion granting summary judgment</u>. *Id.* at 88. Based on this, it seems clear that, <u>if the court initiates sanctions proceedings while simultaneously</u> <u>concluding an action, the *bad faith* standard applies</u>." [emphasis added]  The OSC (Dkit. 358) "issued a <u>*sua sponte* order to show cause</u> (initiating a sanctions proceeding) <u>at the end of its</u> <u>opinion granting summary judgment</u>."  Identical circumstances.

"Our review of the record indicates that the district court did not apply the correct legal standard. *Int'l Bhd. of Boilermakers v. Local Lodge D129,* <u>910 F.2d 1056, 1059</u> (2d Cir.1990). Here, the district court said it was applying the *Pennie* bad faith standard; its analysis, however, indicates that it was applying an objective reasonableness test." *Muhammad v. Walmart Stores E., L.P.*, 732 F.3d 104, 109 (2d Cir. 2013).  "Courts have the inherent power to police themselves and those appearing before them. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 46, 111 S.Ct. 2123, 2133, 115 L.Ed.2d 27 (1991). **The key to unlocking that inherent power is a finding of bad faith**. *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998)," *Sciarretta v. Lincoln Nat'l Life Ins. Co.*, 778 F.3d 1205, 1212 (11th Cir. 2015) [emphasis added].  "[W]hen we quoted with approval the Second Circuit's statement that inherent powers sanctions require subjective bad faith. See *Sciarretta* , 778 F.3d at 1212 (citing *Muhammad v. Walmart Stores E., L.P.* , 732 F.3d 104, 108 (2d Cir. 2013) ("[S]ua sponte sanctions ... should issue only upon a finding of subjective bad faith."))" and "Furthermore, recklessness alone does not constitute conduct

tantamount to bad faith," *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017).

Sanctionee challenges the heavy reliance in the OSC (Dkt. 358) of single-spaced fine print footnote "warnings" in Dkt. 292, at *1 n.2 and Dkt. 181 at 3 n.6 as using language insufficient for sanction warnings, in contrast to the clearly stated warning in double-spaced normal font in an ORDER of **9/21/2021** (Dkt. 320), which should be the operative warning. The obscure footnotes published as "fine print" were deceptively miniscule and understandably could be overlooked. *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) (per curiam) ("A *pro se* litigant should <u>receive meaningful notice</u> of what is required of him....") [emphasis added]. The footnote warnings were, in essence, a "trap for the unwary" or a "gotcha" set-up for unsophisticated *pro se* litigants who must navigate complex, technical procedural requirements.

To that point, responding to a F.R.C.P. Rule 56 (Summary Judgement) motion can be particularly difficult for a *pro se* litigant because the requirements of the rule are somewhat complex. See generally *Jacobsen v. Filler*, 790 F.2d 1362, 1364-66 (9th Cir. 1986) (reflects the difficulty *pro se* litigants have with knowing how to respond to opposing parties' motions). In an example of majoring on the minor, the OSC (Dkt. 358) cites, "Sweigert then filed two different 56.1 statements, one with his counter 56.1 statement and another with his responses to Goodman's 56.1 statement (see Dkts. 294, 297), even though those two documents should have been filed consecutively, in one document." The *pro se* Sanctionee had only 45 days to respond to the Defendant's voluminous Rule 56 motion papers, created by legal counsel (Dkt. 277, see "Goodman was assisted by counsel in preparing these motion papers"), which the OSC (Dkt. 358, fn 25) admits had improper requests for relief, (see "declaring that Plaintiff Sweigert is a vexatious litigant" (Dkt. 277)) that the Sanctionee had to respond to. When deciding a motion

for summary judgment, the Court must "view the evidence in a light most favorable to the non-moving party and draw all reasonable inferences in its favor." *American Casualty Co. of Reading, Pennsylvania v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994). In addition, because Sanctionee is acting *pro se,* the Court must "read [plaintiff's] supporting papers liberally, and ... interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir.1994); *Soto v. Walker,* 44 F.3d 169, 173 (2d Cir.1995).

"[H]owever broad and justifiable the use of inherent powers may be, it is not a license for unwarranted flexing of the judicial power. The generally recognized standard for applying the inherent powers doctrine requires its use to be reasonable and necessary," *Anderson County Quarterly Court v. Judges of the 28th Judicial Circuit,* 579 S.W.2d 875 (Tenn. Ct. App. 1978).

