IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTOPHER ELLIS BOUZY, BOT SENTINEL, INC, GEORGE WEBB SWEIGERT, DAVID GEORGE SWEIGERT, BENJAMIN WITTES, NINA JANKOWICZ, ADAM SHARP, MARGARET ESQUENET, THE ACADEMY OF TELEVISION ARTS AND SCIENCES, SETH BERLIN, MAXWELL MISHKIN<br><br>Defendants | Case No.: 1:21-cv-10878-AT-JLC<br><br><br>**RESPONSE IN OPPOSITION TO MOTION TO DISMISS** |

Jason Goodman ("Goodman"), by and for himself pro se, respectfully submits this response in opposition to defendants' Adam Sharp ("Sharp"), Academy of Television Arts and Sciences ("ATAS"), and Margaret Esquenet ("Esquenet") motion to dismiss.

**INTRODUCTORY STATEMENT**

Contrary to defendants' disparagements, Goodman is not a vexatious litigant. Goodman had no experience or interest in litigation at all prior to crossing paths with defendants and their coconspirators beginning in 2017. Defendants' weaponization of the legal system and their lawfare assault, has forced Goodman into litigation. Like an untrained swimmer thrown into the ocean, Goodman has been thrashing and struggling to stay afloat. Goodman v Sharp was the first of only two lawsuits Goodman ever filed in District Court. He was not aware of the civil cause of action in the RICO statute at the time of the filing.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 1

Liberal construction should be adapted to each particular pro se case. Judge Cott may have determined Goodman is not an average pro se litigant, but this is not average litigation.

Despite his inartful pleadings, Goodman has not brought these actions frivolously or for the purpose of harassment. Goodman has presented evidence that defendants cannot refute, which will prove that Adam Sharp ("Sharp"), Margaret Esquenet ("Esquenet") and David George Sweigert ("Sweigert") calculated a scheme to sue a false corporate entity, Multimedia System Design, INC d/b/a/ Crowdsource the Truth ("MSDI"). The MSDI name was concocted by Sweigert to substantially resemble a real entity owned by Goodman, Multimedia System Design ("MSD"). Goodman alleges Sweigert shared the MSDI name with Sharp and Esquenet, who together schemed to knowingly sue the false entity with the express intent of wrongfully denying Goodman the right to pro se defense. Goodman makes this allegation on information and belief because there is no other discernible way defendants could have determined to sue MSDI and they have failed to provide any explanation. Defendants calculated this scheme to sue Goodman's real but unrelated corporation by using the false MSDI name to create the appearance of a connection to Goodman's personal intellectual property published under the brand name Crowdsource the Truth. Defendants knew Goodman could not enter the lawsuit to untangle their deception without hiring an attorney. Once Goodman did that, attorney Jonathan Snyder ("Sndyer") was relentlessly harassed by Sweigert until he withdrew, (*See* Case 1:20-cv-07269-VEC-OTW ECF No. 102-2) forcing a fraudulent default judgement against MSD.

Defendants' original suit is predicated on false pretenses, fraud, and misrepresentation. Their action was not intended to protect a copyright, but rather to stop

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 2

Goodman from broadcasting information disfavored by defendants and to destroy his ability

to earn a living.  Defendants cannot disprove these claims so instead they endeavor to conceal

evidence, label Goodman a "conspiracy theorist" and overwhelm him with frivolous

litigation intended to enjoin him from discussing these matters.  Defendants will fail to

demonstrate that they learned of the existence of MSDI through legitimate means or that their

suit was not initiated for the ulterior purposes described by Goodman.  Fraud precludes res

judicatory.  Defendants should be compelled to answer questions pertaining to facts rather

than resting on their conclusion that Goodman's claims be dismissed as "conspiracy theory".

## BACKGROUND

Defendants were alerted to a parody image broadcast on YouTube by an

allegedly anonymous email (the "Anonymous Email") on July 28, 2020.  The email alert

gave rise to a YouTube complaint alleging copyright infringement on August 21, 2020.

Goodman counterclaimed fair use and that the image was first amendment protected parody.

Defendants sued September 9, 2020, in National Academy of Television Arts and Sciences v

Multimedia System Design, INC, d/b/a/ Crowdsource the Truth ("NATAS v MSDI").

On or around December 22, 2022, Goodman published a detailed report titled

The Twitter Coup, which is incorporated herein by reference as if fully stated herein

**(EXHIBIT A)**.  This report is based on irrefutable facts and evidence that defendants have

not contested.  Goodman filed the Twitter Coup report along with a motion for relief from

judgement in a case presided over by Judge Caproni (*See* Case 1:20-cv-07269-VEC-OTW

Document 167).  Judge Caproni did not sanction Goodman for filing it or strike the filing as

she should have had it been determined to contain false, irrelevant, or scurrilous material.

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 3

Sharp and ATAS have shown no compunctions about taking legal action against Goodman, but no cease-and-desist letter has demanded any retraction and no defamation suit has been threatened.  Apart from the thoroughly researched and cited sources, these two factors are additional evidence supporting the veracity of Goodman's Twitter Coup report.  Defendants should be compelled to disprove Goodman's claims before the conclusion that he is a conspiracy theorist can be considered anything beyond a personal insult that should be viewed with suspicion, stricken from the record, or at least ignored.

Goodman has presented irrefutable evidence which defendants have not challenged, that will prove that Sharp and Judge Caproni concealed the existence of an existing relationship between them going back to a 2009 C-SPAN3 appearance and Judge Caproni's tenure at the FBI.  Defendants have also not challenged evidence in the Court's possession that proves Esquenet made a fraudulent misrepresentation in her efforts to block critical evidence that could prove or disprove Goodman's conspiracy claims.  These acts of fraud and misrepresentation should bar the application of res judicata.

