IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JASON GOODMAN<br><br>　　　　Plaintiff,<br><br>vs.<br><br>CHRISTOPHER ELLIS BOUZY, BOT SENTINEL, INC, GEORGE WEBB SWEIGERT, DAVID GEORGE SWEIGERT, BENJAMIN WITTES, NINA JANKOWICZ, ADAM SHARP, MARGARET ESQUENET, THE ACADEMY OF TELEVISION ARTS AND SCIENCES, SETH BERLIN, MAXWELL MISHKIN,<br><br>　　　　Defendants | Case No.: 1:21-cv-10878-AT-JLC<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION** |

## INTRODUCTION

Plaintiff Jason Goodman ("Goodman") by and for himself pro se, respectfully submits this motion for reconsideration of Judge Torres' final order (ECF No. 238) pursuant to FRCP Rule 60(b)(1). The Court overlooked irrefutable facts when it adopted Magistrate Judge Cott's Report and Recommendation (ECF No. 203), clear errors in the Order are explained below.

## BACKGROUND

Judge Cott's analysis parrots Judge Valerie Caproni, miscategorizing this case as an "*ongoing battle between Internet conspiracy theorists*". This demeaning condescension is not only unbecoming of a judge, but it is also incorrect. This case is about sophisticated litigants who coordinated an effort to defame and discredit an investigative journalist who has revealed unfavorable facts about them. Their goal is to curtail Goodman's ability to exercise the first amendment, prevent him from reporting evidence likely to prove Defendants' criminal acts and

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 1

to prevent him from earning a living.  Goodman is not an attorney and does not initiate lawsuits for improper purposes.  Judge Cott's misrepresentation casts Goodman as equally responsible for this ongoing conflict when in fact it was initiated and is perpetuated by David George Sweigert ("Sweigert").  Goodman brought this instant action to defend himself and end ongoing litigation.

Goodman has alleged a conspiracy between defendants, Judge Caproni and now former FBI director James Comey ("Comey").  If Goodman's allegations are true, Judge Caproni would be motivated to label him a "conspiracy theorist" despite the fact that the term has no legal definition and is tantamount to a ruling determining Goodman is a moron.  Such statements are inappropriate personal insults that lies outside the scope of adjudication of fact.  The Court has agreed with Goodman that Judge Cott does not have a clear understanding of the facts in the case, specifically regarding allegations related to the death of Peter W. Smith ("Smith").

Defendants' alleged conspiracy began in or around 2010 when Judge Caproni was FBI General Counsel and defendant Adam Sharp ("Sharp") was Twitter's U.S. Government Liason.  Goodman continues to allege Sweigert acts as a go-between enabling defendants' actions throughout the relevant timeframe and with the protection and approval of Judge Caproni. On July 12, 2023 FBI Director Christopher Wray testified before the House Oversight Committee to answer allegations that the FBI has violated American citizens' first and fourth amendment rights and the law.  These are identical to allegations Congress made over a decade ago before Judge Caproni was removed as FBI General Counsel for alleged criminal wrongdoing. (https://web.archive.org/web/20100419051249/http:/judiciary.house.gov/news/100414.html)

Chairman Jim Jordan opened the hearing by declaring, *"the federal government suppressed Americans' First Amendment free speech rights"* and went on to cite a July 4, 2023 ruling by U.S. District Court Judge Terry A. Doughty.  Unlike Goodman's prior cases, the

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 2

presiding judge was not implicated in that case, but defendant Nina Jankowicz ("Jankowicz") was. Plaintiffs in the case allege claims that echo those brought by Goodman. In his ruling, Judge Doughty found that, *"The Plaintiffs are likely to succeed on the merits on their claim that the United States Government, through the White House and numerous federal agencies, pressured and encouraged social-media companies to suppress free speech."*

Missouri v. Biden, No. 3:22-CV-01213, 2023 U.S. Dist. LEXIS 114585, at *121 (W.D. La. July 4, 2023).

Defendants in this case have used non-profit foundations, private sector companies and private individuals in furtherance of FBI interests to do the same to Goodman using circuitous illegitimate means including vexatious legal action ("Lawfare"). Just as the Government stands accused in Missouri v. Biden, defendants here attempt to prevent Goodman from exercising the first amendment and reporting true but objectionable facts on social media including Twitter, YouTube and others. Judge Doughty's findings substantially support Goodman's claims which should not be dismissed as "conspiracy theories" even if they are not cognizable as pleaded.

