D. G. SWEIGERT, C/O<br>
MAILBOX, PMB 13339<br>
514 Americas Way, Box Elder, SD 57719<br>
Spoliation-notice@mailbox.org

January 6, 2024

<i>Goodman v. Bouzy</i>, et. al. Case No. 1:21-cv-10878-AT-JLC

Honorable Analisa Torres
U.S. District Court for the Southern District of New York
500 Pearl Street
New York, N.Y. 10007
Via ECF filing and email to chambers

SUBJ:  Violation of ECF ORDER 238, para. 9, by Jason Goodman.

Your Honor,

1.  Your attention is called to para. 9 of your ORDER issued as ECF 238 on 6/28/2023:

" Jankowicz and Wittes's motion for sanctions is GRANTED. Goodman is enjoined from filing additional documents on the docket relating to Wittes or Jankowicz in this District; filing any federal district court action against Wittes or Jankowicz relating to the subject matter in this case; and filing any new pro se action against Wittes or Jankowicz in any federal district court without first obtaining leave of that court. Defendants' request for attorney's fees is DENIED."

2.  Attached is Mr. Goodman's latest attempt to bring a legal action against Defendant Jankowicz for facts directly related to this instant legal action in open defiance of that ORDER.

Signed this 6th day of January 2023.

<i>[signature]</i> <b>PRO SE</b>

<b>CERTIFICATE OF SERVICE</b>

Hereby certified under penalties of perjury that a copy of this letter has mailed to:  Jason Goodman, sole stockholder of MULTIMEDIA SYSTEM DESIGN, INC., 252 7th Avenue, New York, N.Y. 10001

Signed this 6th day of January 2024.

<i>[signature]</i> <b>PRO SE</b>

RECEIVED
WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
1/3/24

IN THE UNITED STATES DISTRICT COURT  
FOR WESTERN DISTRICT OF LOUISIANA  
MONROE DIVISION

23-cv-00381-TAD-KDM

-----------------------------------------------------------------X  
ROBERT F. KENNEDY, JR. ET AL.,

                                Plaintiff,

             -versus-

JOSEPH R. BIDEN ET AL.

                               Defendants.  
-----------------------------------------------------------------X

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE

      Intervenor applicant, Jason Goodman, ("Goodman") by and for himself pro se, respectfully submits this motion seeking leave to intervene as co-plaintiff pursuant to FRCP Rule 24. With this motion, Goodman alleges the following on the basis of personal knowledge with respect to himself and upon information and belief with regard to all other allegations.

## INTRODUCTION

      1.    Goodman seeks to intervene by right, pursuant to FRCP Rule 24(a)(2), or in the alternate, permissively pursuant to Rule 24(b)(1)(B). Goodman is currently engaged in litigation that shares common questions of law and fact, but moreover, includes common defendants with this instant action, (*See NATAS v MSDI* 1:20-cv-07269-VEC-OTW, *Goodman v Bouzy et al.*, 1:21-cv-10878-AT-JLC, *Sweigert v Goodman* 1:23-cv-06881-JGK-VF, *Sweigert v Goodman* 1:23-cv-06881-JGK-VF, *Sweigert v Goodman* 1:23-cv-01228-JRS-MG, *Goodman v the City of New York et al* 1:23-cv-09648-JGLC-GWG).

      2.    If the Court should determine Goodman does not meet the requirements for intervention by right, alternately Goodman seeks to intervene permissively because the above cited cases share claims and defenses that have questions of law and fact in common with this instant action and its disposition may impair Goodman's ability to protect his interests.

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE       1

## GOODMAN SHOULD BE GRANTED INTERVENTION BY RIGHT

3.     A party seeking to intervene as of right must satisfy four requirements: (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit. If a party seeking to intervene fails to meet any one of these requirements, it cannot intervene as a matter of right.