The Defendant's profit motive for docketing (with assistance of counsel) bad faith papers, so that same can be discussed on *Counter Lawfare.* See "My name is Larry Klayman and I am an attorney, legal advocate and <u>television and radio personality and host.</u> I have <u>represented Jason Goodman as his attorney</u> in the past and <u>I participate in regular broadcasts on his Crowdsource The Truth talk show.</u>" Dkt. 305, Page 33 of 47, affidavit to support EMERGENCY MOTION [emphasis added]. The next day a SUPPLEMENT to that motion (Dkt. 307) was docketed.

While minoring on the major, the OSC (Dkt. 358) ignores the Magistrate's ORDER (Dkt. 309) examining Dkts 305, 307, clearly stated "None of the issues raised by Defendant is related to the claims before the Court in this action…None of these allegations relates to Orders of this Court and, thus, are not proper grounds for a contempt motion. Accordingly, the Court finds that Defendant has not set forth a prima facie case of contempt. Moreover, to the extent that Defendant seeks to compel Plaintiff to submit to a psychological evaluation, Defendant has provided no basis for such a request and that motion too is denied." The OSC (Dkt. 358) is silent

on these bad faith motions (Dkts 305, 307) but cites Plaintiff's Rule 12(f) (Dkt. 306) motion as frivolous (conclusory language); see OSC (Dkt. 358) footnote 25. Yet, the Magistrate (Dkt. 309) opined: "in view of the foregoing, Plaintiff's motion to strike is DENIED AS MOOT." There was no finding as to bad faith with the Rule 12(f) motion (Dkt. 306). Note: in the AMENDED NOTICE OF MOTION (Dkt. 302), seeking "Sweigert to undergo a psychological evaluation" there is also the text "Goodman was assisted by counsel in preparing these motion papers", most likely referring to Larry Klayman.

Regarding Defendant's MOTION for CONTEMPT (Dkt 312); in the ORDER (Dkt. 320) of (**9/21/2021**) the Magistrate opined "Here, Defendant has not identified a Court Order that Plaintiff failed to comply with. Defendant argues that Plaintiff changed his address "no less than four times" in order to "intentionally conceal his location" and prevent Defendant from complying with the Court's March 11, 2021 Order. (Def.'s Mem., ECF No. 313, at 1.) However, because Defendant has not alleged noncompliance with a Court Order by Plaintiff, he has not established a prima facie case of contempt…". OSC (Dkt. 358) minoring on the major.

The Magistrate opined on the Sanctionee's second Rule 12(f) motion (Dkt. 315) in the **9/21/2021** ORDER (Dkt. 320), "Accordingly, **moving forward,** Plaintiff shall refrain from filing further Rule 12(f) motions to strike documents filed by Defendant that are not pleadings. [emphasis added]". This warning ("moving forward") published with double-spaced 12-point font, was prescriptive in nature without retroactive force (and never violated). However, the OSC (Dkt. 358) bashes the Plaintiff for these two (2) Rule 12(f) papers (Dkt. 312, 315) ignoring the Defendant's papers filed "with no basis" in law (Dkt.s 305, 307, 312).

Larry Klayman is the mastermind in this *Counter Lawfare* confederation and is primarily responsible for the breathtaking amount of bad faith motions that have riddled this action's

docket. "In a larger sense, the court found that Chambers was the mastermind as well as the controlling actor behind the whole scheme to perpetrate this fraud against the court and NASCO," see page 1243, John Papachristos, Inherent Power Found, Rule 11 Lost: Taking a Shortcut to Impose Sanctions in *Chambers v. NASCO*, 59 Brook. L. Rev. 1225 (1993).