**RES JUDICATA DOES NOT APPLY**

Res judicata does not apply when fraudulent concealment or other acts of fraud prevent a plaintiff from accessing critical evidence as is in this case here.  The Second Circuit has found, "in some cases newly discovered evidence will prevent the application of [*17]  res judicata if "the evidence was either fraudulently concealed" or "could not have been discovered by due diligence," In re Layo, 460 F.3d 289, 293 (2d Cir. 2006), that exception only applies if the concealment prevented the Plaintiff from being able to raise the issue at the first proceeding. Saud v. Bank of New York, 929 F.2d 916, 920 (2d Cir. 1991)

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 4

Caron v. TD Ameritrade, No. 19-cv-9015 (AJN), 2020 U.S. Dist. LEXIS 223310, at *16-17 (S.D.N.Y. Nov. 30, 2020)

To satisfy Rule 9(b), a party alleging fraudulent misrepresentations must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Hirsch v. Columbia University, College of Physicians and Surgeons, 293 F. Supp. 2d 372, 381 (S.D.N.Y. 2003) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)).

Schandler v. N.Y. Life Ins. Co., 09 Civ. 10463 (LMM), 10 (S.D.N.Y. Apr. 26, 2011).

The fraudulent statements and concealment in this case are spread across a range of actions intended to hide the identity of the sender of the Anonymous Email and the true motivation for defendants' fraudulent legal action.  In addition to the Anonymous Email, a fraudulent YouTube complaint was filed by defendant Sharp relying upon the email as the proximate pretext for the complaint and subsequent lawsuit, NATAS v MSDI.  These acts should be construed as fraud upon the Court and should preclude application of res judicata.

The first false statement was made in a letter sent by defendant Esquenet to Judge Caproni on August 24, 2021, (*See* Case 1:20-cv-07269-VEC-OTW ECF No. 113) stating in relevant part, "Mr. Goodman willfully violated the Stipulated Protective Order entered in this case. See ECF No. 41 ("SPO")."  At the time of this statement Esquenet knew it to be false or reasonably should have.  The alleged violation was Goodman's transmission of the Anonymous Email address to a third party in an August 2021 email.  The Anonymous Email address however had previously been revealed more than three months prior at a

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 5

public hearing when Esquenet's now terminated associate Samuel Eichner ("Eichner") spoke the address aloud, causing it to be recorded in the transcript and placed into the public domain where it still remains today (*See* ECF No. 69 Page 42 Line 23). The SPO described in Esquenet's letter refers to "nonpublic" and "confidential" information. It is inarguable that information cannot be simultaneously in the public domain and also considered confidential. As a result of Eichner placing the formerly nonpublic Anonymous Email address into the public domain in May 2021, the address was no longer nonpublic or confidential, and therefore it was not covered by the SPO when Goodman shared it. Defendants nor Judge Caproni can refute this logic or these facts, so they have attempted to ignore them. It is not ironic that Goodman's pursuit of this evidence led to him being sanctioned personally. That gave rise to the appeal now pending in the Second Circuit (*See* Case 22-592). Defendants have gone to extraordinary lengths to stop Goodman from accessing or even discussing the Anonymous Email. Inexplicably, no effort has been made to redact it from the transcript.

Defendants should be compelled to reveal the identity of the author of the July 28, 2020 Anonymous Email that was the catalyst for all of this litigation, even if only in camera and only to judge Torres. Defendants have simultaneously insisted the Anonymous Email remain hidden from Goodman while failing to remove it from the public domain or declaring under oath that Sweigert was not the sender. The fraudulent concealment of the identity of the sender has made it impossible for Goodman to gain access to necessary evidence despite due diligence. This aggressive obstruction by defendants, only supports the allegations that the Anonymous Email was sent by Sweigert or an agent acting on his behalf. Defendants have fraudulently concealed their relationship with Sweigert and the true motive

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 6

for suing Goodman's corporation MSD, so res judicata should not apply. "Res judicata applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence." L-Tec Elecs. Corp. v. Cougar Elec. Org., Inc., 198 F.3d 85, 88 (2d Cir. 1999) Campbell v. Bank of Am., Nat'l Ass'n, No. 19 CV 11 (VB), 2019 U.S. Dist. LEXIS 147491, at *12 (S.D.N.Y. Aug. 28, 2019)

Three weeks after receipt of the Anonymous Email, defendant Sharp made a fraudulent statement to YouTube when he filed a false copyright complaint on August 21, 2020.  Goodman alleges Sharp made the fraudulent complaint with the willful intent to harm him and full knowledge that the complaint was false.  The copyright disclaimer on Sharp's own YouTube page demonstrates Sharp's knowledge and understanding of copyright law and YouTube rules is far above average. (https://www.youtube.com/@rogersharparchive/about). Sharp falsely complained that Goodman's parody image was a copyright infringement knowing it would trigger a YouTube penalty preventing broadcasting for ninety days.  Sharp did this to gain an unfair advantage for his favored candidate Joe Biden ("Biden") and to harm candidate Donald Trump ("Trump") by deliberately delaying his complaint for three weeks.  Sharp used tax-exempt funds from the nonprofit National Academy of Television Arts and Sciences ("NATAS") and with the full knowledge and compliance of the Academy of Television Arts and Sciences ("ATAS") in furtherance of his fraudulent lawfare scheme to harm Goodman.  Sharp's knew or should have reasonably known that the image created by Goodman was a parody protected by fair use pursuant to the Copyright Act.  Sharp willfully delayed his fraudulent complaint for three weeks after he learned of the alleged infringement

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 7

so that the prohibition on broadcasting would coincide with the 2020 Presidential election.