### FALSE CLAIMS RELATED TO THE DEATH OF PETER W. SMITH

Public statements made by defendant Benjamin Wittes ("Wittes") regarding the death of Smith are the seminal basis of the dispute in this case. During Goodman's communication with Wittes about Smith on Twitter in December 2020, Christopher Bouzy ("Bouzy") injected himself into the public debate. Bouzy chose to put himself in direct conflict with Goodman prompting a phone call that gave rise to the initial complaint. Goodman's complaint was not frivolous and was not brought to harass. Goodman initially showed restraint, choosing to avoid litigation in December 2020. Bouzy resumed his malicious activity on December 17, 2021, approximately 363 days after his initial contact with Goodman. This compelled legal action because Goodman

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 3

became concerned that Sweigert may have alerted Bouzy presuming expiration of the statute of limitations and encouraging him to reiterate false allegations against Goodman in perpetuity. Sweigert has now begun to do that on the basis of this Court's errant judgement. (https://twitter.com/LiberateYoutube/status/1677389240408367105)

Goodman first became aware of Smith on June 30, 2017, during a meeting with nonparty Charles Ortel ("Ortel") that had been arranged by defendant George Webb Sweigert ("Webb"), notably the brother of defendant Sweigert.  At that meeting, Goodman witnessed Ortel receive a call from Wittes' associate Shane Harris ("Harris").  Harris informed Ortel his name was on a document Smith had used to raise money to pay Russian hackers for Hillary Clinton's stolen emails.  Ortel had no knowledge of the document nor any hacking involvement.

Later that same day another Wittes associate, former British Intelligence cyber security expert Matt Tait ("Tait") published an article on Wittes' Lawfare Blog that provided details of the document, (https://www.lawfaremedia.org/article/time-i-got-recruited-collude-russians).  In his post, Tait claimed the document was given to him by Smith, stating, *"a few weeks into my interactions with Smith, he sent me a document, ostensibly a cover page for a dossier of opposition research to be compiled by Smith's group, and which purported to clear up who was involved.  The document was entitled "A Demonstrative Pedagogical Summary to be Developed and Released Prior to November 8, 2016," and dated September 7. It detailed a company Smith and his colleagues had set up as a vehicle to conduct the research: "KLS Research", set up as a Delaware LLC "to avoid campaign reporting," and listing four groups who were involved in one way or another."*  On October 6, 2017, Tait testified before the House Permanent Select Committee on Intelligence ("HPSCI").  Committee members questioned Tait, corroborating Ortel's name among the four groups as Tait described, *"under this independent groups heading,*

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 4

*there's Phil Emmanuel, Charles Ortel, Charles Johnson, individuals associated with Judicial Watch.  Did you have contact with any of these individuals?"* (*See* Page 52 https://intelligence.house.gov/uploadedfiles/matthew_tait_testimony_oct_6_2017.pdf)

Ortel was interviewed by the FBI on December 11, 2018 **(EXHIBIT A)** and was questioned in particular about an email he sent on July 25, 2016, **(EXHIBIT B)** to former Trump advisor Roger Stone ("Stone").  This was corroborated in United States v Roger Stone (*See* Case 1:19-cr-00018-ABJ Document 133 Page 7 paragraph 2) *"Charles Ortel sent an email written to Stone and Stone sent it to Corsi after WikiLeaks disseminated Podesta's emails. The email was titled "WikiLeaks – The Podesta Emails." See Doc. 100 Ex.1, ¶ 65"*

United States v. Stone, 613 F. Supp. 3d 1 (D.D.C. 2020).

Tait's document was the basis of Wittes December 28, 2016 email to Comey.  The Court incorrectly concluded that this email has nothing to do with this case.  Conversely, it is the seed of the core controversy.  Ortel's interview with the FBI is evidence that Comey did indeed act on Wittes' advice and used Tait's fabricated evidence, provided by Harris, to justify an unwarranted FBI investigation intended to reach Trump through Ortel and Stone.

Goodman's claims are anything but frivolous.  The underlying facts are irrefutable and may reveal one of the biggest crimes in history.  If Goodman's allegations are true, defendants along with Judge Caproni, conspired with Comey and the FBI to fabricate evidence and create a false pre-text sufficient to initiate a counterintelligence investigation into the President of the United States on the basis of no legitimate evidence whatsoever.  The late John Conyers admonished FBI General Counsel Caproni for precisely the same activity in 2010.  If Goodman is correct, this would also explain Judge Caproni's unlawful support of defendants' obsession with destroying Goodman's reputation, social media presence and ability to earn a living.