*Sierra Club v. Espy*, 18 F.3d 1202, 1203 (5th Cir. 1994)

4.     Here, Goodman meets each requirement. This application is timely because in October 2023, Goodman learned that the plaintiff in *Sweigert v Goodman* is employed by the National Institutes of Health, ("NIH"). Goodman further learned the plaintiff sued in a deliberate attempt to circumvent this Court's July 4, 2023 ruling. Goodman acted as quickly as he was able to make this application after he learned the plaintiff was a government employee.

5.     Goodman's interest in the transaction at the heart of this matter aligns with the Plaintiffs' and every other American citizen whose right to freely access the first amendment was obstructed by the government, its agencies and employees, and their contractor proxies.

6.     Goodman is presently situated in such a way that disposition of this instant action may, as a practical matter, impair or impede his ability to protect or defend his common interest.

7.     Goodman's interest in this matter is inadequately represented by the existing parties to the suit because they are unaware of specific facts that Goodman brings forth now with this motion to intervene. These new facts will expedite adjudication of this matter and expand

the Court's understanding of the clandestine tactics deliberately calculated to circumvent this Court's rulings and the evolving circumstances at the heart of this important legal action.

8. Determining the timeliness of a motion to intervene entails consideration of four factors: (1) The length of time during which the would-be intervenor actually knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; (2) the extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as it knew or reasonably should have known of its interest in the case; (3) the extent of the prejudice that the would-be intervenor may suffer if intervention is denied; and (4) the existence of unusual circumstances militating either for or against a determination that the application is timely.

*Sierra Club v. Espy,* 18 F.3d 1202, 1203 (5th Cir. 1994)

9. This application is timely because on or around October 10, 2023, Goodman learned that an individual who has been cyber stalking and harassing him for more than six years is a contract support employee at the NIH. The employee's profile page was recently removed https://public.csr.nih.gov/AboutCSR/StaffDirectory/3430. **(EXHIBIT A)**

10. This application is timely because the existing parties will not suffer prejudice as a result of Goodman intervening now. Goodman sought intervention as soon as he realized his litigation shared questions of fact and law and had defendants in common with this case.

11. Goodman was previously aware of *Missouri v Biden* and *Kennedy v Google,* but he did not attempt to intervene because of the Court's responses to other attempts and because of that case's pending status with the Supreme Court.

12. Goodman did not know about *Kennedy v Biden* until very recently. After Goodman learned of the actions of an NIH contract support employee, he realized his litigation

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE     3

was sufficiently related to this instant action to require intervention. Intervention will not delay these proceedings which are largely stayed for the reasons cited in Defendants' Response to the Court's December 13, 2023 Order. (Dkt. 29)

**PERMISSIVE INTERVENTION WOULD SERVE JUSTICE**

13. In addition to the good reasons stated herein, the Court should grant Goodman permission to intervene for the reasons cited in Plaintiffs' Supplemental Memorandum (Dkt. 30). This Court retains jurisdiction over the matters at controversy in this action. Granting Goodman permission to intervene would be in the interest of justice because it will provide the Court with new evidence that will prove that U.S. Government agencies, their employees and contractors have attempted to deliberately circumvent this Court's orders and inherent authority through the use of clandestine, undercover operators ("UCO") paid as contract employees.

14. If the Court were to deny intervention, Goodman would suffer undue prejudice in that the Court would be allowing U.S. Government contractors to circumvent the Court's own ruling, undermining its inherent authority before the Supreme Court rules on related decisions.

15. Above all else, this case presents unique and unusual circumstances favorable toward granting intervention. Goodman will provide unimpeachable evidence that the very same agencies this Court intended to enjoin have used clandestine methods and UCO contract employees to circumvent orders and censor citizens in violation of their first amendment rights.

**BACKGROUND**

16. Intervenor applicant Goodman is an investigative journalist, talk show host and the founder of the social media brand *Crowdsource the Truth*. In or around 2016, Goodman began posting news, information, and opinion on YouTube, Twitter, Facebook and other publicly available social media platforms.

17. David George Sweigert, ("Sweigert") is an individual who has initiated and or insinuated himself into something near two dozen legal actions against Goodman since 2017.