  For background, Mr. Klayman routinely files motions to disqualify judges for entertainment purposes pursuant to 28 U.S.C. § 144.  See S.D.N.Y., 19 Civ. 4977 (JPC) *Roy Moore v. Sasha Stone* https://floridajustice.com/larry-klayman-v-wonkette-case-status-locker-room/  S.D.N.Y. Judge Denny Chin remarked that Mr. Klayman's "repeated efforts to find fault with the judges before whom he appears certainly interferes with the administration of justice." *MacDraw, Inc. v. CIT Grp. Equip. Fin.,* 994 F. Supp. 447, 459 (S.D.N.Y. 1997).  See also *Klayman v. Judicial Watch, Inc.*, No. 06-670 (CKK), 2019 WL 3719008, at *6 (D.D.C. Aug. 7, 2019) (denying fourth recusal motion and citing to orders denying three other recusal motions).  Goodman/Klayman have published the podcast "*Citizens Indictment of the "Witches" of the D.C. Federal Court*", Feb. 3, 2022, to intimidate District Judges Colleen Constance Kollar-Kotelly and Tanya S. Chutkan the District of Columbia.  https://www.youtube.com/watch?v=sE35x6gIlHU Goodman/Klayman told 1,000 viewers that these judges were about to be indicted for violations of their oaths of office.  Judge Caproni may very well be the next target and could be nervous about such a podcast featuring her alleged TWA 800 criminal activities to thousands.

  In conclusion, a trial court's exercise of inherent power for sanctions must be based on an express finding of bad faith conduct and must be supported by detailed findings describing the specific acts of bad faith conduct.  Thus, a finding of bad faith conduct must be predicated on a high degree of specificity in the factual findings.  See "Because the district court's <u>factual</u>

<u>findings do not support</u> its ultimate finding of bad faith, we reverse and remand the cause",

*Milltex Indus. Corp. v. Jacquard Lace Co.,* 55 F.3d 34, 39 (2d Cir. 1995) [emphasis added].

 The purpose of Defendant's bad faith motions was to provide props and content for conspiracy podcasts.  The Court is not limited to punishing conduct that occurs within the confines of the courtroom (see *Vaughan v. Atkinson*, 369 U.S. 527, 530-31 (1962)) and should investigate this revolving-door pattern of this complex fraud: "file bad faith papers", "discuss on social media", "receive viewer funds", "rinse and repeat" (which resembles the in and out of court fraud discussed in *Chambers v. NASCO*, 501 U.S. 32 (1991)).

AFFADAVITT OF GOOD FAITH.  The undersigned Sanctionee now comes to state under the penalties of perjury that he honestly believed he had plausible legal and evidentiary support for his papers described in the OSC (Dkt. 358); Dkts. 284, 286, 294, 297, 298, 299,300, 301, 329. The undersigned had difficulty understanding the complex technicalities of responding to a Rule 56 motion and attempted to comply with the best of his ability.  This was a daunting task for the *pro se* Sanctionee due to complex rules.  The undersigned did not believe that these filings were unnecessarily duplicative or piecemeal; or that the submissions were frivolous or made in bad faith or for any improper purpose.  The Sanctionee admits that this could be a case of "pure heart-empty head" and that errors and omissions were made, but not with any bad faith intent. The Sanctionee has attempted to comply with the orders of this Court as best as he knew how at the time with no access to legal counsel.

Respectfully submitted and
sworn on this eleventh day
of Feb. 2022 (2/11/2022).

D.·G.·SWEIGERT,·C/O
AMERICA'S·RV·MAILBOX,·PMB·13339
514·Americas·Way,·Box·Elder,·SD·57719
Spoliation–notice@mailbox.org

On Feb. 11, 2021, a copy of the above was sent to Defendant at truth@crowdsourcethetruth.org

10

# EXHIBIT TWO

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

D. G. SWEIGERT,

    Plaintiff,

        v.

MULTIMEDIA SYSTEM DESIGN, INC., ET AL.,

    Defendants.

_____/

Case No. 22-cv-10642

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

**ORDER STRIKING FILINGS [ECF NOS. 25, 28, 31, 34-39, 40, 42, 43, 45] FROM NON-PARTY JASON GOODMAN, REQUIRING DEFENDANT MULTIMEDIA SYSTEM DESIGN, INC. TO OBTAIN COUNSEL, PRECLUDING NON-PARTY JASON GOODMAN FROM USING THE *PRO SE* PORTAL IN THESE PROCEEDINGS AND SCHEDULING STATUS CONFERENCE FOR AUGUST 4, 2022 AT 2:00 P.M..**

## I. INTRODUCTION

On May 5, 2022, *pro se* Plaintiff D.G. Sweigert filed his Amended Complaint against Defendants Multimedia System Design, Inc. ("Multimedia"), Odysee Holdings, Inc., and LBRY, Inc. alleging violations of the Lanham Act, 15 U.S.C. § 1501 *et seq.*, and the Federal Trade Commission Act, 15 U.S.C. § 45(a) *et seq*. *See* ECF No. 11. Plaintiff also alleges state law claims against Defendant Multimedia for violating his right to privacy and false light, infliction of emotional distress, libel, defamation, and "misappropriation of right of publicity." *Id.* Plaintiff seeks equitable and monetary relief.