Defendants Sharp, Esquenet and ATAS made a fraudulent representation to the Court on September 4, 2020, when they sued MSDI, a fictitious, non-existent corporate entity devised by Sweigert in order to compel Goodman to hire an attorney to defend the real corporate entity MSD, and to prevent Goodman mounting a pro se defense. Goodman retained attorney Snyder who failed to follow instructions, failed to subpoena the identity of the Anonymous Email, and withdrew due to what he declared harassment and intimidation by Sweigert. The lawsuit against MSDI is inherently fraudulent because that name was made up by Sweigert and could only have been learned by defendants from Sweigert. Goodman never registered the assumed name d/b/a/ Crowdsource the Truth with the New York Secretary of State. Defendants could not have learned of Goodman's legitimate corporation MSD, knowing only his name and the name of his online broadcasts. Overwhelming evidence indicates defendants conspired with Sweigert to sue MSDI rather than Goodman personally.

Res judicata does not apply in cases where continuing wrongs emanate from the same parties and the same fact pattern as is the case here. "Continuing wrongs' are an exception to res judicata even if it were applicable to the instant case." Jq1 Assocs. v. Schwartz & Assocs., No. 614355/19, 2020 N.Y. Misc. LEXIS 15598, at *14 (Sup. Ct. Sep. 24, 2020)

### RESPONSE TO STATEMENTS OF DISPUTED FACTS

**A.  ATAS forced Goodman's company into default for copyright and trademark infringement through deception and fraud.**

Goodman acknowledges he owns Multimedia System Design, INC,

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 8

("MSD") but defendants sued a separate and distinct false entity they named Multimedia System Design, INC, d/b/a Crowdsource the Truth ("MSDI"). Defendants concocted this fictitious corporate entity to create a plausible link between a real corporation owned by Goodman and intellectual property created and owned by Goodman in his personal capacity. Defendants did this to prevent Goodman from doing what he is attempting now, defending himself pro se with truthful claims and unimpeachable evidence. Defendants cannot explain their actions outside of the explanation offered by Goodman so instead they go to tremendous lengths to block access to evidence that would prove or disprove so-called conspiracy theories. To dismiss claims that defendants conspired with Sweigert under the doctrine of res judicata and based on decisions made in the wake of Sweigert's harassment, would be antithetical to the service of justice and incongruent with the doctrine of res judicata. Res judicata is intended to avoid abuse of the system, not to reward the most sophisticated abusers. The Court should deny defendants motion to dismiss on this basis alone.

**B. Goodman's claims are not frivolous and pertain to fraud in the preceding case.**

Goodman has accused defendants of deceptively planning a lawsuit intended to damage him and then suing a false entity under fraudulent pretenses for an improper and ulterior purpose. Goodman alleges that Sharp hid his prior relationship with Judge Valerie Caproni and hid facts about a clandestine relationship between the FBI and Twitter. This conspiracy initially began when Sharp was U.S. Government liaison at Twitter and Caproni was FBI General Counsel in or around 2010 – 2011. As outrageous as these claims may sound, nearly identical claims of illegal acts on the part of the FBI, its agents and attorneys,

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 9

and others including executives at Twitter are the focus of various Congressional and DOJ

investigations including the previously cited Durham Report, incorporated herein again as if

fully restated herein, (https://www.justice.gov/storage/durhamreport.pdf).  Goodman's

allegations and the accompanying irrefutable evidence should not be dismissed as conspiracy

theory until they have been fully considered by the Court and answered to by defendants.

### C.  Goodman should not be barred from future filing or have his rights to access the courts restricted in any way

Goodman's filings were not made to harass and annoy and were not

meritless or frivolous.  All of Goodman's claims are backed by prima facie evidence that has

not been addressed at all by defendants.  Goodman is battling a team of experienced bar

members determined to defeat him with fraud and misrepresentation.  It is a significant

challenge for a pro se litigant to say the least.

### CONCLUSION

For the reasons stated herein and any other reasons as determined by the

Court, Goodman's claims should not be dismissed.  Goodman should be granted leave to

amend, and the case should be allowed to proceed and be decided on its merits.

Signed this 26th day of May 2023

Respectfully submitted,

Jason Goodman, Plaintiff, Pro Se
252 7th Avenue Apt 6s
New York, NY 10001
(323) 744-7594
truth@crowdsourcethetruth.org

RESPONSE IN OPPOSITION TO MOTION TO DISMISS - 10

**(EXHIBIT A)**



Jason Goodman

Dec 22, 2022 · 3 min read · ▶ Listen

🔖 Save    🐦  f  in  🔗

# THE TWITTER COUP Part 1



Twitter's former Government Liaison Adam Sharp has stars in his eyes as he stares longingly at President Barack Obama during the Twitter Townhall @thewhitehouse July 6, 2011

**Preliminary Statement**

Over the past four years, U.S. District Court Judge Valerie Caproni has presided over three cases in which the author was a litigant.

(Case 1:18-cv-08653-VEC-SDA, Case 1:20-cv-07269-VEC-OTW, Case 1:21-cv-10627-VEC)

In two of the cases, the author was opposed by Adam Sharp. Facts surrounding an alleged relationship between Caproni and Sharp were unknown prior to researching and writing this article in December 2022. A motion to disqualify Caproni was denied on January 10, 2022 (Case 1:21-cv-10627-VEC Document 17).

Recusal is warranted in cases where, "a reasonable person, knowing all the facts would have doubts about the judge's ability to be impartial in the case." Judges may also recuse themselves to avoid the appearance of conflicts of interest.

**The Fundamental Transformation of America**

Elon Musk's "Twitter Files" reveal a deeply troubling, previously hidden relationship between federal law enforcement and private sector social media companies, but an important question remains unanswered. Who could have executed such a vast government infiltration of private industry and how could they overcome the technical and legal hurdles? As implausible as it seems, this all occurred in plain sight right under our noses over the past two decades.

Evidence in the public domain is likely to prove that former President Barack Obama, former FBI General Counsel Valerie Caproni, and Twitter's former Government Liaison Adam Sharp, were the three most important conspirators at the outset. It appears they worked together and with others to launch one of the most sinister and sophisticated crimes in our nation's history.