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 5

# ARGUMENT

Fed. R. Civ. P. 60(b) provides on motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; Nemaizer v. Baker, 793 F.2d 58, 59 (2d Cir. 1986)

### I.      The Court Made a Mistake When it Determined a Failure to Allege Falsity

The Court made a clear error in its review of Goodman's second objection and contradicted itself in its own finding when it said *"Goodman objects to Judge Cott's characterization of Defendant Bouzy's allegedly defamatory statement. Obj. at 6. Specifically, Judge Cott wrote: "Bouzy stated only that he was aware of allegations that Goodman had raped someone." Second R&R at 24."* The Court goes on to say, *"Judge Cott found, and the Court agrees, that Bouzy's statement does not accuse Goodman of rape, but rather states that Goodman told Bouzy that Goodman had been accused of rape. See Second R&R at 24."*

Goodman did not tell Bouzy that he had been accused of rape. Goodman told Bouzy the opposite, stating *"go try to find somebody who claims I raped them. You will not find that."* Any other conclusion drawn was, by the Court's own admission, inferred by the listener, not told by Goodman. *"Throughout the call, Goodman himself **implies** [emphasis added] that people made rape allegations against him."* The Court cannot reasonably equate an inferred implication with the positive affirmation of unequivocally telling someone something. Bouzy states, *"Until creepy Jason Goodman called me, I had no clue someone previously accused him of rape, and it's a bizarre thing to **tell** [emphasis added] a stranger in a phone call. It's also odd to tell someone they would be part of ongoing litigation if they tweeted about it. Why bring it up? ..."*

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 6

By using the word "tell" Bouzy falsely asserts Goodman conclusively affirmed there was a rape allegation when in fact he told Bouzy the opposite, that he would find no rape allegation. Bouzy did not Tweet that Goodman implied or inferred there was a rape allegation. By ending with, *"Why bring it up?"* he further misleads the reader because Goodman did not bring it up, Bouzy did. This is at least defamatory by implication and would be likely to cause a reasonable observer to think Goodman told Bouzy he had definitely been accused of rape. Bouzy made inferences and drew false conclusions from implications as the Court acknowledged. The only unambiguous information relative to rape allegations was Goodman's statement *"You will not find that"*. Without verifying his inference, Bouzy published statements to third parties with reckless disregard for the truth and the deliberate internet to harm Goodman amounting to actual malice. Bouzy admitted to the Court Webb was unknown to him. Even if Goodman implied as the Court believes, Bouzy did not verify the implication. Judge Cott was in error when he concluded that Bouzy *"was aware of allegations that Goodman had raped someone."*

       The Court should separately consider Webb's original statements that were unknown to Bouzy at the time he falsely claimed Goodman told him of their existence. To consider Webb's manufactured and since deleted statements as rape allegations is tenuous at best. The concocted claim pertained to an imagined rape of a person Goodman never met, who herself never made the accusation. This begs the philosophical question, what makes an allegation an allegation? Is Webb's false claim of an allegation that never actually existed, truly an allegation if the alleged victim never made it and is not aware of it? Webb's statement is more akin to a hoax-allegation which is inherently fake and non-existent. This calls Bouzy's alleged awareness of existing allegations into further question. Bouzy made no effort to confirm the truthfulness of his inferred conclusion. His motivation was purely evil and had no useful purpose apart from

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 7

damaging Goodman.  Bouzy's statements are so repugnant, they rise to the level of per se defamation.  The Court's deference to and defense of such disgraceful behavior is antithetical to the service of justice.  Even if the Court finds Goodman's claims inadequate to survive motions to dismiss, the Court should modify its order to dismiss the claims without prejudice.