18. Goodman and Sweigert have never met and have no prior business or personal relationship whatsoever. Shortly after Goodman began broadcasting documentaries, news, opinions, and investigative journalism on various social media platforms, Sweigert publicly announced his plans to sue Goodman "for the rest of his life." Since then, Sweigert has continuously demonstrated his commitment to that plan.

19. Sweigert is a professional hacker and full-time practitioner of ("Lawfare"). Sweigert is author of *The Ethical Hacker's Field Operations Guide: Learning the Art of Penetration Testing*, (https://www.amazon.com/Ethical-Hackers-Field-Operations-Guide/dp/1517763096/ref=sr_1_4?crid=2G7KR63CS38SC&keywords=ethical+hackers+field+sweigert&qid=1700670601&sprefix=ethical+hackers+field+sweigert%2Caps%2C67&sr=8-4).

20. Sweigert's hacking book teaches readers about topics including social engineering and penetration testing which involves repeatedly attacking a system until a weakness is found.

21. Lawfare is the weaponization of the legal system and it results in legal actions being brought for ulterior purposes. Sweigert has essentially hacked the U.S. District Courts with a six-year penetration test conducted on Goodman on behalf of the U.S. Government.

22. Wikipedia describes Lawfare as the use of the legal system and its institutions to damage or delegitimize an opponent, or to deter an individual's usage of their legal rights. Etymology of the term is widely attributed to retired United States Air Force Major General Charles Dunlap Jr., (*See Law and Military Interventions: Preserving Humanitarian Values in 21st Century Conflicts (29 November 2001) https://people.duke.edu/~pfeaver/dunlap.pdf*)

23. Sweigert is an Air Force veteran who has been to law school. He participates in a clandestine effort engaged in covert tactics calculated to allow the very same U.S. Government agencies this Court intended to enjoin, to engage in the same behavior this Court intended to enjoin them from engaging in. Sweigert's July 4 filing is just one element of evidence.

24. Sweigert is in regular communication with a defendant common to this action, Nina Jankowicz, ("Jankowicz"). This communication is just one element of evidence of the broader clandestine cooperation between them. (*See* Case 1:21-cv-10878-AT-JLC Dkt. 92)

25. Goodman first interacted with Jankowicz in or around May 2022 when she became a public figure and the subject of national news after the U.S. Department of Homeland Security, ("DHS") announced the creation of the Disinformation Governance Board, ("DGB").

26. On May 16, 2022, Goodman published a video report including allegations that Jankowicz received payments from foreign nonprofit organizations and suggesting she should be registered pursuant to 22 U.S. Code § 612, the Foreign Agents Registration Act, ("FARA"). (https://odysee.com/@Crowdsourcethetruth:d/2022-05-16-20-00-03-Live:9)

27. The report provided further public evidence which proved British, Canadian, and Italian government subsidized non-profit organizations had made payments to a privately-owned, for-profit LLC of which Jankowicz was a member, ("Sophias Strategies LLC"). (https://web.archive.org/web/20220614202432/https://www.sophias-strategies.com/)

28. Two days after Goodman published the video, Jankowicz resigned, and the DGB was completely dissolved. Jankowicz' website at www.sophias-strategies.com was promptly removed from the internet and the LLC was voluntarily dissolved. YouTube removed Goodman's video immediately and Goodman's entire YouTube channel was terminated shortly thereafter.