For the reasons that follow, the Court will strike the filings of non-party Jason Goodman, who is not an attorney and may not represent Defendant Multimedia in these proceedings. *See Doherty v. American Motors Corp.*, 728 F.2d 334, 340 (6th Cir. 1984); *see also Ginger v. Cohn*, 426 F.2d 1385, 1386 (6th Cir. 1970) ("An officer of a corporation, who is not a licensed attorney, is not authorized to make an appearance in this Court on behalf of the corporation."). The Court will further require Defendant Multimedia to obtain counsel <u>no later than August 1, 2022</u>.[1] The Court will hold a status conference in this matter <u>on August 4, 2022 at 2:00 p.m.</u>

## II. BACKGROUND

This action relates to a prior lawsuit between Plaintiff's brother, George W. Sweigert, and Jason Goodman, the alleged sole shareholder of Defendant Multimedia.[2] *See* No. 22-cv-10002, *Sweigert v. Goodman*, 2022 U.S. Dist. LEXIS 62432 (E.D. Mich. Apr. 1, 2022). In that case, Plaintiff's brother alleged Mr. Goodman defamed him in filings before this Court in the case: *Sweigert v. CNN, Inc.*, No. 20-cv-12933, 2022 U.S. Dist. LEXIS 50529, at \*21 (E.D. Mich. Mar. 21,

---

[1] The remaining corporate defendants, LBRY, Inc. and Odysee Holdings, Inc., have not yet been served with the Summons and copy of the Complaint. If these defendants are served with the Summons and copy of the Complaint, LBRY, Inc. and Odysee Holdings, Inc. must also obtain a licensed attorney to represent them in the instant proceedings.

[2] Plaintiff's Amended Complaint continues referring to Jason Goodman as a defendant, even though Plaintiff did not assert any claims against Mr. Goodman in the Amended Complaint. *See* ECF No. 11.

2022). Specifically, Mr. Goodman's filings sought "to share facts and evidence" about an alleged fraud. *Id.* Plaintiff claims Mr. Goodman, through Defendant Multimedia, made defamatory remarks about him in those July 2021 filings. ECF No. 11, PageID.119. Plaintiff commenced this action in response.

According to the Amended Complaint, Defendant Multimedia is an online media company that posts through affiliated social media accounts. ECF No. 11, PageID.117. On those accounts, Plaintiff contends Defendant Multimedia made remarks about him. *Id.* at PageID.119. For example, Plaintiff and his brother were allegedly called "Super Mario Brothers" in one of Defendants' social media posts. *Id.* These posts garner subscribers who pay to enjoy Defendant Multimedia's content, the Amended Complaint reads, including individuals in Michigan and across the United States. *Id.* at PageID.117.

During the pendency of the prior action between Plaintiff's brother and Mr. Goodman, Mr. Goodman made numerous harassing phone calls to Court personnel, even going so far as contacting court personnel after work hours to lodge complaints about the manner within which *pro se* filings are processed by the Court. *Id.* Mr. Goodman continues to engage in this inappropriate behavior in this case, despite the Court's explicit command that Mr. Goodman stop making harassing phone calls to Court personnel. Additionally, Mr. Goodman has filed documents through the court's *pro se* portal system. However, Mr. Goodman is not a party to the instant

3

lawsuit, and he may not submit filings on behalf of his company, Multimedia, using the *pro se* portal because Multimedia must be represented by counsel in this matter. As such, Mr. Goodman's filings will be stricken.