**From Weatherman to U.S. President — The Rise of Barack Obama**

Just after his historic Presidential win, the New York Times ran a story about "How Obama Tapped Into Social Networks' Power". Journalist David Carr wrote, "In February 2007, a friend called Marc Andreessen, a founder of Netscape and a board member of Facebook and asked if he wanted to meet with a man with an idea that sounded preposterous on its face." Carr never reveals the identity of Andreessen's friend but goes on to depict Obama as the genius behind a grass roots campaign facilitated by emerging technology.

In 2015, long after Ayers and Dohrn helped the obscure Illinois State Senator rise to international prominence, President Obama held a technology summit at Stanford University. After delivering remarks on the future of technology and industry, Obama signed Executive Order 13691 Promoting Private Sector Cybersecurity Information Sharing. In it, the President commanded that, "private companies, nonprofit organizations, executive departments and agencies (agencies), and other entities must be able to share information related to cybersecurity risks and incidents and collaborate to respond in as close to real time as possible." Stanford students in attendance were probably unaware, but this order codified long standing FBI demands to supersede the fourth amendment and investigate anyone they wanted. This paved the way for the Neo-fascism now being exposed in the ongoing releases of the "Twitter Files".

Making good on his campaign promise, Obama ensured that America would be fundamentally transformed from a Constitutional Republic into a Neo-fascist Technocratic Autocracy. This new authority would be enforced by a digitally enabled Super-Stasi made up of FBI InfraGard members, (https://www.infragard.org/) and other contractors including hundreds, perhaps even thousands of ordinary citizens patrolling on-line as America's Secret Police.

Such an Orwellian overthrow would be calculated to happen without anyone noticing until it was too late. The merger of government and corporate technological power enabled a class of politically aligned bureaucratic elites to maintain control by monitoring and stifling opposition rather than allowing open debate in a free marketplace of ideas. These traitors have trampled the Constitution and destroyed the most fundamental aspect of American greatness.

Part two of this series will explore Congressional allegations of criminal malfeasance within the FBI.

Twitter        FBI        Obama        Corruption        Elon Musk

Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman
Dec 22, 2022 · 2 min read · ▶ Listen

🔖 Save   [Twitter]   [Facebook]   [LinkedIn]   🔗

# THE TWITTER COUP Part 2



Accusations of Criminal Malfeasance in the FBI General Counsel's Office

On April 14, 2010, the House Judiciary Subcommittee held a hearing on the Inspector General's "Report on the FBI's Use of Exigent Letters and Other Informal Requests for Telephone Records". Committee Chair John Conyers (D-Mich.) issued a harsh rebuke of FBI General Counsel Valerie Caproni, when he said, "Today's hearing showed that the FBI broke the law on telephone records privacy and the General Counsel's Office, headed by Valerie Caproni, sanctioned it and must face consequences."

Conyers went on to say he was "outraged" that the FBI Office of the General Counsel had invented exigent letters apparently out of whole cloth, "It's not in the Patriot Act. It never has been. And its use, perhaps coincidentally, began in the same month that Ms. Valerie Caproni began her work as general counsel."

Given the most recent revelations of Elon Musk's "Twitter Files" concerning the FBI, Conyers' closing statement in a letter to then FBI director Mueller is eerily prescient, "I'm extremely disappointed that every time Congress has tried to plug potential civil rights and civil liberties violations in our counterterrorism activities, the FBI seems to have figured out a way to get around it."

Chairman Conyers implored Mueller to take action and fire the responsible parties in Caproni's Office. No records of any action in response could be located and the press release has been removed from the House Judiciary web page.

Rather than face any consequences for her actions, Caproni would leave the FBI to join Northrup Grumman as Deputy General Counsel in 2011. She was nominated for a District Court Judge position in the Southern District of New York by Barack Obama in 2012.

During the course of her contentious Senate confirmation, Ranking Member of the Judiciary Committee Chuck Grassley sent a letter to the Dept. of Justice Office of the Inspector General. The letter detailed Senator Grassley's concerns about undue resistance to the committee's requests for documents and transcripts related to Caproni's ongoing constitutional abuses including repeated inappropriate use of National Security Letters and the even more urgent "exigent letters" throughout her tenure. The Grassley letter describes a culture of autocracy at the FBI that obstructed oversight, ignored the law and operated with impunity.

Valerie Caproni was confirmed by the Senate in 2013 and still serves as a U.S. District Court Judge for the Southern District of New York where she continues her abuse of citizens' constitutional rights to this day.

Part three will discuss how technical and legal barriers were overcome in the effort to destroy Americans' constitutional protections.

FBI        Twitter        Valerie Caproni        Corruption        Congress

Open in app ↗

Search Medium



Jason Goodman
Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save    🐦    f    in    🔗

# THE TWITTER COUP Part 3



President George W. Bush and a gaggle of neocon cronies delight in laying the groundwork for the destruction of the U.S. Constitution

### Overcoming Legal Hurdles Takes a Village

The groundwork was laid by the George W. Bush Administration. In the wake of the national trauma of 9/11, the Patriot Act was passed under the guise of increased security. This unconstitutional statute called for the creation of the National Cyber Investigative Joint Task Force, an interagency intelligence sharing organization led by the FBI. It also granted federal law enforcement new tools in their self-declared "war on terror". For the first time since the signing of the Bill of Rights, federal agents were granted unilateral authority to surveil any person they deemed a national security threat without first establishing probable cause or providing any evidence to a judge. Due process was bypassed, the need for warrants ignored, and newly created National Security Letters decimated the Fourth Amendment.

No longer were We the People "secure in our persons, houses, papers, and effects, against unreasonable searches and seizures". The FBI and other Federal agencies could simply send a National Security Letter to your phone company or internet provider seeking any information associated with any account for any reason. Although National Security Letters do not have the same legal force and effect as Court Orders or properly issued search warrants, the practical impact is virtually identical with an historical record nearing 100% compliance by providers.