## II.   The Court Made an Additional Error When it Concluded Wittes Email to Comey Has Nothing to Do with This Case

The email sent to then FBI Director Comey directly links Wittes to a scheme to concoct an unjust and harmful investigation into the 45th President of the United States.  In furtherance of that scheme, Wittes deliberately hid facts about Smith's death and these actions gave rise to the conflict with Goodman.  The discovery of Wittes email to Comey and the corroboration in Harris' phone call to Ortel, Tait's article in www.lawfareblog.com and his testimony before the HSCI, proves that Goodman's allegations relative to hiding facts about Smith's death are true.  While it is true that the email evidence was in the public domain since 2020, Goodman was not aware of this prior to June 12, 2023.  The Court cannot reasonably expect Goodman to be aware of all information in the public domain or any particular piece of information simply because it is in the public domain.  Goodman found this email on a U.S. Senate web site after reading the report published by the U.S. Attorney General on June 12, 2023.  Information in the report that Goodman was previously unaware of prompted a series of internet searches that led Goodman to the December 28, 2016 email.  There was no way Goodman could have reasonably known of the Wittes – Comey email's existence merely as a function of it being in the vast public domain.

## III.   Abuse of Process

Just as Judge Cott wrongly concluded Goodman accused Wittes of murder, he also incorrectly determined that Goodman *"has not provided any details as to how, where, or when*

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 8

*Sweigert harassed his former counsel."* Goodman cited attorney Jonathan Snyder's withdrawal motion and declaration which provided all the details of Sweigert's harassment (*See* Case 1:20-cv-07269-VEC-OTW Document 101). It is impossible to construe Judge Cott's conclusion as anything more than deliberate ignorance of the facts in favor of Judge Caproni's totally unjust rulings and defendants' vexatious behavior.

**IV.     Filing Injunction**

Judge Cott recommended, and the Court confirmed a filing injunction citing, *"[T]he Second Circuit has held that '[t]he issuance of a filing injunction is appropriate when a plaintiff abuses the process of the Courts to harass and annoy others with meritless, frivolous, vexatious or repetitive proceedings.'" Ware v. United States, No. 04-CR-1224 (ER), 2023 WL 2757206, at *5 (S.D.N.Y. Apr. 3, 2023) (citing Lau v. Meddaugh, 229 F.3d 121, 123 (2d Cir. 2000))."* This is yet another error because this is not meritless, frivolous, vexatious. Goodman's claims are well founded and denying him proper access the courts is a denial of his fundamental rights and antithetical to the service of justice in this case.

Properly applied Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments. House v. Secretary of Health and Human Services, 688 F.2d 7, 9 (2d Cir. 1982); Seven Elves, Inc. v. Eskenazi, 635 F.2d 396, 401 (5th Cir. 1981). In other words, it should be broadly construed to do "substantial justice," see Seven Elves, 635 F.2d at 401, yet final judgments should not "be lightly reopened." Id.; Griffin v. Swim-Tech Corp., 722 F.2d 677, 680 (11th Cir. 1984). The Rule may not be used as a substitute for a timely appeal. United States v. O'Neil, 709 F.2d 361, 372 (5th Cir. 1983); Rinieri v. News Syndicate Co., 385 F.2d 818, 822 (2d Cir. 1967). Since 60(b) allows extraordinary judicial relief, it is invoked only upon a showing of exceptional circumstances. Ben Sager Chemicals Intern. v. E. Targosz & Co.,

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 9

560 F.2d 805, 809 (7th Cir. 1977); [**9]  Hoffman v. Celebrezze, 405 F.2d 833, 835 (8th Cir. 1969); Rinieri, 385 F.2d at 822.  A motion seeking such relief is addressed to the sound discretion of the district court with appellate review limited to determining whether that discretion has [*62]  been abused. Griffin, 722 F.2d at 680; Matter of Emergency Beacon Corp., 666 F.2d 754, 760 (2d Cir. 1981).

Nemaizer v. Baker, 793 F.2d 58, 61-62 (2d Cir. 1986)

## CONCLUSION

     There is no doubt this case presents exceptional circumstances.  Goodman's claims are not frivolous, and even if improperly plead, that is due to Goodman's lack of experience and the complexity of these matters.  Goodman's right to access the courts cannot be justifiably infringed.  Defendants have a well-established history of staging hoaxes and promoting false allegations intended to entrap others, including those that gave rise to the complaint against Bouzy and Webb.  The conclusion that information discovered after June 8, 2023 is unrelated to this case is false.  Rulings based on that conclusion are likewise incorrect.  Plaintiff respectfully requests the Court reconsider its final judgment given these clear and egregious errors.

Signed this 12th day of June 2023

Respectfully submitted,

                                                                 Jason Goodman, Plaintiff, Pro Se
                                                                        252 7th Avenue Apt 6s
                                                                            New York, NY 10001
                                                                                  (323) 744-7594
                                                         truth@crowdsourcethetruth.org

MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION - 10