[PROPOSED] MEMORANDUM IN SUPPORT OF MOTION SEEKING LEAVE TO INTERVENE     6

29. On November 22, 2022, Sweigert sent an alarmingly conspicuous message to Jankowicz and others via Twitter alerting them that after months of taunting Goodman, avoiding service, and mocking the lawsuit, Christopher Bouzy ("Bouzy") and his Bot Sentinel Corporation ("Bot Sentinel") had been found in default in *Goodman v Bouzy*. **(EXHIBIT B)**

30. Also extremely suspiciously, the very next day on November 23, 2022, attorney Maxwell Mishkin ("Miskin") appeared on behalf of Bouzy and Bot Sentinel. **(EXHIBIT C)**

31. The Court and any experienced attorney are aware that white shoe firms like Ballard Spahr do not generally represent independent small business owners like Bouzy. Nearly 150 years old firms also do not normally take cases against pro se plaintiffs like Goodman. In this case, and after being alerted by Jankowicz and Sweigert, with only one day's notice, Mishkin and Ballard Spahr promptly did exactly that.

32. It is noteworthy that Miskin had previously represented New York Times journalist Eric Lichtblau in the prosecution of Clinton Campaign attorney Michael Sussman. That trial involved former FBI General Counsel James Baker ("Baker") who later became deputy general counsel at Twitter before being fired when it was taken over and rebranded as X.com. (https://nypost.com/2022/12/06/elon-musk-fires-twitter-lawyer-james-baker-over-hunter-biden/)

### NIH HAS ATTEMPTED TO CIRCUMVENT THIS COURT'S ORDER

33. On July 4, 2023, this Honorable Court issued an historic Ruling on a Motion for Preliminary Injunction (*See Missouri et al v. Biden et al.*, 22-cv-01213-TAD-KDM Dkt. 293). The ruling was entered on docket at or around noon and the Washington Post published a story about it at 1:07pm Eastern. (https://www.washingtonpost.com/technology/2023/07/04/biden-social-lawsuit-missouri-louisiana/)

34. Despite it being a summer holiday, and despite his existing action against Goodman in the Eastern District of Michigan (*See* Case 1:23-cv-06881-JGK-VF), only a few hours later, at 6:22pm, Sweigert brought a new action against Goodman in the Southern District of New York, (*See Sweigert v Goodman* 1:23-cv-05875-JGK-VF) **(EXHIBIT D)**

35. Shortly thereafter, Sweigert moved to consolidate his Michigan action into the July 4 action, (*See Sweigert v Goodman* 1:23-cv-05875-JGK Dkt. 5). The complaint was then amended to include Google and Twitter, (*See Sweigert v Goodman* 1:23-cv-05875-JGK Dkt. 13).

36. All of these complex machinations were executed so that Sweigert could use the threat of civil action from an apparent independent citizen to coerce Google on behalf of NIH into terminating Goodman's accounts in violation of this Court's order. Without any ruling from the SDNY, and prior to counsel appearing, Sweigert engaged in ex parte communications with unknown attorneys for Google and coerced them into terminating multiple Goodman accounts in exchange for releasing them from the suit. The Goodman accounts were promptly terminated.

37. On or around October 10, 2023, Goodman discovered a staff directory web page on NIH.gov associated with Sweigert. Goodman attempted to contact the NIH to verify the identity of this employee and left a voicemail message requesting an interview with Sweigert on or around November 15, 2023. (https://vk.com/video731682021_456239122).

38. There was no response, however, the next day the web page changed its status and now the same URL alerts all visitors stating, "ACCESS DENIED." **(EXHIBIT E)**

39. Goodman seeks an injunction equal to any injunction the Court may grant to Plaintiffs and further seeks to augment any such injunction such that it would prevent Sweigert or any other contract employees or agents of government agencies from interacting in any way with social media companies regarding Goodman or information posted by Goodman.

40.     Goodman's intervention will bring forth evidence of clandestine efforts by NIH, other government agencies and their agents, and their intention to circumvent this Honorable Court's rightful orders and the Constitution of the United States of America. Granting Goodman intervention would serve justice and would expedite adjudication of these matters.

## CONCLUSION

Goodman should be granted intervention for the reasons stated herein, and for any other reasons as determined by the Court.

Dated: New York, New York December 28, 2023

Respectfully submitted,

Jason Goodman
Pro Se Intervenor Applicant
252 7th Avenue Apt 6s
New York, NY 10001
truth@crowdsourcethetruth.org
347-380-6998