### III.  LAW AND ANALYSIS

The United States courts have long required corporations to retain counsel. *See Osborn v. President, etc., United States Bank*, 22 U.S. (9 Wheat.) 738, 830 (1824) ("A corporation, it is true, can appear only be attorney, while a natural person may appear for himself."); *see also Bass v. Leatherwood*, 788 F.3d 228, 230 (6th Cir. 2015).  One of the policy reasons for requiring corporate entities to appear by counsel rather than a non-lawyer is that non-lawyers do not have the legal training necessary to protect the various interests of the corporate entities, as well as due to the resulting burdens imposed on the opposing party as well as the Court.    This Court has previously noted that:

> the conduct of litigation by a nonlawyer creates unusual burdens not only for the party he represents but as well for his adversaries and the court.  The lay litigant frequently brings pleadings that are awkwardly drafted, motions that are inarticulately presented, proceedings that are needlessly multiplicative.  In addition to lacking the professional skills of a lawyer, the lay litigant lacks many of the attorney's ethical responsibilities , e.g., to avoid litigating unfounded or vexatious claims.

*Bischoff v.  Waldore*, 660 F.  Supp.  2d 815 (E.D. Mich.  2009) (quoting *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir. 1983)).  Courts in this district have required hybrid corporate and partnership forms to appear

through counsel as well. *See Eagle Prop. Group LLC v. Urban P'ship Bank*, No. 18-cv-10824, 2018 U.S. Dist. LEXIS 219345, *6 (E.D. Mich. Oct. 9, 2018), *report and recommendation adopted sub nom. Eagle Prop. Grp. LLC v. Urban P'ship Bank*, No. 18-cv-10824, 2019 U.S. Dist. LEXIS 6912 (E.D. Mich. Jan. 15, 2019); *see also Van Lokeren v. City of Grosse Pointe Park, Mich.*, No. 13-14291, 2014 U.S. Dist. LEXIS 32376 (E.D. Mich. Mar. 13, 2014).

Accordingly, Defendant Multimedia is hereby ORDERED to obtain counsel by <u>August 1, 2022</u>.

IT IS FURTHER ORDERED that the parties appear for a <u>August 4, 2022, at 2:00 p.m.</u> status conference at the Theodore Levin Courthouse, Courtroom 761, in Detroit Michigan. Defendant Multimedia is hereby advised that failure to obtain counsel may result in the entry of default judgment against Defendant Multimedia.

IT IS FURTHER ORDERED that non-party Jason Goodman may not represent Multimedia in these proceedings and he is precluded from submitting filings in this case using the *pro se* portal.

IT IS FURTHER ORDERED that ECF Nos. 25, 28, 31, 34-39, 40, 42, 43, 45 are STRICKEN.

Dated: July 20, 2022          /s/ Gershwin A. Drain
                              GERSHWIN A. DRAIN
                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 20, 2022, by electronic and/or ordinary mail.