During her tenure as general counsel at the FBI, Valerie Caproni coined the phrase "Going Dark". The term purported to describe an increasing proliferation of digital communications technologies and a widening gap in law enforcement's ability to penetrate those technologies in the due course of criminal investigations. Things like end-to-end encryption and automatically decimated chat logs had investigators in the dark according to Caproni.

The FBI's proposed solution was to create new legislation granting agencies unfettered access to all digital communications in real time. Setting aside the unrealistic network bandwidth and storage requirements of such a concept, the idea was controversial to say the least. Caproni and the FBI aimed to compel all technology companies to modify their products with "back doors" that would bypass primary security measures and allow federal investigators instant and full access to any account upon receipt of a National Security Letter.

Caproni would come under fire throughout her career for gross abuses of the process including the arbitrary creation of so called "exigent letters" which have no statutory

basis in the Patriot Act and the reliance on false statements to open alleged counterintelligence investigations.

https://www.c-span.org/video/?197219-1/fbi-national-security-letters

https://www.grassley.senate.gov/imo/media/doc/judiciary/upload/Caproni-03-19-13-letter-to-OIG-requesting-information.pdf

https://www.techdirt.com/2013/09/09/former-fbi-lawyer-who-oversaw-years-fourth-amendment-violations-agency-nominated-federal-judge-seat/

https://www.washingtonpost.com/world/national-security/former-fbi-official-questioned-on-abuse-of-intelligence-gathering-tools/2013/02/04/b228c4dc-6eef-11e2-aa58-243de81040ba_story.html

Caproni and her successors Andrew Weissman and James Baker went as far as suggesting modifications that amounted to hobbling the most sophisticated products available. These products' creators admonished FBI luddites and articulated how the changes would dramatically weaken security and expose all users to data theft and hacking. Despite a fundamental lack of subject matter knowledge, for years the FBI continued to make demands that industry experts argued would pose too great a risk for everyone should they be compelled to comply.

**A Decade of "Going Dark"**

Nearly eight years after Valerie Caproni delivered an address at Lewis & Clark Law School on "Crimes, War Crimes, and the War on Terror", the New York Times reported, "Obama Won't Seek Access to Encrypted User Data". Perhaps this was true of encrypted data, but perhaps this was just a lawyerly way of talking around a new cooperative plan to intercept data at the source, before it was encrypted or after it had been decrypted. Going back as far as 2005, Caproni had made the FBI's position on "Going Dark" extremely clear, it was a top priority. The persistence with which the FBI pursued this agenda cannot be overstated, nor can the public resistance to it.

Would secretly planting FBI operatives directly inside Twitter allow agents to address management's "Going Dark" concerns without the need to crack encryption keys or reveal their efforts to the public? Could such a cozy relationship indicate that Twitter

had agreed to implement the long-sought FBI back door without informing unsuspecting users? Twitter's new CEO has revealed emails indicating reimbursements to Twitter from the FBI for the fulfilment of requests related to investigations. While Twitter's CEO may have <u>incorrectly characterized</u> the nature and purpose of the payments, it is not denied that the payments were made.

Was Twitter motivated to comply with FBI investigation requests by law or by financial incentives? Did the FBI need warrants to investigate, penetrate or terminate the private Twitter accounts of U.S. citizens? These and other questions remain open. Many may ask, would the FBI do something illegal? Would they take action even if it had no basis in law? House and Senate oversight of the FBI General Counsel's Office and the Inspector General's report on the matter indicate they were in a regular practice of doing exactly that.

<u>Part four will reveal how the U.S. Government essentially became one with private industry when it infiltrated Twitter.</u>

Twitter        Elon Musk        FBI        Patriot Act        Valerie Caproni

Open in app ↗

Get unlimited access

Search Medium

29

Jason Goodman

Dec 22, 2022 · 4 min read · ▶ Listen

🔖 Save    🐦    f    in    🔗

# THE TWITTER COUP Part 4



President Barack Obama and Twitter CEO Jack Dorsey at the Whitehouse Twitter Town Hall July 6, 2011

**The Marriage of the U.S. Government and Social Media**

Although Barack Obama does not consider himself a luddite, during a 2022 address at the Stanford Internet Observatory he admitted he has to ask his "daughters how to work basic functions" on his phone. Even fifteen years after joining Twitter, Barack Obama's background, experience and technological profile is inconsistent with that of

someone who could have foreseen the impact social media would have on politics all the way back in 2007.

It is impossible to understand the U.S. Government's infiltration into Twitter without exploring the role of the man who is most likely to have presided over this unholy union. Today, he is the President and CEO of the National Academy of Television Arts and Sciences ("NATAS"), an obscure individual named Adam Sharp. Before handing out EMMY awards, Sharp joined Twitter in its pre-IPO days, early in November of 2010. Hot topics in DC at that time included regulation of social media firms. It was quietly coming out that many had hired lobbyists to get in front of the issue. Just prior to Sharp joining Twitter, in October of 2010, the LA Times ran an op-ed reporting "Facebook lobbies California on online privacy act (but shhh — don't tell anyone).

Evidence indicates Sharp's interest in Twitter began long before he was hired there. While serving as an Executive Producer for C-SPAN in 2009, Sharp launched a public affairs database that included "Twitter and Facebook API integration". API stands for application programming interface and describes a set of software tools provided to developers to enable customization and integration with other products. Sharp's utilization of Twitter's development API is an indication that he was very familiar with the inner workings and unrealized potential of Twitter at least by 2009, likely prior.

Sharp's online resume fails to discuss Valerie Caproni's appearance on C-SPAN3 in June of 2009 during the time he was the Executive Producer and managed primetime programming. It is difficult to imagine that the Executive Producer would not interact at all with such an important FBI guest. At very least, as programming manager, Sharp would be aware of the content of the broadcast in which Caproni articulated the FBI's goals to penetrate online communications. It remains unknown if any interaction occurred between Sharp and Caproni. Even in the event that there was none, Sharp was very likely aware of the FBI's concerns about "Going Dark" as long ago as 2009.