/s/ Teresa McGovern
Case Manager

# EXHIBIT THREE

| | | |
|---|---|---|
| 07/12/2022 | 25 | [STRICKEN] MOTION to Substitutie Real Party at Interest and Set Aside Default for Improper Service by D G Sweigert. [Submitted through Pro Se Portal on 7/12/22] (SSch) Modified on 7/19/2022 (SSch). [DOCKET TEXT CORRECTION DOCUMENT **FILED BY JASON GOODMAN** NOT DG SWEIGERT] Modified on 7/20/2022 (TMcg). Modified on 7/20/2022 (TMcg). (Entered: 07/12/2022) |
| 07/12/2022 | 42 | [ STRICKEN]MOTION to Substitute Real Party at Interest and Set Aside Default for Improper Service **by Jason Goodman**. [Submitted through Pro Se Portal on 7/12/22] [RE-DOCKETED FROM DE 25 TO CORRECT FILING PARTY] (SSch) Modified on 7/20/2022 (TMcg). (Entered: 07/19/2022) |
| 07/13/2022 | 26 | REQUEST For Judicial Notice (Responsive to ECF Doc. 25) by D. G. Sweigert.[Submitted through Pro Se Portal on 7/13/22] (LHos) (Entered: 07/13/2022) |
| 07/13/2022 | 27 | SECOND REQUEST FOR JUDICIAL NOTICE by D. G. Sweigert. (LHos) (Entered: 07/14/2022) |
| 07/13/2022 | 28 | [STRICKEN] REQUEST for Judicial Notice by **Jason Goodman**. (Attachments: # 1 Second Request for Judicial Notice) (LHos) (Attachment 1 replaced on 7/15/2022 pursuant to Notice of Correction filed 7/15/2022) (LHos). Modified on 7/20/2022 (TMcg). (Entered: 07/14/2022) |
| 07/14/2022 | 29 | CERTIFICATE of mailing by D. G. Sweigert (LHos) (Entered: 07/14/2022) |
| 07/14/2022 | 30 | THIRD REQUEST for Judicial Notice (Responsive to ECF #25) by D. G. Sweigert. (NAhm) (Entered: 07/15/2022) |
| 07/14/2022 | 31 | [STRICKEN] NOTICE of Docket Error **by Jason Goodman** re (28-1) (LHos) Modified on 7/20/2022 (TMcg). (Entered: 07/15/2022) |
| 07/15/2022 | 32 | NOTICE of Correction re 28 Second Request For Judicial Notice. (LHos) (Entered: 07/15/2022) |
| 07/15/2022 | 33 | CERTIFICATE OF MAILING by D. G. Sweigert; with declaration (DPer) (Entered: 07/18/2022) |
| 07/18/2022 | 34 | [STRICKEN] NOTICE OF LETTER MOTION by **Jason Goodman**. (DPer) Modified on 7/18/2022 (DPer). Modified on 7/20/2022 (TMcg). Modified on 7/28/2022 (TMcg). (Entered: 07/18/2022) |
| 07/18/2022 | 35 | [STRICKEN] THIRD REQUEST for judicial notice by **Jason Goodman** (DPer) Modified on 7/18/2022 (DPer). Modified on 7/20/2022 (TMcg). (Entered: 07/18/2022) |

| | | |
|---|---|---|
| 07/18/2022 | [36](#) | [STRICKEN] FOURTH REQUEST for judicial notice **by Jason Goodman.** (DPer) Modified on 7/20/2022 (TMcg). (Entered: 07/19/2022) |
| 07/18/2022 | [37](#) | [STRICKEN] FIFTH REQUEST for judicial notice by **Jason Goodman.** (DPer) Modified on 7/20/2022 (TMcg). (Entered: 07/19/2022) |
| 07/18/2022 | [39](#) | [STRICKEN] SIXTH REQUEST for judicial notice by **Jason Goodman.** (DPer) Modified on 7/20/2022 (TMcg). (Entered: 07/19/2022) |
| 07/19/2022 | [38](#) | CERTIFICATE OF SERVICE by D. G. Sweigert (DPer) (Entered: 07/19/2022) |
| 07/19/2022 | [40](#) | [STRICKEN] SEVENTH REQUEST for judicial notice by **Jason Goodman.** (DPer) Modified on 7/20/2022 (TMcg). (Entered: 07/19/2022) |
| 07/19/2022 | [41](#) | NOTICE of Correction re [25](#) MOTION to Set Aside MOTION to Substitute Real Party at Interest. (SSch) (Entered: 07/19/2022) |
| 07/19/2022 | [43](#) | [STRICKEN] Eight REQUEST for Judicial Notice by **Jason Goodman.** (JOwe) Modified on 7/20/2022 (TMcg). (Entered: 07/20/2022) |
| 07/20/2022 | [44](#) | Second NOTICE of Docket Error re [35](#) Notice by **Jason Goodman** (JOwe) (Entered: 07/20/2022) |
| 07/20/2022 | [45](#) | [STRICKEN] Ninth REQUEST for Judicial Notice by **Jason Goodman.** (JOwe) Modified on 7/20/2022 (TMcg). (Entered: 07/20/2022) |
| 07/20/2022 | [46](#) | ORDER Striking Filings [25](#) , [28](#) , [31](#) , [34](#) - [39](#) , [40](#) , [42](#) , [43](#) , [45](#) from Non-Party Jason Goodman, Requiring Defendant Multimedia System Design, Inc to Obtain Counsel, Precluding Non-Party Jason Goodman from Using the Pro-Se Portal in these Proceedings and Scheduling Status Conference (**Status Conference set for 8/4/2022 02:00 PM before District Judge Gershwin A. Drain**) Signed by District Judge Gershwin A. Drain. (TMcg) (Entered: 07/20/2022) |