While at Twitter, Sharp made incredible inroads both for the company and the U.S. Government. https://www.cnn.com/2015/02/03/politics/twitter-washington-office

Throughout his time at Twitter, Sharp separately owned and operated Sharp Political Consulting, LLC. Sharp incorporated this firm in April of 2007. This is notably close in time proximity to the March 5, 2007 creation of the @barackobama Twitter account

cited in the Atlantic Magazine article, "You're Not Really Following @BarackObama on Twitter".

Creation of Obama's now famous Twitter account is especially notable because Twitter was virtually unknown in 2007. Jack Dorsey had published the world's first Tweet less than one year prior on March 21, 2006. Obama was not only one of the first politicians to join Twitter, but he was also among the first of all users. Technology moguls including current Twitter CEO Elon Musk, and former Microsoft CEO Bill Gates would not join until years later in June 2009. No other person fits the profile or was in the position to put Barack Obama and Twitter together in the way Adam Sharp clearly was.

Journalist Phillip Bump told Atlantic Magazine readers that Obama's "Twitter account was created by a staffer on March 5, 2007, two months before he formally announced his Presidential candidacy." The Senate staffer has never been identified, but Sharp was serving as Deputy Chief of Staff for Senator Mary L. Landrieu at the time. An election postmortem from the New York Times citing Obama's genius in leveraging social media declared an anonymous "friend" brought Marc Andreessen to the Obama campaign. Could both of these anonymous King Makers be Sharp? The answer remains a mystery, but it is likely 'yes'.

Even after Sharp became Twitter's official Government Liaison, Sharp Political Consulting, LLC remained active and engaged in matters that do not seem to have clear connections to Twitter.

Sharp Political Consulting made over $50,000 in political contributions to Democrat candidates in 2014.

In January 2016, pollsters calculated a 71% likelihood of a Hillary Clinton presidential win. For reasons that are unclear, Sharp voluntarily dissolved Sharp Political Consulting, LLC on January 29, 2016. In December 2016, less than one year later and precisely one month after Donald Trump's largely unexpected victory over Clinton, Sharp abruptly left his beloved Twitter and promptly formed SharpThings, LLC, just one week after the press release announcing his departure. Sharp would spend a lot of time lecturing about Disinformation in various public speaking engagements from 2016 through 2018 and then during his tenure as CEO of NATAS beginning in 2018. Was

Sharp's departure motivated by an urgent need to step up *la Résistance* to Donald Trump?

Part five will bring the story up to today and connect the suspected conspirators to the events being exposed in The TWITTER FILES.

Obama        Jack Dorsey        Twitter        FBI        Elon Musk

Open in app ↗

Get unlimited access

Search Medium

Jason Goodman

Dec 22, 2022 · 3 min read · ▶ Listen

🔖 Save

# THE TWITTER COUP Part 5



President Barack Obama, Twitter Head of News, Politics and Elections Adam Sharp, Twitter General Counsel Alexander Macgillivray and other staff members celebrate their success at the Whitehouse on July 6, 2011

## Operational Deployment of FBI–Twitter

For more than a decade, FBI leadership was acutely focused on a "Going Dark" public relations campaign. James Comey and Christopher Wray each spoke about it throughout their respective tenures as FBI Director.

But it was Valerie Caproni's disciples in the FBI General Counsel's office that finally made the plans operational. Her direct successor Andrew Weissman led the Mueller Investigation into Russian Collusion with the Donald Trump Presidential Campaign. This investigation was marred by the abuse of the secret FISA Court process and was distinctly categorized by Mueller's team as a Counterintelligence investigation rather than a criminal investigation. This distinction allowed investigators to access the unconstitutional and disputed powers imbued upon the FBI by Caproni. Ultimately, no evidence was found to substantiate the Mueller accusations.

Because the mere suggestion of Russian interference with a U.S. Presidential election represents a national security threat, the accusation alone absent evidence, was legally sufficient to open an investigation under the Patriot Act. This would have allowed Andrew Weissmann to use National Security Letters to merely allege that Trump represented a national security threat and initiate the years long and highly disruptive probe. This is perhaps the clearest example of naked abuse of the Patriot Act since its inception and provides good grounds for its termination.

Weissmann's successor James Baker. Director Comey appointed Baker General Counsel of the FBI on January 15, 2014. Baker was reassigned by Wray in 2017 and then resigned amid accusations that he leaked classified documents related to the Mueller investigation of Trump.

Senior Fellow in Governance Studies at the Brookings Institution, Benjamin Wittes was the likely recipient of the leak. Wittes is the editor of Lawfare, an online publication of the Brookings Institution that James Comey told an audience he reads every day. Wittes has claimed to be among James Comey's closest friends. Baker would transition to Brookings and Lawfare after departing the FBI and prior to becoming Twitter's Deputy General Counsel. The Brookings Institution is a non-profit think tank and a potential incubator for domestic coup d'etats, perhaps along the lines of what was done with Twitter. Baker appeared on MSNBC as recently as 2019 restating unconstitutional FBI demands to access everyone's data at any time.

**FBI All in at Twitter**

On or around May 28, 2020, a new Twitter policy began adding warnings to "fact check" users' Tweets. After warnings were applied to Tweets sent from @realDonaldTrump, the President issued executive order 13925 titled "Preventing Online Censorship". The order sought to curb perceived abuse of 47 USC § 230, the infamous Communications Decency Act that shields online service providers from liability even if they editorialize content that does not violate the law or civil torts. If implemented, the proposed changes threatened to expose Twitter to thousands of civil legal actions. Less than three weeks after Trump's order, former FBI General Counsel Baker joined Twitter as Deputy General Counsel. Was this a coincidence or was Baker still serving the demands of his long-time FBI colleagues? Baker had transitioned through the FBI revolving door of non-profit think tanks, including the Brookings Institution, Lawfare and the R Street Institute, following the plan articulated in Obama's 2015 Stanford inspired order.

It has now been widely reported that during Baker's time as Deputy General Counsel, Twitter suppressed a true and accurate news story published by the New York Post that likely affected the outcome of the 2020 Presidential election. Dr. Michael Shellenberger provides evidence of communications between FBI Special Agent Elvis Chan and employees of Twitter in the Twitter Files 7.

The communications indicate the FBI had foreknowledge of facts that would be asserted by the New York Post and knew them to be true, but falsely informed Twitter it was the product of a Russian "hack and leak" operation.

Now we stand at the brink of world war in Ukraine. Even stating the opinion "Joe Biden and Twitter rigged the 2020 election with the help of the FBI" is considered spreading disinformation. The FBI and CISA have determined disinformation is a national security threat. This logically could lead to the FBI investigating you if they decide something you say is false.

America has been transformed right before our eyes, and all that was needed was a pen and a phone.

Sources and Additional Information

Open in app ↗



✦ Get unlimited access to all of Medium for less than $1/week.  Become a member ✕

# The Twitter Coup Sources and Additional Information



Jason Goodman

5 min read · Dec 22, 2022

( ▶ ) Listen    ⌃ Share    ••• More

**Sources and Additional Information**

March 20, 2007 — **FBI Use of National Security Letters** — https://www.c-span.org/video/?197219-1/fbi-national-security-letters

March 21, 2007 — **The FBI's Use of National Security Letters and Section 215 Requests for Business Records** –https://oig.justice.gov/sites/default/files/2019-12/070321.pdf

January 2008 — **National Cyber Investigative Joint Task Force** — https://www.fbi.gov/investigate/cyber/national-cyber-investigative-joint-task-force

https://irp.fas.org/offdocs/nspd/nspd-54.pdf

March 2008 — **Alumnus runs for Congress in Virginia** — https://www.gwhatchet.com/2008/03/03/alumnus-runs-for-congress-in-virginia/

November 2008 — **How Obama Tapped Into Social Networks' Power** — https://www.nytimes.com/2008/11/10/business/media/10carr.html

November 2008 — **Election Blog: How Did Obama Win? The Top 10 Reasons** — https://www.mercurynews.com/2008/11/04/election-blog-how-did-obama-win-the-top-

10-reasons/

December 2008 — **Domestic Investigations and Operations Guide** — https://int.nyt.com/data/int-shared/nytdocs/docs/264/264.pdf

January 2009– **Authority of Acting FBI Officials to Sign National Security Letters**

https://www.justice.gov/olc/file/2009-01-16-acting-fbi-nsl/download

January 2010 — **A Review of the Federal Bureau of Investigation's Use of Exigent Letters and Other Informal Requests for Telephone Records** — https://www.oversight.gov/sites/default/files/oig-reports/s1001r.pdf

April 2010 — **Conyers: FBI Broke the Law and General Counsel's Office, Headed by Valerie Caproni, Sanctioned It and Must Face Consequences**

https://web.archive.org/web/20100419051249/http:/judiciary.house.gov/news/100414.html

October 2010 — **Opinion: Facebook lobbies California on online privacy act (but shhh — don't tell anyone)** — https://www.latimes.com/archives/blogs/top-of-the-ticket/story/2010-10-28/opinion-facebook-lobbies-california-on-online-privacy-act-but-shhh-dont-tell-anyone

November 2010 — **Twitter Now Has A D.C. Presence; Hires Adam Sharp As Government Liaison**

https://techcrunch.com/2010/11/04/twitter-now-has-a-d-c-presence-hires-adam-sharp-as-government-liaison/

November 2010 — **Twitter hires first D.C. staffer. But don't call Adam Sharp a lobbyist** — https://www.latimes.com/archives/blogs/top-of-the-ticket/story/2010-11-04/opinion-twitter-hires-first-d-c-staffer-but-dont-call-adam-sharp-a-lobbyist

November 2010 — **Twitter Hires C-SPAN's Sharp in DC** — https://www.prweek.com/article/1265866/twitter-hires-c-spans-sharp-dc

January 2011 — **Twitter, as a Helpmate, Goes to Capitol Hill** — https://www.nytimes.com/2011/01/30/us/politics/30twitter.html

February 2011 — **GOING DARK: LAWFUL ELECTRONIC SURVEILLANCE IN THE FACE OF NEW TECHNOLOGIES** — https://www.govinfo.gov/content/pkg/CHRG-112hhrg64581/html/CHRG-112hhrg64581.htm

February 2011 — **Newly Released Documents Detail FBI's Plan to Expand Federal Surveillance Laws** — https://www.eff.org/deeplinks/2011/02/newly-released-documents-detail-fbi-s-plan-expand

February 2011 — **As Online Communications Stymie Wiretaps, Lawmakers Debate Solutions** — https://www.nytimes.com/2011/02/18/us/18wiretap.html

April 2011 — **An Interview With Twitter's Forgotten Founder, Noah Glass** — https://www.businessinsider.com/twitter-cofounder-noah-glass-2011-4

June 2011 — **F.B.I. Agents Get Leeway to Push Privacy Bounds** — https://www.nytimes.com/2011/06/13/us/13fbi.html

May 2012 — **FBI quietly forms secretive Net-surveillance unit** — https://www.cnet.com/news/privacy/fbi-quietly-forms-secretive-net-surveillance-unit/

August 2012 — **A new barometer for the election** — https://blog.twitter.com/en_us/a/2012/a-new-barometer-for-the-election

February 2013 — **Former FBI official questioned on abuse of intelligence-gathering tools** — https://www.washingtonpost.com/world/national-security/former-fbi-official-questioned-on-abuse-of-intelligence-gathering-tools/2013/02/04/b228c4dc-6eef-11e2-aa58-243de81040ba_story.html

March 19, 2013 — **Grassley Judiciary Committee letter to the OIG** https://www.grassley.senate.gov/imo/media/doc/judiciary/upload/Caproni-03-19-13-letter-to-OIG-requesting-information.pdf

March 20, 2013 — **New Technologies, National Security, and the Law** — https://www.c-span.org/video/?311627-1/technologies-national-security-law

April 2013 — **You're Not Really Following @BarackObama on Twitter** — https://www.theatlantic.com/politics/archive/2013/04/youre-not-following-barackobama-twitter/316523/

June 2013 — **Privacy Advocates: With PRISM, FBI Has No 'Going Dark' Argument** — https://www.usnews.com/news/articles/2013/06/07/privacy-advocates-with-prism-fbi-has-no-going-dark-argument

June 2013 — **Grassley Talks About B. Todd Jones, Tony West, Valerie Caproni, Metal Theft Legislation** — https://www.grassley.senate.gov/news/news-releases/grassley-talks-about-b-todd-jones-tony-west-valerie-caproni-metal-theft

September 2013 — **Former FBI Lawyer Who Oversaw Years Of Fourth Amendment Violations By The Agency Nominated For Federal Judge Seat** — https://www.techdirt.com/2013/09/09/former-fbi-lawyer-who-oversaw-years-fourth-amendment-violations-agency-nominated-federal-judge-seat/

January 2014 — **Wielding A Pen And A Phone, Obama Goes It Alone**

https://www.npr.org/2014/01/20/263766043/wielding-a-pen-and-a-phone-obama-goes-it-alone

October 2014 — **FBI again claims it's Going Dark thanks to encryption** — https://www.csoonline.com/article/2834837/fbi-again-claims-its-going-dark-thanks-to-privacy-solutions-like-encryption.html

October 2014 — **Vivian Schiller Departs as Twitter's Head of News** — https://archive.nytimes.com/bits.blogs.nytimes.com/2014/10/09/schiller-departs-as-twitters-head-of-news/

October 2017 — **Twitter News Head Vivian Schiller Out in Media Unit Consolidation** — https://www.vox.com/2014/10/8/11631744/twitter-news-head-vivian-schiller-out

February 2015 — **Obama Calls for New Cooperation to Wrangle the 'Wild West' Internet** — https://www.nytimes.com/2015/02/14/business/obama-urges-tech-companies-to-cooperate-on-internet-security.html

February 2015 — **Executive Order 13691 — Promoting Private Sector Cybersecurity Information Sharing** - https://obamawhitehouse.archives.gov/the-press-office/2015/02/13/executive-order-promoting-private-sector-cybersecurity-information-shari

February 2015 — **Privacy Versus Security in Silicon Valley** — https://www.newyorker.com/business/currency/stanford-obama-tim-cook-privacy-security

March 2015 — **President Obama Taps Twitter Vet Jason Goldman As White House's First Chief Digital Officer** — https://techcrunch.com/2015/03/24/president-obama-taps-twitter-vet-jason-goldman-as-white-houses-first-chief-digital-officer/

May 2015 — **Tech Giants Urge Obama to Reject Policies That Weaken Encryption** -

https://www.nytimes.com/2015/05/20/technology/tech-giants-urge-obama-to-reject-policies-that-weaken-encryption-technology.html

September 2015 — **How Twitter plays offense in D.C.** — https://www.cnn.com/2015/02/03/politics/twitter-washington-office

October 2015 — **Obama Won't Seek Access to Encrypted User Data** — https://www.nytimes.com/2015/10/11/us/politics/obama-wont-seek-access-to-encrypted-user-data.html

October 2016 — **Obama Brought Silicon Valley to Washington** — https://www.nytimes.com/2016/10/30/magazine/barack-obama-brought-silicon-valley-to-washington-is-that-a-good-thing.html

October 2016 — **Lawful hacking and the case for a strategic approach to "Going Dark"** — https://www.brookings.edu/research/lawful-hacking-and-the-case-for-a-strategic-approach-to-going-dark/

January 2017 — **Encryption and the Updated January 25, 2017 " Going Dark " Debate** — https://crsreports.congress.gov/product/pdf/R/R44481

February 2018 — **OFFICE OF THE GENERAL COUNSEL Unit Chief** — https://www.justice.gov/legal-careers/job/unit-chief-5

March 2018 — **FBI has a unit solely devoted to its 'going dark' problem** — https://www.cyberscoop.com/fbi-going-dark-iphone5c-encryption-ig-report/

March 2018 — **A Special Inquiry Regarding the Accuracy of FBI Statements Concerning its Capabilities to Exploit an iPhone Seized During the San Bernardino Terror Attack Investigation** — https://oig.justice.gov/reports/2018/o1803.pdf

September 2018–**10 questions with Adam Sharp** — https://www.fromthedesk.org/10-questions-adam-sharp/

September 2021 — **Shining Light on the "Going Dark" Phenomenon: U.S. Efforts to Overcome the Use of End-to-End Encryption by Islamic State Supporters** — https://harvardnsj.org/2021/09/shining-light-on-the-going-dark-phenomenon-u-s-efforts-to-overcome-the-use-of-end-to-end-encryption-by-islamic-state-supporters/

October 2021 — Stacia Cardille

September 2022 — **Audit of the Roles and Responsibilities of the Federal Bureau of Investigation's Office of the General Counsel in National Security Matters** — https://oig.justice.gov/sites/default/files/reports/22-116.pdf

October 2022 — **Foreign Actors Likely to Use Information Manipulation Tactics for 2022 Midterm Election**s -

https://www.cisa.gov/sites/default/files/publications/PSA-information-activities_508.pdf

December 2022 — **THE TWITTER FILES: PART 7** — https://twitter.com/ShellenbergerMD/status/1604871630613753856

December 2022 — **x`** -https://www.techdirt.com/2022/12/20/no-the-fbi-is-not-paying-twitter-to-censor/

Twitter          Coup          Obama          Elon Musk          FBI